```
ANDREW L. PACKARD (Bar No. 168690)
andrew@packardlawoffices.com
WILLIAM N. CARLON (Bar No. 305739)
wncarlon@packardlawoffices.com
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060


Attorneys for Plaintiff
CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

[Additional Counsel on p. 2]
```

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
ROBERT T. MATSUI FEDERAL COURTHOUSE

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>    Plaintiff,<br><br>    v.<br><br>KATHLEEN ALLISON, in her official capacity as Secretary of the California Department of Corrections and Rehabilitation,<br><br>Defendants. | Case No. 2:20-cv-02482-WBS-AC<br>DECLARATION OF KATHERINE EVATT IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION<br><br>No. 2:21-cv-0038-WBS-AC<br>Date:     August 22, 2022<br>Time:     1:30 p.m.<br>Court:    5<br><br>Action Filed: Jan. 7, 2021<br>Trial Date:   April 18, 2023 |
| COUNTY OF AMADOR, a public agency of the State of California,<br><br>    Plaintiff,<br><br>    v.<br><br>KATHLEEN ALLISON in her official capacity as Secretary of the California Department of Corrections and Rehabilitation; PATRICK COVELLO in his official capacity of Warden of California Department of Corrections and Rehabilitation Mule Creek State Prison,<br><br>Defendants. | |

```
JASON FLANDERS (Bar No. 238007)
jrf@atalawgroup.com
ERICA MAHARG (Bar No. 279396)
eam@atalafwgroup.com
AQUA TERRA AERIS LAW GROUP
490 43rd Street, Suite 108
Oakland, CA 94609
Tel. (916) 202-3018

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

GENE TANAKA, Bar No. 101423
gene.tanaka@bbklaw.com
SHAWN D. HAGERTY, Bar No. 182435
shawn.hagerty@bbklaw.com
REBECCA ANDREWS, Bar No. 272967
rebecca.andrews@bbklaw.com
BEST BEST & KRIEGER LLP
2001 N. Main Street, Suite 390
Walnut Creek, CA  94596
Tel: (925) 977-3300

Attorneys for Plaintiff

COUNTY OF AMADOR
```

I, Katherine Evatt, make this declaration from personal knowledge. If called, I could and would testify competently as follows:

1. I am now, and have been since at least 2020 a member of California Sportfishing Protection Alliance ("CSPA"), the plaintiff in the above-captioned matter.

2. I moved to Amador County with my husband in 1979. We made rural Volcano our home in 1980 and have lived there ever since.

3. For over thirty years, I have been an advocate for the Mokelumne River. In 1989, I helped found the Foothill Conservancy, a non-profit organization with the mission to protect, restore, and sustain the natural and human environment in Amador and Calaveras counties for the benefit of current and future generations.

4. Through my work at the Foothill Conservancy I have led, and been involved with, many projects on the Mokelumne River and its tributaries, including securing California Wild and Scenic River designation for a 37-mile stretch of the river in 2018.

5. The Mokelumne River is an extraordinary waterway that provides critical environmental and recreational benefits. Mule Creek and Dry Creek are important tributaries to the Mokelumne River because they provide water to its critical habitat for fall-run Chinook salmon and steelhead trout.

6. Though much of my advocacy has been focused on the upper reaches of the Mokelumne, I have been active in protecting water quality in the portions of the Mokelumne downstream of Pardee Reservoir, including in the Mule Creek/Dry Creek

watershed.

7. In 2002, I was involved in an effort to prevent a mining project from going forward along Dry Creek north of Highway 104 between Collings and Irish Hill roads, next to Mule Creek State Prison. The Amador County Planning Commission approved a use permit, environmental determination, and reclamation plan for the Q-Ranch Mine to extract sand, gravel, and silt from 1930s-era gold-mining dredger tailings, Dry Creek, and surrounding bottom land. On behalf of Foothill Conservancy, I helped appeal the permit, putting the decision on hold while additional studies could be completed. Among the species threatened by this mining project were the valley elderberry longhorn beetle, Ione manzanita, California tiger salamander, and vernal pool invertebrates. The impacts from the mining project would have likely adversely affected downstream steelhead and Chinook salmon.

8. From 2010-2013, as Foothill Conservancy board president, I helped develop, plan and oversee the Foothill Conservancy Dry Creek Supplemental Environmental Project to prevent water quality degradation from bank erosion along Dry Creek. Funding for the project came from water quality violation fines paid by the California Department of Corrections and Rehabilitation as a result of wastewater discharge violations at Mule Creek State Prison. Under an agreement with the Central Valley Regional Water Quality Control Board, the fines were directed to Foothill Conservancy to implement a local project with water quality benefits.

