Settlement & ACL Order R5-2021-0001
California Department of Corrections and Rehabilitation

**Table 1: Laboratory Results from 4 January 2018 Samples**

| Parameter | Tower 4 Sample | Junction Sample | Comparison Regulatory Values | Comparison Values and Sources |
|---|---|---|---|---|
| Oil and Grease (mg/L) | 2.6 | 1.2 | 15 | Annual Numerical Action Limit, Order 2014-0057-DWQ |
| MBAS (mg/L) | 0.13 | 0.18 | 0.5 | Drinking Water Standard: Secondary MCL |
| Aluminum (mg/L) | 2.9 | 3.7 | 1 | Drinking Water Standard: Primary MCL |
| Iron (mg/L) | 1.9 | 3 | 0.3 | Drinking Water Standard: Secondary MCL |
| Total Phosphorus as P (mg/L) | 0.35 | 0.87 | 0.1 | USEPA Health Advisory |
| Orthophosphate as PO4 (mg/L) | 0.89 | 2.3 | N/A | Common Constituent Found in Sewage and Other Biological Decomposition |
| Total Coliforms (MPN/100ml) | >1600 | >1600 | >2.2 | Section 64426.1, Title 22, CCR |
| E. Coli (MPN/100ml) | >1600 | >1600 | >2.2 | Section 64426.1, Title 22, CCR |
| Fecal Coliforms (MPN/100ml) | >1600 | >1600 | >2.2 | Section 64426.1, Title 22, CCR |

10. The water quality samples collected by Central Valley Water Board staff demonstrate that the water being discharged from the Old Prison Facility to the perimeter storm water collection system, and then into Mule Creek, was not solely storm water.

11. During 4 January 2018 inspection, the Discharger stated that it was covered under the General Permit for Storm Water Discharges Associated with Industrial Activities, Order 2014-0057-DWQ (Industrial General Permit). However, Central Valley Water Board staff found no evidence of this SWPPP in the Storm Water Multiple Application and Report Tracking System (SMARTS), nor any indication that the Discharger submitted a Notice of Intent (NOI) to comply with the Industrial General Permit. At the time of inspection, the Discharger did not have a permit to discharge to surface waters, including Mule Creek. CDCR filed for "No Exposure Certification" coverage under the Industrial General Permit on 22 May 2018.

12. Furthermore, with respect storm water discharges from construction activities, the Discharger stated on 4 January 2018 that it had not obtained coverage under the General Permit for Storm Water Dischargers Associated with Construction and Land Disturbance Activities, Order 2009-0009-DWQ, as amended (Construction General Permit) for their Storm Drain System project, which is further discussed in the 14 February 2018 13267 Order. CDCR filed a Notice of Intent to be governed by the Construction General Permit on 10 April 2018.

Defs_000887

Settlement & ACL Order R5-2021-0001
California Department of Corrections and Rehabilitation

13. On 14 February 2018, the Assistant Executive Officer issued a Water Code 13267 Order that required, in part, the Department to prepare an Interim Disposal Plan, a Storm Water Collection System Investigation Workplan, and a Storm Water Collection System Investigation Findings Report. The Order directed the Department to submit the Storm Water Collection System Investigation Findings Report by 15 April 2018.

14. The Interim Disposal Plan, submitted on 15 March 2018, stated that CDCR was containing all water within the stormwater system, and conveying the water to the on-site wastewater treatment plant. The Prison had ceased all discharges to the creek beginning on January 19, 2018. CDCR also utilized ten 21,000 gallon Baker tanks in order to divert water from the stormwater collection system. Diverting all stormwater during significant rain events that occurred in the following months caused flooding at the Prison. As such, CDCR submitted the Revised Interim Disposal Plan on 24 May 2018, which was never approved by the Central Valley Water Board. The revised plan indicated that during rain events of more than 0.1 inches in an hour or 0.3 inches in a 24 hour period, CDCR would discharge the stormwater and commingled alleged nonstormwater contents of the stormwater collection system to Mule Creek to avoid flooding at the Prison. The Discharger has installed flow meters to measure discharges during rain events. The Central Valley Water Board indicated that they could not approve any plan that included discharges in violation of the Clean Water Act, the Water Code, or waste discharge requirements on 6 April 2018.

15. On 15 March 2018, the Discharger submitted the required Storm Water Collection System Investigation Workplan. The submittal was conditionally approved by Water Board staff on 23 March 2018. On 16 April 2018, the Department submitted preliminary findings of the initial investigative efforts in a Preliminary Storm Water Investigation Report of Findings. On 17 August 2018, the Discharger submitted the Storm Water Collection System Investigation Findings Report. The report was submitted 124 days late, and the Central Valley Water Board determined it was materially deficient. The Discharger then conducted additional investigative actions to determine the source of the alleged non-storm water discharge. As part of these additional actions a Piezometer Installation Workplan was submitted by CDCR on 11 March 2019, and conditionally approved by Board staff on 25 March 2019. The approved workplan included the installation of four piezometers within the Old Prison Facility to investigate groundwater surface elevations and groundwater quality in proximity to the central corridor of the Old Prison Facility. The piezometers have not been installed as of the date of this Order.

Defs_000888

Settlement & ACL Order R5-2021-0001
California Department of Corrections and Rehabilitation

16. The Revised Stormwater Collection System Investigation Report of Findings states:

> "SHN's site investigation efforts did not reveal any direct cross-connections between the stormwater and sanitary sewer collection systems. Additionally, the analytical results provided no evidence that stormwater is comingled with wastewater, sewage, and/or grey water… This investigation has identified the non-stormwater sources to be irrigation and groundwater within the stormwater collection system at MCSP."

Although no direct cross connections were found, numerous potential sources of in-direct cross connections were discovered. Over 500 defects were found in the stormwater and sewer systems. These defects range from minor corrosion to broken/collapsed pipes, fully separated joints, deformations, compromised seals, failed previous repairs, and large holes, cracks, or breaks where soil is visible. The investigation did not comprehensively include pipes less than six inches in diameter due to limitations of the equipment. Central Valley Water Board staff's review of a portion of the CCTV footage shows areas where water is leaking into both systems from some defects and drain design flaws. Smoke testing of the sanitary sewer revealed eight locations where smoke escaped the system through concrete seams or grassy areas. Further, the stormwater and sewer systems were constructed in close physical proximity at some points, with the sanitary sewer system above the stormwater system in most areas, providing an opportunity for leaking sewer pipes to gravity flow through the soil and contact the stormwater system. The Central Valley Water Board believes this is a clear conduit for indirect cross connection anywhere that both systems have nearby defects. The Central Valley Water Board believes the high groundwater is likely exacerbating these cross connections. A number of repairs are necessary to both systems.

17. Monitoring data collected by CDCR since February 2018 shows numerous detections in a wide range of waste constituents including VOCs, SVOCs, surfactants, oil and grease, metals, inorganics, and nutrients at varying concentrations. Some of these results show concentrations of waste-type constituents at levels that would be expected in wastewater, sewage, and/or grey water. Constituent concentrations other than coliforms are shown to be highly variable. Coliforms, fecal coliforms, and E. Coli are consistently very high, and often not enumerated as the concentrations exceeded the upper quantification limit used by the lab. The summarized data shows thousands of instances in which the discharge from the stormwater system exceeded water quality objectives for a given constituent. Water Board staff does not believe that the identified non- stormwater sources of irrigation and groundwater are likely sources of waste constituents. To date, no repairs to the stormwater or sanitary sewer system have been made. The Discharger continues to sample on a significantly reduced basis, according to the direction of the Assistant Executive Officer in a letter dated 6 November 2018, and waste constituents continue to be detected in the stormwater system.

Defs_000889

Settlement & ACL Order R5-2021-0001
California Department of Corrections and Rehabilitation

18. On January 11, 2019, The Water Board Assistant Executive Officer issued the Notice of Opportunity to Review and Comment and Notice of Public Hearing concerning consideration of a resolution designating MCSP as a Regulated Small Municipal Separate Storm Sewer System subject to State Water Board Order No. 2013-0001-DWQ (Small MS4 General Permit). On February 8, 2019, the Water Board adopted the resolution, and on April 24, 2019, the Executive Director of the State Water Resources Control Board adopted Water Quality Order 2013-0001-DWQ, which directed MCSP to submit a Notice of Intent to apply for coverage under the Small MS4 General Permit.

19. In April 2019, the Department filed a complete Notice of Intent to be permitted under the Small MS4 General Permit, which presently governs discharges from the storm water system at Mule Creek State Prison.

20. The MS4 permit requires the Discharger to identify and eliminate illicit discharges of waste constituents to the stormwater system. The Discharger has identified several likely sources of waste constituents in the Revised Stormwater Collection System Investigation Report of Findings.

21. The Discharger is currently in Year 2 of the MS4 permit, which requires among other things that all outfalls be identified and sampled if discharging to waters of the US more than 72 hours since the last rain event. If these samples yield results that exceed any action levels described in Table 2 of the permit, the Discharger has 72 hours to conduct an investigation. The report documenting this information is due no later than 15 October 2020.

22. The Parties have met extensively and performed several site walks and joint inspections to resolve the issue of unpermitted discharges to Mule Creek.

23. The Discharger's Wastewater Treatment Plant is located at 4001 Highway 104, in Ione (Section 13, T6N, R9E, MDB&M. The facility occupies Assessor's Parcel Numbers (APN) 004-290-004, 004-290-005, 004-290-006, 005-070-007, 005-070-008, and 005-070-011, with surface water drainage to Mule Creek, tributary to Dry Creek, tributary to the Mokelumne River.

24. The Central Valley Water Board's Water Quality Control Plan (Fourth Edition) for the Sacramento River and San Joaquin River Basins (Basin Plan) establishes the beneficial uses of the waters of the state and water quality objectives to protect those uses. The beneficial uses of the Mokelumne River are irrigation and stock watering; contact and noncontact recreation; warm and cold freshwater habitat; warm and cold water migration; warm and cold spawning; wildlife habitat.

25. The Parties did not address liability for the commingled discharges of storm water and non-stormwater discharges. The Central Valley Water Board asserts that the entire volume of the discharge (non-stormwater and stormwater) is potentially the basis for a penalty. CDCR asserts that only those non-stormwater volumes in Finding 26 below are the basis for liability. The volumes in Finding 26 below in the table below were agreed upon for the purpose of resolving the violations for an

Defs_000890

Settlement & ACL Order R5-2021-0001
California Department of Corrections and Rehabilitation

appropriate administrative civil penalty. The Central Valley Water Board believes that the resolution for the volumes below meets the enforcement needs for the region, is protective of water quality, and is in the best interests of the Central Valley region.

26. The non-storm water discharge volume calculation was based on six intervals in which there was little to no rainfall. Because little to no rain fell during these periods, any water within the storm water system likely represents non-stormwater flows. The six periods used were: (1) December 7 – 15, 2018; (2) December 26, 2018 – January 5, 2019; (3) January 25 – 31, 2019; (4) March 11 – 18, 2019; (5) April 6 – 14, 2019; and (6) April 20 – 26, 2019. Next, the parties added together the highest daily average for each pump, resulting in a total of 14,174 gallons per day, which represents the volume of non-storm water within the storm water system as a daily average.

27. The number of days that discharges occurred is based on the time the gates were open as reported in the Office of Emergency Services reports, with any fraction of a day counted as one day. For example, if the gates were open for one hour, the Parties counted that as one day. For each of these periods, the Parties calculated the average daily flow for each of the six pumps used to redirect water to the wastewater treatment plant. Only discharges that occurred between the 18 January 2018 notification from Water Board staff regarding the discovery of waste constituents in the stormwater discharge and 10 April 2019 when the facility obtained coverage under the MS4 permit were considered. The total days of discharge was 79 days during this time period. These discharges are summarized in Table 2 below:

### Table 2: Days of Violation based on OES Reports between 18 January 2018 and 10 April 2019

| Days of Violation | OES Control # | Date |
|---|---|---|
| N/A | 18-0502 | 1/23/2018 |
| 1 | 18-1696 | 3/14/2018 |
| 1 | 18-1892 | 3/22/2018 |
| 1 | 18-2307 | 4/6/2018 |
| 1 | 18-3383 | 5/25/2018 |
| 2 | 18-7188 | 10/3-10/4/2018 |
| 1 | 18-8009 | 11/25/2018 |
| 7 | 18-8207 | 11/27-12/3/2018 |
| 2 | 18-8563 | 12/16-12/17/2018 |
| 4 | 19-0260 | 12/23-26/2018 |
| 7 | 19-0305 | 1/5/19-1/11/2019 |
| 4 | 19-0534 | 1/15/18-1/18/2018 |
| 4 | 19-0535 | 1/19/19-1/22/2019 |
| 6 | 19-0887 | 2/1/19-2/6/2019 |
| 4 | 19-0976 | 2/8/19-2/11/2019 |

Defs_000891

Settlement & ACL Order R5-2021-0001
California Department of Corrections and Rehabilitation

| Days of Violation | OES Control # | Date |
|---|---|---|
| 7 | 19-1218 | 2/12/19-2/18/2019 |
| 12 | 19-1622 | 2/24/19-3/7/2019 |
| 10 | 19-2092 | 3/19/19-3/28/2019 |
| 5 | 19-2312 | 4/1/19- 4/05/2019 |

**Total Days: 79**

28. The 14,174-gallon daily average flow of non-storm water was multiplied by the 79 days of discharge as reported in the OES reports, resulting in a total of 1,119,746 gallons of non-stormwater discharge between 18 January 2018 and 10 April 2019.

## Section III: Statutory and Regulatory Considerations

29. Water Code section 13385(a) provides, in relevant part, "A person who violates any of the following shall be liable civilly in accordance with this section: ... (5) A requirement of Section 301...of the federal Clean Water Act (33 USC Sec. 1311...), as amended..."

30. Water Code section 13385(c) states: "Civil liability may be imposed administratively by...the regional board pursuant Article 2.5 (Commencing with Section 13323) of Chapter 5..." The penalty shall not exceed the sum of ten thousand dollars ($10,000) for each day in which the violation occurs and ten dollars ($10) per gallon for each gallon in excess of the first one thousand (1,000) gallons discharged.

31. Pursuant to Water Code section 13327, in determining the amount of discretionary civil liability, the Central Valley Water Board is required to take into consideration the nature, circumstance, extent, and gravity of the violation or violations, whether the discharge is susceptible to cleanup or abatement, the degree of toxicity of the discharge, and, with respect to the violator, the ability to pay, the effect on ability to continue in business, any voluntary cleanup efforts undertaken, any prior history of violations, the degree of culpability, economic benefit or savings, if any, resulting from the violation, and other matters as justice may require.

32. The estimated economic benefit plus an additional 10% is the minimum amount for an ACLO under the 2017 Enforcement Policy. In this instance, the estimated economic benefit plus 10% is $1,605,811, which amounts to the estimated cost of compliance plus 10% as determined in Attachment A.

## Section IV: Settlement

33. The Parties have engaged in confidential settlement negotiations and agree to settle the matter without administrative or civil litigation by presenting this Stipulated Order to the Central Valley Water Board, or its delegee, for adoption as an order by settlement pursuant to Government Code section 11415.60. To resolve the violations by consent and without further administrative proceedings, the Parties have agreed to the imposition of administrative civil liability in the amount of **two million five hundred thousand dollars ($2,500,000)** against the Discharger.

Defs_000892

Settlement & ACL Order R5-2021-0001
California Department of Corrections and Rehabilitation

34. The Central Valley Water Board Prosecution Team has determined that the resolution of the alleged violations is fair and reasonable and fulfills its enforcement objectives, that no further action is warranted concerning the violations alleged herein and that this Stipulated Order is in the best interest of the public

**Section V: Stipulations**

The Parties stipulate to the following:

35. Administrative Civil Liability: Without admitting the truth of any violations alleged in this Stipulated Order, the Discharger hereby agrees to the imposition of two million five hundred thousand dollars ($2,500,000) in administrative civil liability to the Central Valley Water Board to resolve the violations alleged in this Stipulated Order. The Discharger agrees to pay the following amounts:

   a. **One million six hundred and five thousand eight hundred and eleven ($1,605,811)** shall be paid to the State Water Pollution Cleanup and Abatement Account. Payment shall be made no later than thirty (30) days after adoption of an order approving this Stipulated Order by the Central Valley Water Board, or its delegee, by check payable to the State Water Pollution Cleanup and Abatement Account. The Discharger shall indicate on the check the number of this Stipulated Order (R5-2021-0001). The Discharger shall send the original signed check to the Accounting Office, Attn: ACL Payment, P.O. Box 1888, Sacramento, California 95812-1888. A copy of the check shall be sent to Nickolaus Knight, Attorney, State Water Resources Control Board, Office of Enforcement, P.O. Box 100, Sacramento, CA 95812 and Kari Holmes, Enforcement Coordinator, Central Valley Water Board, 11020 Sun Center Drive Suite 200, Rancho Cordova, CA 95670.

   b. **Eight hundred ninety-four thousand one hundred and eighty-nine dollars ($894,189)** shall be permanently suspended on the condition that CDCR spends $894,189 on completing the Enhanced Compliance Actions (ECA) described in Attachments B and C of this Order, hereby incorporated by reference. Failure to complete all aspects of the ECAs shall result in the Discharger's payment of the entire suspended penalty amount to the State Water Pollution Cleanup and Abatement Account.

36. **Enhanced Compliance Actions (ECAs):** The $894,189 in suspended administrative civil liability shall be satisfied through the implementation of the ECAs described in Attachments B and C, incorporated herein by reference, and summarized below. The Discharger proposes to implement the following ECAs:

   a. **Irrigation Replacement ECA (Attachment B)**

   b. **SCCWRP Study ECA (Attachment C)**

37. **ECA Completion Deadlines:** The Discharger shall comply with the deadlines in the ECA proposals. The deadlines shall begin with the effective date of this Order.

