JENNIFER HARTMAN KING (SBN 211313)
ALANNA LUNGREN (SBN 269668)
WILLIAM D. MARSH (SBN 200082)
J. R. PARKER (SBN 320526)
ANDREYA WOO NAZAL (SBN 327651)
HARTMAN KING PC
520 Capitol Mall, Suite 750
Sacramento, CA  95814
Telephone:  (916) 379-7530; Facsimile:  (916) 379-7535
JHartmanKing@HartmanKingLaw.com
ALungren@HartmanKingLaw.com
WMarsh@HartmanKingLaw.com
JRParker@HartmanKingLaw.com
AWooNazal@HartmanKingLaw.com

Attorneys for Defendants KATHLEEN ALLISON,
in her official capacity as Secretary of the California Department
of Corrections and Rehabilitation; and PATRICK COVELLO,
in his official capacity as Warden of California Department of
Corrections and Rehabilitation Mule Creek State Prison

Exempt From Filing Fees Pursuant
To Government Code Section 6103

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>KATHLEEN ALLISON, in her official capacity as Secretary of the California Department of Corrections and Rehabilitation,<br><br>Defendant.<br><br>COUNTY OF AMADOR, *a public agency of the State of California,*<br><br>Plaintiff,<br>v.<br><br>KATHLEEN ALLISON, in her official capacity as Secretary of the California Department of Corrections and Rehabilitation; and PATRICK COVELLO, in his official capacity as Warden of California Department of Corrections and Rehabilitation Mule Creek State Prison,<br><br>Defendants. | Case No. 2:20-CV-02482-WBS-AC<br>[consolidated with 2:21-CV-00038-WBS-AC]<br><br>**DEFENDANTS' SEPARATE STATEMENT OF DISPUTED FACTS IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION**<br><br>Date:  August 22, 2022<br>Time: 1:30 p.m.<br>Courtroom: 5<br>Judge: Hon. William B. Shubb<br><br>(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 to 1387)<br><br>Final Pretrial Conf.: February 13, 2023<br>Trial Setting Conf.: April 18, 2023 |

00053977.1

Pursuant to Federal Rules Civil Procedure 56(c)(1) and Local Rule 260(b), Defendants KATHLEEN ALLISON, in her official capacity as Secretary of the California Department of Corrections and Rehabilitation, and PATRICK COVELLO, in his official capacity as Warden of California Department of Corrections and Rehabilitation, Mule Creek State Prison ("Defendants"), hereby submit their Separate Statement Of Disputed Facts in Support of Defendants' Opposition to Plaintiffs County Of Amador's and California Sportfishing Protection Alliance's Motion For Summary Adjudication, together with references to supporting material facts and cites to supporting evidence.

| **DISPUTED MATERIAL FACT** | **SUPPORTING EVIDENCE** |
|---|---|
| 1. CDCR is the state agency that operates the MCSP, located at 4001 Highway 104, in the City of Ione, California. | Excerpt from Revised Stormwater Collection System Investigation Report of Findings, revised June 2020, prepared by SHN Engineers & Geologists for California Department of Corrections and Rehabilitation, ("2020 Collection System Investigation Report"), Defendants' Appendix ("Defs." Appx."), Ex. H, at Defs_000585-Defs_000711. |
| 2. CDCR houses approximately 3,800 inmates and provides job training and work opportunities for those inmates at MCSP, which includes providing space for the California Prison Industry to carry out meat packing, coffee roasting and packing, and textile manufacturing operations. | Defs.' Appx., Ex. H at Defs_000605-606; Declaration of Anthony Orta, filed concurrently ("Orta Decl.") at ¶¶ 4, 9; Mule Creek State Prison Information Sheet for NEC Application, dated May 3, 2018, ("NEC Information Sheet"), Defendants' Appendix ("Defs." Appx."), Ex. S. |
| 3. MCSP operates a waste water treatment plant ("WWTP") and a separate stormwater collection system subject to two National Pollutant Discharge Elimination System ("NPDES") permits relevant to the MSA: (1) the State Water Resource Control Board's Permit for Waste Discharge Requirements for Storm Water Discharges from Small Municipal Separate Storm Sewer Systems ("MS4"), Order 2013-0001-DWQ (the "Small MS4 Permit" or "Permit"); and (2) the State Board's General Permit for Storm Water Discharges Associated with Industrial Activities, Order 2014-0057-DWQ, as amended (the "Industrial General Permit"). | Declaration of Timothy Simpson, filed concurrently ("Simpson Decl.") at ¶ 11; National Pollutant Discharge Elimination System ("NPDES") General Permit for Waste Discharge Requirements for Storm Water Discharges from Small Separate Storm Sewer System ("MS4s"), State Board Order 2013-0001-DWQ, NPDES No. CAS000004, adopted February 4, 2013 ("Small MS4 Permit"), Defendants' Appendix ("Defs." Appx."), Ex. 13; Designation of Mule Creek State Prison as Small MS4 Permittee under the Small MS4 General Permit, State Water Resources Control Board Order WQ 2019-0009-EXEC Amending Water Quality Order 2013-0001-DWQ, NPDES No. CAS000004, dated April 24, 2019, ("Small MS4 Designation"), Defendants' Appendix ("Defs." Appx."), Ex. T; National Pollutant Discharge Elimination System ("NPDES") General Permit for Storm Water Discharges Associated with Industrial |

