JENNIFER HARTMAN KING (SBN 211313)
ALANNA LUNGREN (SBN 269668)
WILLIAM D. MARSH (SBN 200082)
J. R. PARKER (SBN 320526)
ANDREYA WOO NAZAL (SBN 327651)
HARTMAN KING PC
520 Capitol Mall, Suite 750
Sacramento, CA  95814
Telephone:  (916) 379-7530; Facsimile:  (916) 379-7535
JHartmanKing@HartmanKingLaw.com
ALungren@HartmanKingLaw.com
WMarsh@HartmanKingLaw.com
JRParker@HartmanKingLaw.com
AWooNazal@HartmanKingLaw.com

Exempt From Filing Fees Pursuant
To Government Code Section 6103

Attorneys for Defendants KATHLEEN ALLISON,
in her official capacity as Secretary of the California Department
of Corrections and Rehabilitation; and PATRICK COVELLO,
in his official capacity as Warden of California Department of
Corrections and Rehabilitation Mule Creek State Prison

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>KATHLEEN ALLISON, in her official capacity as Secretary of the California Department of Corrections and Rehabilitation,<br><br>Defendant. | Case No. 2:20-CV-02482-WBS-AC [consolidated with 2:21-CV-00038-WBS-AC]<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF CALIFORNIA SPORTFISHING PROTECTION ALLIANCE'S MOTION FOR RECONSIDERATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| COUNTY OF AMADOR, *a public agency of the State of California,*<br><br>Plaintiff,<br><br>v.<br><br>KATHLEEN ALLISON, in her official capacity as Secretary of the California Department of Corrections and Rehabilitation; and PATRICK COVELLO, in his official capacity as Warden of California Department of Corrections and Rehabilitation Mule Creek State Prison,<br><br>Defendants. | Date: October 31, 2022<br>Time: 1:30 p.m.<br>Judge: Hon. William B. Shubb<br>Ctrm. 5<br><br>(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 to 1387)<br><br>Final Pretrial Conf.: February 13, 2023<br>Trial Setting Conf.: April 18, 2023 |

00055671.3}}}

# TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND.......................................... 3

III.  STANDARDS OF REVIEW.................................................................... 5

      A. MOTION FOR RECONSIDERATION.................................................. 5

      B. MOTION FOR SUMMARY JUDGMENT............................................... 5

IV.   LEGAL ARGUMENT............................................................................ 6

      **A.** THE COURT'S DENIAL OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT WAS PROPER AS THE COURT DID NOT COMMIT CLEAR ERROR.................................................................................... 6

            1.  CSPA Egregiously Mispresents The Court's Partial MSJ Order And Defendants' Position On Whether Plaintiffs Proved In Their Partial MSJ That Stormwater Discharges Actually Reached Mule Creek........................................... 6

            *2.*  CSPA, Not The Court, Erred With Regard To Mule Creek's Beneficial Use Designation And Its Applicability To Water Quality Objectives For *E. Coli*....... 8

      **B.** THE COURT'S DENIAL OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT WAS PROPER BECAUSE PLAINTIFFS FAILED TO DEMONSTRATE WITH UNDISPUTED EVIDENCE THAT THERE ARE ANY ONGOING *E. COLI* EXCEEDANCES AS A MATTER OF LAW...................... 10

      **C.** PLAINTIFFS CANNOT ESTABLISH VIOLATIONS OF THE SMALL MS4 PERMIT AS A MATTER OF LAW BECAUSE THE MAXIMUM EXTENT PRACTICABLE STANDARD APPLIES TO THE STORMWATER DISCHARGES AT ISSUE................................................................................. 11

      **D.** PLAINTIFFS CANNOT ESTABLISH THAT DEFENDANTS VIOLATED THE SMALL MS4 PERMIT AS A MATTER OF LAW......................................... 13

            1.  Stormwater Containing *E. Coli* Does Not Constitute "Waste" That Is Prohibited From Being Discharged Pursuant To Provisions B.1 And B.2 Of The Small MS4 Permit......................................................................................... 13

            2.  Plaintiff's Expert Failed To Account For Background And Non-Human Sources Of *E. Coli*, Erroneously Attributing All *E. Coli* Detections To Discharges From The Facility.................................................................................. 14

            3.  CSPA Failed to Determine The Salinity of Mule Creek—As Required By The Bacteria Provisions That It Relies Upon................................................. 15

            4.  Defendants Dispute Whether Their Stormwater Discharges Have "Caused Or Contributed" To An Impairment Of Mule Creek And Plaintiffs Did Not Prove This With Uncontroverted Evidence....................................................... 16

V.    CONCLUSION.................................................................................. 18

**TABLE OF AUTHORITIES**

**Cases**

*Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505 (4th Cir. 2003)……………………….. 10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)…………………………………………… 5, 10

*Chesapeake Bay Foundation v. Gwaltney*, 844 F.2d 170 (4th Cir. 1988)……………………… 11

*Defenders of Wildlife v. Browner,* 191 F.3d 1159 (9th Cir. 1999)……………………………… 12

*Doetsch v. Am. Household, Inc.*, No. 05CV1072 J (AJB), 2007 WL 2238392 (S.D. Cal. Aug. 3 2007)…………………………………………………………………………………………... 8

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.* 484 U.S. 49 (1987)……….. 2, 10-11

*Jackson v. Walker,* No. CIV S-06-2023 WBS GGH P, 2010 WL 1948294 (E.D. Cal. May 11, 2010)……………………………………………………………………………………………... 5

*Kona Enters. v. Estate of Bishop*, 229 F.3d 877 (9th Cir. 2000)……………………………… 5, 8

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co*., 571 F.3d 873 (9th Cir. 2009)……. 9

*S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885 (9th Cir. 2003)……………………………... 6