9. From 2010 to 2012, I worked on the Mokelumne Ecological

Benefits Program, led by Environmental Defense, the Sierra Nevada Conservancy, The Nature Conservancy, Protected Harvest, and Sustainable Conservation.  This project sought to evaluate and value some of the Mokelumne River watershed's ecological services, and to determine beneficiaries willing to pay to ensure those services continue, or even to enhance them.  The project assessed the Mokelumne River watershed from the headwaters to the Delta and focused on water quality and water quantity.

10.  In 2011, I helped lay the groundwork for a settlement agreement among Foothill Conservancy, California Sportfishing Protection Alliance, and PG&E that would commit PG&E to carry out computer modeling of water temperatures in the Mokelumne River as part of the evaluation of PG&E's proposed Mokelumne Pumped Storage hydroelectric project.  Downstream of Camanche Reservoir, cold water is critical to the survival of the river's salmon and steelhead population.

11.  In 2012, I advocated against the Newman Ridge and Edwin Center mining and industrial projects located in an area that includes rare Valley oak riparian forest along Dry Creek.  These projects threatened to have lasting, negative impacts to the local water supply, water quality, aesthetics, noise levels, traffic, air quality, and public health.

12.  In 2013, the Irish Hill Quarry sought an amendment for their use permit that would allow it to mine closer to Dry Creek and below the level of the streambed.  I helped coordinate opposition to the permit expansion with local community members and landowners who wrote letters and made comments to the planning commission and board of supervisors.

13. Beginning in 2014 and continuing through 2020, as Foothill Conservancy board president, I helped conceive of, initiate, and oversee work with the East Bay Municipal Utility District, nonprofit groups, businesses, state and local agencies, and tribal interests to explore the potential to restore fall-run Chinook salmon to the upper Mokelumne River. As part of this project, the resulting "Mokelumne Salmonid Restoration Team" team tracked the returns of fall-run Chinook salmon that reached the Mokelumne River Hatchery at the base of Camanche Reservoir and developed a pilot project for reintroducing them into the river above Pardee Reservoir upstream. Water quality from the potential spawning grounds in the upper watershed all the way to the Delta is critical for maintaining a healthy fishery.

14. I retired from my formal, volunteer leadership position at Foothill Conservancy in 2020. However, I plan to remain involved with the organization as an active member and as an ongoing senior advisor, providing support to the next generation of people acting to protect the Mokelumne River watershed. As part of this ongoing involvement, I intend to continue working to protect water quality up and down the entire Mokelumne River, including protecting the water quality of its tributaries.

15. In addition to my advocacy efforts, I also enjoy birdwatching in the lower Mokelumne River watershed. I have, on many occasions, visited the Consumnes Preserve area and the Woodbridge Ecological Reserve to observe overwintering waterfowl – in particular, I enjoy seeing sandhill cranes. I plan to return to these and other areas in the lower Mokelumne River watershed to birdwatch in the future.

16. I am aware that Mule Creek State Prison discharges to Mule Creek. I am aware also that the prison's discharges regularly violate water quality standards, and I believe that the prison continues to discharge pollutants to Mule Creek. I understand that the prison's discharges degrade the water quality of Mule Creek, Dry Creek, and the Mokelumne River by discharging pollutants, including bacteria, metals, and pharmaceuticals.

17. As explained above, I have worked for more than 30 years to protect the water quality and habitat of the Mokelumne River watershed. Mule Creek State Prison's polluted discharges negatively affect the water quality of the watershed and undermine the work I have done and continue to do.

18. I am concerned that the pollutants that the prison discharges into Mule Creek make their way into the Mokelumne River by way of Dry Creek, and harm the fall-run Chinook salmon and steelhead populations I have worked hard to protect. Therefore, again, the discharges negatively impact my efforts to restore these fish populations.

19. I am also concerned that when these pollutants enter the Mokelumne River watershed and ecosystem, they harm the numbers of the birds, fish, and mammals that I regularly enjoy and have worked to protect for more than 30 years. The knowledge and existence of Mule Creek State Prison's polluted discharges prevents me from fully enjoying my recreational, aesthetic, and volunteer activities in the Mokelumne River watershed.

20. Actions taken by Mule Creek State Prison to reduce or eliminate the pollution it is currently discharging and to comply with its water quality permits would alleviate my concerns about

the harms caused by the pollution to the natural environment and would increase my enjoyment from my recreational, aesthetic, and volunteer activities.

21. Moreover, remedying Mule Creek State Prison's violations would ensure that the Prison is not degrading the water quality and habitat of the Mokelumne River watershed, which I have worked and continue to work to protect.

I swear under penalty of perjury under the laws of both California and the United States that the foregoing is true and correct and that this declaration was executed on June 22, 2022, at Volcano, California.

_____
Katherine Evatt