Defs_000893

Settlement & ACL Order R5-2021-0001
California Department of Corrections and Rehabilitation

38. **Request for Extension of Final ECA Completion Deadlines: If** the Discharger cannot meet the ECA Completion Deadlines due to circumstances beyond the Discharger's control, the Discharger shall notify the Executive Officer in writing at least thirty (30) days prior to the ECA Completion Deadline.  The notice shall describe the reason for the delay and specifically refer to this  paragraph.  The notice shall describe  the anticipated  length  of time the delay  may persist,  the cause or causes of the delay, the measures taken or to be taken by the Discharger to prevent or minimize the delay, the schedule by which the measures will be implemented, and the anticipated date of compliance with this Stipulated Order. The Discharger shall adopt all reasonable measures to avoid and minimize such delays.

   The determination as to whether the circumstances were beyond the reasonable control of the Discharger and its agents will be made by the Executive Officer. Where the Executive Officer concurs, that compliance was or is impossible, despite the timely good faith efforts of the Discharger, due to circumstances beyond the control of the Discharger that could not have been reasonably foreseen and prevented by the exercise of reasonable diligence by the Discharger, a new compliance deadline shall be established and provided to the Discharger in writing with the effect of revising this Stipulated Order. The Executive Officer will not unreasonably deny a time extension request.

39. **Final Report and Quarterly Monitoring Reports:** The Discharger shall provide quarterly monitoring reports on the progress of the ECA thirty (30) days following the end of each calendar quarter beginning on the effective date of this Stipulated Order. The Final Report shall be submitted with the certification, within 90 days of the completion of the ECA.

40. **Audits and Certification of Enhanced Compliance Action:**

   a. **Certification of Completion:** Within 90 days of completion of the ECA, the Discharger shall submit a certified statement of completion of the ECA ("Certification of Completion"). The Certification of Completion may be submitted with the Discharger's final Quarterly Report for the project. The Discharger's authorized representative shall submit the Certification of Completion under penalty of perjury to the Designated Central Valley Water Board contact. (The Central Valley Water Board Executive Officer will identify the designated Central Valley Water Board contact in the transmittal letter for the signed Order, and subsequently notify the Discharger if any changes to that contact are needed.) The Certification of Completion shall include the following:

      i. **Certification of Expenditures**
         Certification documenting all expenditures by the Discharger. The expenditures may include external payments to outside vendors or contractors implementing the ECA. If applicable, the expenditures may include the costs of internal Environmental Management resources and internal Business Unit resources, provided that such expenditures are directly related to development  and implementation

Defs_000894

Settlement & ACL Order R5-2021-0001
California Department of Corrections and Rehabilitation

of the ECA. In making such certification, the official may rely upon normal company and project tracking systems that captures employee time expenditures and external payments to outside vendors such as environmental and information technology contractors or consultants. The Discharger shall provide any additional information requested by the Central Valley Water Board staff that is reasonably necessary to verify ECA expenditures. The certification need not address any costs incurred by the Central Valley Water Board for oversight.

ii. **Certification of Performance of Work**
Certification that the ECA has been completed in accordance with the terms of this Stipulated Order. Such documentation may include photographs, invoices, receipts, certifications, and other material reasonably necessary for the Central Valley Water Board to evaluate the completion of the ECA and the costs incurred by the Discharger.

iii. **Certification that Work Performed on ECA Met or Exceeded Requirements of California Environmental Quality Act (CEQA) and other Environmental Laws [where applicable]**
Certification that the ECA meets or exceeds the requirements of CEQA and/or other environmental laws. Unless the Discharger is exempted from compliance with CEQA, the Discharger shall, before the ECA implementation date, consult with other interested State Agencies regarding potential impacts of the ECA. To ensure compliance with CEQA where necessary, the Discharger shall provide the Central Valley Water Board with the following documents:

  A. Categorical or statutory exemptions;

  B. Negative Declaration if there are no "significant" impacts;

  C. Mitigated Negative Declaration if there are potential "significant" impacts but revisions to the project have been made or may be made to avoid or mitigate those potential significant impacts; or

  D. Environmental Impact Report if there are "significant" impacts.

iv. **Third Party Audit**
If the designated Central Valley Water Board contact obtains information that causes the representative to reasonably believe that the Discharger has not expended money in the amounts claimed, or has not adequately completed any of the work in the ECA, the designated Central Valley Water Board contact may require, and the Discharger shall submit, at its sole cost, a report prepared by an

Defs_000895

Settlement & ACL Order R5-2021-0001
California Department of Corrections and Rehabilitation

independent third party(ies), stating that in its professional opinion, the Discharger has or has  not expended money in the amounts claimed. The Discharger, with the Central Valley Water Board's approval, shall choose the independent third- party auditor. In the event of such an audit, the Discharger agrees that they will provide the third-party auditor with access to all documents which the auditor requests. Such information shall also be provided to the designated Central Valley Water Board contact. The audit need not address  any costs incurred  by the Central Valley Water Board for oversight.

b. **Central Valley Water Board Acceptance of Completed ECA**: Upon the Discharger's satisfaction of its obligations under this Stipulated Order, the completion of the ECA and any audits, the designated Central Valley Water Board contact, with notice to the regional Enforcement Coordinator, shall request that the Central Valley Water Board, or the Central Valley Water Board's delegee, issue a "Satisfaction of Order." The issuance of the Satisfaction of Order shall terminate any further obligation of the Discharger under this Stipulated Order and permanently suspend the administrative civil liability associated with the ECA.

c. **Failure to Expend All Suspended Administrative Civil Liability Funds on the Approved ECA:** In the event that the Discharger is not able to demonstrate to the reasonable satisfaction of the designated Central Valley Water Board contact that the entire ECA Amount pursuant to Paragraph 35 has been spent for the completed ECA, the Discharger shall  pay the difference between the ECA amount and the amount the Discharger can demonstrate was actually spent on the ECA, as an administrative civil liability to the State Water Pollution Cleanup and Abatement Account.

d. **Failure to Complete the ECA:** If the ECA is not fully implemented by the ECA Completion Deadlines required by this Stipulated Order and an extension has not been granted by the Central Valley Water Board's Executive Officer pursuant to Paragraph 38 above, the designated Central Valley Water Board contact shall issue a Notice of Violation. As a consequence, the Discharger shall be liable to pay the entire Suspended Liability to the State Water Pollution Cleanup and Abatement Account.

e. **Central Valley Water Board Not Liable:** Neither the Central Valley Water Board members nor the Central Valley Water Board staff, attorneys, or representatives shall be liable for any injury or damage to person or property resulting from acts or omissions by the Discharger (or the Implementing Party where applicable), its directors, officers, employees, agents, representatives or contractors in carrying out activities pursuant to this Stipulated Order, nor shall the Central Valley Water Board, its members or staff be held as parties to or guarantors of any contract entered into by the Discharger, its directors, officers, employees, agents, representatives or contractors in carrying out activities pursuant to this Stipulated Order.

Defs_000896

Settlement & ACL Order R5-2021-0001
California Department of Corrections and Rehabilitation

The Discharger and its contractor(s) covenant not to sue or pursue any administrative or civil claim or claims against any State Agency or the State of California, or their officers, employees, representatives, agents, or attorneys arising out of or relating to any matter expressly addressed by this Stipulated Order or the ECA. This provision does not preclude the Discharger and/or the Implementing Party from opposing a Notice of Violation or Motion brought under Paragraph 40.d.

41. **Compliance with Applicable Laws and Regulatory Changes:** The Central Valley Water Board understands that payment of an ACL in accordance with the terms of this Stipulated Order and/or compliance with the terms of this Stipulated Order is not a substitute for compliance with applicable laws, and that additional violations of the type alleged may subject it to further enforcement, including additional ACLs. Nothing in this Stipulated Order shall excuse the Discharger from meeting any more stringent requirements which may be imposed hereafter by changes in applicable and legally binding legislation or regulations.

42. **Party Contacts for Communications Related to Stipulated Order:**

**For the Central Valley Water Board:**

Kari Holmes
Enforcement Coordinator Central Valley Water Board
11020 Sun Center Drive, Suite 200 Rancho Cordova, CA 95670
Kari.Holmes@waterboards.ca.gov
(916) 464-4848

Nickolaus Knight
Office of Enforcement, State Water Board
P.O. Box 100
Sacramento, California 95812
nickolaus.knight@waterboards.ca.gov
(916) 327-0169

**For the Discharger:**

Dean L. Borg, Director
Facility Planning, Construction and Management Division
California Department of Corrections and Rehabilitation
9838 Old Placerville Road, Suite B
Sacramento, CA 95827

Eric Papathakis
Office of Legal Affairs
1515 S Street, Sacramento, CA 95811
eric.papathakis@cdcr.ca.gov
(916) 324-7111

Defs_000897

Settlement & ACL Order R5-2021-0001
California Department of Corrections and Rehabilitation

43. **Attorney's Fees and Costs:** Except as otherwise provided herein, each Party shall bear all attorneys' fees and costs arising from the Party's own counsel in connection with the matters set forth herein.

44. **Matters Addressed by this Stipulated Order:** Upon adoption by the Central Valley Water Board, or its delegee, this Stipulated Order represents a final and binding resolution and settlement of all claims, violations, or causes of action alleged in this Stipulated Order or which could have been asserted based on the specific facts alleged in this Stipulated Order against the Discharger as of the effective date of this Stipulated Order. The provisions of this paragraph are expressly conditioned on the Discharger's full payment of the ACL by the deadline specified in Paragraph 35.a and completion of the ECA referenced in Paragraph 36 or full payment of the associated suspended liability.

45. **Public Notice:** The Discharger understands that this Stipulated Order will be noticed for a 30-day public review and comment period prior to consideration by the Central Valley Water Board, or its delegee. If significant new information is received that reasonably affects the propriety of presenting this Stipulated Order to the Central Valley Water Board, or its delegee, for adoption, the Assistant Executive Officer may unilaterally declare this Stipulated Order void and decide not to present it to the Central Valley Water Board, or its delegee. The Discharger agrees that it may not rescind or otherwise withdraw its approval of this proposed Stipulated Order.

46. **Addressing Objections Raised During Public Comment Period:** The Parties agree that the procedure contemplated for the Central Valley Water Board's or its delegate's adoption of the Order, and public review of this Stipulated Order is lawful and adequate. The Parties understand that the Central Valley Water Board, or its delegate, have the authority to require a public hearing on this Stipulated Order. In the event procedural objections are raised or the Central Valley Water Board requires a public hearing prior to the Order becoming effective, the Parties agree to meet and confer concerning any such objections, and may agree to revise or adjust the procedure and/or this Stipulated Order as necessary or advisable under the circumstances.

47. **No Waiver of Right to Enforce:** The failure of the Prosecution Team or Central Valley Water Board to enforce any provision of this Stipulated Order shall in no way be deemed a waiver of such provision, or in any way affect the validity of this Stipulated Order. The failure of the Prosecution Team or Central Valley Water Board to enforce any such provision shall not preclude it from later enforcing the same or any other provision of this Stipulated Order. No oral advice, guidance, suggestions, or comments by employees or officials of any Party regarding matters covered under this Stipulated Order shall be construed to relieve any Party regarding matters covered in this Stipulated Order. The Central Valley Water Board reserves all rights to take additional enforcement actions, including without limitation the issuance of ACL complaints or orders for violations other than those addressed by this Stipulated Order.

Defs_000898

Settlement & ACL Order R5-2021-0001
California Department of Corrections and Rehabilitation

48. **Effect of Stipulated Order:** Except as expressly provided in this Stipulated Order, nothing in this Stipulated Order is intended nor shall it be construed to preclude the Prosecution Team or any state agency, department, board or entity or any local agency from exercising its authority under any law, statute, or regulation.

49. **Interpretation:** This Stipulated Order shall not be construed against the party preparing it but shall be construed as if the Parties jointly prepared it and any uncertainty and ambiguity shall not be interpreted against any one party.

50. **Publicity:** Whenever the Discharger or its agents or subcontractors publicize one or more elements of the ECA, they shall state in a prominent manner that the project is being undertaken as part of the settlement of an enforcement action by the Central Valley Water Board against the Discharger.

51. **Modification:** This Stipulated Order shall not be modified by any of the Parties by oral representation whether made before or after the execution of this Stipulated Order. All modifications must be made in writing and approved by the Central Valley Water Board or its delegee.

52. **If Stipulated Order Does Not Take Effect:** In the event that this Stipulated Order does not take effect because it is not approved by the Central Valley Water Board, or its delegee, or is vacated in whole or in part by the State Water Board or a court, the Parties acknowledge that the Prosecution Team may proceed to a contested evidentiary hearing before the Central Valley Water Board to determine whether to assess an ACL for the underlying alleged violations, or may continue to pursue settlement. The Parties agree that all oral and written statements and agreements made during the course of settlement discussions will not be admissible as evidence in any subsequent administrative or judicial proceeding or hearing and will be fully protected by California Evidence Code sections 1152 and 1154; California Government Code section 11415.60; Rule 408, Federal Rules of Evidence; and any other applicable privilege under federal and/or state law. The Parties also agree to waive any and all objections related to their efforts to settle this matter, including, but not limited to:

    a. Objections related to prejudice or bias of any of the Central Valley Water Board members or their advisors and any other objections to the extent that they are premised in whole or in part on the fact that the Central Valley Water Board members or their advisors were exposed to some of the material facts and the Parties' settlement positions, and therefore may have formed impressions or conclusions, prior to conducting any contested evidentiary hearing in this matter; provided however, that objections intended to preserve Central Valley Water Board's due process rights are not waived by this section; or

    b. Laches or delay or other equitable defenses based on the time period that the Stipulated Order or decision by settlement may be subject to administrative or judicial review.

Defs_000899

Settlement & ACL Order R5-2021-0001
California Department of Corrections and Rehabilitation

53. **No Admission of Liability: I**n settling this matter, the Department does not admit any of the allegations, or that it has been or is in violation of the Water Code, or any federal, state, or local law, regulation, or ordinance.

54. **Waiver of Hearing:** The Discharger has been informed of the rights provided by Water Code section 13323, subdivision (b), and hereby waives its right to a hearing before the Central Valley Water Board.

55. **Waiver of Right to Petition or Appeal:** The Discharger hereby waives the right to petition the Central Valley Water Board's adoption of the Stipulated Order as written for review by the State Water Board, and further waives the rights, if any, to appeal the same to a California Superior Court and/or any California appellate level court.

56. **Covenant Not to Sue:** Upon the effective date of this Stipulated Order, the Discharger shall and does release, discharge, and covenant not to sue or pursue any civil or administrative claims against any State Agency or the State of California, its officers, agents, directors, employees, attorneys, representatives, for any and all claims or cause of action, which arise out of or are related to this action.

57. **Central Valley Water Board is Not Liable:** Neither the Central Valley Water Board members nor the Central Valley Water Board staff, attorneys, or representatives shall be liable for any injury or damage to persons or property resulting from acts or omissions by CDCR, its directors, officers, employees, agents, representatives or contractors in carrying out activities pursuant to the Stipulated Order, nor shall the Central Valley Water Board, its members or staff be held as parties to or guarantors of any contract entered into by CDCR, its directors, officers, employees, agents, representatives or contractors in carrying out activities pursuant to the Stipulated Order.

58. **CDCR is Not Liable:** Neither CDCR, its directors, officers, employees, agents, representatives or contractors shall be liable for any injury or damage to persons or property resulting from acts or omissions by the Central Valley Water Board members, or the Central Valley Water Board staff, attorneys, or representatives in carrying out activities pursuant to the Stipulated Order, nor shall CDCR, its directors, officers, employees, agents, representatives or contractors be held as parties to or guarantors of any contract entered into by the Central Valley Water Board, its members or staff, in carrying out activities pursuant to the Stipulated Order.

59. **Authority to Enter Stipulated Order:** Each person executing this Stipulated Order in a representative capacity represents and warrants that he or she is authorized to execute this Stipulated Order on behalf of and to bind the entity on whose behalf he or she executes the Stipulated Order.

60. **Necessity for Written Approvals:** All approvals and decisions of the Central Valley Water Board under the terms of this Stipulated Order shall be communicated to Discharger in writing. No oral advice, guidance, suggestions or comments by employees or officials of the Central Valley Water Board regarding submissions or notices shall be construed to relieve the Discharger of its obligation to obtain any final written approval required by this Stipulated Order.

Defs_000900

Settlement & ACL Order R5-2021-0001
California Department of Corrections and Rehabilitation

61. **Site Inspections:** The Discharger shall permit Central Valley Water Board's staff to inspect during normal business hours any location where ECAs are being implemented as well as review any documents associated with implementation of ECA(s) at any time without notice.

62. **No Third-Party Beneficiaries:** This Stipulated Order is not intended to confer any rights or obligation on any third party or parties, and no third party or parties shall have any right of action under this Stipulated Order for any cause whatsoever.

63. **Severability:** This Stipulated Order is severable; should any provision be found invalid the remainder shall remain in full force and effect.

64. **Effective Date:** This Stipulated Order shall be effective and binding on the Parties upon the date the Central Valley Water Board, or its delegee, enters the Stipulated Order.

65. **Counterpart Signatures; Facsimile, and Electronic Signature:** This Stipulated Order may be executed and delivered in any number of counterparts, each of which when executed and delivered shall be deemed to be an original, but such counterparts shall together constitute one document. Further, this Stipulated Order may be executed by facsimile or electronic signature, and any such facsimile or electronic signature by any Party hereto shall be deemed to be an original signature and shall be binding on such Party to the same extent as if such facsimile or electronic signature were an original signature.