00053977.1                                    1

**DEFENDANTS' SEPARATE STATEMENT OF DISPUTED FACTS (PURSUANT TO LR 260(B))
IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION**

| | | |
|---|---|---|
| 1<br>2<br>3 | | Activities, 2014-0057-DWQ, NPDES No. CAS00001, adopted April 1, 2014, as amended ("Industrial General Permit"), Defendants' Appendix ("Defs." Appx."), Ex. 15. |
| 4<br>5 | 4. The Facility's stormwater system consists of a network of conveyances, culverts, outfalls, and "bioswales" that allow for settling out and filter contaminants from stormwater before it reaches Mule Creek. | Orta Decl. at ¶¶ 13-14; Simpson Decl. at ¶ 22(c)(ii). |
| 6<br>7<br>8<br>9 | 5. Stormwater runoff from MCSP collects in a subterranean ditch paralleling the lethal electrified fence also surrounding the Facility, with the ditch draining to the Main Outfall (at Guard Tower 3 ("GT-3") and the Secondary Outfall (at Guard Tower 9 ("GT-9"). | Defs.' Appx., Ex. H, at Defs_000605 – Defs_000606; and Defs_000611. |
| 10<br>11 | 6. There are culverts at the Main Outfall and Secondary Outfall that pass under the access road that surrounds the perimeter ditch at the Facility. | Defs.' Appx., Ex. H, at Defs_000605 and Defs_000624. |
| 12<br>13 | 7. During periods of heavy rain, culvert "slide gates" that block the flow through the culvert pipes are raised allowing stormwater flows to enter the culverts. | Defs.' Appx., Ex. H, at Defs_000624-Defs_000626. |
| 14<br>15 | 8. At the end of the culvert pipes, flows enter the vegetated bioswale channels that eventually discharge to Mule Creek at monitoring locations MCSP2 and MCSP3 | Defs.' Appx., Ex. H, Defs_000624-Defs_000626. |
| 16<br>17<br>18 | 9. From the Main Outfall at GT-3 (which is also the location of monitoring location MCSP6), the vegetated bioswale channel extends approximately 1500 feet to the discharge point into Mule Creek at MCSP3 | Orta Decl. at ¶ 14. |
| 19<br>20<br>21 | 10. From the Secondary Outfall at GT-9 (which is also the location of monitoring location MCSP 5), the bioswale channel extends approximately 630 feet to the discharge point into Mule Creek at MCSP2. | Orta Decl. at ¶ 13. |
| 22<br>23 | 11. As of December 22, 2020, the Regional Board has required the Facility to sample monitoring locations MCSP5 and MCSP6 as the point of compliance ("POC") for monitoring outfall to Mule Creek | Regional Board Water Code section 13383 Order to Monitor Discharges to Surface Water, etc., dated December 22, 2020 ("13383 Order 2020"), Defendants' Appendix ("Defs.' Appx."), Ex. 7 |
| 24<br>25<br>26<br>27 | 12. Data collected from MCSP5 and MCSP6 are not representative of stormwater discharges to Mule Creek because stormwater runoff from these locations after the outfall travels approximately 630 and 1500 feet respectively through vegetated bioswales prior to discharge to Mule Creek. | Simpson Decl. at ¶ 22(c)(ii). |
| 28 | 13. MCSP is currently in year four of the | Orta Decl. at ¶¶ 13, 14. |

**DEFENDANTS' SEPARATE STATEMENT OF DISPUTED FACTS (PURSUANT TO LR 260(B))
IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION**