*Shasta Linen Supply, Inc. v. Applied Underwriters, Inc.*, No. 2:16-158 WBS AC, 2016 WL 6094446 (E.D. Cal. Oct. 17, 2016)…………………………………………………………….. 5

*Sierra Club v. Union Oil Co*., 853 F.2d 667 (9th Cir. 1988)……………………………………. 11

*Soremekun v. Thrifty Payless, Inc*., 509 F.3d 978 (9th Cir. 2007)……………………………… 10

*St. Johns Riverkeeper, Inc. v. Jacksonville Elec. Auth.*, No. 3:07-cv-739-J-34TEM, 2010 U.S. Dist. LEXIS 17881 (M.D. Fla. Mar. 1, 2010)……………………………………………………… 10

*TW Electrical Service, Inc. v. Pacific Electrical Contractors Assoc.*, 809 F. 2d 626 (9th Cir. 1987)…………………………………………………………………………………………... 6


**Federal Statutes**

33 U.S.C. § 1330, *et seq*……………………………………………………………………… 2

33 U.S.C. § 1313(d)………………………………………………………………………... 17

33 U.S.C. § 1342(p)(3)(B)(iii)……………………………………………………………... 12


**State Statutes**

Cal. Water Code § 13050 (l)(1)…………………………………………………………… 14

**DEFENDANTS' OPPOSITION TO PLAINTIFF CSPA'S MOTION FOR RECONSIDERATION**

**<u>Rules</u>**

E.D. Cal. L.R. 230……………………………………………………………………… 5-6

Fed. R. Civ. P. 56(a)…………………………………………………………………… 5

**DEFENDANTS' OPPOSITION TO PLAINTIFF CSPA'S MOTION FOR RECONSIDERATION**

## I.  INTRODUCTION

Defendants KATHLEEN ALLISON, in her official capacity as Secretary of the California Department of Corrections and Rehabilitation, and PATRICK COVELLO, in his official capacity as Warden of California Department of Corrections and Rehabilitation, Mule Creek State Prison ("Defendants") hereby oppose CALIFORNIA SPORTFISHING PROTECTION ALLIANCE's ("CSPA") Motion[1] for Reconsideration of this Court's August 29, 2022 Order.[2] As set forth herein, CSPA fails to meet the standard for reconsideration as well as the Court's Local Rule 230(j) because it was Plaintiffs—and not the Court—that committed clear error. Specifically, in claiming that it is "undisputed" that the stormwater discharges at issue actually reached Mule Creek, CSPA shockingly misrepresents both the Court's Partial MSJ Order and Defendants' position that was set forth in their Opposition to the Partial MSJ.[3] In fact, the Court clearly ruled that Plaintiffs had *not* proved that the discharges at issue actually reached Mule Creek (and hence, waters of the United States) and Defendants absolutely disputed—and still dispute—whether Plaintiffs established this predicate fact for liability to attach under the Clean Water Act. Moreover, Plaintiffs missed on several opportunities to clearly articulate to the Court its position that Mule Creek's designation includes the specific recreational use *and* that certain water quality objectives for *E. Coli* allegedly pertain to such beneficial use.[4] Thus, the Court should deny the Motion on these grounds alone.

Alternatively, even if the Court finds that the Partial MSJ Order may be reconsidered, Defendants submit that the Court should again deny summary judgment based on two threshold

---

[1] Plaintiff Amador County did not join CSPA's Motion for Reconsideration so Defendants refer to CSPA as the moving party here but refer to both plaintiffs with respect to the jointly-filed Motion for Summary Adjudication. The Court's Order Re: Motion for Partial Summary Judgment (ECF 60, the "Partial MSJ Order") regarding Plaintiffs' "Motion for Summary Adjudication" (ECF 45) stated Plaintiffs' motion should be referred to as a Motion for Partial Summary Judgment. Therefore, Defendants refer to it as such herein ("Partial MSJ").

[2] August 29, 2022 Order Re: Motion for Partial Summary Judgment (ECF 60, "Partial MSJ Order") (granting in part and denying in part CSPA and the COUNTY OF AMADOR's Motion for Partial Summary Judgment).

[3] Defendants' Opposition to Plaintiffs' Motion for Summary Adjudication (ECF 48, "Defendants' Opposition").

[4] CSPA conflates these two issues to hide that it never explained the latter point to the Court.

legal issues and several technical reasons that Plaintiffs' Partial MSJ did not overcome. First, CSPA's present motion relies exclusively on a data set of *E. Coli* samples that were collected *before* CSPA filed its complaint—thus, they do not qualify for any alleged "ongoing" permit violations as set forth in the United States Supreme Court's seminal Clean Water Act[5] decision in *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*[6] holding that wholly past discharges do not form the basis for citizen suit liability purposes.

Second, the applicable legal standard is not (as Plaintiffs erroneously contend) "strict compliance" with the Small MS4 Permit (as defined herein) because stormwater discharges are governed by the maximum extent practicable (MEP) standard pursuant to Clean Water Act section 402(p)(3)(B)(iii), meaning that permittees are required to reduce pollutants to the maximum extent practicable and implement best management practices (BMPs) rather than adhere to any strict numerical discharge standards. The MEP standard is fundamental to evaluating any stormwater permit compliance issue—Plaintiffs, however, completely gloss over MEP principles and the California Department of Corrections and Rehabilitation's ("CDCR") implementation of BMPs in claiming permit violations.