Defs_000901

Settlement & ACL Order R5-2021-0001
California Department of Corrections and Rehabilitation

**IT IS SO STIPULATED.**

California Regional Water Quality Control Board
Central Valley Region Prosecution Team

By: Original Signed By                                    Date: 01/28/2021
    John J Baum
    Assistant Executive Officer

**IT IS SO STIPULATED.**

California Department of Corrections and Rehabilitation

By: Original Signed By                                    Date: 01/27/2021
    Dean Borg
    Director, Division of Facility Planning,
    Construction and Management

Defs_000902

Settlement & ACL Order R5-2021-0001
California Department of Corrections and Rehabilitation

**HAVING CONSIDERED THE PARTIES' STIPULATIONS, THE CENTRAL VALLEY REGIONAL WATER QUALITY CONTROL BOARD, BY AND THROUGH ITS EXECUTIVE OFFICER, FINDS THAT:**

1. This Order incorporates the foregoing Sections I through V by this reference as if set forth fully herein.

2. In adopting this Stipulated Order, the Central Valley Water Board, or its delegee, has considered, where applicable, each of the factors prescribed in Water Code sections 13327, 13351, and 13385(e). The consideration of these factors is based upon information and comments obtained by the Central Valley Water Board's staff in investigating the allegations concerning the Central Valley Water Board discussed herein or otherwise provided to the Central Valley Water Board or its delegee by the Parties and members of the public.

3. This is an action to enforce the laws and regulations administered by the Central Valley Water Board. The method of compliance with this enforcement action consists entirely of payment of amounts for ACL and successful completion of the ECA. As such, the Central Valley Water Board finds that issuance of this Stipulated Order is not considered subject to the provisions of CEQA as it will not result in a direct or reasonably foreseeable indirect physical change in the environment and is not considered a "project" (Public Resources Code 21065, 21080(a); 15060(c)(2),(3); 150378(a), Title 14, of the California Code of Regulations). In addition, issuance of this Stipulated Order is exempt from the provisions of the California Environmental Quality Act (Public Resources Code section 21000 et seq.), in accordance with sections 15061(b)(3) and 15321(a)(2), of Title 14 of the California Code of Regulations.

4. The Executive Officer of the Central Valley Water Board is authorized to refer this matter directly to the Attorney General for enforcement if the Discharger fails to perform any of its obligations under the Order.

I, Patrick Pulupa, Executive Officer, do hereby certify that this Order with all attachments is a full, true, and correct copy of the Order issued by the California Regional Water Quality Control Board, Central Valley Region, on 18 February 2021.

Date: 2021.03.11
14:30:17 -08'00'

Patrick Pulupa
Executive Officer
Central Valley Regional Water Quality
Control Board

Defs_000903

Settlement & ACL Order R5-2021-0001
California Department of Corrections and Rehabilitation

**Attachment A:** Factor Consideration and Penalty Calculation Methodology for Administrative Civil Liability

**Attachment B:** Irrigation Repair ECA

**Attachment C:** SCCWRP Study ECA

**Attachment D:** Economic Benefit Estimate

Defs_000904

Attachment A – ACL Complaint No. R5-2021-0001
Specific Factors Considered for Administrative Civil Liability

California Department of Corrections and Rehabilitation,
Mule Creek State Prison

The State Water Board's *Water Quality Enforcement Policy* (Enforcement Policy)
establishes a methodology for determining administrative civil liability by addressing the
factors that are required to be considered under California Water Code section 13327.
Each factor of the ten-step approach is discussed below, as is the basis for assessing
the corresponding score. The Enforcement Policy can be found at:

(http://www.waterboards.ca.gov/water_issues/programs/enforcement/docs/enf_policy_fi
nal111709.pdf).

The application of the Enforcement Policy is an application of the statutory factors by
the Central Valley Regional Water Quality Control Board (Central Valley Water Board)
in order to develop an appropriate penalty for the alleged conduct. The California
Department of Corrections and Rehabilitation (Discharger) does not admit any of the
allegations discussed below, and does not admit to the violation of any local, state or
federal laws or regulations. The information contained below represents the position of
the Central Valley Water regarding their understanding of the facts and circumstances
surrounding the Stipulated Administrative Civil Liability Order. The Discharger did not
participate in the application of the Enforcement Policy below.

## Background

The stormwater collection system collects and conveys stormwater from the
approximately 65-acre area inside the perimeter fence of the Old Prison Facility.
Approximately 20-25 lateral drain pipes travel under the perimeter fence and discharge
into unlined basins. These basins are connected by unlined ditches and buried culverts.
This conveyance system loop completely encircles the Old Prison Facility just outside
the lethal electric fence. Stormwater that enters the perimeter drainage system loop is
conveyed to one of two common collection basins, located near guard towers 3 and 9.
The basins discharge through culverts that run under the perimeter access road and
discharge into wide, heavily vegetated conveyance ditches. These ditches convey water
directly into Mule Creek. The outfalls of these ditches are approximately 50 and 1,300
feet upstream of the location where Highway 104 crosses over Mule Creek.

On 28 December 2017, Board staff received a complaint regarding the apparent illegal
discharge of water of unknown origin directly into Mule Creek. The complainant stated
that the discharge flows varied greatly, but had been occurring during every one of their
numerous observations between August 2017 and January 2018. The complainant
described the water being discharged as varying between clear and jet black,
sometimes with solids, and sometimes steaming hot. The complaint alleged that these
discharges occurred during observations both during the wet season and dry season,
regardless of precipitation or irrigation. Therefore, the source is presumed to be
something other than stormwater or irrigation runoff. These statements were supported

ATTACHMENT A TO ACL COMPLAINT R5-2021-0001                    - A-2 -
CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,
MULE CREEK STATE PRISON
AMADOR COUNTY

by video evidence of the described discharge that were later provided by the
complainant.

On 4 January 2018, Compliance and Enforcement (CE) staff from the Central Valley
Water Board inspected Mule Creek State Prison in response to the complaint. It was
determined that the likely source of the discharge described in the complaint was
originating from a stormwater collection system that originated from within the Old
Prison Facility. At the time of the inspection, water was observed discharging out of the
left drain pipe within the vault immediately south of guard tower 4 into the perimeter
collection system. Board staff collected a sample from these discharges. Results from
the sampling demonstrate that the water being discharged from the Old Prison Facility
to the perimeter stormwater collection system, and then into Mule Creek, contained
waste constituents including surfactants, oil and grease, metals, nutrients, and
coliforms. Therefore, the Central Valley Water Board considered this an unpermitted
illegal discharge.

On 14 February 2018, the Assistant Executive Officer issued a Water Code 13267
Order which required the Discharger, in part, to cease all discharges of waste to Mule
Creek and to submit an *Interim Disposal Plan* to ensure the contaminated water in the
stormwater system were captured, treated, and disposed of appropriately.

On 16 February 2018, Central Valley Water Board staff met with the Discharger. The
Discharger agreed to meet the requirements in the 13267 Order, but requested an
extension on the deadlines. However, due to the unknown source(s) of the wastewater,
and the threat to humans as well as Mule Creek, Central Valley Water Board staff
informed MCSP that the deadlines in the 13267 Order would not be changed. No
extensions were granted.

On 13 March 2018, Central Valley Water Board staff performed an inspection of the
stormwater system and the Discharger's actions performed to comply with the 13267
Order. During the inspection, the site was receiving heavy rain. The temporary system
was in the process of being overrun. Temporary containment systems were nearly at
capacity and the pumps were having difficulty keeping up. The wastewater treatment
plant (WWTP) reported no problems with treatment or hydraulic capacity. Central Valley
Water Board staff recommended that they increase the hydraulic capacity of their
system, including larger pipelines, connecting to manholes, and additional pumps.
Central Valley Water Board staff also suggested temporary holding tanks be installed to
allow equalization of flow into the WWTP to prevent impacts on the plant, because more
significant rain events had been forecasted. In response the Discharger had ten
21,000-gallon temporary holding tanks delivered to the site over the following week.
On 15 March 2018, the Discharger submitted the required *Interim Disposal Plan*.

On 22 March 2018, the Discharger reported that heavy rainfall had fallen on the site,
resulting in a complete inundation of the measures in place to divert stormwater from

Defs_000906

discharging to Mule Creek. This resulted in a threat of flooding to buildings on the institution grounds, and caused the WWTP to operate at flood stage. Additionally, contained water had overtopped the perimeter road and surface flooding of the neighboring property owner's fields west of Collins Road and north of Highway 104. In response the Discharger pulled the slide gates in the collection sumps, which released an estimated 1,600,000 gallons of comingled turbid wastewater which was illegally discharged directly to Mule Creek. The Office of Emergency Services (OES) report was filed (ref # 18-1892), but inaccurately referred to the discharge as "stormwater." The WWTP was reported to be effectively treating the flows. Board staff advised the Discharger to improve the temporary system to ensure they would be able to contain all water during a similar storm event. In response an additional 4 temporary holding tanks were brought on site. The Discharger collected samples of the discharge, and reported the results on 1 May 2018. Results showed oil and grease, diesel range organics, fecal coliforms, E. coli, as well as elevated chemical oxygen demand, suspended solids, turbidity, aluminum, iron, manganese, and nickel. Upstream and downstream samples were collected, and confirm that Mule Creek had been impacted.

On 4 April 2018 Central Valley Water Board staff issued a formal review of the *Interim Disposal Plan* that found the submittal to be materially deficient, as it would cause a violation of the WDRs by exceeding the capacity of the WWTP and could potentially cause a plant upset. On 24 May 2018, CDCR submitted a *Revised Interim Disposal Plan*, which stated in part that the WWTP did not have the capacity to handle the increased flows during rain events over 0.1 inches per hour or 0.3 inches in any given 24-hour period in which case all comingled stormwater flows would be discharged to Mule Creek. Previously, on 6 April 2018, Central Valley Water Board staff informed CDCR via email that the *Heavy Rainfall Response Plan* described practices that would cause illegal discharges and violations of the Clean Water Act, and therefore would not be approved. CDCR did not revise their 24 May 2018 submittal.

On 6 April 2018, the temporary storage system was again completely overrun by a storm event. The heavy rains flooded the collection system, backing up into the WWTP. At this point the Discharger again pulled the slide gates on the collection system and knowingly released an estimated 1,600,000 gallons of comingled turbid wastewater directly to Mule Creek. CDCR reported the illegal discharge to OES (ref # 18-2255), but again inaccurately referred to the discharge as "stormwater." The WWTP operator communicated via email to Central Valley Water Board staff that the WWTP was "no longer effectively processing." The Discharger collected samples of the discharge during the event, and reported the results on 1 May 2018. Results showed oil and grease, diesel range organics, fecal coliforms, E. coli, as well as elevated chemical oxygen demand, suspended solids, turbidity, aluminum, chromium, lead, manganese, nickel, zinc, and iron. It does not appear that any effluent samples were collected from the WWTP to assess effectiveness of the treatment during the high flows or days following. Upstream and downstream samples were collected, and confirm that Mule Creek had been impacted.

Defs_000907

ATTACHMENT A TO ACL COMPLAINT R5-2021-0001         - A-4 -
CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,
MULE CREEK STATE PRISON
AMADOR COUNTY

Following the failure to contain and treat the comingled flows during the 6 April 2018 storm event, CDCR began using the practices described in the *Revised Interim Disposal Plan* despite Board staff repeatedly communicating that it would be a violation of the Clean Water Act. This practice led to additional unpermitted discharges of comingled flows directly to Mule Creek. This continued until 10 April 2019 when the facility was permitted under the Small MS4 permit. CDCR continues to discharge comingled flows during both dry and wet weather under the MS4 permit. Table 1 below lists the known days of unpermitted discharge to Mule Creek between Central Valley Water Board staff's discovery of the issue on 23 January 2018 and 19 April 2019. CDCR collected numerous samples from the stormwater collection system during this period as required by the 13267 Order to characterize the waste. That data was used to determine factors below. The Central Valley Water Board and the Discharger stipulated to the days and volumes of discharge for the purpose of resolving the administrative civil liability action. The Central Valley Water Board continues to assert that the entire volume of the discharge could be a basis for an administrative liability, while the Discharger asserts the alleged non-stormwater discharges are the only basis for liability. The legal and factual dispute was not resolved, and the stipulated volumes and days of discharge were used to estimate an appropriate administrative civil liability.

<u>Table 1: Days of Violation based on OES Reports between 18 January 2018 and 10 April 2019</u>

| Days of Violation | OES Control # | Date |
|---|---|---|
| N/A | 18-0502 | 1/23/2018 |
| 1 | 18-1696 | 3/14/2018 |
| 1 | 18-1892 | 3/22/2018 |
| 1 | 18-2307 | 4/6/2018 |
| 1 | 18-3383 | 5/25/2018 |
| 2 | 18-7188 | 10/3-10/4/2018 |
| 1 | 18-8009 | 11/25/2018 |
| 7 | 18-8207 | 11/27-12/3/2018 |
| 2 | 18-8563 | 12/16-12/17/2018 |
| 4 | 19-0260 | 12/23-26/18 |
| 7 | 19-0305 | 1/5/19-1/11/19 |
| 4 | 19-0534 | 1/15/18-1/18/18 |
| 4 | 19-0535 | 1/19/19-1/22/19 |
| 6 | 19-0887 | 2/1/19-2/6/19 |
| 4 | 19-0976 | 2/8/19-2/11/19 |
| 7 | 19-1218 | 2/12/19-2/18/19 |

Defs_000908

ATTACHMENT A TO ACL COMPLAINT R5-2021-0001                          - A-5 -
CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,
MULE CREEK STATE PRISON
AMADOR COUNTY

| Days of Violation | OES Control # | Date |
|---|---|---|
| 12 | 19-1622 | 2/24/19-3/7/19 |
| 10 | 19-2092 | 3/19/19-3/28/19 |
| 5 | 19-2312 | 4/1/19- 4/05/19 |
| total days: 79 | | |

Step 1 – Actual or Potential for Harm for Discharge Violations

The "potential harm to beneficial uses" factor considers the harm that may result from
exposure to the pollutants in the discharge, while evaluating the nature, circumstances,
extent, and gravity of the violation(s). A three-factor scoring system is used for each
violation or group of violations: (1) the degree of toxicity of the discharge; (2) the actual
or potential for harm to beneficial uses; and (3) the discharge's susceptibility to cleanup
or abatement

Factor 1:  The Degree of Toxicity of the Discharge

This factor evaluates the degree of toxicity by considering the physical, chemical,
biological, and/or thermal characteristics of the discharge, waste, fill or material involved
in the violation or violations and the risk of damage the discharge could cause the
receptors or beneficial uses. A score between 0 and 4 is assigned based on a
determination of the risk or threat of the discharged material. "Potential receptors" are
those identified considering human, environmental, and ecosystem exposure pathways.

Toxicity is the degree to which a substance can damage a living or non-living organism.
Toxicity can refer to the effect on a whole organism, such as an animal, bacterium, or
plant, as well as the effect on a substructure of the organism, such as a cell or an organ.
In this case, the comingled discharges during rain events contained unknown but
relatively small amounts of waste from unknown sources diluted by large volumes of
stormwater. Based on data collected during both wet and dry weather, the discharge
contained varying concentrations of numerous waste constituents normally found in
domestic and industrial wastewater including coliform organisms, total suspended
solids, biochemical oxygen demand, chemical oxygen demand, nutrients, surfactants,
metals, volatile organic compounds (VOCs), and semi-volatile organic compounds
(SVOCs). These constituents can impact aquatic life and human health. Because the
discharged material possesses "less than moderate threat to beneficial uses," **a score
of 2** was assigned for this factor.

Factor 2: Actual Harm or Potential Harm to Beneficial Uses

The evaluation of the actual harm or the potential harm to beneficial uses factor
considers the harm to beneficial uses in the affected receiving water body that may
result from exposure to the pollutants or contaminants in the discharge, consistent with

Defs_000909

ATTACHMENT A TO ACL COMPLAINT R5-2021-0001                    - A-6 -
CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,
MULE CREEK STATE PRISON
AMADOR COUNTY

the statutory factors of the nature, circumstances, extent, and gravity of the violation(s).
A score between 0 and 5 is assigned based on a determination of the extent of the
actual harm or potential for harm. Actual harm as used in this section means harm that
is documented and/or observed. Potential harm should be evaluated in the context of
the specific characteristics of the waste discharged and the specific beneficial uses of
the impacted waters.

The discharge entered Mule Creek, tributary to Dry Creek and the Sacramento-San
Joaquin Delta. The beneficial uses of the Sacramento-San Joaquin Delta and its
tributaries that could be impacted by the untreated sewage include municipal and
domestic water supply, agricultural irrigation and stock watering, contact and non-
contact water recreation, warm freshwater habitat, cold freshwater habitat, migration of
aquatic organisms, warm spawning, wildlife habitat, navigation, and commercial sport
fishing.

The Discharger collected paired samples from Mule Creek at upstream and
downstream locations relative to the discharge point during almost all discharge events.
Tables 2, 3, and 4 below summarize a subset of that data and demonstrate those
impacts by comparing upstream and downstream paired data set. Values in bold
highlight downstream concentrations that are higher than the upstream counterparts in
the same paired data set.