| | | |
|---|---|---|
| | phased compliance period set out in the Small MS4 Permit. | |
| 14. | CDCR submitted a No Exposure Certification ("NEC") with the Water Board in 2018. | No Exposure Certification ("NEC") to enroll the Facility under the NPDES General Permit Storm Water Discharges Associated with Industrial Activities, WQ Order No. 2014-9957-DWQ, certified May 8, 2018, Defendants' Appendix ("Defs." Appx.), Ex. 14. |
| 15. | An NEC acts as an exemption to the Industrial General Permit requirements, such that compliance with the NEC is deemed compliance with the Industrial General Permit. | Simpson Decl. at ¶ 22(k)(ii); Defs.' Appx., Ex. Q, at Defs_000935. |
| 16. | CDCR's facility was inspected by the Water Board on May 22, 2018, and it has been annually inspected since, including most recently on September 23, 2021, and the Water Board found no adverse findings. | State Water Resources Control Board Receipt of No Exposure Certification (NEC) Under the Industrial General Permit, first processed May 22, 2018 (receipts dates July 27, 2018; July 5, 2019; July 3, 2020; September 23, 2021) ("NEC Certification Receipts"), Defendants' Appendix ("Defs.' Appx."), Defendants' ("Defs.") Ex. U, at Defs_000964; NEC Inspection Report, Defendants' Appendix ("Defs.' Appx."), Ex. Q, at Defs_000935-Defs_000950. |
| 17. | As recently as February 11, 2021, the Water Board confirmed that CDCR is in compliance with the Industrial General Permit and the No Exposure Certification with no adverse findings. | Simpson Decl. at ¶ 22(k)(iv); Defs.' Appx., Ex. Q, at Defs_000935-Defs_000950. |
| 18. | The Water Board's approach to compliance with the Small MS4 Permit is encapsulated in the terms of the permit. | The Small MS4 Permit, Defs.' Appx., Ex. 13, at Pls_000373. |
| 19. | The Small MS4 Permit requires that CDCR:<br>[U]se information gained through effectiveness assessment and MS4 discharge and receiving water monitoring to identify priority areas for program improvement. In addition, the Permittee shall identify and make modifications to BMPs, including new BMPs or modification to existing BMPs, to improve effectiveness in each priority area. The Permittee shall consult with the applicable Regional Water Board in setting expectations for the scope, timing, and frequency of BMP modifications.<br><br>The Water Board reviews CDCR's submittals regarding its program effectiveness and provides feedback, which includes discussion on what BMPs and controls CDCR has implemented or is in the process of implementing to comply with the Small | Defs.' Appx., Ex. 13, at Pls_000317-319. |

**DEFENDANTS' SEPARATE STATEMENT OF DISPUTED FACTS (PURSUANT TO LR 260(B))
IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION**

| | |
|---|---|
| MS4 Permit. | |
| 20. Through the iterative process for compliance with the Permit, MCSP has developed and implemented various BMP measures at the Facility. For example, the Warden provides informational memoranda to the MCSP staff regarding the stormwater prevention program, including such topics as the handling of trash to prevent it from entering the stormwater collection system. | Orta Decl. at ¶ 5; Simpson Decl., at ¶ 20. |
| 21. The Facility provides landscape training to staff and implements administrative controls, such as rescheduled irrigation to reduce runoff. | Orta Decl. at ¶ 6. |
| 22. The Facility's stormwater program also includes physical control measures at designated areas of the stormwater collection system. | Orta Decl. at ¶ 6. |
| 23. BMPs implemented at storm drains around the facility include fabric, wattles, designed v-ditches to catch sediment from runoff, and paved aprons to filter or reduce contaminants in discharges. | Orta Decl. at ¶ 6. |
| 24. Wash water at work areas or for washing vehicles is drained to the sanitary sewer instead of the stormwater collection system, or such work is conducted on unpaved areas where water percolates or evaporates before it reaches the storm drains. | Orta Decl. at ¶ 6. |
| 25. In addition, bioswales are a prominent BMP feature at the Facility: near MCSP6 a bioswale channel extends approximately 1500 feet to the discharge point into Mule Creek at MCSP3, and a second bioswale channel extends approximately 630 feet to the discharge point into Mule Creek at MCSP2. | Orta Decl. at ¶¶ 13-14; Simpson Decl., at ¶ 22(c)(ii). |
| 26. These vegetated bioswale channels provide a natural filter for flows that pass through them before it reaches Mule Creek. | Simpson Decl. at ¶ 22(c)(ii). |
| 27. MCSP has a BMP project that is currently under construction, which will result in the installation of a permanent monitoring station at MCSP 2 and MCSP 3. | Orta Decl. at ¶ 7. |
| 28. CDCR's BMPs at current monitoring locations MCSP5 and MCSP6 include construction of curbs that redirect non-stormwater flows to float-controlled pumps that pump non-stormwater flows to the wastewater treatment plant. | Mule Creek State Prison's Non-Storm Water Discharge Elimination Plan, dated September 1, 2021, ("Non-Storm Water Discharge Elimination Plan"), Defendants' Appendix ("Defs.' Appx."), Ex. A; Mule Creek State Prison's Revised Non-Storm Water Discharge Elimination Plan, dated May 13, 2022, ("Revised Non-Storm Water Discharge Elimination Plan"), Defendants' Appendix |