Finally, numerous technical issues plague Plaintiffs' claim that Defendants violated the Small MS4 Permit, including, but not limited to: (1) the data set consisting entirely of *E. Coli* samples do not constitute "waste" as defined in Provision B.1 of the Small MS4 Permit, namely waste that is specifically *prohibited* to be discharged pursuant to either of the two plans as set forth in Provision B.1 (neither of which "prohibits" the discharge of any waste applicable to Mule Creek); (2) Plaintiffs' expert, Karen Ashby, failed to account for "background" or non-human sources of *E. Coli* in erroneously attributing all of the *E. Coli* detections to discharges from Defendants' stormwater system; (3) as the Court noted and found persuasive in the Partial MSJ Order, Defendants thoroughly investigated, in conjunction with the Regional Water Board, whether there is "commingling" between the facility's sanitary system and stormwater system and determined that no such cross-contamination exists; (4) the Bacteria Provisions in the Water

---

[5] 33 U.S.C. 1330, et seq. ("Clean Water Act").
[6] 484 U.S. 49 (1987).

**DEFENDANTS' OPPOSITION TO PLAINTIFF CSPA'S MOTION FOR RECONSIDERATION**

Quality Control Plan (as defined herein) that Plaintiffs relied upon in the Partial MSJ plainly requires that the salinity of the receiving water be determined in order to select the appropriate sampling method—which Plaintiffs appear not to have done here; and, (5) toxicity data from Mule Creek and the creek's conspicuous absence from the State of California's list of "impaired" waterbodies demonstrate both that Defendants have not "caused or contributed" to a condition of pollution or nuisance. These host of technical deficiencies are fatal to Plaintiffs' case.

Accordingly, CSPA's motion for reconsideration must be denied as CSPA has not demonstrated that the Court committed clear error. Indeed, the Court carefully considered the same contentions from Plaintiffs before and soundly rejected them because genuine issues of material fact remain that cannot be determined on summary judgment.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

California Department of Corrections and Rehabilitation ("CDCR") is the state agency that operates Mule Creek State Prison ("MCSP" or "Facility"). The permit relevant to CSPA's Motion for Reconsideration ("MFR")[7] is the State Water Resource Control Board's Permit for Waste Discharge Requirements for Storm Water Discharges from Small Municipal Separate Storm Sewer Systems ("MS4"), Order 2013-0001-DWQ (the "Small MS4 Permit").[8]

CSPA filed its complaint commencing this action on December 15, 2020, and co-plaintiff the County of Amador filed its original action on January 7, 2021. ECF 1, ECF 19. Plaintiffs filed their Partial MSJ on June 28, 2022 (ECF 45), seeking summary judgment on each of the following issues: (1) whether Mule Creek is a "Water of the United States" within the meaning of the Clean Water Act; (2) whether Plaintiffs have Article III standing to bring this action for injunctive relief; (3) whether Defendants violated each of four separate provisions of the Small MS4 Permit: (a) Provision B.1, (b) Provision B.2, (c) Provision B.3, and (d) Provision D; and (4) whether

---

[7] Plaintiff California Sportfishing Protection Alliance's Motion to Reconsider Order RE: Motion for Partial Summary Judgment (ECF 67, "MFR").

[8] Defendants' Request for Judicial Notice in Support of Opposition to Plaintiff California Sportfishing Protection Alliance's Motion for Reconsideration ("RJN"), Exhibit B ("Ex. B"), State Water Resources Control Board Water Quality Order No. 2013-001-DWQ, NPDES General Permit No. CAS000004 ("Small MS4 Permit").

Defendants violated the Industrial General Permit. This Court denied summary judgment as to issues (3) and (4). ECF 60, 26:8.

CSPA's MFR followed, contending that the Court committed clear error in failing to consider "two material facts" and the implications thereof. MFR, 4:10. Specifically, CSPA contends reconsideration is necessary because the Court "did not appear to consider" CSPA's contentions that: (1) Mule Creek has been designated for a recreational (REC-1) beneficial use; (2) that certain water quality objectives[9] for *E. coli* are based on Mule Creek's recreational (REC-1) beneficial use designation, and (3) it is "undisputed" that the discharges at issue actually reached Mule Creek. *See* MFR, 7:5-6, 18-19, 9:8-10. In support of the MFR, CSPA relies exclusively on certain *E. coli* samples collected from sampling locations MCSP2 and MCSP3 during the period between April 8, 2019, and May 28, 2020. *See* MFR, 6:7-11. Importantly, CSPA asks the Court to reconsider the Partial MSJ Order only with respect to alleged violations of Provisions B.1, B.2, and D. of the MS4 Permit because only the County of Amador is pursuing its claim of violations of Provision B.3 of the MS4 Permit and the Industrial General Permit. *See* MFR, 5, n.3.

The Court ruled on the Partial MSJ on August 29, 2022. The Court found that Plaintiffs had established standing, but denied them summary judgment as to whether Defendants violated Provisions B.1, B.2, B.3 and D. of the MS4 Permit. Partial MSJ Order, 26:2-8. In reaching its decision, the Court specifically ruled that Plaintiffs did *not* establish that the discharges at issue— including from sampling locations MCSP2 and MCSP3 specifically—actually reached Mule Creek *and* that Defendants had contested this very issue. Partial MSJ Order, 17:3-10 (emphasis added). The Court further determined that Plaintiffs had not established that discharges reached Mule Creek as follows: (1) "here plaintiffs do not appear to have demonstrated that contaminants at issue here in fact reached or 'accumulated . . . in' Mule Creek;" and (2) "Therefore, because there appears to be a dispute of material fact as to whether the discharges upon which plaintiffs rely reached Mule Creek, the court cannot at this time conclude that defendants' discharges entered

---

[9] The Basin Plan refers to "Water Quality Objectives" because it sets forth goals or objectives for receiving waters to meet. RJN, Ex. D, California Regional Water Quality Control Board, Central Valley Region Water Quality Control Plan (Fifth Edition) for the Sacramento River and San Joaquin River Basins ("Basin Plan")

'waters of the U.S.' or 'caus[ed] or threaten[ed] to cause a condition of pollution or nuisance' therein." Partial MSJ Order, 21:2-4, 5-10. In making these determinations, the Court specifically referred to MCSP2, MCSP3, MCSP5, and MCSP6. Partial MSJ Order, 17:11-14.