- A-7 -

Table 2: Organic and Microbial Constituents Comparison in Discharge to Mule Creek

| Date | Sample Location in Mule Creek | Oil and Grease (mg/l) | Volatile Organic Compounds (ug/L) | Fecal Coliforms (MPN/100mls) | Total Coliforms (MPN/100mls) | E. coli (MPN/100mls) |
|---|---|---|---|---|---|---|
| 3/23/18 | upstream | 1.3 | -- | >1,600 | >1,600 | >1,600 |
| | downstream | 1.3 | -- | >1,600 | >1,600 | >1,600 |
| 4/6/18 | upstream | <5.0 | ND | 240 | >1,600 | 151.5 |
| | downstream | 1.4 J | ND | **> 1,600** | > 1,600 | **>2419.6** |
| 4/7/18 | upstream | 2.3 J | ND | > 1,600 | > 1,600 | >2,419.6 |
| | downstream | 1.7 J | ND | > 1,600 | > 1,600 | 1,732.90 |
| 4/11/18 | upstream | <5.0 | ND | 49 | >1,600 | 118.7 |
| | downstream | <5.0 | ND | **130** | 350 | **172.2** |
| 4/27/18 | upstream | <5.0 | ND | 170 | 1,600 | 113.7 |
| | downstream | 2.9J | ND | **540** | >1,600 | **178.9** |
| 5/25/18 | upstream | <5.0 | ND | 1,600 | >1,600 | 1,986.30 |
| | downstream | <5.0 | **acetone = 5.5** | >1,600 | >1,600 | **>2,419.6** |
| 5/26/18 | upstream | 1.5 J | ND | >1,600 | >1,600 | 1,986.30 |
| | downstream | **2.8 J** | **acetone = 2.7 J; chloroform = 1.1** | >1,600 | >1,600 | **>2,419.6** |
| 12/17/18 | upstream | <5.0 | ND | 3500 | 24000 | 1553 |
| | downstream | 1.7 J | ND | **11,000** | **>160,000** | **1,986.30** |
| 12/26/18 | upstream | <5.0 | ND | 540 | 9200 | 387 |
| | downstream | <5.0 | ND | **2200** | **24000** | **1046** |
| 1/5/19 | upstream | 2.1 J | ND | 79 | 2600 | 50 |
| | downstream | Not sampled | Not sampled | Not sampled | Not sampled | Not sampled |
| 1/15/19 | upstream | <5.0 | ND | 240 | 16000 | 86 |

ATTACHMENT A TO ACL COMPLAINT R5-2021-0001
CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,
MULE CREEK STATE PRISON
AMADOR COUNTY

- A-8 -

| Date | Sample Location in Mule Creek | Oil and Grease (mg/l) | Volatile Organic Compounds (ug/L) | Fecal Coliforms (MPN/100mls) | Total Coliforms (MPN/100mls) | E. coli (MPN/100mls) |
|---|---|---|---|---|---|---|
| 1/20/19 | downstream | 1.4 J | ND | 4600 | 16000 | 1986 |
|  | upstream | <1.4 | ND | 2200 | 11000 | 1203 |
|  | downstream | <1.4 | ND | >1,600 | 160000 | 2790 |
| 2/2/19 | upstream | 1.4 J | ND | 1700 | 16000 | 1203 |
|  | downstream | <1.4 | ND | 3500 | 28000 | 2320 |
|  | upstream | 1.7 J | ND | 1700 | 16000 | 1203 |
| 2/10/19 | downstream | <1.4 | ND | 920 | 35000 | 3550 |
|  | upstream | <1.4 | ND | 3500 | 35000 | 3130 |
| 2/13/19 | downstream | 1.4 | ND | 2300 | 13000 | 770 |
|  | upstream | <1.4 | ND | 1100 | 2200 | 1300 |
| 2/26/19 | downstream | <1.4 | ND | 540 | 17000 | 365 |
|  | upstream | 1.6 J | ND | 33 | 920 | 98.5 |
| 3/20/19 | downstream | <1.4 | ND | 220 | 1400 | 101 |
|  | upstream | 1.5 J | ND | 310 | 5400 | 193 |
| 3/27/19 | downstream | <1.4 | ND | 130 | 2400 | 57.6 |
|  | upstream | 2.8 J | ND | 140 | 9200 | 114 |
| 4/5/19 | downstream | 3.2 J | ND | 220 | 2600 | 96 |

- A-9 -

ATTACHMENT A TO ACL COMPLAINT R5-2021-0001
CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,
MULE CREEK STATE PRISON
AMADOR COUNTY

Table 3: Inorganic Constituents Comparison in Discharge to Mule Creek

| Date | Sample Location in Mule Creek | Total Dissolved Solids (mg/L) | Turbidity (NTUs) | Sulfate as SO4 (mg/L) | Total Nitrogen (mg/L) | Biological Oxygen Demand (mg/L) |
|---|---|---|---|---|---|---|
| | Regulatory Limit | 5003 | 11 | 2503 | -- | -- |
| 3/23/18 | upstream | 130 | 24 | 7.7 | 0.63 | <10 |
| | downstream | 150 | 26 | 8.2 | 0.69 | <10 |
| 4/6/18 | upstream | 190 | 3.9 | 17 | 1.1 | 2.0J |
| | downstream | 220 | 23 | 26 | 1 | 2.8J |
| 4/7/18 | upstream | 120 | 30 | 7.2 | 1.1 | 3.4J |
| | downstream | 140 | 40 | 9.3 | 1.2 | 3.4J |
| 4/11/18 | upstream | 210 | 1.9 | 13 | <1.0 | <5.0 |
| | downstream | 220 | 5.6 | 15 | <1.0 | <5.0 |
| 4/27/18 | upstream | 250 | 1.1 | 16 | <1.0 | <5.0 |
| | downstream | 260 | 1.8 | 18 | <1.0 | <5.0 |
| 5/25/18 | upstream | 260 | 0.79 | 12 | <1.0 | <5.0 |
| | downstream | 120 | 68 | 39 | 3.4 | 7.1 |
| 5/26/18 | upstream | 250 | 0.54 | 11 | <1.0 | <5.0 |
| | downstream | 120 | 56 | 26 | 1.8 | 2.9J |
| 12/17/18 | upstream | 470 | Not Analyzed | 100 | <1.0 | <5.0 |
| | downstream | 170 | Not Analyzed | 36 | 3 | 3.7 J |
| 12/26/18 | upstream | 220 | Not Analyzed | 75 | 1 | <5.0 |
| | downstream | 380 | Not Analyzed | 18 | 1.3 | 2.0 J |
| 1/5/19 | upstream | 340 | Not Analyzed | 50 | <1.0 | <5.0 |
| | downstream | Not Sampled | Not sampled | Not sampled | Not sampled | Not sampled |
| 1/15/19 | upstream | 270 | Not Analyzed | 39 | <1.0 | <5.0 |
| | downstream | 130 | Not Analyzed | 30 | 1.8 | 3.7 J |

Defs_000913

- A-10 -

ATTACHMENT A TO ACL COMPLAINT R5-2021-0001
CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,
MULE CREEK STATE PRISON
AMADOR COUNTY

| Date | Sample Location in Mule Creek | Total Dissolved Solids (mg/L) | Turbidity (NTUs) | Sulfate as SO4 (mg/L) | Total Nitrogen (mg/L) | Biological Oxygen Demand (mg/L) |
|---|---|---|---|---|---|---|
| 1/20/19 | upstream | 170 | Not Analyzed | 16 | 3 | <2.0 |
| | downstream | 180 | Not Analyzed | 21 | 2.2 | 2.1 J |
| 2/2/19 | upstream | 220 | Not Analyzed | 23 | 1.9 | 3.6 J |
| | downstream | 160 | Not Analyzed | 26 | 1.4 | 2.8 J |
| 2/10/19 | upstream | 120 | Not Analyzed | 10 | 1.8 | 2.5 J |
| | downstream | 130 | Not Analyzed | 12 | 1.8 | 2.2 J |
| 2/13/19 | upstream | 150 | Not Analyzed | 13 | 1.8 | <2.0 |
| | downstream | 130 | Not Analyzed | 12 | 1.2 | <2.0 |
| 2/26/19 | upstream | 160 | Not Analyzed | 16 | 1.4 | <2.0 |
| | downstream | 170 | Not Analyzed | 22 | 1.2 | <2.0 |
| 3/20/19 | upstream | 190 | Not Analyzed | 16 | <0.20 | <2.0 |
| | downstream | 200 | Not Analyzed | 21 | <0.20 | <2.0 |
| 3/27/19 | upstream | 160 | Not Analyzed | 15 | <0.20 | <2.0 |
| | downstream | 190 | Not Analyzed | 17 | <0.20 | <2.0 |
| 4/5/19 | upstream | 180 | Not Analyzed | 14 | 3.7 | <2.0 |
| | downstream | 200 | Not Analyzed | 17 | 1.3 | <2.0 |

ATTACHMENT A TO ACL COMPLAINT R5-2021-0001
CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,
MULE CREEK STATE PRISON
AMADOR COUNTY

Table 4: Metal Constituents Comparison in Discharge to Mule Creek

| Date | Sample Location in Mule Creek | Aluminum (ug/L) | Chromium (ug/L) | Copper (ug/L) | Iron (ug/L) | Lead (ug/L) | Manganese (ug/L) | Zinc (ug/L) |
|---|---|---|---|---|---|---|---|---|
| 3/23/18 | upstream | 940 | 3.7 | -- | 1200 | <1.0 | 36 | 6.3 |
| | downstream | 1200 | 3.5 | -- | 1300 | 1.4 | 28 | 5.7 |
| 4/6/18 | upstream | 110 | <2.0 | 2.4 | 320 | <1.0 | 31 | <20 |
| | downstream | 620 | <2.0 | 3.5 | 700 | 0.81J | 36 | 9.2J |
| 4/7/18 | upstream | 1000 | 5.3 | 6.4 | 2300 | 0.66J | 83 | <20 |
| | downstream | 1800 | 6 | 8 | 3200 | 4 | 87 | 9.0J |
| 4/11/18 | upstream | 45 | <2.0 | 2.2 | 190 | <1.0 | <20 | <20 |
| | downstream | 140 | <2.0 | 2.5 | 410 | <1.0 | 27 | <20 |
| 4/27/18 | upstream | <40 | <2.0 | <2.0 | <100 | <1.0 | 30 | <20 |
| | downstream | 29J | <2.0 | -- | 180 | 0.24J | <20 | <20 |
| 5/25/18 | upstream | <40 | <2.0 | <2.0 | <100 | <1.0 | 43 | <20 |
| | downstream | 1600 | 4.1 | 15 | 2100 | <1.0 | 76 | 180 |
| 5/26/18 | upstream | <40 | <2.0 | <2.0 | <100 | <1.0 | 13J | <20 |
| | downstream | 1200 | 3.8 | 14 | 1800 | 0.67J | 34 | 70 |
| 12/17/18 | upstream | <40 | <2.0 | Not Analyzed | <100 | <1.0 | Not Analyzed | <20 |
| | downstream | 380 | <2.0 | Not Analyzed | 4800 | 1.6 | Not Analyzed | 49 |
| 12/26/18 | upstream | 39J | <2.0 | Not Analyzed | 70 J | 2.2 | Not Analyzed | <20 |
| | downstream | 740 | <2.0 | Not Analyzed | 2100 | 24 | Not Analyzed | 11 J |
| 1/5/19 | upstream | 100 | <2.0 | Not Analyzed | 180 | <1.0 | Not Analyzed | <20 |
| | downstream | Not Sampled | Not sampled | Not sampled | Not sampled | Not sampled | Not sampled | Not sampled |
| 1/15/19 | upstream | 20 | <2.0 | Not Analyzed | <100 | <1.0 | Not Analyzed | <20 |
| | downstream | 2100 | 5.3 | Not Analyzed | 4300 | 2.1 | Not Analyzed | 130 |
| 1/20/19 | upstream | 390 | <2.0 | Not Analyzed | 650 | 0.47 J | Not Analyzed | <8.0 |
| | downstream | 3000 | 4.7 | Not Analyzed | 1900 | 1.1 | Not Analyzed | 37 |

- A-12 -

ATTACHMENT A TO ACL COMPLAINT R5-2021-0001
CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,
MULE CREEK STATE PRISON
AMADOR COUNTY

| Date | Sample Location in Mule Creek | Aluminum (ug/L) | Chromium (ug/L) | Copper (ug/L) | Iron (ug/L) | Lead (ug/L) | Manganese (ug/L) | Zinc (ug/L) |
|---|---|---|---|---|---|---|---|---|
| 2/2/19 | upstream | 140 | <2.0 | Not Analyzed | 320 | <0.24 | Not Analyzed | <8.0 |
| | downstream | 2200 | 4.1 | Not Analyzed | 4300 | 65 | Not Analyzed | 17 J |
| 2/10/19 | upstream | 580 | 2.3 | Not Analyzed | 950 | .43 J | Not Analyzed | <8.0 |
| | downstream | 670 | 2 | Not Analyzed | 1500 | 2.3 | Not Analyzed | <8.0 |
| 2/13/19 | upstream | 440 | <5.0 | Not Analyzed | 830 | <0.6 | Not Analyzed | <20 |
| | downstream | 2600 | 7.5 | Not Analyzed | 5000 | 30 | Not Analyzed | <20 |
| 2/26/19 | upstream | 61 | <2.0 | Not Analyzed | 150 | <0.24 | Not Analyzed | <8.0 |
| | downstream | 120 | <2.0 | Not Analyzed | 250 | 0.91 J | Not Analyzed | <8.0 |
| 3/20/19 | upstream | 24 J | <2.0 | Not Analyzed | 150 | <0.24 | Not Analyzed | <8.0 |
| | downstream | 49 | <2.0 | Not Analyzed | 170 | 0.31 J | Not Analyzed | <8.0 |
| 3/27/19 | upstream | 28 J | <2.0 | Not Analyzed | 170 | <0.24 | Not Analyzed | <8.0 |
| | downstream | 350 | <2.0 | Not Analyzed | 840 | 1 | Not Analyzed | <8.0 |
| 4/5/19 | upstream | 160 | <2.0 | Not Analyzed | 430 | <0.24 | Not Analyzed | <16 |
| | downstream | 86 | <2.0 | Not Analyzed | 340 | 0.54 J | Not Analyzed | <16 |

Attachment A – ACL Complaint No. R5-2021-0001
Specific Factors Considered for Administrative Civil Liability

California Department of Corrections and Rehabilitation,
Mule Creek State Prison

Discharges of any domestic or industrial wastewater to surface water must typically be treated to a high standard to prevent adverse impacts to human and aquatic life. In this case, the discharge contained constituents typically found in domestic and industrial wastewater, including pathogens, nitrogen, salts, metals, VOCs, oil and grease, suspended solids, sulfate, and biological oxygen demand. It should be noted that the data presented in Tables 2, 3, and 4 above is from samples collected from Mule Creek itself, and downstream data represents the conditions in the creek after the diluted comingled flows mixed with stormwater runoff that was naturally draining into the creek bed. This data demonstrates an impact to the creek and water quality objectives protective of beneficial uses.

The spill resulted in a below moderate potential harm to beneficial uses. "Moderate" is defined as "observed or reasonably expected potential impacts, but harm or potential harm to beneficial uses are moderate and likely to attenuate without appreciable medium or long term acute or chronic effects."  Therefore, **a score of 2**, below moderate, is assigned for this factor.


Factor 3:  Susceptibility to Cleanup or Abatement.

A score of 0 is assigned for this factor if the discharger cleans up 50% or more of the discharge within a reasonable amount of time. A score of 1 is assigned if less than 50% of the discharge is susceptible to cleanup or abatement, or if 50% or more of the discharge is susceptible to cleanup and abatement but the discharger failed to clean up 50% or more of the discharge within a reasonable amount of time. In this case, less than 50% of the discharge was susceptible to cleanup or abatement as the wastewater entered Mule Creek and was not recoverable. Therefore, a factor of 1 is assigned.

Final Score – "Potential for Harm"

The scores of the three factors are added to provide a Potential for Harm score for the effluent limit violations. In this case, a final score of 5 was calculated. The total score is then used in Step 2, below.

Step 2– Assessment for Discharge Violations

This step addresses administrative civil liabilities for the unauthorized discharge based on both a per-gallon and a per-day basis.

1. Per Gallon Assessments for Discharge Violations

ATTACHMENT A TO ACL COMPLAINT R5-2021-0001                          - A-14 -
CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,
MULE CREEK STATE PRISON
AMADOR COUNTY

When there is a discharge, the Central Valley Water Board is to determine an initial liability amount on a per gallon basis using the Potential for Harm score and the Extent of Deviation from Requirement of the violation. The Potential for Harm Score was determined in Step 1 and is 5. The California Clean Water Act and Federal Clean Water Act prohibit the discharge of untreated wastewater to waters of the United States. In this case, the discharge of comingled wastewater and stormwater to Mule Creek is a major deviation from the required standards.

Table 1 of the Enforcement Policy (p. 14) is used to determine a "per gallon factor" based on the total score from Step 1 and the level of Deviation from Requirement. For this particular case, the factor is 0.15. This value of 0.15 is multiplied by the volume of discharge and the days of discharge, as described below.

The statutory maximum penalty amount of $10 per gallon was used for this calculation. CWC section 13385(c)(2) states that the civil liability amount is to be based on the number of gallons discharged but not cleaned up, over 1,000 gallons for each spill event. Of the 1,119,746 gallons spilled that reached surface water, a total of 1,118,746 gallons were discharged in excess of 1,000 gallons into waters of the United States.

Therefore, the per gallon assessment is calculated as:

| **Discharge Liability** |
| --- |
| **0.15 x 1,118,746 gallons x $10 per gallon = $1,678,119** |

2.  Per Day Assessments for Discharge Volumes

When there is a discharge, the Central Valley Water Board is to determine an initial liability amount on a per day basis using the same Potential for Harm and the Extent of Deviation from Requirement that were used in the per-gallon analysis. The "per day" factor (determined from Table 2 of the Enforcement Policy) is 0.1. The spill event took place over 79 days (see Table 1).

Water Code section 13385(c)(1) states that the maximum civil liability is $10,000 per day of violation.

| **Per Day Liability** |
| --- |
| **0.15 x 79 days x $10,000 per day= $118,500** |

Initial Liability Amount: The value is determined by adding together the per gallon assessment and the per day assessment.

ATTACHMENT A TO ACL COMPLAINT R5-2021-0001                    - A-15 -
CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,
MULE CREEK STATE PRISON
AMADOR COUNTY

| Initial Liability |
|---|
| **$1,678,119 per gallon assessment + $118,500 per day assessment = $1,796,619** |

Step 3 – Per Day Assessment for Non-Discharge Violation

This step is not applicable.

Step 4 – Adjustment Factors

There are three additional factors to be considered for potential modification of the amount of initial liability: the violator's culpability, the violator's prior history of violations, and efforts to clean-up or cooperate with regulatory authorities after the violation. After each of these factors is considered for the violations involved, the applicable factor should be multiplied by the proposed amount for each violation to determine the revised amount for that violation.