00053977.1                                    4

**DEFENDANTS' SEPARATE STATEMENT OF DISPUTED FACTS (PURSUANT TO LR 260(B))
IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION**

| | |
|---|---|
| | ("Defs.' Appx."), Ex. B. |
| 29. CDCR curtailed the irrigation schedule for all areas at the Facility to minimize the potential for potable landscape irrigation runoff. MCSP is also implementing the Regional Board-approved Enhanced Compliance Action involving replacement of the entire landscape irrigation system at the Facility. | Non-Storm Water Discharge Elimination Plan, Defs.' Appx., Ex. A; Settlement Agreement and Stipulation for Entry of Administrative Civil Liability Order, Order No. R5-2021-001, Attachment B, dated March 11, 2021 ("ACLO"), Defendants' Appendix ("Defs.' Appx."), Ex. N, at Defs_00923-00925. |
| 30. From 2018 to 2022, an independent consultant conducted a investigation of the stormwater and waste water collection systems in close consultation with the Water Board specifically to determine if wastewater commingled with stormwater. | Defs.' Appx., Ex H, at Defs_000605. |
| 31. Phase I of the investigation included:<br><br>• The collection and laboratory sampling of soil and water samples from both systems;<br>• Visual manhole and closed-circuit television (CCTV) inspections of both systems;<br>• Dye and smoke testing of the sewer system that could detect leaks, track any migration of material, and assess "connectivity of pipe systems" (Section 2.4.1);<br>• Daily sampling of stormwater within the collection system;<br>• Baseline soil and water sampling; and,<br>• Identifying the source of fecal coliform results using deoxyribonucleic (DNA) microbial source tracking. | Defs.' Appx., Ex H, at Defs_000614. |
| 32. During the investigation, CDCR worked closely with the Water Board—which collected its own "split" samples to confirm CDCR's results—and obtained the Water Board's approval of the sampling plans. Upon completion, Phase I of the report was provided to the Water Board for its review. | Def.'s Appx., Ex. H, at Defs 000617-000618. |
| 33. The results of the investigation are documented in a report entitled Revised Storm Water Collection System Investigation Findings Report, originally completed in 2018 and last updated on June 19, 2020 (the "2020 Collection System Investigation Report"). The 2020 Collection System Investigation Report concluded that: (1) there was no tracer dye observed in the stormwater system (Section | Defs.' Appx., Ex. H, at Defs 000645, 000798. |

00053977.1                              5

**DEFENDANTS' SEPARATE STATEMENT OF DISPUTED FACTS (PURSUANT TO LR 260(B))
IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION**

| | | |
|---|---|---|
| | 3.4.2.1); (2) there are no cross-connections between the stormwater and sewer systems (Section 5.0); (3) there was no evidence that the stormwater system was impacted by sewage, wastewater, or grey water; and, (4) there was no sewage discharging into Mule Creek. | |
| 34. | The Water Board and CDCR also worked closely with an independent public research and development agency, known as the Southern California Coastal Water Research Project ("SCCWRP") to further investigate the sources and scope of fecal matter in Mule Creek. | Defs.' Appx., Ex. G. |
| 35. | SCCWRP conducted an extensive investigation consisting of twenty-two (22) days of sampling, 14 of which were during or promptly after rain events, and collected numerous samples from Mule Creek both upstream and downstream of MCSP. | Defs.' Appx., Ex. G, at Defs_000552. |
| 36. | SCCRWP's January 2021 report entitled, "Quantification of Sources of Fecal Pollution at Mule Creek," (the "2021 Sources of Fecal Pollution Report") demonstrates that fecal bacteria detected in stormwater at MCSP is almost entirely from animal sources (bird and deer) and not from any appreciable human sources. | Defs.' Appx., Ex. G, at Defs_000552, Defs_000576. |
| 37. | It further concluded that fecal bacteria levels in Mule Creek were often higher upstream of MCSP and that human fecal matter in stormwater was at negligible levels. | Defs.' Appx., Ex. G, at Defs_000552, Defs_000576. |
| 38. | The 2021 Sources of Fecal Pollution Report demonstrated that the overall water quality conditions of Mule Creek were heavily impacted by cows (i.e.. cattle ranches) upstream of MCSP and background sources (birds and deer), rather than human fecal contributions | Defs.' Appx., Ex. G, at Defs_000552, Defs_000576. |
| 39. | The Regional Board did not take enforcement action against Defendants, as the Water Board instead rescinded its Section 13267 Order on June 14, 2021. | Rescission of the 14 February 2018 13267 Order, dated June 14, 2021 ("13267 Order Recission"), Defendants' Appendix ("Defs.' Appx."), Ex. L, Defs 000880-881. |
| 40. | In three regulatory orders, the Water Board determined that Mule Creek's beneficial uses did not include municipal and domestic water supply. | Regional Board Water Code 13383 Order to Monitor Discharges to Surface Water, etc., dated August 6, 2020, Defs.' Appx., Ex. 6 at Pls_000001-000011; Regional Board Water Code 13383 Order to Monitor Discharges to Surface Water, etc., dated December 22, 2020, Defs.' Appx., Ex. 7 at Pls_000011-000022; Regional Board Water Code 13383 Order to Monitor Discharges to Surface Water, etc., dated November 29, 2021, Defs.' Appx., Ex. 8 at Pls_000023-000036. |