### III. STANDARDS OF REVIEW

#### A. MOTION FOR RECONSIDERATION

Motions for reconsideration are an "extraordinary remedy," and one that should be used "sparingly in the interests of finality and the conservation of judicial resources." *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Reconsideration is appropriate if the district court is presented with newly discovered evidence, committed clear error or the initial decision was manifestly unjust, or if there is an intervening change in controlling law. *See Shasta Linen Supply, Inc. v. Applied Underwriters, Inc.*, No. 2:16-158 WBS AC, 2016 WL 6094446, at *8 (E.D. Cal. Oct. 17, 2016).

Local Rule 230(j) further provides that a party moving for reconsideration must demonstrate the "new or different facts or circumstances . . . claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion;" and "why the facts or circumstances were not shown at the time of the prior motion." E.D. Cal. L.R. 230(j)(3), (4). This Local Rule derives from the "law of the case" doctrine which provides that the decisions on legal issues made in a case "should be followed unless there is substantially different evidence . . . new controlling authority, or the prior decision was clearly erroneous and would result in injustice." *See Jackson v. Walker,* No. CIV S-06-2023 WBS GGH P, 2010 WL 1948294, at *2 (E.D. Cal. May 11, 2010). As set forth herein, CSPA fails to meet these high standards.

#### B. MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" with respect to a claim or defense. Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A non-moving party to a motion for summary judgment "can defeat summary judgment by demonstrating the evidence, taken as a whole, could lead a rational trier of

fact to find in its favor." *S. Cal. Gas Co. v. City of Santa Ana,* 336 F.3d 885, 888 (9th Cir. 2003). At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party. *Id.* If direct evidence produced by the moving party conflicts with evidence proffered by the non-moving party, the court must assume the truth of the evidence submitted by the non-moving party. *TW Electrical Service, Inc. v. Pacific Electrical Contractors Assoc.*, 809 F. 2d 626, 630-631 (9th Cir. 1987).

## IV. LEGAL ARGUMENT

A. **THE COURT'S DENIAL OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT WAS PROPER AS THE COURT DID NOT COMMIT CLEAR ERROR**

  1. CSPA Egregiously Mispresents The Court's Partial MSJ Order And Defendants' Position On Whether Plaintiffs Proved In Their Partial MSJ That Stormwater Discharges Actually Reached Mule Creek.

A party moving for reconsideration must demonstrate the "new or different facts or circumstances . . . claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion" and "why the facts or circumstances were not shown at the time of the prior motion." E.D. Cal. L.R. 230(j)(3), (4). Instead of applying this standard, CSPA misrepresents what this Court previously determined—and Defendants' position on the issue—with regard to whether Plaintiffs had conclusively established that certain stormwater discharges had reached the waters of the United States, namely Mule Creek, as follows.

First, CSPA erroneously asserts that it is "undisputed" that stormwater discharges from sampling locations MCSP2 and MCSP3 reach Mule Creek. The Court, however, specifically assessed this contention and ruled that Plaintiffs did *not* establish that the discharges at issue— including from sampling locations MCSP2 and MCSP3 specifically—actually reached Mule Creek *and* that Defendants had contested this very issue. The Court unequivocally found:

> Further, unlike Provision B.1, which simply prohibits discharges that exceed applicable water quality standards, provision B.2's plain language indicates that a violation thereof requires that the discharges actually enter a water of the United States. (See Small MS4 Permit § B.2.) *Defendants argue plaintiffs have not proved that the discharges upon which plaintiffs rely actually reached Mule Creek and thus have not proved a violation of provision B.2.* (Opp. at 31.)

**DEFENDANTS' OPPOSITION TO PLAINTIFF CSPA'S MOTION FOR RECONSIDERATION**

Partial MSJ Order, 17:3-10 (emphasis added). The Court further determined that Plaintiffs had not established that discharges reached Mule Creek in ruling:

(1) "[H]ere plaintiffs do not appear to have demonstrated that contaminants at issue here in fact reached or 'accumulated . . . in' Mule Creek." Partial MSJ Order, 21:2-4.

(2) "Therefore, because there appears to be a dispute of material fact as to whether the discharges upon which plaintiffs rely reached Mule Creek, the court cannot at this time conclude that defendants' discharges entered 'waters of the U.S.' or 'caus[ed] or threaten[ed] to cause a condition of pollution or nuisance' therein." Partial MSJ Order, 21:5-10.

There can be no doubt that the Court's above determinations concern all four sampling locations, and not just MCSP5 and MCSP6 as CSPA claims, as the Court specifically referred to the MCSP2, MCSP3, MCSP5 and MCSP6 sampling locations is making its ruling. Partial MSJ Order, 17:11-14.

Second, CSPA completely misrepresents a portion of the Declaration of Timothy Simpson, Defendants' retained expert, to further support its contention. MFR,11:11-14. Mr. Simpson's Declaration actually states in paragraph 22:

> "To properly draw the conclusion that discharges from the Facility are reaching Mule Creek and causing or contributing to receiving water exceedances, monitoring data taken from MCSP2, MCSP3, and MCSP4 must be evaluated concurrently. However, all of the monitoring data that Ms. Ashby relied upon for her assertions that there are **"ongoing"** violations at the Facility are based on monitoring data collected from MCSP5, MCSP6, and MCSP4.

Declaration of Timothy Simpson in Support of Defendants' Opposition to Plaintiffs' Motion of Summary Adjudication (ECF 48), ¶ 22(c)(i). CSPA left out the word "ongoing" from the quote in order to mislead the Court as to its meaning. Mr. Simpson clearly was referring to sampling locations MCSP2 and MCSP3 because those locations pertain to Plaintiffs' allegations of past violations while MCSP5 and MCSP6 pertain to alleged "ongoing" violations. Declaration of Timothy Simpson in Support of Defendants' Opposition to Motion for Reconsideration ("Simpson Decl."), ¶ 11. Thus, the Court was in no way mislead by Mr. Simpson's statement, as CSPA falsely claims here, because it was accurate.