Degree of Culpability

This factor considers a discharger's degree of culpability. Higher liabilities should result from intentional or negligent violations as opposed to accidental violations. A multiplier between 0.75 and 1.5 is to be used, with a higher multiplier for negligent behavior. In this case there was only one party involved, and Central Valley Water Board staff evaluated the party's degree of culpability individually and assigned an overall multiplier to this incident.

The source of the waste constituents appears to be entirely within CDCR's facility. Although CDCR made some efforts to contain and treat the comingled flows as required by the 14 February 2018 13267 Order, they did not adequately prepare themselves for rain events which led to failures of the temporary containment system. On several occasions Central Valley Water Board staff conveyed to CDCR staff that the system was severely undersized, but CDCR did not take further steps to increase capacity. Additionally, they later changed their policy to allow discharge of comingled wastewater and stormwater to Mule Creek during all significant rain events in a clear contradiction with Central Valley Water Board staff's instruction.

If CDCR had adequately sized their temporary storage and treatment system these spills could have been avoided or mitigated; however, they failed to respond to Central Valley Water Board staff's directives and the 13267 Order appropriately. Therefore, Board staff assigns a **multiplier of 1.2** for culpability.

ATTACHMENT A TO ACL COMPLAINT R5-2021-0001                                    - A-16 -
CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,
MULE CREEK STATE PRISON
AMADOR COUNTY

History of Violations

The Enforcement Policy states that if the discharger has a prior history of violations within the last five years, the Water Boards should use a multiplier of 1.1. Where the discharger has a history of similar or numerous dissimilar violations, the Water Boards should consider adopting a multiplier above 1.1.

The Central Valley Water Board issued Administrative Civil Liability Order (ACLO) R5-2007-0518 against the California Department of Corrections and Rehabilitation for the Mule Creek State Prison Facility. The ACLO was issued because of several releases of raw sewage to Mule Creek from the collection system to Mule Creek. Since the issuance of the ACLO, CDCR took several actions to address the issues causing the repeated releases including the construction of a new treatment plant.

Because CDCR does not have a recent history of violations and the violations cited in this Order are not caused by the same issues as the historical violations, Central Valley Water Board staff has taken a conservative approach and assessed an **multiplier of 1.0** for history of violations.

Cleanup and Cooperation

This factor reflects the extent to which a discharger voluntarily cooperates with regulatory authorities in returning to compliance and correcting environmental damage after the violation. A multiplier between 0.75 and 1.5 is to be used, with a higher multiplier when there is a lack of cooperation. Since this case involves multiple parties, Board staff evaluated each party's cleanup and cooperation and then assigned an overall multiplier.

After CDCR received notification that waste constituents had been detected in the stormwater discharging to Mule Creek, it took reasonable and prudent steps to respond to the discharge. CDCR immediately began a preliminary investigation and sampling program, and implemented a temporary storage and disposal system to contain and treat the comingled flows. However, when it became evident that the flows during certain rain events were much greater than CDCR originally had estimated they proposed direct discharge to Mule Creek during rain events that met a specific threshold with no treatment. Despite Central Valley Water Board staff informing them that it would be an illegal discharge, they implemented this practice anyway. CDCR eventually completed their investigation and produced a final report. However, the report was 124 days late.

Overall, all parties involved in this incident cooperated with Central Valley Water Board staff by providing appropriate information when requested, but also ignored directives related to discharges to surface water. The parties did not act as would be expected of a reasonable and prudent person during some parts of the process. Therefore, Board staff assigns the parties a **multiplier of 1.1** for cleanup and cooperation.

ATTACHMENT A TO ACL COMPLAINT R5-2021-0001                          - A-17 -
CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,
MULE CREEK STATE PRISON
AMADOR COUNTY

---

Total Base Liability
Initial Liability x Culpability Multiplier x History of Violations Multiplier x Cleanup and
Cooperation Multiplier = Total Base Liability

$1,796,619x 1.2 x 1.0 x 1.1 = $2,371,537

---

Step 6 - Ability to Pay and Ability to Continue in Business

CDCR has stipulated to the ability to pay the administrative penalty. CDCR is a state
agency with a budget of $13.4 billion for the 2020-2021 fiscal year.

Step 7 – Other Factors as Justice May Require

The Central Valley Water Board and the Discharger have agreed to settle this action in an
administrative setting, in lieu of engaging in a civil action, where the maximum penalty
amounts are significantly larger, and the penalty may amount to a much larger penalty.
Thus, the estimated amount generated by the Enforcement Policy in this matter does
adequately address the penalty exposure for the Discharger. Thus, the stipulated
administrative civil liability in this case is $2,500,000 to more reasonably address the
alleged violations, and threats to water quality and public health from the alleged
violations. In addition, the stipulated penalty in this action addresses the estimated
economic benefit below.

Step 8 – Economic Benefit

The Enforcement Policy provides that the economic benefit of noncompliance should be
calculated using the United States Environmental Protection Agency's (US EPA)
Economic Benefit Model (BEN) (https://www.epa.gov/enforcement/penalty-and-financial-
models) penalty and financial modeling program unless it is demonstrated that an alternative
method of calculating the economic benefit is more appropriate. Economic benefit was
calculated using BEN Version 2019.0.0. For this case, BEN was determined to be the
appropriate method. Using standard economic principals such as time-value of money and tax
deductibility of compliance costs, BEN calculates a discharger's economic benefit derived from
delaying or avoiding compliance with environmental statutes.

The estimated economic benefit for the violations alleged above is $1,459,828. Therefore, the
Enforcement Policy requires a minimum administrative civil liability of $1,605,811.

A copy of the BEN output is included as an Attachment D.

Final Adjusted Liability

Defs_000921

ATTACHMENT A TO ACL COMPLAINT R5-2021-0001                              - A-18 -
CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,
MULE CREEK STATE PRISON
AMADOR COUNTY

The stipulated administrative civil liability in this matter is $2,500,000.00.

Step 9 – Maximum and Minimum Liability Amounts

The maximum and minimum amounts must be determined for comparison to the proposed liability.

Maximum Liability Amount:

The maximum penalty is the sum of the statutory per day and per gallon penalties. Pursuant to Water Code section 13385(c)(1), the per day maximum penalty for 79 days of violation is $790,000. Pursuant to Water Code section 13385(c)(2), the per gallon maximum penalty is $11,977,460. Therefore, the maximum penalty when combining the per day and per gallon statutory penalties is $12,767,460.

Minimum Liability Amount: The minimum liability for a discretionary penalty is equal to the economic benefit of noncompliance plus 10%. The minimum liability in this case is $1,605,811.

Step 10 – Final liability Amount

The final liability amount consists of the added amounts for the violation, with any allowed adjustments, provided amounts are within the statutory minimum and maximum amounts. The proposed administrative civil liability is $2,500,000.

Defs_000922

Stipulated Order R5-2021-0001
Attachment B

**Attachment B**

**California Department of Corrections and Rehabilitation**
**Mule Creek State Prison**
**Enhanced Compliance Action (ECA)**
**Scope of Work**

**Project Name:**
Mule Creek State Prison, Landscape Irrigation System Replacement

**Project Developed by:**
California Department of Corrections and Rehabilitation (CDCR)

**Project to be Performed by:**
California Department of Corrections and Rehabilitation (consultant designed, constructed via a public works contract or via CDCR's day labor program)

**Contact:**
Miles Bettencourt, Regional Manager
9838 Old Placerville Road, Suite B
Sacramento, CA  95827
Phone: 916-255-3381
Email: Miles.Bettencourt@cdcr.ca.gov

**Description of Project:**
This project will replace the landscape irrigation system at Mule Creek State Prison (MCSP), which has exceeded its useful life. The existing system has breeches in several mainlines, resulting in non-storm water flow entering the MCSP storm water collection system, which eventually discharges into Mule Creek.  Installing new piping for the landscape irrigation system will have the effect of eliminating non-storm water flows, resulting from irrigation, into Mule Creek.

**Project Goals**
The CDCR's ECA project has the follow goals:

1) The project is expected to eliminate non-storm water flow, resulting from landscape irrigation, from entering the storm water collection system at MCSP.
2) Reduction of the amount of potable water utilized in landscape irrigation

Defs_000923

Stipulated Order R5-2021-0001
Attachment B

- B-2 -

**Compliance with ECA Criteria**

1. **Benefit to Water Quality and Beneficial Uses**
   The Landscape Irrigation System replacement project will eliminate non-storm water flow from entering the MCSP storm water collection system, which ultimately discharges to Mule Creek.

2. **ECA is not an Obligation of Discharger**
   The CDCR is not required to develop, implement, or fund the proposed ECA project by any permit, order, or local, state, or federal law.

3. **No Fiscal Benefit to Regional Water Quality Control Board.**
   This ECA project does not provide any fiscal benefit to the RWQCB, or fund any functions, members, or staff of the RWQCB.

4. **Nexus between Violation and ECA**
   A nexus exists between the MCSP non-storm water flows and the proposed ECA project. The landscape irrigation systems replacement project will eliminate non-storm water flow resulting from irrigation from entering Mule Creek.

5. **Key Personnel Involved in ECA**
   The CDCR's Facility Planning, Construction and Management Division will oversee completion of the ECA.

6. **Project Milestones and Budget**
   The overall project cost is at least a minimum of $850,000. This project will be funded utilizing the Department's Special Repair budget allocation.  The ECA project will include the following Task milestones, measured from the effective date of the Stipulated Order authorizing the ECA (ECA Effective Date).

   **Task 1: Retain Landscape Architect or Engineering Consultant**

   This Task allows for the retention of a qualified consultant to support the CDCR through design and construction of the landscape irrigation system, which will eliminate non-storm water flows from irrigation from entering Mule Creek. This task is estimated to be completed within **90 days** from the ECA Effective Date.

   **Task 2:  Completion of Study, Survey, and Concept Plans**

   This Task provides for the completion of a study (Preliminary Design Report), survey and (50% design) concept plans. This Task is estimated to be completed within **270 days** from completion of Task 1.

Defs_000924

Stipulated Order R5-2021-0001
Attachment B

**Task 3: Plans Specifications & Cost Estimate Package**
This task will complete the design of landscape irrigation system, in accordance with the study (Task 2) and develop Plans, Specifications, and a Cost Estimate package ready for bidding.  This task is estimated to be completed within **270 days** from completion of Task 2.

**Task 4: Environmental Review**
This task will be completed concurrently with Task 3 and will include an environmental review of the proposed improvements.  This Task is estimated to be completed within **120 days** from completion of Task 2.

**Task 5: Bidding and Contract Development**
This Task will include bidding and development of a public works contract for the proposed ECA, and is estimated to be completed within **270 days** from completion of Task 3.  (Alternatively, the project may also be constructed via day labor.)

**Task 6: Construction Phase**
This Task will include the installation of the new landscape irrigation system, which is estimated to be completed within **545 days** following the completion of Task 5.

The overall project is anticipated to take **1445 days,** or approximately **48 months**, from the date the Stipulated Order is adopted.

7. **Reports to the Regional Water Quality Control Board**
   The CDCR intends to comply with quarterly reporting requirements for an ECA with a duration of greater than one year. The CDCR will also submit a final quarterly report with close-out information as required upon completion of the ECA.

8. **Project Compliance with CEQA**
   The project will include environmental review in compliance with CEQA requirements. The environmental review requirements will be determined during the engineering study phase.

Defs_000925

## Attachment C

## California Department of Corrections and Rehabilitation
## Mule Creek State Prison
## Enhanced Compliance Action (ECA)
## Scope of Work

**Project Name:**
Mule Creek State Prison, Storm Water Microbiological Study

**Project Developed by:**
California Department of Corrections and Rehabilitation (CDCR)

**Project to be Performed by:**
California Department of Corrections and Rehabilitation

**Contact:**
Gregor Larabee, Chief of Environmental and Regulatory Compliance
9838 Old Placerville Road, Suite B
Sacramento, CA  95827
Phone: 916-255-2162
Email: Gregor.Larabee@cdcr.ca.gov

**Description of Project:**
The purpose of this ECA is to characterize the microbiological quality of the Mule Creek State Prison (MCSP) storm water collection system discharges and any effects these discharges have on Mule Creek water quality.

**ECA Goals:**
1. Characterize the microbiological quality of storm water discharges from the Mule Creek State Prison storm water system.
2. Determine the effects to Mule Creek of MCSP storm water system discharges

Defs_000926

REFERENCE SETTLEMENT or ENFORCEMENT ACTION R5-2021-0001
Attachment C

**Compliance with ECA Criteria**

1. **Benefit to Water Quality and Beneficial Uses**
   This ECA is an environmental quality assessment of the impact of MCSP storm water discharges to Mule Creek, and will allow for the appropriate address of issues identified.

2. **ECA is not an Obligation of Discharger**
   The CDCR is not required to develop, implement, or fund the proposed ECA by any permit, order, or local, state, or federal law.

3. **No Fiscal Benefit to Regional Water Quality Control Board**
   This ECA does not provide any fiscal benefit to the RWQCB, or fund any functions, members, or staff of the RWQCB.

4. **Nexus between Violation and ECA**
   A nexus exists between the MCSP non-storm water flows and the proposed ECA. The Storm Water Microbiological Study will aid in defining the impact of MCSP storm water system discharge to Mule Creek.

5. **Key Personnel Involved in ECA**
   The CDCR's Facility Planning, Construction and Management Division will oversee completion of the ECA.

6. **Project Milestones and Budget**
   The overall project cost is at least a minimum of $400,000. This project is planned to be funded utilizing the Department's Special Repair budget allocation.  The ECA will address the following three questions through the completion of tasks addressing each. The nature of the study necessitates concurrent performance of tasks.

   Question 1: What is the microbial water quality of storm water effluent from Mule Creek prison and to what extent do they influence water quality in the creek?
       Task 1: Compare E. coli concentrations upstream and downstream of Mule Creek State Prison.
       Task 2: Compare mass loadings at four locations.

   Question 2: What fecal sources are part of any prison contribution?
       Task 1: Investigate human sources within prison grounds
       Task 2: Investigate avian sources within prison grounds
       Task 3: Closed circuit television investigation

   Question 3: What other fecal sources are contributing to creek exceedances of microbial water quality criteria?
       Task 1:  Investigate cattle sources to Mule Creek, upstream of prison grounds

Defs_000927

REFERENCE SETTLEMENT or ENFORCEMENT ACTION R5-2021-0001                    - C-3 -
Attachment C

Task 2: Investigate human sources to Mule Creek, upstream of prison grounds
Task 3: Investigate avian sources to Mule Creek, upstream of prison grounds
Task 4: Investigate contributions from treated effluent spray fields to Mule Creek

**Schedule for Completing ECA**

Tasks will be performed concurrently and rely on analytical data that will come from sampling at multiple locations to represent conditions during wet and dry seasons. The study is estimated to require 30 months for completion.

**Reports to the Regional Water Quality Control Board**

The CDCR intends to comply with quarterly reporting requirements associated with an ECA with a duration of greater than one year. The CDCR will also submit a final quarterly report as required upon completion of the ECA.

**Project Compliance with CEQA**

The ECA does not require CEQA requirements.

Defs_000928

Ben 2019

D-1

**Economic Benefit Analysis**
**CDCR - Mule Creek**

| Compliance Action | One-Time Non-Depreciable Expenditure | | | | Annual Costs | | | Non-Compliance Date | Compliance Date | Penalty Payment Date | Discount Rate | Benefit of Non-Compliance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Amount | Basis | Data | Delayed | Amount | Basis | Data | | | | | |
| Interim Containment 17/18 | $141,750 | GDP | 9/15/2020 | No | Blank Cell | Blank Cell | Blank Cell | 11/1/2017 | Blank Cell | 9/15/2020 | 3.90% | 149,771 |
| Interim Containment 18/19 | $570,150 | GDP | 9/15/2020 | No | Blank Cell | Blank Cell | Blank Cell | 11/1/2018 | Blank Cell | 9/15/2020 | 4.00% | 593,605 |
| Interim Pumping 17/18 | $21,572 | GDP | 1/1/2015 | No | Blank Cell | Blank Cell | Blank Cell | 11/1/2017 | Blank Cell | 9/15/2020 | 3.90% | 25,160 |
| Interim Pumping 18/19 | $86,765 | GDP | 1/1/2015 | No | Blank Cell | Blank Cell | Blank Cell | 11/1/2018 | Blank Cell | 9/15/2020 | 4.00% | 99,719 |
| Routine Sewer Cleaning | $0.00 | NONE | No Date | Blank | $201,452 | ECI | 1/1/2015 | 11/1/2017 | 3/14/2020 | 9/15/2020 | 3.90% | 558,176 |
| Sewer Slip-lining | $661,174 | ECI | 1/1/2015 | Yes | Blank Cell | Blank Cell | Blank Cell | 11/1/2017 | 9/15/2020 | 9/15/2020 | 3.90% | 33,397 |

**Income Tax Schedule:**    Municipality                                    **Total Benefit: $1,459,828**

**USEPA BEN Model Version:**    Version 2019.0.0 (March 2019)
**Analyst:**    Bryan Elder
**Date/Time of Analysis:**    12/31/20 10:21

**Assumptions:**

1. Interim containment costs based on 90 rental tanks at $35 per tank per day. Tank needs and cost were determined by Regional Board staff: 2017/18 - 45 days; 2018/19 - 181 days.
2. Non-compliance date for containment costs assumed to be November 1st for the onset of wet season.
3. Containment costs for 2017/18 and 2018/19 are assumed to be avoided.
4. Interim pumping costs based on 3, 6" diesel pumps for duration of tank rentals specified above. Cost assumption: RSMeans, 2015, Heavy Construction Cost Data, 01 54 33 40 5500, pg. 522.
5. Interim pumping costs indexed using Gross Domestic Product (GDP) index.
6. Routine Sewer Cleaning assumed to be on 3 year cycle (American Society of Civil Engineers, Optimization of Collection System Maintenance Frequencies and System Performance, February 1999). 3 miles per year based on CIWQS questionnaire entry for 9 miles of gravity, force main, and owned-lateral pipe). Cost assumption: RSMeans, 2015, Heavy Construction Cost Data, 33 01 30.16 6140 - Cleaning 4"-12" diameter - pg.337.
7. Routine Sewer Cleaning assumed to be annual starting at the onset of wet weather, November 1st, for each calendar year. First year of noncompliance assumed to be 11/1/2017.
8. Routine Sewer Cleaning costs indexed using Employment Cost Index (ECI).
9. Compliance date for routine sewer cleaning assumed to be 3/14/2020 based on CCTV/jetting work completed by CDCR and documented in the Storm Water Collection System Investigation Findings Report.
10. Slip-lining assumed to apply to system in entirety based on review of CCTV findings. Costs are assumed to be delayed. Cost assumption: RSMeans, 2015, Heavy Construction Cost Data, 33 01 30.74 0150 - 8" diameter, HDPE lining, pg. 338.
11. Slip-lining compliance date assumed to be 9/15/2020.
12. Slip-lining costs indexed using ECI.
13. All RSMeans costs are adjusted for location based on Sacramento, CA - 108.7 factor, pg. 607.
14. CDCR is assumed to operate the facility as a municipality.