00053977.1                                     6

**DEFENDANTS' SEPARATE STATEMENT OF DISPUTED FACTS (PURSUANT TO LR 260(B))
IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION**

| | |
|---|---|
| 41. In the January 28, 2021 Settlement Agreement and Stipulation for Entry of Administrative Civil Liability Order, Order No. R5-2021-0001, the Water Board reiterated that Mule Creek/Mokelumne River is designated are irrigation and stock watering; contact and noncontact recreation; warm and cold freshwater habitat; warm and cold water migration; warm and cold spawning; and wildlife habitat. | Defs.' Appx., Ex. N, at Defs_000890. |
| 42. Under the Clean Water Act section 303(d), states are required to identify waterbodies that do not meet, or are not expected to meet, WQS (known as "impaired waterbodies"). Thus, waterbodies in California that exceed protective WQS are placed on the state's 303(d) List. Based on California's Listing Policy in developing the 303(d) list, the Water Board evaluates water quality-related data and information. Id. There is no assessment data for Mule Creek on the Water Board's 303(d) List for 2020-2022, the current watershed impairment list for the area, but there is assessment data for Dry Creek, which is the next waterbody receiving flows from Mule Creek. Id. The Water Board did not designate Dry Creek as impaired. | Simpson Decl. at ¶ 22(a)(i). |
| 43. Industrial activities take place at MCSP, including sewing, coffee roasting, and meat packing. | Defs.' Appx., Ex. J, at Defs_000720; Orta Decl. at ¶ 9. |
| 44. These activities are not exposed to stormwater and Defendants annually certify a No Exposure Certification ("NEC") under the General Permit for Storm Water Discharges Associated with Industrial Activities ("IGP") to this effect. | Defs.' Appx., Ex. U; Orta Decl. at ¶ 9. |
| 45. The Water Board inspects the areas at MCSP applicable to the No Exposure Certification and has found that MCSP is in compliance. | Defs.' Appx., Ex. J, at Defs_000723. |
| 46. CDCR has implemented BMPs as part of its compliance with the Small MS4 permit. | Orta Decl. at ¶ 3, 6, 7. |
| 47. Neither Mule Creek nor Dry Creek are impaired. | Simpson Decl. ¶ 22(b)(iii). |
| 48. CDCR obtained the Small MS4 Permit that governs its stormwater management. | Orta Decl. at ¶ 5; Simpson Decl. at ¶ 11. |
| 49. The Water Board has determined that permit compliance is achieved by Small | Simpson Decl. ¶ 20. |

00053977.1                                7

| | |
|---|---|
| MS4 permittees who: (1) implement BMPs in lieu of being subject to numeric water quality-based effluent limitations; and (2) submit to an iterative process with the Board for BMP improvement to achieve water quality standards. | |
| 50. The Board explicitly states in Section IX of the Small MS4 Permit Fact Sheet that the Small M4 Permit allows: "implementation of BMPs in lieu of numeric water quality-based effluent limitations and further, in lieu of 'strict compliance' with water quality standards." | Simpson Decl. ¶ 20; State Water Resources Control Board Fact Sheet for NPDES General Permit and Waste Discharge Requirements for Storm Water Discharges from Small Municipal Separate Storm Sewer Systems, Order No. 2013-0001-DWQ, as Amended by Order 2017-XXXXDWQ ("MS4 Fact Sheet"), Defendants' Appendix ("Defs." Appx."), Ex. K, at Defs_000756. |
| 51. The MS4 Fact Sheet provides that "the State Board…has prescribed an iterative process of BMP improvement to achieve water quality standards." | Simpson Decl. ¶ 20; Defs. Appx., Ex. K, at Defs_000756. |
| 52. The sampling locations that Ms. Ashby evaluated, the analytical monitoring locations MCSP5 and MCSP6, including water quality and water flow volume at these locations, are not representative of the actual water quality and volume that is discharged to Mule Creek because MCSP 5 is 630 feet up-stream from the POC at MCSP2, and MCSP6 is 1500 feet upstream from the POC at MCSP3. | Simpson Decl. at ¶ 22(c)(ii). |
| 53. Mule Creek is ephemeral and if water is present in Mule Creek when non-stormwater sampling occurs at MCSP5 and MCSP6, the water in Mule Creek is stagnant. | Simpson Decl., ¶ 22(h)(i); Defs.' Appx, Ex. M, at Defs_000882 -000883. |
| 54. Defendants have not observed that any non-storm water discharges through the MS4 to Mule Creek, as "[t]he non-storm water, landscape irrigation runoff recorded at MCSP5 and MCSP6 does not discharge to Mule Creek and is retained on MCSP property within the constructed earthen channels that run between MCSP5 and MCSP2, and MCSP6 and MCSP3." | Simpson Decl., at ¶ 22(c)(ii). |
| 55. If non-stormwater is observed at MCSP5 and MCSP6, it is not possible to monitor MCSP4 concurrently for "flowing" receiving water, as Mule Creek is ephemeral and typically dry or stagnant in these instances. | Simpson Decl., ¶ 22(d)(i); Defs.' Appx, Ex. M, at Defs_000882 -000883. |
| 56. Samples collected from MCSP5 and MCSP6 are of water before it has flowed through heavily vegetated bioswale channels (if stormwater flows, as non-stormwater flows do not leave the bioswale channels) and that are upgradient by 630 | Simpson Decl. at ¶ 22(c)(ii); Orta Decl. at ¶¶ 13, 14. |