Finally, CSPA erroneously claims that there is no dispute that discharges from sampling locations MCSP2 and MCSP3 reached Mule Creek simply because they are located "directly where" and "near" the creek. MFR, 10:22-24, 11:1-2. Needless to say, CSPA's proffered "evidence" on this issue—statements about the proximity of the sampling locations to Mule Creek and a map—fall far short of the evidentiary standard required to grant summary judgment proving that the stormwater at issue actually reached Mule Creek. Moreover, the Court previously considered these identical arguments in rejecting this slight variation of Plaintiffs' "representativeness" argument. Partial MSJ Order, 18:20-20:10.

Thus, CSPA fails to meet the standard set forth in Local Rule 230(j). .

*2.* CSPA, Not The Court, Erred With Regard To Mule Creek's Beneficial Use Designation And Its Applicability To Water Quality Objectives For *E. Coli.*

Motions for reconsideration are denied when the moving party could have, with reasonable diligence, presented evidence or arguments to the court for consideration before the court issued its ruling but failed to do so. *See Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (denying motion for reconsideration when plaintiff failed to raise choice-of-law argument before court's ruling, including in prior motion, reply, and during hearing); *Doetsch v. Am. Household, Inc.*, No. 05CV1072 J (AJB), 2007 WL 2238392, at *5 (S.D. Cal. Aug. 3, 2007) (denying motion for reconsideration when plaintiff failed to cite testimony to the court, finding plaintiff cannot use motion for reconsideration to raise evidence for the first time that easily could have been raised at summary judgment).

CSPA contends that it is entitled to reconsideration because "[t]hrough inadvertence or mistake, the Court erred" by not considering Mule Creek's water contact recreation ("REC-1") designation. MFR, 9:8-20. However, Plaintiffs erred, not the Court, by failing to clearly articulate their position regarding which beneficial use designation Ms. Ashby relied on to allege that Defendants are in violation of the *E. Coli* water quality objectives. For beneficial use designations, the Basin Plan recognizes two different types of water recreation: water contact recreation ("REC-1") and non-contact water recreation ("REC-2"). Plaintiffs' Motion for Summary Judgment failed to appropriately brief the Court on (1) Plaintiffs' position that one of Mule Creek's beneficial uses

includes REC-1, and (2) how Mule Creek's beneficial use designation impacts Plaintiffs' position regarding E. coli water quality objectives. First, Plaintiffs' Motion for Summary Judgment failed to differentiate between REC-1 and REC-2. Instead, Plaintiffs merely allege generally that Mule Creek's beneficial uses include "recreation." Partial MSJ, 15:22-24, 27:7-10. In neglecting to argue its position that Mule Creek is designated for REC-1 use, Plaintiffs also failed to articulate its second position, that *E. Coli* water quality objectives apply to Mule Creek on the basis of Mule Creek's alleged beneficial use designation. Instead, Plaintiffs generally allege that the State Board established water quality objectives for certain bodies of water "that have water contact recreation beneficial use" without providing any support and the Court has to infer from a Table buried in a declaration from its expert to find this contention. Partial MSJ, 16:8-9.

In sum, CSPA has not presented any new or different facts, circumstances, or evidence that did not exist at the time of its Partial MSJ. With reasonable diligence, CSPA could have presented these issues to the Court before a ruling was issued, particularly since Defendants challenged these very issues in their Opposition. CSPA had numerous opportunities to do so, including in Plaintiffs' memorandum in support of Partial MSJ, in their Reply Brief[10], during the hearing, and before the Court issued its opinion. *See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co*., 571 F.3d 873, 880 (9th Cir. 2009) (denying motion for reconsideration; "Although the district court stated that it did not want to consider the [recently discovered evidence] during the hearing, it did not prohibit or even discourage [plaintiff] from submitting the [evidence]...before the court made its decision."). Moreover, CSPA's MFR again fails to appropriately brief the Court on how or why the water contact recreation designation is relevant. CSPA contends, without providing any support, that the *E. coli* standards are based on REC-1 designation, which "indisputably" applies to Mule Creek. MFR, 9:2-10. CSPA should be foreclosed from relying on a purportedly undisputed fact that Defendants were never provided an opportunity the refute. Instead, CSPA argues that the Court committed clear error in its evaluation, attempting to use reconsideration as a vehicle to address issues it failed to address, and placing blame on the Court for its own neglect.

---

[10] Plaintiffs' Reply Brief in Support of Motion for Summary Adjudication (ECF 55).

**B.  THE COURT'S DENIAL OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT WAS PROPER BECAUSE PLAINTIFFS FAILED TO DEMONSTRATE WITH UNDISPUTED EVIDENCE THAT THERE ARE ANY ONGOING *E. COLI* EXCEEDANCES AS A MATTER OF LAW**

As with other jurisdictional matters, a plaintiff's burden to establish an ongoing violation evolves over the course of the litigation. *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 521 (4th Cir. 2003). A party seeking summary judgment in the traditional context "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

The exact nature of this responsibility varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must demonstrate, with affirmative evidence, that "no reasonable trier of fact could find other than for the moving party." *Id*. As the moving party here, CSPA failed to satisfy its burden necessary to prevail on its motion for summary judgment. For the reasons discussed herein, this Court found a material factual dispute as to whether there are any ongoing violations of Provisions B.1, B.2, and D. of the Small MS4 Permit, and correctly denied summary judgment accordingly. *See St. Johns Riverkeeper, Inc. v. Jacksonville Elec. Auth.*, No. 3:07-cv-739-J-34TEM, 2010 U.S. Dist. LEXIS 17881, at *44-46 (M.D. Fla. Mar. 1, 2010) (court found plaintiff's evidence sufficient to survive defendants' motion for summary judgment, but failed to satisfy the burden necessary to prevail on cross motion for summary judgment against defendant).