EXHIBIT O

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                    GAVIN NEWSOM, GOVERNOR

**DIVISION OF ADULT INSTITUTIONS**
MULE CREEK STATE PRISON
4001 Highway 104
P.O. Box 409099
Ione, CA, 95640



Date:   November 13, 2020

State of California Water Resources Control Board
Central Valley Regional Water Quality Control Board
Sacramento Office
11020 Sun Center Drive, #200
Rancho Cordova, CA 95670-6114

Attention: Ms. Elizabeth Lee
           Senior Water Resource Control Engineer

**MULE CREEK STATE PRISON (MCSP) COMMENTS TO 5 NOVEMBER, 2020
PROPOSED REISSUANCE OF WATER CODE SECTION 13383 ORDER TO MONITOR
DISCHARGES TO SURFACE WATER; CALIFORNIA DEPARTMENT OF
CORRECTIONS AND REHABILITATION – MULE CREEK STATE PRISON,
WDID#:5S03M2000307, AMADOR COUNTY**

Dear Ms. Lee,

Please find our comments below to the above referenced order.

*7.      **Need for Monitoring and Reporting Requirements.** Due to potential water quality
impacts to Mule Creek while the Facility's storm water control program is being fully developed
and implemented and to ensure compliance with Small MS4 General Permit requirements, the
Central Valley Water Board has determined that an interim monitoring and reporting program
is necessary to monitor MS4 discharges from the Facility to Mule Creek. The Discharger has
been submitting weekly monitoring reports since 2018. This weekly monitoring report is
required by a Water Code Section 13267 Order issued by the Central Valley Water Board on 14
February 2019. Recent weekly monitoring reports document large volumes of irrigation water
being discharged through the Facility's MS4 into Mule Creek. The Discharge Prohibitions,
Section B, in the Small MS4 General Permit state the following, in relevant part:*

> The flowmeter readings reported weekly to the CVRWQCB are taken from
> flowmeters located at MCSP 5 (GT-9) and MCSP 6 (GT-3). These locations are a
> substantial distance up-flow from the points of compliance *(MCSP 5 to point of
> compliance MCSP 2 is 630', and MCSP 6 to point of compliance MCSP 3 is 1500')*
> and are not representative of any discharge to Mule Creek. While irrigation flow is
> measured at the meter locations, photo documentation demonstrates that no water
> reaches the points of compliance. The photos are taken daily and included in the
> weekly report submitted to the CVRWQCB.

State of California Water Resources Control Board
Page 2

*7.4. Discharges in excess of an amount deemed to be incidental runoff shall be controlled. Regulated Small MS4s shall require parties responsible for such to implement Section B.4.a-d below. Incidental runoff is defined as unintended amounts (volume) of runoff, such as unintended, minimal over-spray from sprinklers that escapes the area of intended use. Water leaving an intended use area is not considered incidental if it is part of the facility design, it if is due to excessive application, if it is due to intentional overflow or application, or if it is due to negligence.*

> MCSP has not observed non-stormwater discharges to Mule Creek, as photographically documented daily and included in the weekly reports submitted to the CVRWQCB.

*Due to the Facility discharging large volumes of irrigation water (i.e., non-storm water) through its MS4, a report is necessary for the Discharger to demonstrate that the non-storm water discharges through the MS4 are in compliance with the Discharge Prohibitions in the Small MS4 General Permit. The requirements in this Order supplement and do not supersede existing monitoring and reporting requirements under the Small MS4 General Permit or other monitoring and reporting orders issued by the Central Valley Water Board or its delegates.*

> MCSP has not observed non-stormwater discharges to Mule Creek, as photographically documented daily and included in the weekly reports submitted to the CVRWQCB; based on this fact we do not feel additional reporting is necessary.

*D. **Non-Storm Water Discharge Report**. The Permittee shall submit a Non-Storm Water Discharge Report **by 31 December 2020**. The Non-Storm Water Discharge Report shall either:*

> As stated above, MCSP has not observed non-stormwater discharges to Mule Creek, as photographically documented daily and included in the weekly reports submitted to the CVRWQCB; based on this fact we do not feel additional reporting is necessary.

*E. **Discharge Notification**. The Permittee shall notify the Central Valley Water Board within 24 hours of the Facility discharging through the MS4 to the receiving water.*

> What method (verbal, written, electronic) of notification is required?

Please let me know if you have any questions or need additional information.

CHRISTOFER HUDGENS
Correctional Plant Manager II
Mule Creek State Prison

EXHIBIT P

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                                  GAVIN NEWSOM, GOVERNOR

**DIVISION OF ADULT INSTITUTIONS**
MULE CREEK STATE PRISON
4001 Highway 104
P.O. Box 409099
Ione, CA, 95640



Date:  January 21, 2021

State of California Water Resources Control Board
Central Valley Regional Water Quality Control Board
Sacramento Office
11020 Sun Center Drive, #200
Rancho Cordova, CA 95670-6114

Attention: Ms. Elizabeth Lee
                Senior Water Resource Control Engineer

***MULE CREEK STATE PRISON (MCSP) COMMENTS TO 22 December, 2020
WATER CODE SECTION 13383 ORDER TO MONITOR DISCHARGES TO SURFACE
WATER; CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION –
MULE CREEK STATE PRISON, WDID#:5S03M2000307, AMADOR COUNTY***

Dear Ms. Lee,

Please find our comments below to the above referenced order.

***8. D.  Non-Storm Water Discharge Report.*** *The Permittee shall submit a Non-Storm Water
Discharge Report **by 1 February 2021**.*

The Central Valley Regional Water Quality Control Board ("CVRWQCB") cites flowmeter
readings from MCSP5 and MCSP6 as representative of non-storm water discharge to
Mule Creek, and justification for the preparation and submission of a "Non-Storm Water
Discharge Report". However, flowmeter readings from MCSP 5 and MCSP 6, reported
weekly to the CVRWQCB, in response to a 13267 order, are not representative of non-
storm water discharge from the MCSP MS4 system to Mule Creek, and provide no
indication as to whether non-stormwater is discharged to Mule Creek. . These flowmeter
locations are a substantial distance up-stream from the points of discharge to Mule Creek
("points of compliance"). Specifically, MCSP 5 is 630 feet up-stream from the point of
compliance at MCSP 2, and MCSP 6 is 1500 feet up-stream from the point of compliance
at MCSP 3. MCSP is developing a plan to relocate the flowmeters from MCSP 5 and
MCSP 6 to points of compliance MCSP 2 and MCSP 3, in order to accurately record
actual discharges to Mule Creek through MCSP points of compliance.

Non-storm water flow recorded at MCSP 5 and MCSP 6 results from defects in the potable
water, landscape irrigation system at the facility, and can be correlated with irrigation
meter readings when the irrigation system is in use. MCSP is taking steps to repair the
landscape irrigation system to address this identified non-storm water flow.

Defs_000932

State of California Water Resources Control Board
Page 2

The non-storm water, landscape irrigation runoff recorded at MCSP 5 and MCSP 6 does not discharge to Mule Creek and is retained on MCSP property within the constructed earthen channels that run between MCSP 5 and MCSP 2, and MCSP 6 and MCSP 3. MCSP takes photographs daily of locations MCSP 5, MCSP 6, Main Junction Vault, Secondary Junction Vault, and Points of Compliance MCSP 2 and MCSP 3. These photographs are included in the Weekly Status Report that is submitted to the CVRWQCB every week by SHN on behalf of MCSP. MCSP has not observed non-storm water discharges through the MS4 system to Mule Creek.

The photographs provided within the Weekly Status Report to the CVRWQCB provide verification that non-storm water is not discharged to Mule Creek, even during times of high non-storm water flow readings at MCSP 5 and MCSP 6.

Based on the provided information, and Weekly Status Reports submitted to the CVRWQCB in response to the 13267 order, MCSP believes the Non-Storm Water Discharge Report due on February 1, 2021, is not warranted and requests that this requirement be removed from the Order.

*E. Discharge Notification. The Permittee shall notify the Central Valley Water Board within 24 hours of the Facility discharging through the MS4 to the receiving water.*

Please confirm the preferred method *(verbal, written, electronic)* of notification to the CVRWQCB.

**I. MONITORING LOCATIONS**
A. **Monitoring Locations.** *The Permittee shall establish the monitoring locations identified in Table A.*

**Table A. Monitoring Station Locations**

| Discharge Point Name | Monitoring Location Name | Monitoring Location Description[1] |
|---|---|---|
| -- | RAIN-1 | Rain gage located at the Mule Creek Wastewater Treatment Plant |
| -- | MCSP1 (RSW-001) | Upstream receiving water location |
| 001 | MCSP5 (OUTFALL-1) | MS4 slide gate |
| 002 | MCSP6 (OUTFALL-2) | MS4 slide gate |
| -- | MCSP4 (RSW-002) | Downstream receiving water location approximately 200 feet downstream (south) of MCSP3. |

MCSP 5 and MCSP 6 are within the MCSP storm water management system, and are not representative of what MCSP discharges to Mule Creek in either water quality or volume.

State of California Water Resources Control Board
Page 3

MCSP requests monitoring locations MCSP 5 and MCSP 6 be replaced with monitoring at MCSP 2 and MCSP 3, which will represent the MCSP MS4 system discharge to Mule Creek.

Please note that MCSP submitted similar comments and a request for information on November 13, 2020, in response to the *November 5, 2020 proposed reissuance of 13383 Order to Monitor Discharges*. MCSP also provided this feedback to CVRWQCB staff on November 19, 2020, during a site visit and inspection conducted by the CVRWQCB and USEPA. MCSP has not received a response from the CVRWQCB to the submitted comments and information request.

MCSP respectfully requests a response from the CVRWQCB to the comments provided and information requested in this letter.

Thank you for your consideration in this matter. Please let me know if you have any questions or need additional information.

CHRISTOFER HUDGENS
Correctional Plant Manager II
Mule Creek State Prison

EXHIBIT Q

## CENTRAL VALLEY REGIONAL WATER QUALITY CONTROL BOARD

### INSPECTION REPORT

11 February 2021

| DISCHARGER: | Mule Creek State Prison, WDID # 5S03NEC004161 |
|---|---|
| LOCATION & COUNTY: | 4001 Highway 104, Near Ione, Amador County |
| CONTACT(S): | Gregor Larabee, Anthony Orta (Wastewater Treatment Plant operator) |
| INSPECTION DATE: | 27 January 2021 |
| INSPECTED BY: | Brett Stevens, Central Valley Regional Water Quality Control Board |

**INSPECTION COMMENTS:**
On 27 January 2021, Central Valley Regional Water Quality Control Board (Central Valley Water Board) staff conducted an inspection of the industrial areas/activities that are covered by Mule Creek State Prison's (MCSP) No Exposure Certification (NEC).  The NEC is a compliance option under the General Permit for Storm Water Discharges Associated with Industrial Activities (IGP) that allows dischargers to certify that there is no stormwater exposure to industrial equipment, materials, activities, or waste for qualifying industrial activities.  For MCSP, the qualifying industrial activities are textile manufacturing (Standard Industrial Classification [SIC] Code 2399), coffee roasting (SIC Code 2095), and meat packing (SIC Code 2011).

The NEC exempts MCSP from having to prepare a Stormwater Pollution Protection Plan, or to collect stormwater analytical data.  These records were therefore not audited as part of this inspection.  MCSP provided facility maps as part of the NEC application.  These maps are included herein, referenced below, and listed here:

> Figure 1 – Mule Creek Facility Layout and Drainage
> Figure 2 – NEC for Sewing, Coffee Roasting, and Textiles
> Figure 3 – NEC for Sewing and Meat Packing
> Figure 4 – MCIC Facility Layout and Drainage
> Figure 5 – NEC for Sandwich Packaging

In addition to the areas/activities covered by the NEC, Board staff also inspected the following MCSP features:

- A laundry area
- Several outdoor maintenance facility equipment/materials storage areas
- A vehicle fueling, washing, and maintenance area
- The prison warehouse (exterior only)
- Two onsite vocational training equipment storage areas
- A sandwich shop loading dock; and
- The Wastewater Treatment Plant's (WWTP) sludge press, disinfectant storage tank, and hazardous materials storage area.

Board staff met with MCSP representatives at the main gate at 10am.  In addition to Board staff, the following personnel were present during the inspection:

Gregor Larabee, Chief, Environmental and Regulatory Compliance Section
Estevan Fregeau, Chief Engineer
Daniel Bowers, Supervisor of Building Trades
Terry Bettencourt, Regional Manager, Capital Renovation and Maintenance Services

The lead MCSP staff, Mr. Larabee, consented to the inspection and for photographs to be taken during the inspection, with the caveat that Board staff was not to photograph the perimeter security at the prison.

**INSPECTION OBSERVATIONS:**

- The weather on the day of the inspection was cold and windy.  There was rain the night before, but no rain during the inspection.  Owing to the rain, wet concrete/asphalt and water puddles were observed in outside areas.

- The inspection began in the laundry room, which was found to be clean and orderly (see Photo 1).  According to MCSP staff, floor drains in this room and all other interior rooms are plumbed to the onsite Wastewater Treatment Plant (WWTP).  The loading dock for the laundry room was found to be clean, with no visible sources of pollution (see Photo 2).  The laundry room location is shown on Figure 3 (see below) as the area to the right of the area marked "Cal PIA Meat Packing".

- The meat packing room was found to be clean and orderly; additionally, the covered loading dock for the meat packing room, and a storm drain outside the loading dock, were found to be clean, with no visible sources of pollution (see Photos 3, 4, and 6).  The meat packing room is shown in Figure 3.

- The loading dock for a kitchen room is located adjacent to the meat packing loading dock.  The kitchen loading dock was found to be clean with no visible sources of pollution (see Photo 5, and Figure 3 for kitchen room location).

- The coffee roasting room was found to be clean and orderly; additionally, the loading dock for the coffee roasting room was found to be clean, with no visible sources of pollution (see Photos 7 and 9).  Waste bins outside the loading dock were found to be covered with no visible trash (see Photo 8).  The coffee roasting room location is shown in Figure 2.

- The textiles/sewing room was found to be clean and orderly; additionally, the partially covered textiles loading dock, and a storm drain outside the loading dock, were found to be clean, with no visible sources of pollution (see Photos 10, 12, and 13).  The textiles/sewing room location is shown in Figure 2.

- While in the vicinity of the coffee roasting and textile/sewing rooms, Board staff also inspected the loading docks for a medical clinic and a gym, a storm drain outside the medical clinic loading dock, and some covered waste bins in the area (see Photos 14 thru 17, and 19).  These loading docks were found to be clean and orderly, with no

visible sources of pollution.  The storm drain was found to be clean, and the waste bins were covered with no visible trash.  The locations of the medical clinic and gym are shown in Figure 2; the clinic is marked as "Prison Medical Facilities", and the gym is located to the right of the medical clinic.

- A kitchen cart washout area was located near the medical clinic and gym loading docks (see Photo 18).  This area was found to be clean and orderly.  According to MCSP staff, the drain in this area is plumbed to the WWTP.

- On the way to inspecting the prison warehouse, Board staff inspected a prison vehicle fueling station, vehicle maintenance area, and vehicle wash area (see Photos 23 thru 27).  These areas were found to be clean and orderly, with vehicle maintenance liquids and waste stored in covered areas.  According to MCSP staff, the drain in the vehicle wash area (see Photo 27) is equipped with an oil-water separator; and plumbed to the WWTP.

- Board staff inspected the primary warehouse for the prison, and found the warehouse loading dock, a compressed gas storage area, and the northern perimeter to be clean and orderly, with no visible sources of pollution (see Photos 28 thru 30).  The warehouse is the large U-shaped building on the north side of the building complex shown in Figure 1.

- Board staff next travelled to the building complex shown in Figure 4.  This complex is located northeast of the one shown in Figure 1.  While at this location, Board staff inspected the partially covered sandwich packaging loading dock and found it to be clean and orderly, with no visible sources of pollution (see Photo 32).

- The WWTP's sludge press, sludge loading area, and covered sludge storage were found to be adequate for protecting stormwater quality (see Photos 34 thru 37).  According to MCSP staff, the drain for the sludge press loading pad is plumbed to the WWTP, which is located just down-gradient from the pad.  While at the WWTP, Board staff also inspected a covered disinfectant storage tank and a covered hazardous materials storage area (see Photos 38 and 39).  These areas were found to be clean and orderly.

- During the inspection, Board staff noted several facility maintenance yards and storage areas that may contain derelict equipment or materials (e.g., rusting metal products or oil/lubricant-containing machinery).  These yards/areas include the facility maintenance storage area shown in Photo 11; a storage yard outside a vocational welding room (see Photos 20 and 21); a facility maintenance yard near the laundry room (see Photo 22); an equipment/materials storage area near the warehouse (see Photo 31); and another vocational training equipment/storage yard by the sandwich packaging loading dock (see Photo 33).