00053977.1                                8

**DEFENDANTS' SEPARATE STATEMENT OF DISPUTED FACTS (PURSUANT TO LR 260(B))
IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION**

| | |
|---|---|
| and 1500 feet, respectively, of POC locations MCSP2 and MCSP3. | |
| 57. Ms. Ashby improperly relies on samples collected from ponded and stagnant water taken from a location a considerable distance from Mule Creek that are not representative of stormwater that actually reaches the creek. | Simpson Decl. at ¶ 22(h). |
| 58. The Water Board designated Mule Creek's beneficial uses as not including municipal and domestic water supply and instead only including irrigation and stock watering (agricultural), recreational, warm and cold-water freshwater habitat, water migration, spawning and wildlife habitat as beneficial uses. | Defs.' Appx., Ex. 6, at Pls_000001; Defs.' Appx., Ex. 7 at Pls_000011; Defs.' Appx., Ex. 8, at Pls_000038; See also, Defs.' Appx., Ex. N, at Defs_000890. |
| 59. Ms. Ashby incorrectly applies the CTR criteria to numerous other stormwater samples. The CTR-based discharge limitations apply only to impaired receiving waters for which Total Maximum Daily Load ("TMDL") requirements apply, and there is no TMDL for the watersheds receiving flow from MCSP. | Simpson Decl. at ¶ 22(g)(i). |
| 60. Using the CTR criteria as the basis for establishing the Facility's purported violations of discharge prohibitions and/or receiving water limitations is improper. | Simpson Decl. at ¶ 22(g)(i). |
| 61. In order to establish a violation under these provisions, Plaintiffs must prove with undisputed evidence that discharges from MCSP actually reached the receiving waters (Mule Creek) and caused or contributed to receiving water exceedances of the applicable WQS. | Simpson Decl. at ¶ 22(c)(i). |
| 62. Analytical results from MCSP5 and MCSP6 are not representative of water quality at the point of discharge to Mule Creek, and monitoring data from these sampling points should not be used to assess compliance with discharge prohibitions and/or receiving water limitations. | Defs.' Appx., Ex. M at Defs_000882; Simpson Decl. ¶ 22(c)(ii). |
| 63. Any water collected in the stormwater collection perimeter ditch was prevented from leaving the system by physical barriers (slide gates) that block the culvert pipes that would, if slide gates were up, convey flows to two lengthy vegetated bioswales (bioswale from MCSP5 is approximately 630 feet long before meeting Mule Creek and bioswale from MCSP6 is approximately 1500 feet long before meeting Mule Creek). Thus, no | Simpson Decl. at ¶ 22(c)(ii); Orta Decl. at ¶¶ 13, 14. |

00053977.1     9

**DEFENDANTS' SEPARATE STATEMENT OF DISPUTED FACTS (PURSUANT TO LR 260(B))
IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION**

| | | |
|---|---|---|
| | discharges to Mule Creek were occurring at the time of Plaintiffs' March 9, 2022 inspection. | |
| 64. | CDCR's consultant investigated this issue by looking at multiple lines of evidence and concluded that there is no cross-contamination or evidence of sewage entering into the Facility's stormwater system. The results of the investigation are documented in the Revised Stormwater Collection System Investigation Report of Findings, revised June 2020, prepared by SHN Engineers & Geologists for California Department of Corrections and Rehabilitation, ("2020 Collection System Investigation Report") | Defs.' Appx., Ex. H, Defs_000708, 000693; Simpson Decl. at ¶ 23(b). |
| 65. | The 2020 Collection System Investigation Report concluded that: (1) there was no tracer dye observed in the stormwater system (Section 3.4.2.1); (2) there are no cross-connections between the stormwater and sewer systems (Section 5.0); (3) there was no evidence that the stormwater system was impacted by sewage, wastewater, or grey water; and (4) there was no sewage discharging into Mule Creek. | Defs.' Appx., Ex. H, Defs_000645, 000708, 000693; Simpson Decl. at ¶ 23(b). |
| 66. | The Small MS4 Permit Provision B.3 ("MS4 Provision B.3") prohibits "discharges through the MS4 of material other than stormwater to waters of the U.S. […] except as allowed under this Provision or as otherwise authorized by a separate NPDES permit." | Defs.' Appx., Ex 13, at Pls_000264. |
| 67. | CDCR conducted two major investigations of its stormwater and wastewater systems that refute Plaintiffs' claims of commingling or cross-contamination of the two systems. | Defs.' Appx., Ex. H, Defs_000585-000711. |
| 68. | From 2018 to 2022, CDCR's independent consultant conducted a multi-million-dollar investigation of its stormwater and wastewater collection systems, in close consultation with the Regional Board, specifically to determine if wastewater commingled with stormwater. | Defs.' Appx., Ex. H, at Defs_000585-Defs_000711. |
| 69. | Phase I of the investigation included:<br>- The collection and laboratory sampling of soil and water samples from both systems;<br>- Visual manhole and closed-circuit television (CCTV) inspections of both systems; | Defs.' Appx., Ex. H, Defs_000589. |