In *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation*, the Supreme Court found the use of the present tense in section 505(a) of the Clean Water Act to be indicative of Congress's intent to provide a "primarily forward-looking" remedy, and held that the citizen suit authority was limited to situations where the defendant was engaged in continuous or intermittent violations at the time the citizen suit action was filed. 484 U.S. 49, 59 (1987). The Ninth Circuit has found that

a plaintiff may prove ongoing violations "either (1) by proving violations that continue on or after the date the complaint is filed, or (2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations." *Sierra Club v. Union Oil Co.*, 853 F.2d 667, 671 (9th Cir. 1988) (citing *Chesapeake Bay Foundation v. Gwaltney*, 844 F.2d 170, 171-72 (4th Cir. 1988)). Interpreting *Gwantley,* the Ninth Circuit stated that until a district court makes "factual findings" on the issue of ongoing violations, or the reasonable likelihood of continuing future violations, penalties for past permit violations may not be assessed. *Id.* at 669-671.

CSPA now asserts that a certain set of analytical data, all collected before the filing of its complaint, provides evidence of alleged "exceedances" that constitute alleged violations of various provisions of the Small MS4 Permit. CSPA describes the monitoring data as alleged "past violations" that pre-date the filing of its complaint, and asks the Court to reconsider its ruling on summary judgment on this basis. However, CSPA's requested relief seeks to impose liability against Defendants for wholly past violations, in opposite to *Gwaltney*. As CSPA only alleges wholly past violations in its MFR, therefore, Court should not use these past violations as the basis for summary judgment.

C.  **PLAINTIFFS CANNOT ESTABLISH VIOLATIONS OF THE SMALL MS4 PERMIT AS A MATTER OF LAW BECAUSE THE MAXIMUM EXTENT PRACTICABLE STANDARD APPLIES TO THE STORMWATER DISCHARGES AT ISSUE**

As set forth in Defendants' Opposition, under the Clean Water Act's "Stormwater Amendments" in section 402(p)(3)(B)(iii), municipal permits "shall require controls to reduce the discharge of pollutants to the *maximum extent practicable,* including management practices, control techniques and system, design and engineering methods, and such other provisions as the Administrator or the State determines appropriate for the control of such pollutants." 33 U.S.C. § 1342(p)(3)(B)(iii) (emphasis added). The Ninth Circuit has held that the Clean Water Act "unambiguously demonstrates that Congress did not require municipal storm-sewer discharges to comply strictly" with more stringent requirements applicable to industrial dischargers*. See, Defenders of Wildlife v. Browner,* 191 F.3d 1159, 1164-1166 (9th Cir. 1999). Consistent with this

authority, the Water Board has determined that it is appropriate to (1) require implementation of best management practices ("BMPs") in lieu of numeric water quality-based effluent limitations; and (2) prescribe an iterative process with permittees for BMP improvement to achieve water quality standards. RJN, Ex. C,  State Water Resources Control Board Fact Sheet for NPDES General Permit and Waste Discharge Requirements for Storm Water Discharges from Small Municipal Separate Storm Sewer Systems, Order No. 2013-0001-DWQ, as Amended by Order 2017-XXXX-DWQ ("MS4 Fact Sheet")

Plaintiffs, however, apply a "strict compliance" standard to the Small MS4 Permit in contending that CDCR violated its provisions. Such attempt, however, misconstrues the plain language of the Small MS4 Permit and writes the MEP standard out of the permit. In issuing the Small MS4 Permit as a regulatory order[11], the State Water Resources Control Board ("State Board") made several regulatory "Findings" relevant to the interpretation of its provisions as follows:

- In Finding No. 27, the State Board determined that Small MS4s "face highly variable conditions both in terms of threats to water quality from their storm water discharges and resources available to manage those discharges. Therefore, *one set of prescriptive requirements is not an appropriate regulatory approach for all Regulated Small MS4s.*"

- In Finding No. 36, the State Board determined that "Consistent with Clean Water Act section 402(p)(3)(B)(iii), this Order requires controls to reduce pollutants from the MS4 to the maximum extent practicable (MEP). The MEP standard requires Permittees to apply Best Management Practices (BMPs) that are effective in reducing or eliminating the discharge of pollutants to the waters of the U.S. MEP emphasizes pollutant reduction and source control BMPs to prevent pollutants from entering storm water runoff. MEP may require treatment of the storm water runoff if it contains pollutants. The MEP standard is an ever-evolving, flexible, and advancing concept, which considers technical and economic feasibility. BMP development is a dynamic process and may require changes over time as the Permittees gain experience and/or the state of the science and art progresses. To do this, the Permittees must conduct and document evaluation and assessment of each relevant element of its program, and their program as a whole, and revise activities, control measures/BMPs, and measurable goals, as necessary to meet MEP. MEP is the cumulative result of implementing, evaluating, and creating corresponding changes to a variety of technically appropriate and economically feasible BMPs, ensuring that the most appropriate BMPs are implemented in the most effective manner.

---

[11] Order No. 2013-0001-DWQ, superseding Order No. 2003-0005-DWQ.

- In Finding No. 45, the State Board determined that in filing a Notice of Intent (to come under coverage of the permit), the Notice of Intent represents the Permittee's commitment to comply with the BMPs specified in this Order to *achieve compliance* with the minimum control measures specified at 40 Code of Federal Regulations sections 122.34 (b)(1) through (b)(6).