**SUMMARY:**

- Board staff found that the NEC-covered areas (i.e., textiles/sewing, coffee roasting, and meat packing) complied with applicable requirements.  The interior rooms were clean and orderly, and no potential sources of stormwater pollution were observed at the loading docks, or around storm drains; waste bins were covered and in good condition.

- Board staff inspected several areas that do not require a NEC, including the laundry room, kitchen, medical clinic, gym, and sandwich packaging loading docks; a kitchen cart washout area; a vehicle fueling station, wash area, and maintenance area; and the primary prison warehouse.  These areas were found to be clean and orderly, with no visible sources of stormwater pollution.

- The WWTP sludge press was found to be as clean and orderly as can be expected; and a large, covered area has been constructed for sludge stormwater separation, storage, and drying.  In addition to good housekeeping measures, the potential threat to stormwater quality posed by the sludge has been addressed by plumbing the sludge press pad to the WWTP.  Other WWTP features, including the disinfectant storage tank and hazardous materials storage area, were found to be clean and orderly.

- The numerous facility maintenance yards and storage areas may contain derelict equipment and material that may pollute stormwater.  MCSP should therefore survey these yards/areas and haul away equipment/materials/debris that is no longer needed.

Prepare by:

Brett Stevens
Senior Environmental Scientist
Stormwater Unit

Review by:

Kari Holmes, Program Manager
Compliance & Enforcement Section

Mule Creek State Prison                              - 5 -                              11 February 2021
Industrial Stormwater Compliance Inspection



Figure 1. Mule Creek Facility Layout and Drainage

Mule Creek State Prison
Industrial Stormwater Compliance Inspection

- 6 -

11 February 2021



Figure 2. NEC for Sewing, Coffee Roasting, and Textiles

Mule Creek State Prison                                    - 7 -                                    11 February 2021
Industrial Stormwater Compliance Inspection



Figure 3. NEC for Sewing and Meat Packing

Mule Creek State Prison                                    - 8 -                                    11 February 2021
Industrial Stormwater Compliance Inspection



Figure 4. MCIC Facility Layout and Drainage

Mule Creek State Prison                              - 9 -                              11 February 2021
Industrial Stormwater Compliance Inspection



Figure 5. NEC for Sandwich Packaging

Mule Creek State Prison                                    - 10 -                                    11 February 2021
Industrial Stormwater Compliance Inspection



Photo 1: Laundry room; according to MCSP staff, drains in this room are plumbed to the onsite WWTP.



Photo 2: Loading dock for laundry room; according to MCSP staff, drains to storm sewer.



Photo 3: Storm drain outside of meat packing loading dock



Photo 4: Loading dock for meat packing room





Defs_000944

Mule Creek State Prison — - 11 - — 11 February 2021
Industrial Stormwater Compliance Inspection

| Photo 5: Kitchen loading dock | Photo 6: Meat packing room; according to MCSP staff, drains in this room are plumbed to WWTP. |
|---|---|
|  |  |
| Photo 7: Loading dock for coffee roasting room | Photo 8: Covered waste bins outside of coffee roasting loading dock |
|  |  |
| Photo 9: Cleaning supply storage in coffee roasting room | Photo 10: Textile sewing room |
|  |  |

Mule Creek State Prison
Industrial Stormwater Compliance Inspection

- 12 -

11 February 2021

Photo 11: Facility maintenance storage area outside of textile sewing room

Photo 12: Loading dock for textiles sewing room



Photo 13: Storm drain outside of textiles room loading dock



Photo 14: Loading dock for medical clinic



Photo 15: Storm drain outside loading dock for medical clinic



Photo 16: Loading dock for gym; converted to COVID patient housing



Mule Creek State Prison
Industrial Stormwater Compliance Inspection

- 13 -

11 February 2021

| Photo 17: Covered waste bins outside gym loading dock | Photo 18: Kitchen cart washout area; according to MCSP staff, this drain is plumbed to the WWTP. |
| --- | --- |
|  |  |
| Photo 19: Covered waste bins outside medical clinic | Photo 20: Equipment/materials storage area outside vocational welding room |
|  |  |
| Photo 21: Hazardous materials storage area for vocational welding room | Photo 22: Facility maintenance yard near laundry room |
|  |  |

Mule Creek State Prison                                    - 14 -                                    11 February 2021
Industrial Stormwater Compliance Inspection

| Photo 23: Prison vehicle fueling station | Photo 24: Prison vehicle maintenance area |
|---|---|
|  |  |
| Photo 25: Prison vehicle waste storage area | Photo 26: Covered prison vehicle hazardous materials storage area |
|  |  |
| Photo 27: Prison vehicle wash area; according to MCSP staff, wash water drain is plumbed to WWTP. | Photo 28: Warehouse loading dock with covered waste bins |
|  |  |

Mule Creek State Prison                                   - 15 -                          11 February 2021
Industrial Stormwater Compliance Inspection

| Photo 29: Compressed gas storage at warehouse | Photo 30: North side of warehouse |
|---|---|
| |  |

| Photo 31: Equipment/materials storage area near warehouse | Photo 32: Sandwich shop loading dock |
|---|---|
|  |  |

| Photo 33: Vocational training equipment/materials storage yard | Photo 34: WWTP sludge press |
|---|---|
|  |  |

Mule Creek State Prison                                   - 16 -                                   11 February 2021
Industrial Stormwater Compliance Inspection



| Photo 35:  Sludge transfer area; according to MCSP staff, this pad drains to WWTP | Photo 36: Covered sludge storage area |
|---|---|
| Photo 37: Aeration treatment at WWTP; WWTP is located down-gradient of the sludge press area. | Photo 38: Covered disinfectant storage tank at WWTP |
| Photo 39: Enclosed hazardous materials storage area at WWTP | |

# EXHIBIT R

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                    GAVIN NEWSOM., GOVERNOR

**DIVISION OF ADULT INSTITUTIONS**
MULE CREEK STATE PRISON
4001 Highway 104
P.O. Box 409099
Ione, CA, 95640



Date:  October 8, 2021

State of California Water Resources Control Board
Central Valley Regional Water Quality Control Board
Sacramento Office
11020 Sun Center Drive #200
Rancho Cordova, CA  95670-6114

Attention: Ms. Elizabeth Lee
Senior Water Resource Control Engineer

*COMMENTS TO THE REVISED WATER CODE SECTION 13383 ORDER TO MONITOR DISCHARGES TO SURFACE WATER ; CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION – MULE CREEK STATE PRISON, WDID#:5S03M2000307, AMADOR COUNTY*

Dear Ms. Lee,

Mule Creek State Prison (MCSP) provides the following comments to the  Revised Water Code Section 13383 Order to Monitor Discharges to Surface Water.

**I.  Reporting Requirements**
   *C. Discharge Notification.  The Permittee shall notify the Central Valley Water Board within 24 hours of the Facility discharging through the MS4 to the receiving water.*

MCSP requests additional information as to the required contact and contact method for discharge notification.

**IV. Monitoring Locations.**

MCSP disagrees with the proposed additional monitoring locations of MSCP5-W and MCSP6-W. These discharges points are captured with MCSP5 and MCSP6.

Defs_000951

Ms. Elizabeth Lee
Page 2

## V. MS4 OUTFALL MONITORING REQUIREMENTS

### Table B. MS4 Outfall Monitoring

| Parameter[1] | Units | Sample Type | Minimum Sampling Frequency |
|---|---|---|---|
| Total Discharge | MGD | Calculated | 1/event[3] |
| Duration of Discharge | Hours | Calculated | 1/event[3] |
| Total Daily Flow Diverted to the Mule Creek Wastewater Treatment Plant | MGD | Calculated | 1/event[3] |
| Rainfall in previous 24-hours prior to initial discharge to Mule Creek | Inches | Gage | 1/event[3] |
| Total Daily Irrigation Volume | gpd | Calculated/ Gage | 1/event[3] |
| Biochemical Oxygen Demand 5-day @ 20°C (BOD) | mg/L | Grab | 1/month |
| Chemical Oxygen Demand (COD) | mg/L | Grab | 1/month |
| Dissolved Organic Carbon (DOC) | mg/L | Grab | 1/month |
| Dissolved Oxygen | mg/L | Grab | 1/month |
| Electrical Conductivity (EC) @ 25°C | μmhos/cm | Grab | 1/month |
| Oil & Grease | mg/L | Grab | 1/month |
| Ammonia (Total as N) | mg/L | Grab | 1/month |
| pH | Standard Units | Grab | 1/month |
| Settable Solids | ml/L | Grab | 1/month |
| Temperature | °C | Grab | 1/month |
| Total Dissolved Solids (TDS) | mg/L | Grab | 1/month |
| Total Hardness, (as CaCO$_3$) | mg/L | Grab | 1/month |
| Total Suspended Solids (TSS) | mg/L | Grab | 1/month |
| Turbidity | NTU | Grab | 1/month |
| E. coli | CFU/100 mL | Grab | 1/month |
| Aluminum, Total recoverable[2] | μg/L | Grab | 1/month |
| Arsenic, Total recoverable | μg/L | Grab | 1/month |
| Copper, Dissolved | μg/L | Grab | 1/month |

Defs_000952

Ms. Elizabeth Lee
Page 3

| Parameter[1] | Units | Sample Type | Minimum Sampling Frequency |
|---|---|---|---|
| Iron, Total Recoverable[2] | µg/L | Grab | 1/month |
| Lead, Dissolved | µg/L | Grab | 1/month |
| Manganese, Total Recoverable[2] | µg/L | Grab | 1/month |
| Zinc, Dissolved | µg/L | Grab | 1/month |
| Volatile Organic Compounds (VOCs) per EPA Method 8260 | µg/L | Grab | 1/month |

The need for MCSP to conduct Minimum Sampling Frequency of 1 month is unclear, sampling conducted per 1 event would be representative of discharge to Mule Creek.

## VI. RECEIVING WATER MONITORING REQUIREMENTS

### Table C. Receiving Water Monitoring

| Parameter | Units | Sample Type | Minimum Sampling Frequency |
|---|---|---|---|
| Dissolved Organic Carbon (DOC) | mg/L | Grab | 1/month |
| Dissolved Oxygen (DO) | mg/L | Grab | 1/month |
| Electrical Conductivity (EC) @ 25°C | µmhos/cm | Grab | 1/month |
| pH | Standard Units | Grab | 1/month |
| Temperature | °C | Grab | 1/month |
| Total Hardness (as CaCO₃) | mg/L | Grab | 1/month |
| Total Suspended Solids (TSS) | mg/L | Grab | 1/month |
| Turbidity | NTU | Grab | 1/month |
| E. coli | CFU/100 mL | Grab | 1/month |
| Aluminum, Total Recoverable[2] | µg/L | Grab | 1/month |
| Arsenic, Total recoverable | µg/L | Grab | 1/month |
| Copper, Dissolved | µg/L | Grab | 1/month |
| Iron, Total Recoverable[2] | µg/L | Grab | 1/month |
| Lead, Dissolved | µg/L | Grab | 1/month |
| Manganese, Total Recoverable[2] | µg/L | Grab | 1/month |
| Zinc, Dissolved | µg/L | Grab | 1/month |

Ms. Elizabeth Lee
Page 4

A minimum Sampling frequency of 1/month of the receiving water does not demonstrate the effect of MCSP discharge. MCSP recommends changing the Minimum Sampling Frequency to 1/event to coincide with the outfall sampling identified in section V. MS4 OUTFALL MONITORING REQUIRMENTS.

## VII.   *WATER COLUMN TOXICITY TESTING REQUIREMENTS*

Sampling for toxicity at *MCSP5, MCSP6, MCSP2 or MCSP3* does not demonstrate if MCSP discharge impacts Mule Creek. MCSP recommends the sampling points to be at MCSP 1 and MCSP4

### *C. WET Testing Reporting Requirements.*

MCSP requests that this entire section be removed from the order. "WET Testing is intended for both acute and chronic toxicity testing of wastewater effluent,  and not appropriate for storm water discharge. Furthermore, it includes provisions for a Toxicity Reduction Evaluation (TRE) which is not required here.

Please contact me if you have any questions or need additional information.

Anthony Orta
Correctional Plant Manager II
Mule Creek State Prison

cc: Bryan Holmes
    Patrick Covello
    Miles (Terry) Bettencourt
    Eric Papathakis

Defs_000954

EXHIBIT S

Mule Creek State Prison

Information Sheet for NEC application

03 May 2018

**SIC Codes for Mule Creek industrial activities subject to the IGP:**

| CalPIA Facility and Location | SIC Code Requiring IGP Coverage |
|---|---|
| Sewing (A/B Corridor) | SIC Code 2399: Fabricated Textile Products, Not Elsewhere Classified |
| Coffee Roasting (A/B Corridor) | SIC Code 2095: Roasted Coffee |
| Textiles (A/B Corridor) | SIC Code 2399: Fabricated Textile Products, Not Elsewhere Classified |
| Sewing (B/C Corridor) | SIC Code 2399: Fabricated Textile Products, Not Elsewhere Classified |
| Meat Packing (B/C Corridor) | SIC Code 2011: Meat Packing Plants |
| Sandwich Packaging (MCIC) | SIC Code 2099: Food Preparations, Not Elsewhere Classified |

1 of 2

**Mule Creek State Prison Complex Area**

**Total Area**:  Approximately 850 acres

**Developed Area**:

- MCSP:  150 acres
- MCIC:  70 acres

**Industrial Areas subject to the IGP**:

- AB Corridor:

    - Sewing: 0.35 acres
    - Coffee Roasting: 0.3 acres
    - Textiles: 0.1 acres

- BC Corridor:

    - Meat Packing: 0.6 acres
    - Sewing: 0.25 acres

- MCIC:

    - Sandwich packaging: 1 acre

- **Total: 2.6 acres**

**Area of Industrial Materials and Activities Exposed to Stormwater:  0 acres**

2 of 2

Defs_000956

EXHIBIT T

STATE WATER RESOURCES CONTROL BOARD
**ORDER WQ 2019-0009-EXEC**
**AMENDING**

**WATER QUALITY ORDER 2013-0001-DWQ**

NATIONAL POLLUTANT DISCHARGE ELIMINATION SYSTEM
GENERAL PERMIT NO. CAS000004
WASTE DISCHARGE REQUIREMENTS
FOR
STORM WATER DISCHARGES FROM SMALL MUNICIPAL SEPARATE STORM SEWER
SYSTEMS (MS4)

The California State Water Resources Control Board (hereafter State Water Board) finds:

1.  On December 8, 1999, the United States Environmental Protection Agency (U.S. EPA) promulgated Phase II storm water regulations under authority of the Clean Water Act section 402(p)(6). The Phase II storm water regulations require the State Water Board to issue National Pollutant Discharge Elimination System storm water permits to operators of Small MS4s.

2.  An MS4 is a conveyance or system of conveyances that is: (1) owned by a state, city, town, village, or other public entity that discharges to waters of the United States; (2) designed or used to collect or convey storm water (including storm drains, pipes, ditches, etc.); (3) not a combined sewer; and (4) not part of a Publicly Owned Treatment Works or sewage treatment plant. Title 40 of the Code of Federal Regulations (40 C.F.R.) section 122.26(b)(16) defines Small MS4s as those not defined as "large" or "medium" MS4s under section 122.26(b)(4) or (b)(7) or designated under 40 Code of Federal Regulations section 122.26(a)(1)(v). The term Small MS4s includes systems similar to separate storm sewer systems in municipalities, such as systems at military bases, large hospital or prison complexes, and highways and other thoroughfares (40 C.F.R. §122.26(b)(16)(iii).) These latter subsets of Small MS4s are referred to herein as Non-traditional Small MS4s. Non-traditional Small MS4s discharge pollutants that are typically associated with urban runoff.

3.  The State Water Board adopted the first Small MS4 General Permit in 2003. The State Water Board reissued the Small MS4 General Permit (Water Quality Order 2013-0001-DWQ) in 2013. The Small MS4 General Permit is a statewide permit that sets requirements for multiple permittees. Of the Small MS4s defined by federal regulations, only "Regulated Small MS4s" (also referred to as "Permittees") must obtain coverage under the Small MS4 General Permit. Small MS4s are designated as Regulated Small MS4s in accordance with the criteria described in Findings 19-23 and Finding 25 of the General Permit.

4.  The Small MS4 General Permit allows the Regional Water Quality Control Boards (Regional Water Boards) to designate additional Small MS4s as Regulated Small MS4s on a case-by-case basis. A Regional Water Board designation is based on the potential of a Small MS4 to discharge urban runoff that causes or contributes to exceedances of water quality standards, including impairment of designated uses, and other water quality impacts, including habitat and biological impacts. When a Regional Water Board designates a Small MS4 after the adoption of the Small MS4 General Permit, the designation must be approved by the Regional Water Board following public review and comment.

1

Defs_000957

5.   Non-traditional Permittees required to be enrolled under the Small MS4 General Permit are listed in the Permit's Attachment B.  The State Water Board Executive Director may amend the list of Regulated Small MS4s in Attachment B consistent with the designation criteria listed in the Small MS4 General Permit.  Accordingly, where a Regional Water Board determines that designation of a Small MS4 is consistent with the designation criteria of the Small MS4 General Permit, the Executive Director may amend Attachment B to require that Small MS4 to enroll.

6.   On April 7, 2015, the State Water Board amended statewide water quality control plans to address the pervasive impacts trash has on the beneficial uses of the State's surface waters (Trash Provisions).  The Trash Provisions establish statewide narrative water quality objectives providing that trash shall not be present in surface waters, prohibit trash discharge to surface waters, and prohibit trash deposition where it may be discharged into surface waters.

7.   The State Water Board issued Water Code section 13383 Orders to Regulated Small MS4s on June 1, 2017, requiring implementation of the Trash Provisions.  For Small MS4s designated after June 1, 2017, the State Water Board issues Water Code section 13383 Orders upon designation. Newly-designated Small MS4s must achieve full compliance with the Trash Provisions within 10 years of the effective date of designation.