00053977.1                                                          10

**DEFENDANTS' SEPARATE STATEMENT OF DISPUTED FACTS (PURSUANT TO LR 260(B))
IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION**

| | |
|---|---|
| - Dye and smoke testing of the sewer system that could detect leaks, track any migration of material, and assess "connectivity of pipe systems" (Section 2.4.1);<br>- Daily sampling of stormwater within the collection system;<br>- Baseline soil and water sampling; and,<br>- Identifying the source of fecal coliform results using deoxyribonucleic (DNA) microbial source tracking. | |
| 70. The results of the investigation are documented in the 2020 Collection System Investigation Report. | Defs.' Appx., Ex. H, at Defs_000585-Defs_000711. |
| 71. The Water Board and CDCR also worked closely with an independent public research and development agency, known as the Southern California Coastal Water Research Project ("SCCWRP"), established in 1969 to improve the management of aquatic ecosystems, to further investigate the sources and scope of fecal matter in Mule Creek. | Defs.' Appx., Ex. G, at Defs 000549-584. |
| 72. In contrast to the 2 days of dry-weather sampling performed by Plaintiffs, SCCWRP conducted an extensive investigation consisting of twenty-two (22) days of sampling, 14 of which were during or promptly after rain events, and collected numerous samples from Mule Creek both upstream and downstream of MCSP. | Defs.' Appx., Ex. G, at Defs_000552. |
| 73. The 2021 Sources of Fecal Pollution Report demonstrates that fecal bacteria detected in stormwater at MCSP is almost entirely from animal (bird and deer) and not from any appreciable human sources. | Defs.' Appx., Ex. G, at Defs_000549-Defs_000584. |
| 74. The 2021 Sources of Fecal Pollution Report further concluded that fecal bacteria levels in Mule Creek were often higher upstream of MCSP and that human fecal matter in stormwater was at negligible levels. | Defs.' Appx., Ex. G, at Defs_000552. |
| 75. The 2021 Sources of Fecal Pollution Report demonstrates that the overall water quality conditions of Mule Creek were heavily impacted by cows (i.e., cattle ranches) upstream of MCSP and background sources (birds and deer), rather than human fecal contributions. | Defs.' Appx., Ex. G, at Defs_000552, Defs_000576. |
| 76. The Water Board did not take enforcement action against Defendants, despite | Defs.' Appx., Ex. L, at Defs 000880-881. |

00053977.1                                            11

**DEFENDANTS' SEPARATE STATEMENT OF DISPUTED FACTS (PURSUANT TO LR 260(B))
IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION**

| | |
|---|---|
| previously believing that there was a serious cross-contamination issue. The Water Board rescinded its Section 13267 Order requiring these investigation efforts on June 14, 2021. | |
| 77. Provision B.3 allows certain non-stormwater discharges from MCSP upon which Plaintiffs base their claim. | Defs.' Appx., Ex. K, Defs_000754. |
| 78. The likely sources of non-stormwater in the MS4 include groundwater and landscape irrigation water as the Collection System Investigation Report identifies the sources of non-stormwater in the MS4 to be potable landscape irrigation water and groundwater. | Simpson Decl. at ¶ 22(c)(ii); Defs'. Appx., Ex. H, at Defs_000682. |
| 79. The Water Board and MCSP agreed in the terms of the March 11, 2021 Settlement Agreement and Stipulation for Entry of Administrative Civil Liability Order No. R5-2021- 0001 ("Settlement and Stipulated ACL Order") to "resolve the violations alleged in this Stipulated Order," including alleged violations of non-stormwater discharge. | Defs.' Appx., Ex. N, at Defs_000893. |
| 80. The Regional Board and MCSP agreed on a $2.5 million administrative civil liability, but agreed that $894,189 of the liability would be suspended on condition that MCSP completes a landscape irrigation system replacement as an Enhanced Compliance Action ("ECA") and fund an investigation that resulted in the 2021 Sources of Fecal Pollution Report. MCSP is on schedule to complete the landscape irrigation system replacement in the next few years. | Defs.' Appx., Ex. N, at Defs_000893. |
| 81. The MS4 Permit, Provision D. Receiving Water Limitations, provides that discharges shall not cause or contribute to an exceedance of the WQS contained in a Statewide Water Quality Control Plan, the California Toxics Rule (CTR), or in the applicable Regional Water Board Basin Plan. | Defs.' Appx., Ex. 13, at Pls_000266. |
| 82. Data from sampling locations that Plaintiffs rely on to allege receiving water limitations violations are not located downstream of MS4 outfalls, and do not represent the water quality of the discharge to Mule Creek. | Simpson Decl. at ¶ 22(c)(i)(ii). |
| 83. Samples Plaintiffs collected at locations MCSP5 and MCSP6 are *not representative of the water quality of MCSP's stormwater discharges to Mule Creek* because stormwater runoff from these locations | Simpson Decl. at ¶ 22(c)(ii). |