RJN, Ex. B, Small MS4 Permit; Simpson Decl., ¶ 17. Thus, consistent with Clean Water Act section 402, the State Water Quality Control Board was clear in its Order implementing the Small MS4 Permit and in the MS4 Fact Sheet that stormwater permittees are governed by the flexible MEP standard rather than "strict compliance" as Plaintiffs claim. As such, CDCR's considerable efforts at reducing the discharge of pollutants consistent with the MEP standard by implementing BMPs must be taken into account and negates a finding of any permit violations.

**D. PLAINTIFFS CANNOT ESTABLISH THAT DEFENDANTS VIOLATED THE SMALL MS4 PERMIT AS A MATTER OF LAW**

As set forth above, CSPA is asking the Court to re-visit its Partial MSJ Order based on distorting the record on whether certain discharges actually reached Mule Creek and casting the same *E. Coli* evidence in a new light. The Court, of course, will consider Defendants' Opposition to the Partial MSJ and they incorporate that brief by reference herein. For the Court's convenience, however, Defendants also summarizes the following salient points from Defendants' Opposition and adds new perspectives as follows.

1. Stormwater Containing *E. Coli* Does Not *Per Se* Constitute "Waste" That Is Prohibited From Being Discharged Pursuant To Provisions B.1 And B.2 Of The Small MS4 Permit.

Plaintiffs made two fatal mistakes in their Partial MSJ in claiming violations of Provisions B.1 and B.2. First, they claim that CDCR had "past violations" related to stormwater discharges that contained *E. coli* into waters of the United States in violation of the Small MS4 Permit provisions B.1 and B.2 and that such discharges constitute waste *per se*. Provision B.1 of the Small MS4 Permit, however, prohibits the discharge of "waste" from the MS4 that is specifically prohibited from being discharged by the applicable Statewide Water Quality Control Plan or the Basin Plan. Thus, Plaintiffs short-circuited the analysis by not providing the Court with its view

of which plan *prohibits* the discharge of *E. Coli*. In fact, neither prohibit the discharge of stormwater containing *E. Coli per se*, they instead set forth objectives for receiving waters to meet. Moreover, to the extent that Plaintiffs are equating "waste" with the presence of sewage, the low levels of ammonia in the discharges at issue belie such claim. Simpson Decl, ¶ 21.

Second, Provision B.2 provides that "[d]ischarges of storm water from the MS4 to waters of the U.S. in a manner causing or threatening to cause a condition of pollution or nuisance as defined in Water Code § 13050 are prohibited." Plaintiffs again short-circuited the analysis by not evaluating the full definitions of "pollution" and "nuisance" as specifically set forth in the Water Code. Water Code section 13050 defines "pollution as an alteration of the quality of water by waste to a degree which *unreasonably* affects" its beneficial uses. Cal. Water Code § 13050 (l)(1). Thus, for both permit provisions the contaminant at issue must constitute "waste," with Provision B.2 additionally requiring an unreasonable effect on the water's beneficial use to constitute "pollution" and, therefore, a permit violation. Thus, the *reasonableness* of the alleged impacts is an essential element of the analysis—and one completely ignored by Plaintiffs—that is inherently a triable issue that must considered by a trier of fact. Therefore, the Court's denial of summary judgment was proper.

> 2. Plaintiff's Expert Failed To Account For Background And Non-Human Sources Of *E. Coli*, Erroneously Attributing All *E. Coli* Detections To Discharges From The Facility.

Defendants' Opposition raised numerous fatal flaws in Ms. Ashby's methodologies, rendering her expert opinions unreliable. Relevant to Plaintiff's MFR is Ms. Ashby's failure to account for readily-apparent "background" and non-human sources of *E. Coli* in her assessment. Simpson Decl, ¶¶ 18, 19, 22, 23. With respect to this required element of causation, Ms. Ashby failed to account for: (1) the substantial background and upstream contributors of contaminants detected in Mule Creek, including evidence of major contributions of upstream sources of *E. coli* from upstream cattle ; (2) the dominant impacts of bird and deer contributions (i.e., background) to contaminants detected at the Facility itself as demonstrated by DNA testing and the 2021 Sources of Fecal Pollution Report; and, (3) stormwater toxicity data showing that discharged effluent is not toxic and poses no real threat to aquatic life. *See also*, Simpson Decl., ¶¶ 16, 22, 23.

**DEFENDANTS' OPPOSITION TO PLAINTIFF CSPA'S MOTION FOR RECONSIDERATION**

The Water Board and CDCR worked closely with an independent public research and development agency known as the Southern California Coastal Water Research Project ("SCCWRP"), established in 1969 to improve the management of aquatic ecosystems, to further investigate the sources and scope of fecal matter in Mule Creek. Defendants' Separate Statement of Disputed Facts in Support of Opposition to Plaintiffs' Motion for Summary Adjudication ("Defs' SS") [ECF 50], ¶ 34; Simpson Decl., ¶ 20. SCCWRP conducted an extensive investigation consisting of twenty-two (22) days of sampling, 14 of which were during or promptly after rain events, and collected numerous samples from Mule Creek both upstream and downstream of MCSP. Defs' SS, ¶ 35. SCCWRP's January 2021 report entitled, "Quantification of Sources of Fecal Pollution at Mule Creek," (the "2021 Sources of Fecal Pollution Report") demonstrates that fecal bacteria detected in stormwater at MCSP is almost entirely from animal sources (bird and deer) and not from any appreciable human sources. Defs SS, ¶ 36; Simpson Decl., ¶ 20. It further concluded that fecal bacteria levels in Mule Creek were often higher upstream of MCSP and that human fecal matter in stormwater was at negligible levels. Defs' SS, ¶ 37. Finally, the 2021 Sources of Fecal Pollution Report demonstrated that the overall water quality conditions of Mule Creek were heavily impacted by cows (i.e., cattle ranches) upstream of MCSP and background sources (birds and deer), rather than human fecal contributions. Simpson Decl., ¶ 20.

Accordingly, Defendants' Opposition presented evidence that Plaintiffs' expert's opinions are unreliable. Defendants' investigations directly refute Plaintiff's claim that exceedances in *E. coli* are attributable to MCSP. Accordingly, a reasonable trier of fact could find that Defendants did not violate Provisions B.1, B.2, and D. for *E. Coli* discharges. Accordingly, denial of summary judgment was proper.

3.   CSPA Failed to Determine The Salinity of Mule Creek—As Required By The Bacteria Provisions That It Relies Upon.

Plaintiffs asserted in the Partial MSJ that the stormwater discharges now at issue exceeded the Water Quality Objectives for *E. Coli* set forth in the February 4, 2019, Part 3 of the Water Quality Control Plan for Inland Surface Waters, Enclosed Bays, and Estuaries of California,

Bacteria Provisions and a Water Quality Standards Variance Policy (the "Bacteria Provisions").[12] Plaintiffs County of Amador's and California Sportfishing Protection Alliance's Appendix of Exhibits in Support of Motion for Summary Adjudication ("Pls' Appx.") [ECF 45-10], Exh. 10. Specifically, Plaintiffs' expert compared the monitoring data from certain stormwater monitoring locations with the *E. Coli* Water Quality Objectives in Table 1.  Crucially, however, section III. E. 2 (Bacteria Water Quality Objectives) provides that there are two distinct objectives for bacteria, "depending on the salinity level" as set forth in that Table 1 (for *E. Coli* and *Enterococci*). (Pls' Appx., Exh. 10, p. 2). The next section of the Bacteria Provisions on page 3 further specifies that the *E. Coli* objective applies to waters where the salinity levels is less than a certain level "95 percent of the time during the CALENDAR YEAR" while the *Enterococci* objective applies to waters where the salinity is greater than a certain salinity level "more than 5 percent of the time during the CALENDAR YEAR." Table 1 repeats this same sampling requirement of the water's salinity. As set forth by Defendants' counsel during the August 22, 2022 hearing on the Partial MSJ, establishing the salinity level of Mule Creek is crucial to determining which Water Quality Objective applies. However, nowhere in Plaintiffs' moving papers or Ms. Ashby's supporting declaration is this determination made. Thus, Defendants submit that it would be inappropriate for the Court to determine as a matter of law which objective applies here without such salinity sampling being conducted.

        4.  <u>Defendants Dispute Whether Their Stormwater Discharges Have "Caused Or Contributed" To An Impairment Of Mule Creek And Plaintiffs Did Not Prove This With Uncontroverted Evidence.</u>

      Under the Clean Water Act section 303(d), states are required to identify waterbodies that do not meet, or are not expected to meet, WQOs (known as "impaired waterbodies"). 33 U.S.C. § 1313(d). Thus, waterbodies in California that exceed protective WQS are placed on the state's 303(d) List. Defs' SS, ¶ 42. Based on California's Listing Policy in developing the 303(d) list, the Water Board evaluates water quality-related data and information. *Id*.

---

[12] RJN, Ex. E, State Water Resources Control Board – Part 3 of the Water Quality Control Plan for Inland Surface Waters, Enclosed Bays, and Estuaries of California, Bacteria Provisions and a Water Quality Standards Variance Policy ("Bacteria Provisions").

Thus, in order to prevail on this claim, Plaintiff must prove that the receiving water, Mule Creek, has exceeded an applicable water quality standard (known as an "impairment") set forth in the California Toxics Rule ("CTR"), the Water Control Plan, or the Basin Plan. However, neither the direct receiving water (Mule Creek) nor the two waterbodies downstream of Mule Creek (Dry Creek and the Mokelumne River) are "listed" by the State of California as impaired waterbodies pursuant to 303(d) of the Clean Water Act. There is no assessment data for Mule Creek on the Water Board's 303(d) List for 2020-2022, the current watershed impairment list for the area, but there is assessment data for Dry Creek, which is the next waterbody receiving flows from Mule Creek. *Id*. The Water Board did not designate Dry Creek as impaired. Simpson Decl., ¶ 15 (also opining that toxicity data from Mule Creek demonstrates that it was not been impaired.

Plaintiff did not met its burden of establishing that discharges from MCSP are violating discharge prohibitions or receiving water limitations because it has not presented uncontroverted evidence that Mule Creek is actually impaired. Mule Creek's conspicuous absence from the State of California's list of impaired waterbodies, in conjunction with water quality data collected from Mule Creek, demonstrate that Mule Creek has not been, and is not currently, impaired. Therefore, a reasonable trier of fact could find that Defendants have not caused or contributed to a condition of pollution or nuisance. Accordingly, the Court's denial of summary judgment was proper.

//
//
//
//
//
//
//
//
//
//
//

**DEFENDANTS' OPPOSITION TO PLAINTIFF CSPA'S MOTION FOR RECONSIDERATION**

## V.  CONCLUSION

At this stage, there can be no summary adjudication of Plaintiffs' claims, as there are numerous material facts in genuine dispute. Based on the foregoing, Defendants respectfully request the Court to deny the Motion for Reconsideration and allow them the opportunity to present their defense of these meritless claims at trial.


Dated: September 29, 2022                    Respectfully submitted,

                                             HARTMAN KING PC


                                             By: _____
                                                 JENNIFER HARTMAN KING
                                                 ALANNA LUNGREN
                                                 WILLIAM D. MARSH
                                                 J.R. PARKER
                                                 ANDREYA WOO NAZAL
                                             Attorneys for Defendants
                                             KATHLEEN ALLISON in her capacity as Secretary
                                             of the California Department of Corrections and
                                             Rehabilitation; and PATRICK COVELLO, in his
                                             official capacity as Warden of California Department
                                             of Corrections and Rehabilitation Mule Creek State
                                             Prison

**DEFENDANTS' OPPOSITION TO PLAINTIFF CSPA'S MOTION FOR RECONSIDERATION**