**Mule Creek State Prison**

8.   The California Department of Corrections and Rehabilitation (Department) owns and operates a Small MS4 at its Mule Creek State Prison (MCSP), located in the City of Ione in Amador County. The storm sewer collection system discharges to Mule Creek.  The total MCSP population as of January 2019 is 5,395, which consists of 3,968 inmates and 1,427 authorized staff positions. Mule Creek storm water sampling data collected by Central Valley Regional Water Quality Control Board and MCSP staff indicate that the storm water discharge from the facility has the potential to cause or contribute to exceedances of water quality standards in Mule Creek.

9.   The Central Valley Water Board notified the Department, interested agencies, and interested persons of its intent to consider a Resolution to designate the MCSP as a Regulated Small MS4 under the Small MS4 General Permit. The Central Valley Water Board adopted the Resolution at a public hearing on February 8, 2019.

**IT IS HEREBY ORDERED THAT:**

1.   Water Quality Order 2013-0001-DWQ is hereby amended as shown in Attachment 1 of this Order.  The amended Water Quality Order shall become effective upon the date of Executive Director approval.

2.   Upon approval by Executive Director, the Department at Mule Creek State Prison shall submit a Notice of Intent and the appropriate fee within 6 months of the effective date of approval.[1]

3.   Upon designation, the State Water Board will issue a Water Code section 13383 Order to the Department requiring implementation of the Trash Provisions.

_4/24/19_
Date

_Eileen Sobeck_
Eileen Sobeck
Executive Director

---

[1] Section A.1.a of the Small MS4 General Permit

Defs_000958

**ATTACHMENT 1**
To
**ORDER WQ 2019-0009-EXEC**
**AMENDING**

**WATER QUALITY ORDER 2013-0001-DWQ**

NATIONAL POLLUTANT DISCHARGE ELIMINATION SYSTEM (NPDES)
GENERAL PERMIT NO CAS000004
WASTE DISCHARGE REQUIREMENTS
FOR
STORM WATER DISCHARGES FROM SMALL MUNICIPAL STORM SEWER SYSTEM (MS4s)

The Mule Creek State Prison is added to the list of Non-Traditional Small MS4 Permittees on Attachment B of the Small MS4 General Permit as shown in underline format below.

PAGE 1
**Attachment B – Non-Traditional Small MS4 Permittees**

| Region | Permittee Name | Agency | Designation Criteria | Permittee Type | Monitoring Type |
|--------|----------------|--------|----------------------|----------------|-----------------|
| Monitoring Type: Δ = Areas of Special Biological Significance Special Protections | | | | | |
| *The list of Regulated MS4s in this Attachment may be amended by the Executive Director consistent with the designation criteria listed in the Order. Revised 2/19/13 to change Agency to Department of Homeland Security for Petaluma Coast Guard Training Center and Alameda Coast Guard Integrated Support Command, removed VA Northern CA Healthcare Systems and Martinez Center for Rehab and Extended. Amended on 9/2/15 to remove Tracy Unified School District. Amended on 01/24/18 to delete Amtrak and to add California High Speed Rail Authority. Amended on March 13, 2018 to add San Diego Metropolitan Transit District and Marine Corps Recruit Depot San Diego. Amended on April 24, 2019 to add Mule Creek State Prison. | | | | | |

PAGE 7
**Attachment B – Non-Traditional Small MS4 Permittees**

| San Diego Regional Water Board | | | | | |
|--------------------------------|---|---|---|---|---|
| 5S | Mule Creek State Prison | Department of Corrections and Rehabilitation | Regional Board Designation | New | |

3

**ATTACHMENT 2**
To
**ORDER WQ 2019-0009-EXEC**
**AMENDING**

---

**WATER QUALITY ORDER 2013-0001-DWQ**

---

**CALIFORNIA REGIONAL WATER QUALITY CONTROL BOARD**
**CENTRAL VALLEY REGION**
**RESOLUTION R5-2019-0006**
**DESIGNATION OF REGULATED SMALL MS4 FOR**
**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**MULE CREEK STATE PRISON**
**AMADOR COUNTY**
**INTO THE NATIONAL POLLUTANT DISCHARGE ELIMINATION SYSTEM GENERAL PERMIT**
**FOR WASTE DISCHARGE REQUIREMENTS FOR STORM WATER DISCHARGES FROM**
**SMALL MUNICIPAL SEPARATE STORM SEWER SYSTEMS**
**PERMIT NO. CAS000004**

The California Regional Water Quality Control Board, Central Valley Region, (Central Valley Water Board) finds that:

**Authority for Designation**

1. The National Pollutant Discharge Elimination System (NPDES) General Permit for Waste Discharge Requirements for Storm Water Discharges from Small Municipal Separate Storm Sewer Systems (MS4), Order No. 2013-0001-DWQ, (Small MS4 General Permit) was adopted by the State Water Resources Control Board (State Water Board) on 5 February 2013 and amended on 19 December 2017.

2. The Small MS4 General Permit applies to a subset of Small MS4s, designated in accordance with federal regulations and criteria identified in the Permit. The State Water Board designated all Small MS4s located within an urbanized area and Small MS4s located outside of an urbanized area that have high population and population density or discharges to an Area of Special Biological Significance.[1]

3. Additionally, the Small MS4 General Permit allows the Regional Water Boards to designate additional Small MS4s on a case-by-case determination. Designations must be "based on the potential of a Small MS4's discharges to result in exceedances of water quality standards, including impairment of designated uses, or other significant water quality impacts, including habitat and biological impacts."[2] Such designations must be approved by the Regional Water Board following public review and comment.[3]

4. If a Regional Water Board designates a Regulated Small MS4, the Executive Director of the State Water Board may amend Attachments A or B of the Small MS4 General Permit to add Regional Water Board designations.[4]

5. To allow for an appropriate regulatory approach, the Small MS4 General Permit addresses differences between Traditional and Non-Traditional Small MS4s. The Small MS4 General Permit identifies Non-Traditional Small MS4s as MS4s that are similar to MS4s serving cities and counties but that are operated at other governmental facilities

---

[1] Findings 19 through 23 of the Small MS4 General Permit.
[2] Finding 24 and Section G of the Small MS4 General Permit.
[3] Finding 24 and Section G of the Small MS4 General Permit.
[4] Section G of the Small MS4 General Permit.

Defs_000960

R5-2019-0006                                                              8 February 2019
California Department of Corrections
Mule Creek State Prison

such as public campuses, military bases, and prison and hospital complexes. For purposes of the designation of state and federal prison complexes as Non-Traditional Small MS4s, the Small MS4 General Permit interprets prison complexes to mean prison facilities with a resident and staff population of 5,000 or more.[5]

## Designation of Mule Creek State Prison

6. The California Department of Corrections and Rehabilitation owns and operates a municipal separate storm sewer collection system at Mule Creek State Prison (MCSP) located in Ione within Amador County. The storm sewer collection system from MCSP discharges to Mule Creek.

7. The total MCSP population as of January 2019 is 5,395, which consists of 3,968 inmates[6] and 1,427 authorized staff positions.[7]

8. MCSP has had water quality issues in the past year. Sampling data collected by Central Valley Water Board and MCSP staff indicate that the discharge of stormwater from the facility has the potential to result in exceedances of water quality standards in Mule Creek.

9. The Central Valley Water Board has determined that MCSP meets the designation criteria in the Small MS4 General Permit and should be designated as a Non-Traditional Small MS4.

10. The Central Valley Water Board has notified the California Department of Corrections and Rehabilitation and interested agencies and persons of its intent to approve the resolution and has provided them with an opportunity to submit comments.

11. The Central Valley Water Board heard and considered all comments regarding this Resolution at a public hearing on 8 February 2019.

12. Following adoption of this Resolution, the Executive Director of the State Water Board may amend Attachment B to add MCSP as a Non-Traditional Small MS4.

13. The Executive Director will consider the record of these proceedings before the Central Valley Water Board, including comments submitted to the Central Valley Water Board from interested persons, prior to making any amendment to Attachment B.  The State Water Board will accept additional written comments until 11 February 2019.

## Trash Provisions

14. On 7 April 2015, the State Water Board amended statewide Water Quality Control Plans[8] to address the pervasive impacts trash has on the beneficial uses of the State's surface waters (Trash Provisions).

---

[5] Finding 17 of Small MS4 General Permit and p. 6 of the Small MS4 General Permit Fact Sheet.
[6] California Department of Corrections and Rehabilitation Division of Internal Oversight and Research Office of Research, 2 January 2019.
[7] COMPSTAT Strategic and Performance Planning Statistical Report (SB601), 4 December 2018
[8] Amendments to the Water Quality Control Plan for Ocean Waters of California (Ocean Plan) to Control Trash and Part 1 Trash Provisions of the Water Quality Control Plan for Inland Surface Waters, Enclosed Bays, And Estuaries of California (ISWEBE Plan) became effective on 2 December 2015. Documents

Defs_000961

R5-2019-0006                                                                8 February 2019
California Department of Corrections
Mule Creek State Prison

15. The Trash Provisions establish statewide narrative water quality objectives providing that trash shall not be present in surface waters and prohibitions of trash discharge to surface waters or trash deposition where it may be discharged into surface waters.

16. The Trash Provisions required the State Water Board to initiate implementation of the Trash Provisions by 2 June 2017 through an amendment to the Small MS4 General Permit or through monitoring and reporting orders issued pursuant to Water Code sections 13267 or 13383.[9]

17. The State Water Board did not amend the Small MS4 General Permit within the time frame specified in the Trash Provisions.  Therefore, initial implementation steps are being required through the issuance of Water Code section 13383 Orders.  For existing permittees, Water Code section 13383 Orders were issued on 1 June 2017.  For newly Regulated Small MS4s, the State Water Board will issue Water Code section 13383 Orders upon designation.[10]

18. Newly designated Small MS4s must achieve full compliance with the Trash Provisions within 10 years of the effective date of designation.[11]

### California Environmental Quality Act

19. Issuance of this Resolution is exempt from the provisions of the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.) (CEQA) pursuant to Water Code section 13389.

## THEREFORE, BE IT RESOLVED THAT:

1. The Central Valley Water Board designates Mule Creek State Prison as a Regulated Small MS4 under the Small MS4 General Permit.

2. The Central Valley Water Board requests that the Executive Director of the State Water Board amend Attachment B of the Small MS4 General Permit to include Mule Creek State Prison as a Non-Traditional Small MS4.

3. The Central Valley Water Board requests that the State Water Board issue a 13383 Order to California Department of Corrections and Rehabilitation in accordance with the Trash Provisions.

Any person aggrieved by this action of the Central Valley Water Board may petition the State Water Board to review the action in accordance with California Water Code section 13320 and California Code of Regulations, title 23, section 2050 and following.  The State Water Board must *receive* the petition by 5:00 p.m., 30 days after the date of this Resolution, except that if the thirtieth day following the date of this Resolution falls on a Saturday, Sunday, or state holiday, the petition must be received by the State Water Board by 5:00 p.m. on the next business day. Copies of the law and regulations applicable to filing petitions may be found on the internet at

---

associated with be Amendments may be downloaded from the following site at
http://www.waterboards.ca.gov/water_issues/programs/trash_control/documentation.shtml.
[9] Chapter IV.A.5.a(1) of the ISWEBE Plan and Chapter III.L.4.a(1) of the Ocean Plan.
[10] Chapter IV.A.5.a(1)(B) of the ISWEBE Plan and Chapter III.L.4.a(1)(B) of the Ocean Plan.
[11] Chapter IV.A.5.a(1)(B)(4) of the ISWEBE Plan and Chapter III.L.4.a(1)(B)(4) of the Ocean Plan.

Defs_000962

R5-2019-0006                                                                                  8 February 2019
California Department of Corrections
Mule Creek State Prison

http://www.waterboards.ca.gov/public_notices/petitions/water_quality or will be provided upon request.

I, PATRICK PULUPA, Executive Officer, do hereby certify the foregoing is a full, true, and correct copy of the Resolution adopted by the California Regional Water Quality Control Board, Central Valley Region, **on 8 February 2019**.

*Original signed by*

_____
PATRICK PULUPA, Executive Officer

4

Defs_000963

EXHIBIT U





July 27, 2018

Joe Lizarraga                          Facility Info:   Mule Creek State Prison
Mule Creek State Prison                                 4001 Highway 104
4001 Highway 104                                        Ione, CA 95640
4001 Highway 104, CA 95640             SIC Code(s):

NEC ID:                                5S03NEC004161

Date Processed:                        May 22, 2018

RECEIPT OF YOUR NO EXPOSURE CERTIFICATION (NEC) UNDER THE GENERAL PERMIT
FOR STORM WATER DISCHARGES ASSOCIATED WITH INDUSTRIAL ACTIVITY (INDUSTRIAL
GENERAL PERMIT) ORDER NO 2014-0057-DWQ, NPDES NO. CAS000001

The State Water Resources Control Board (State Water Board) has received and processed your
Permit Registration Documents to register for NEC coverage.

The NEC ID assigned to the facility is referenced above. Please use this number in any future
communication regarding the Industrial General Permit.

Notice of Termination (NOT) is required to be submitted to the State Water Board should the
owner or operator of the facility change or upon closure of the facility. Until an NOT is submitted
you will continue and are responsible to pay the annual fee invoiced each April.

If you have any further questions regarding permit requirements, please contact your
local Regional Water Board at 916-464-3291.

Please visit the storm water web page at
www.waterboards.ca.gov/water_issues/programs/stormwater/industrial.shtml
for storm water related information.

Sincerely,
Storm Water Program
Division of Water Quality

FELICIA MARCUS, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812   |   www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

♺ RECYCLED PAPER

Defs_000964





July 05, 2019

Joe Lizarraga
Mule Creek State Prison
4001 Highway 104
4001 Highway 104, CA 95640

Facility Info:   Mule Creek State Prison
                 4001 Highway 104
                 Ione, CA 95640

SIC Code(s):

NEC ID:              5S03NEC004161

Date Processed:      May 22, 2018

RECEIPT OF YOUR NO EXPOSURE CERTIFICATION (NEC) UNDER THE GENERAL PERMIT
FOR STORM WATER DISCHARGES ASSOCIATED WITH INDUSTRIAL ACTIVITY (INDUSTRIAL
GENERAL PERMIT) ORDER NO 2014-0057-DWQ, NPDES NO. CAS000001

The State Water Resources Control Board (State Water Board) has received and processed your
Permit Registration Documents to register for NEC coverage.

The NEC ID assigned to the facility is referenced above. Please use this number in any future
communication regarding the Industrial General Permit.

Notice of Termination (NOT) is required to be submitted to the State Water Board should the
owner or operator of the facility change or upon closure of the facility. Until an NOT is submitted
you will continue and are responsible to pay the annual fee invoiced each April.

If you have any further questions regarding permit requirements, please contact your
local Regional Water Board at 916-464-3291.

Please visit the storm water web page at
www.waterboards.ca.gov/water_issues/programs/stormwater/industrial.shtml
for storm water related information.

Sincerely,
Storm Water Program
Division of Water Quality

JOAQUIN ESQUIVEL, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812   |   www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

RECYCLED PAPER

Defs_000965





July 03, 2020

Joe Lizarraga
Mule Creek State Prison
4001 Highway 104
4001 Highway 104, CA 95640

Facility Info:  Mule Creek State Prison
4001 Highway 104
Ione, CA 95640

SIC Code(s):

NEC ID:                              5S03NEC004161

Date Processed:                    May 22, 2018

RECEIPT OF YOUR NO EXPOSURE CERTIFICATION (NEC) UNDER THE GENERAL PERMIT
FOR STORM WATER DISCHARGES ASSOCIATED WITH INDUSTRIAL ACTIVITY (INDUSTRIAL
GENERAL PERMIT) ORDER NO 2014-0057-DWQ, NPDES NO. CAS000001

The State Water Resources Control Board (State Water Board) has received and processed your
Permit Registration Documents to register for NEC coverage.

The NEC ID assigned to the facility is referenced above. Please use this number in any future
communication regarding the Industrial General Permit.

Notice of Termination (NOT) is required to be submitted to the State Water Board should the
owner or operator of the facility change or upon closure of the facility. Until an NOT is submitted
you will continue and are responsible to pay the annual fee invoiced each April.

If you have any further questions regarding permit requirements, please contact your
local Regional Water Board at 916-464-3291.

Please visit the storm water web page at
www.waterboards.ca.gov/water_issues/programs/stormwater/industrial.shtml
for storm water related information.

Sincerely,
Storm Water Program
Division of Water Quality

JOAQUIN ESQUIVEL, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812   |   www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

RECYCLED PAPER

Defs_000966

 

September 23, 2021

Patrick Covello
Mule Creek State Prison
4001 Highway 104
4001 Highway 104, CA 95640

Facility Info:  Mule Creek State Prison
4001 Highway 104
Ione, CA 95640

SIC Code(s):

NEC ID:                          5S03NEC004161

Date Processed:              May 22, 2018

RECEIPT OF YOUR NO EXPOSURE CERTIFICATION (NEC) UNDER THE GENERAL PERMIT FOR STORM WATER DISCHARGES ASSOCIATED WITH INDUSTRIAL ACTIVITY (INDUSTRIAL GENERAL PERMIT) ORDER NO 2014-0057-DWQ, NPDES NO. CAS000001

The State Water Resources Control Board (State Water Board) has received and processed your Permit Registration Documents to register for NEC coverage.

The NEC ID assigned to the facility is referenced above. Please use this number in any future communication regarding the Industrial General Permit.

Notice of Termination (NOT) is required to be submitted to the State Water Board should the owner or operator of the facility change or upon closure of the facility. Until an NOT is submitted you will continue and are responsible to pay the annual fee invoiced each April.

If you have any further questions regarding permit requirements, please contact your local Regional Water Board at 916-464-3291.

Please visit the storm water web page at
www.waterboards.ca.gov/water_issues/programs/stormwater/industrial.shtml
for storm water related information.

Sincerely,
Storm Water Program
Division of Water Quality

JOAQUIN ESQUIVEL, CHAIR  |  EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812  |  www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

RECYCLED PAPER

Defs_000967