00053977.1                                12

**DEFENDANTS' SEPARATE STATEMENT OF DISPUTED FACTS (PURSUANT TO LR 260(B))
IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION**

| | |
|---|---|
| travels approximately 630 and 1500 feet respectively through vegetated bioswales prior to discharge to Mule Creek. | |
| 84. Defendants' expert reviewed the available evidence regarding background levels of metals in the geology near MCSP and concluded that the Facility is not an appreciable source of metals. | Simpson Decl. at ¶ 22(d)(ii). |
| 85. Plaintiffs' consultant, Ms. Ashby, did not account for the background and upstream sources of metals. | Simpson Decl. at ¶ 22(d)(ii). |
| 86. Without considering these background metals contributions, Ms. Ashby's assertions that the alleged metals exceedances at MCSP4 are attributable to the Facility are unsupported. | Simpson Decl. at ¶ 22(i). |
| 87. MCSP responded to the Regional Board's Feb. 11, 2022 Letter, in conjunction with MCSP's May 13, 2022 Revised Non-Storm Water Discharge Elimination Plan submitted to the Regional Board, which provides the information requested in Item No. 4. | Orta Decl. at ¶ 3. |
| 88. The February 11, 2022 letter des not establish that Defendants committed any failure to implement BMPs in violation of Provision D. The letter from the Water Board contains a request to MCSP to document the BMPs that were or would be implemented. | Defs.' Appx., Ex. 17, at Pls_000616. |
| 89. Certain industrial activities take place indoors at MCSP, under shelter, such that the activities are not exposed to precipitation. | Orta Decl. at ¶ 9. |
| 90. Industrial activities that take place indoors are textile manufacturing, coffee roasting, and meat packing. | Orta Decl. at ¶ 9. |
| 91. Defendants annually submit to the Regional Board a No Exposure Certification ("NEC") certifying that there is no industrial activity at MCSP exposed to precipitation that could create an industrial stormwater discharge. | Defs.' Appx., Ex. U, at Defs_000964. |
| 92. The Water Board determined that MCSP complied with its NEC. | Defs.' Appx., Ex. Q, at Defs_000935. |
| 93. The photographs taken by Ashby do not establish that any of the identified materials were being used in relation to industrial activities, exposed to any precipitation events, left outside for a prolonged period of time, or resulted of any discharge of pollutants into protected waterways. | Orta Decl. at ¶ 10. |
| 94. The storage containers depicted in Ms. Ashby's IMG-2877 were moved from that | Orta Decl. at ¶ 10. |

00053977.1  13

**DEFENDANTS' SEPARATE STATEMENT OF DISPUTED FACTS (PURSUANT TO LR 260(B))
IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION**

| | |
|---|---|
| location to an indoor location. | |
| 95. The carboard containers depicted in Ms. Ashby's MG-2876 were used for construction trash during a construction project that has since been completed. | Orta Decl. at ¶ 11. |
| 96. The cardboard container is no longer at that location. | Orta Decl. at ¶ 11. |
| 97. The loading dock outside the indoor textile manufacturing receives regular housekeeping and trash pickup, and there is no trash or debris present. | Orta Decl. at ¶ 12. |

Dated: August 2, 2022

Respectfully submitted,

HARTMAN KING PC

By: _____
JENNIFER HARTMAN KING
ALANNA LUNGREN
WILLIAM D. MARSH
J.R. PARKER
ANDREYA WOO NAZAL
Attorneys for Defendants
KATHLEEN ALLISON in her capacity as Secretary of THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION; and PATRICK COVELLO, in his official capacity as Warden of California Department of Corrections and Rehabilitation Mule Creek State Prison

**DEFENDANTS' SEPARATE STATEMENT OF DISPUTED FACTS (PURSUANT TO LR 260(B))
IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION**