ANDREW L. PACKARD (Bar No. 168690)
andrew@packardlawoffices.com
WILLIAM N. CARLON (Bar No. 305739)
wncarlon@packardlawoffices.com
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,

Plaintiff,

v.

KATHLEEN ALLISON, in her official capacity as Secretary of the California Department of Corrections and Rehabilitation,

Defendant.

---

COUNTY OF AMADOR, a public agency of the State of California

Plaintiff,

v.

KATHLEEN ALLISON in her official capacity as Secretary of the California Department of Corrections and Rehabilitation; PATRICK COVELLO in his official capacity of Warden of California Department of Corrections and Rehabilitation Mule Creek State Prison,

Defendants.

Case No.: 2:20-cv-02482-WBS-AC

**PLAINTIFF CALIFORNIA SPORTFISHING PROTECTION ALLIANCE'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Date: January 9, 2023
Time: 1:30 p.m.
Courtroom: 5 (Hon. William B. Shubb)

Action Filed: December 15, 2020 *(Consolidated with Case No. 2:21-cv-00038-WBS-AC)*

Pre-Trial Conf: February 13,2023
Trial Date: April 18, 2023

JASON FLANDERS (Bar No. 238007)
jrf@atalawgroup.com
ERICA MAHARG (Bar No. 279396)
eam@atalafwgroup.com
AQUA TERRA AERIS LAW GROUP
490 43rd Street, Suite 108
Oakland, CA 94609
Tel. (916) 202-3018

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 260(a), Plaintiff California Sportfishing Protection Alliance ("CSPA") submits its Responses to Defendants' Separate Statement of Undisputed Facts in support of CSPA's Opposition to Defendants' Motion for Summary Judgment, together with references to supporting material facts and cites to supporting evidence.

| FACTS ASSERTED BY DEFENDANTS | SUPPORTING EVIDENCE | CSPA'S RESPONSES |
| --- | --- | --- |
| 1. Mule Creek State Prison ("MCSP") covers approximately 866 acres. The Facility houses approximately 3,800 inmates, employs approximately 1,400 staff, and provides job training and work opportunities for prison inmates. | Declaration of Anthony Orta filed concurrently ("Orta Decl."), at ¶ 3. | 1. Undisputed. |
| 2. Industrial activities that take place at the Facility include sewing/textile manufacturing, coffee roasting, and meat packing. | Orta Decl., at ¶ 15. | 2. Undisputed. |
| 3. The surrounding areas of the Facility, including areas near the stormwater conveyance system and Mule Creek, are frequented by wildlife, including birds | Orta Decl., at ¶ 3. | 3. Undisputed but immaterial. |

| | | |
|---|---|---|
| and deer. There are also cattle ranches located near Mule Creek upstream of the Facility. | | |
| 4. The Facility is permitted via the following three permits: (1) the State Water Resource Control Board's Permit for Waste Discharge Requirements for Storm Water Discharges from Small Municipal Separate Storm Sewer Systems ("MS4"), Order 2013-0001-DWQ (the "Small MS4 Permit"); (2) the State Board's General Permit for Storm Water Discharges Associated with Industrial Activities, Order 2014-0057-DWQ, as amended (the "Industrial General Permit"); and (3) the Central Valley Water Board's Waste Discharge Requirements Order R5-2015-0129 for MCSP's Wastewater Treatment Plant ("WWTP Permit") that authorizes CDCR to operate the LAA. | Declaration of Timothy Simpson filed concurrently ("Simpson Decl."), at ¶¶ 11, 16; State Water Resource Control Board's Permit for Waste Discharge Requirements for Storm Water Discharges from Small Municipal Separate Storm Sewer Systems ("MS4"), Order 2013-0001-DWQ (the "Small MS4 Permit"), Defendants' Request for Judicial Notice ("RJN"), Ex. A; Orta Decl., at ¶¶ 2, 6; Central Valley Regional Water Quality Control Board Inspection Report ("Inspection Report"), dated February 11, 2021, RJN, Ex. F, at p. 1; Waste Discharge Requirements for California Department of Corrections and Rehabilitation Mule Creek State Prison Wastewater Treatment Plant ("WWTP Permit"), RJN, Ex. E. | 4. Undisputed. |

| | | |
|---|---|---|
| 5. CDCR was designated a Small MS4 permittee under the Small MS4 Permit in 2019. | Designation of Mule Creek State Prison as Small MS4 Permittee under the Small MS4 General Permit, State Water Resources Control Board Order WQ 2019-0009-EXEC Amending Water Quality Order 2013-0001- DWQ, NPDES No. CAS00004, dated April 24, 2019, ("Small MS4 Designation"), RJN Ex. I, at p. 2; Simpson Decl., at ¶ 11. | 5. Undisputed. |
| 6. A MS4 is a conveyance or system of conveyances used to manage stormwater that is owned and operated by a public entity. | Small MS4 Permit, RJN, Ex. A, at ¶ 14. | 6. Disputed.<br><br>Defendants' paraphrasing of paragraph 14 of the Small MS4 permit omits key features of a MS4, including that MS4s discharge to waters of the United States. The full text is as follows:<br><br>A MS4 is a conveyance or system of conveyances that is: 1) owned by a state, city, town, village, or other public entity that discharges to waters of the United States; 2) designed or used to collect or convey storm water (including storm drains, pipes, ditches, etc.); 3) not a combined sewer; and 4) not part of a Publicly Owned Treatment Works or sewage treatment plant.<br><br>Small MS4 Permit, ¶ 14. |

| | | |
|---|---|---|
| 7. The Small MS4 Permit states: Consistent with the Clean Water Act section 402(p)(3)(B)(iii), this Order requires controls to reduce pollutants from the MS4 to the maximum extent practicable (MEP). The MEP standard requires Permittees to apply Best Management Practices (BMPs) that are effective in reducing or eliminating the discharge of pollutants to the waters of the U.S. MEP emphasizes pollutant reduction and source control BMPs to prevent pollutants from entering storm water runoff. MEP may require treatment of the storm water runoff if it contains pollutants. The MEP standard is an ever-evolving, flexible, and advancing concept, which considers technical and economic feasibility. BMP development is a dynamic process and may require changes over time as the Permittees gain experience and/or the state of the | Small MS4 Permit, RJN, Ex. A, at ¶ 36. | 7. Undisputed.<br><br>Immaterial to CSPA's claims. |

| | | |
|---|---|---|
| science and art progresses. To do this, the Permittees must conduct and document evaluation and assessment of each relevant element of its program, and their program as a whole, and revise activities, control measures/BMPs, and measurable goals, as necessary to meet MEP. MEP is the cumulative result of implementing, evaluating, and creating corresponding changes to a variety of technically appropriate and economically feasible BMPs, ensuring that the most appropriate BMPs are implemented in the most effective manner. | | |
| 8. CDCR submitted a No Exposure Certification ("NEC") with the Water Board in 2018. | No Exposure Certification ("NEC") to enroll the Facility under the NPDES General Permit Storm Water Discharges Associated with Industrial Activities, WQ Order No. 2014-9957-DWQ, certified May 8, 2018, RJN, Ex. H. | 8. Undisputed.<br><br>Immaterial to CSPA's claims. |

| | | |
|---|---|---|
| 9. An NEC acts as an exemption to the Industrial General Permit requirements, such that compliance with the NEC is deemed compliance with the Industrial General Permit. | Inspection Report, RJN, Ex. F, at p. 1. | 9. Undisputed.<br><br>Immaterial to CSPA's claims. |
| 10. The Regional Board inspected the Facility on January 27, 2021, and found no violations, concluding that the NEC-covered areas complied with applicable requirements. The Regional Board also noted that "the interior rooms were clean and orderly, and no potential sources of stormwater pollution were observed at the loading docks, or around storm drains; waste bins were covered and in good condition." | Inspection Report, RJN, Ex. F, at p. 4. | 10. Undisputed.<br><br>Immaterial to CSPA's claims. |

| | | |
|---|---|---|
| 11. The Regional Water Board permitted CDCR's use of LAAs for the discharge of treated wastewater from the WWTP under Waste Discharge Requirements Order R5-2015-0129 ("WWTP Permit"), adopted on December 11, 2015. | WWTP Permit, RJN, Ex. E, at ¶ 62. | 11. Undisputed.<br><br>The WWTP Permit authorizes the discharge of treated wastewater to land application areas, but the WWTP Permit prohibits discharges to surface waters (i.e., Mule Creek).<br><br>ECF No. 95-8 at 34. |
| 12. At MCSP, prior to spray application, wastewater is treated in an oxidation ditch and clarifiers, then disinfected in the chlorine contact pipe. The secondary disinfected effluent is then discharged to LAAs via spray irrigation where it is applied to the land surface. | WWTP Permit, RJN, Ex. E, at p. 44; Simpson Decl., at ¶ 16; Orta Decl., at ¶ 10. | 12. Undisputed but immaterial. |
| 13. The Facility operates a stormwater collection system that employs best management practices ("BMPs"), as approved by the Central Valley | Orta Decl., at ¶¶ 4-13; Simpson Decl., at ¶ 15. | 13. Disputed.<br><br>Defendants' assertion is not a fact, but a legal interpretation of the Small MS4 Permit. The interpretation of an NPDES permit is a question of law. *NRDC v. Cnty of Los* |

| | | |
|---|---|---|
| Regional Water Quality Control Board. | | *Angeles*, 725 F.3d 1194, 1204 (9th Cir. 2013).<br><br>The Central Valley Regional Water Quality Control Board ("Regional Board") does not "approve" any management practices.<br><br>Further, Defendants have not implemented BMPs to adequately address the pollutants in their stormwater discharges, such as *E. coli* and metals, or to effectively prohibit non-stormwater discharges. Maharg Decl., Ex. 1 at tbls. 2-11; Maharg Decl., Ex. 2 (Orta Tr.) at 97:19-98:7, 112:17-22, 113:2-10, 107:18-108:9, 110:6-16; Ex. 25 at MCSP4560; ECF No. 95-3 at 72; ECF No. 95-4 at 19.<br><br>On November 3, 2022, the Regional Board notified Defendants that they had not implemented BMPs sufficient to address metals that are causing or contributing to WQS exceedances in Mule Creek. Maharg Decl., Ex. 21. |

| | | |
|---|---|---|
| 14. The stormwater system consists of a network of conveyances, culverts, outfalls, and "bioswales" that allow for settling out and filter contaminants from stormwater before it reaches nearby Mule Creek. | Orta Decl., at ¶¶ 4, 7, 8, 19, 20; Simpson Decl., at ¶¶ 25, 26. | 14. Disputed.<br><br>Defendants' own stormwater sampling data demonstrates that the stormwater system does not "settl[e] out and filter contaminants from stormwater before it reaches nearby Mule Creek." Maharg Decl., Ex. 1 at tbls. 2-6 (samples taken at MCSP2 and MCSP3, after the bioswales) Discharges measured at MCSP2 and MCSP3 exceeded WQS for *E. coli* and metals. Maharg Decl., Ex. 1 at ¶¶ 10-13, 14-15, tbls. 2-6. The bioswales have been in place before the Facility was covered under the Small MS4 Permit, and Defendants have not made any changes to them. Maharg Decl., Ex. 2 (Orta Tr.) at 97:19-24.<br><br>Defendants have presented no evidence to show that the stormwater system "allow[s] for settling out" bacteriological pollutants, dissolved metals, or pharmaceuticals from their stormwater discharges to Mule Creek.<br><br>Defendants have presented no evidence to show that the stormwater system "filter[s]" bacteriological pollutants, dissolved |

| | | |
|---|---|---|
| | | metals, or pharmaceuticals from their stormwater discharges to Mule Creek.<br><br>Defendants do not know how the bioswales were designed or if the bioswales are intended to reduce pollutants. Maharg Decl., Ex. 2 (Orta Tr.) at 97:25-98:7, 113:2-10.<br><br>Defendants' sampling shows that pollutant concentrations may increase after the bioswale. ECF 95-5 at 116-117. |
| 15. In implementing the BMPs, CDCR has worked closely with the Water Board's permitting staff and is engaged in an iterative process to further improve the quality of the Facility's stormwater discharges. | Orta Decl., at ¶¶ 5-13; Simpson Decl., at ¶ 15. | 15. Disputed.<br><br>Defendants' assertion is not a fact, but a legal interpretation of the Small MS4 Permit. The interpretation of an NPDES permit is a question of law. *NRDC v. Cnty of Los Angeles*, 725 F.3d 1194, 1204 (9th Cir. 2013).<br><br>Disputed that CDCR has improved the quality of the Facility's stormwater discharges. Maharg Decl., Ex. 1 at Tbls. 2-6, 8-1.<br><br>The majority of the BMPs in place at the Facility were in place for years. Maharg Decl., Ex. 2 |

| | | |
|---|---|---|
| | | (Orta Tr.) at 97:19-24, 112:17-24, 107:18-24, 107:25-108:9, 110:6-16; ECF No. 95-4 at 19.<br><br>Defendants have not fixed defects in their sanitary sewer system and MS4 that were identified in 2019. Maharg Decl., Ex. 2 (Orta Tr.) at 114:6-13; Maharg Decl., Ex. 20 at MCSP31322; Ex. 26.<br><br>Defendants have admitted to continuing unlawful discharges of irrigation waters and conceded that the Facility would not come into compliance with Provision B.3 with regard to their irrigation discharges, until February 2025. ECF No. 95-4 (Orta Decl.) at 19; Maharg Decl., Ex. 23 at MCSP33473; Maharg Decl., Ex. 7 at MCSP32215-16.<br><br>On November 3, 2022, the Regional Board notified Defendants they have not complied with orders to address discharges that cause or contribute to exceedances of metals in Mule Creek. Maharg Decl., Ex. 21. |

| | | |
|---|---|---|
| 16. Stormwater runoff at the Facility collects in a conveyance ditch paralleling a lethal electrified fence surrounding the Facility, with the ditch leading to two culverts located at sampling locations designated as "MCSP5" and "MCSP6." | Orta Decl., at ¶ 4; Excerpt from Revised Stormwater Collection System Investigation Report of Findings, revised June 2020, prepared by SHN Engineers & Geologists for California Department of Corrections and Rehabilitation, ("2020 Collection System Investigation Report"), Declaration of Alanna Lungren ("Lungren Decl."), Ex. B, at p. 7. | 16. Undisputed. |
| 17. Stormwater passes through the culverts at MSCP5 and MCSP6 where it is periodically sampled. | Orta Decl., at ¶ 4. | 17. Undisputed. |
| 18. During most of the year (i.e., during dry weather and light rain), culvert "slide gates" block the flow and both stormwater and non-stormwater are directed to the Facility's permitted WWTP where the water is treated with secondary level treatment. | Orta Decl., at ¶ 4; 2020 Collection System Investigation Report, Lungren Decl., Ex. B, at p. 8. | 18. Disputed.<br><br>Not all stormwater and non-stormwater in the MS4 is pumped to the WWTP. Maharg Decl., Ex. 1 at ¶ 24 (Ashby Declaration documenting standing water in MS4 during dry weather conditions), ¶ 25 (observations of flows to Mule Creek in dry weather conditions); Maharg Decl., Ex. 29 (Emerick Expert Rpt.) at 11-16.<br><br>The slide gates are not water-tight and do not block all |

| | | |
|---|---|---|
| | | flow when they are closed. Maharg Decl., Ex. 2 (Orta Tr.) at 121:16-22. |
| 19. The secondary treatment at the WWTP consists of two bar screenings, an oxidation ditch, two parallel clarifiers, a chlorine contact pipe, a sludge belt press, sludge drying beds, and effluent storage reservoir, and spraying of the treated material on LAA. | WWTP Permit, RJN, Ex. E, at ¶ 11; County of Amador's First Amended Complaint for Declaratory and Injunctive Relief (ECF 35, "County's FAC"), ¶¶ 59-60; Orta Decl., at ¶ 4. | 19. Undisputed but immaterial. |
| 20. During periods of heavy rain, deemed "Significant Rain Events," the slide gates are opened to allow stormwater to pass through MCSP5 and MCSP6 due to capacity limits at the WWTP. | Orta Decl., at ¶ 4; 2020 Collection System Investigation Report, Lungren Decl., Ex. B, at p. 8-9. | 20. Undisputed. |
| 21. When stormwater passes through the culverts at MCSP5 and MCSP6, it flows into the vegetated bioswale channels before reaching the two outfalls at monitoring locations MCSP2 and MCSP3. | 2020 Collection System Investigation Report, Lungren Decl., Ex. B, at p. 14; Orta Decl., at ¶ 4. | 21. Undisputed. |

| | | |
|---|---|---|
| 22. From monitoring location MCSP6, the bioswale channel extends approximately 1,500 feet to the outfall at MCSP3. | Orta Decl., at ¶¶ 4, 20; 2020 Collection System Investigation Report, Lungren Decl., Ex. B, at p. 14. | 22. Undisputed. |
| 23. From monitoring location MCSP5, the bioswale channel extends approximately 630 feet to the outfall at MCSP2. | Orta Decl., at ¶¶ 4, 19; 2020 Collection System Investigation Report, Lungren Decl., Ex. B, at p. 14. | 23. Undisputed. |
| 24. If there is sufficient flow, stormwater is then discharged from the outfalls at MCSP2 and MCSP3 into Mule Creek. | Orta Decl., at ¶ 4. | 24. Undisputed.<br><br>Defendants have self-reported discharges from their MS4 to Mule Creek on numerous occasions since January 2021. Maharg Decl., Exs. 8-20. |
| 25. The Small MS4 Permit does not require sampling and monitoring of CDCR's stormwater discharges. | Small MS4 Permit, RJN, Ex. A, passim; Simpson Decl., at ¶ 12. | 25. Undisputed but immaterial. |
| 26. The Regional Water Board issued a section 13383 Order requiring CDCR to submit periodic monitoring reports to the Board. | Water Code section 13383 Order to Monitor Discharges to Surface Water dated November 29, 2021 ("13383 Order 2021"), Simpson Decl., Ex. A. | 26. Undisputed.<br><br>The Regional Board issued the first 13383 Order requiring CDCR to conduct outfall and receiving water sampling and report the results to the Regional Board on August 20, 2020. Maharg Decl., Ex. 6. The Regional Board |

| | | |
|---|---|---|
| | | revised the 13383 Order in December 2020. Maharg Decl., Ex. 7. The Regional Board again revised the 13383 Order on November 29, 2021. ECF No. 95-5 at 15-28 |
| 27. The location denoted as "MCSP4" is collected directly from Mule Creek. | Orta Decl., at ¶ 4. | 27. Undisputed. |
| 28. As a permittee under the Small MS4 Permit since 2019, CDCR has been engaged in an iterative process with the Water Board to monitor and improve its Small MS4 Permit program to comply with the Permit. | Simpson Decl., at ¶ 11; Orta Decl., at ¶¶ 5-13. | 28. Disputed and immaterial.<br><br>Defendants' assertion is not a fact, but a legal interpretation of the Small MS4 Permit.<br><br>Disputed that CDCR has improved its Small MS4 Permit Program to comply with the Permit or improve the water quality of its discharges. Maharg Decl., Ex. 1 at Tbls. 2-6, 8-1.<br><br>The majority of the BMPs in place at the Facility were in place for years. Maharg Decl., Ex. 2 (Orta Tr.) at 97:19-24, 112:17-24, 107:18-24, 107:25-108:9, 110:6-16; ECF No. 95-4 at 19.<br><br>Defendants have not fixed defects in their sanitary sewer system and MS4 that were identified in 2019. Maharg Decl., Ex. 2 (Orta Tr.) at |

| | | |
|---|---|---|
| | | 114:6-13; Maharg Decl., Ex. 20 at MCSP31322; Ex. 26.<br><br>Defendants have admitted to continuing unlawful discharges of irrigation waters and conceded that the Facility would not come into compliance with Provision B.3 with regard to their irrigation discharges, until February 2025. ECF No. 95-4 (Orta Decl.) at 19; Maharg Decl., Ex. 23 at MCSP33473; Maharg Decl., Ex. 7 at MCSP32215-16.<br><br>On November 3, 2022, the Regional Board notified Defendants they have not complied with orders to address discharges that cause or contribute to exceedances of metals in Mule Creek. Maharg Decl., Ex. 21. |
| 29. One way in which this dynamic process of BMP development occurs is through the Small MS4 Permit's Annual Reporting that documents and assesses the Small MS4 Permit program elements. | Small MS4 Permit, RJN, Ex. A, section E.16; Simpson Decl., at ¶ 15. | 29. Disputed and immaterial.<br><br>Defendants' assertion is not a fact, but a legal interpretation of the Small MS4 Permit. |

| | | |
|---|---|---|
| 30. The Small MS4 Permit requires that CDCR: "identify and make modifications to BMPs, including new BMPs or modification to existing BMPs, to improve effectiveness in each priority area. The Permittee shall consult with the applicable Regional Water Board in setting expectations for the scope, timing, and frequency of BMP modifications." | Small MS4 Permit, RJN, Ex. A, Provision E.14.b., at p. 76; Simpson Decl., at ¶¶ 13, 14. | 30. Undisputed but immaterial. |
| 31. The Water Board reviews CDCR's submittals regarding its program effectiveness and provides feedback, which includes discussion on what BMPs and controls CDCR has implemented or is in the process of implementing to comply with the Small MS4 Permit. | Orta Decl., at ¶ 6; Simpson Decl., at ¶ 15. | 31. Disputed and immaterial.<br><br>While the Regional Board has provided feedback to Defendants with regards to certain aspects of their MS4 program, there is no evidence that the Regional Board has done a comprehensive review of Defendants' compliance with the Small MS4 Permit and provided feedback on all aspects of its compliance.<br><br>On November 3, 2022, the Regional Board notified Defendants they have not complied with orders to address |

| | | |
|---|---|---|
| | | discharges that cause or contribute to exceedances of metals in Mule Creek. Maharg Decl., Ex. 21.<br><br>Engagement in the iterative process does not excuse violations or exempt Defendants from enforcement. ECF No. 95-7 at 422; *NRDC v. Cnty of LA*, 673 F.3d 880, 897 (9th Cir. 2011) |
| 32. Through the iterative process for compliance with the Permit, MCSP has developed and implemented various BMP measures at the Facility. | Orta Decl., at ¶¶ 4, 6-13;<br>Simpson Decl., at ¶ 15. | 32. Disputed and immaterial.<br><br>Defendants' assertion is not a fact, but a legal interpretation of the Small MS4 Permit.<br><br>Disputed that CDCR has improved its Small MS4 Permit Program to comply with the Permit or improve the water quality of its discharges. Maharg Decl., Ex. 1 at Tbls. 2-6, 8-1.<br><br>The majority of the BMPs in place at the Facility were in place for years. Maharg Decl., Ex. 2 (Orta Tr.) at 97:19-24, 112:17-24, 107:18-24, 107:25-108:9, 110:6-16; ECF No. 95-4 at 19.<br><br>Defendants have not fixed defects in their sanitary sewer system and MS4 that were identified in |

| | | |
|---|---|---|
| | | 2019. Maharg Decl., Ex. 2 (Orta Tr.) at 114:6-13; Maharg Decl., Ex. 20 at MCSP31322; Ex. 26.<br><br>Defendants have admitted to continuing unlawful discharges of irrigation waters and conceded that the Facility would not come into compliance with Provision B.3 with regard to their irrigation discharges, until February 2025. ECF No. 95-4 (Orta Decl.) at 19; Maharg Decl., Ex. 23 at MCSP33473; Maharg Decl., Ex. 7 at MCSP32215-16.<br><br>On November 3, 2022, the Regional Board notified Defendants they have not complied with orders to address discharges that cause or contribute to exceedances of metals in Mule Creek. Maharg Decl., Ex. 21.<br><br>The only new BMP that Defendants have installed at the Facility after this action as initiated is the installation of monitoring structures at MCSP2 and MCSP3, which do not actually reduce pollutants in discharges but only measure the flow. ECF No. 96-4 at 18; Maharg Decl., Ex. 3 (Larabee Tr.) at 77:11-15. |

| | | |
|---|---|---|
| 33. The BMPs include informational memoranda from the Warden to the MCSP staff regarding the stormwater prevention program, including such topics as the handling of trash to prevent it from entering the stormwater collection system, administrative controls, landscape training and rescheduling for irrigation runoff reduction, and physical control measures at designated areas of the stormwater collection system. | Orta Decl., at ¶ 8. | 33. Undisputed but immaterial. |
| 34. BMPs implemented at storm drains around the Facility include fabric, wattles, designed v-ditches to catch sediment from runoff, and paved aprons to filter or reduce contaminants in discharges. In addition, wash water at work areas or for washing vehicles is drained to the sanitary sewer rather than the stormwater collection system or it is conducted on unpaved areas where water percolates or evaporates before it reaches the storm drains. | Orta Decl., at ¶ 8. | 34. Disputed.<br><br>Wash waters were observed discharging to storm water system during Plaintiffs' site inspection. Maharg Decl., Ex. 29 (Emerick Expert Rpt.) at 11.<br><br>Disputed that "paved aprons" filter or reduce certain contaminants, such as bacteria, dissolved metals, and pharmaceuticals in discharges. Maharg Decl., Ex. 2 (Orta Tr.) at 18:24-19:15, 98:8-25; Maharg Decl., Ex. 1 at tbls. 8-11 (showing ongoing |

| | | |
|---|---|---|
| | | exceedances of WQS in Defendants' discharges); Maharg Ex. Decl., Ex. 29 (Emerick Expert Rpt.) at 11-12. |
| 35. Other BMPs implemented include the installation of curbs that redirect non-stormwater flows to float-controlled pumps that pump non-stormwater flows to the WWTP where it receives secondary treatment. | Orta Decl., at ¶ 10; Mule Creek State Prison's Revised Non-Storm Water Discharge Elimination Plan, dated May 13, 2022, ("Revised Non-Storm Water Discharge Elimination Plan"), Orta Decl., Ex. B, sections (a)(1), (b), (c). | 35. Disputed.<br><br>Not all stormwater and non-stormwater in the MS4 is pumped to the WWTP, even during dry weather. Maharg Decl., Ex. 1 at ¶ 24 (Ashby Declaration documenting standing water in MS4 during dry weather conditions), ¶ 25 (observations of flows to Mule Creek in dry weather conditions); Maharg Decl., Ex. 29 (Emerick Expert Rpt.) at 11-16.<br><br>The slide gates are not water-tight and do not block all flow when they are closed. Maharg Decl., Ex. 2 (Orta Tr.) at 121:16-22<br><br>During Significant Rain Events, non-stormwater is not redirected to the WWTP, but instead non-stormwater flows are co-mingled with stormwater flows, which discharge to Mule Creek when the gates are opened.<br><br>ECF No. 95-4 (Orta Decl.), ¶ 4; ECF No. 95-3 at 69-70 (SHN Report, p. 8-9). |

| | | |
|---|---|---|
| | | *See* Fact 20, above. |
| 36. The Facility also curtails the irrigation schedule for all areas at the facility to minimize the potential for potable landscape irrigation runoff, and applies soil stabilization measurements when identified, along with sediment controls. | Orta Decl., at ¶ 10; Revised Non-Storm Water Discharge Elimination Plan, Orta Decl., Ex. B, sections (a)(1), (b), (c). | 36. Disputed.<br><br>The Revised Non-Storm Water Discharge Elimination Plan is not evidence of actually implemented BMPs.<br><br>Defendants continue to report irrigation discharges to the MS4. *See, e.g.*, Maharg Decl., Ex. 27 (2022 Q2 Monitoring Rpt.) at p. 3. Although Defendants have reported that they have not irrigated since July 1, 2021, Mr. Orta testified that this was not the case. Maharg Decl., Ex. 22 (Orta Tr.) at 163:18-165:13.<br><br>Defendants have admitted to continuing unlawful discharges of irrigation waters and conceded that the Facility would not come into compliance with Provision B.3 with regard to their irrigation discharges, until February 2025. ECF No. 95-4 (Orta Decl.) at 19; Maharg Decl., Ex. 23 at MCSP33473; Maharg Decl., Ex. 7 at MCSP32215-16. |

| | | |
|---|---|---|
| 37. MCSP staff are trained on and implement numerous BMPs such as street sweeping, material handling and storage, waste management, stockpile management, management of washout areas, vehicle and equipment cleaning, fueling, and maintenance, and spill prevention and control. | Orta Decl., at ¶ 11. | 37. Undisputed but immaterial. |
| 38. Weekly inspections and clean-ups are also carried out throughout the Facility, and preventative maintenance work orders are issued quarterly for storm water and sanitary sewer inspections and cleaning. | Orta Decl., at ¶ 12. | 38. Undisputed but immaterial. |
| 39. CDCR recently completed a BMP project that consists of a permanent monitoring station at MCSP2 and MCSP3. | Orta Decl., at ¶ 9. | 39. Undisputed. |
| 40. MCSP is also implementing the Regional Board-approved Enhanced Compliance Action involving replacement of the entire landscape irrigation system at the Facility. | Orta Decl., at ¶ 13. | 40. Undisputed. |

| | | |
|---|---|---|
| 41. CDCR conducted two major investigations of its stormwater and wastewater systems in conjunction with the Regional Water Board's permit compliance staff. | Simpson Decl., at ¶¶ 20 – 22; 2020 Collection System Investigation Report, Lungren Decl., Ex. B; Excerpts from Quantification of Sources of Fecal Pollution at Mule Creek, dated January 2021, prepared by Southern California Coastal Water Research Project for Central Valley Regional Water Quality Control Board and the California Department of Correction and Rehabilitation ("2021 Sources Fecal Pollution Report"), Lungren Decl., Ex. A. | 41. Undisputed as to the existence of the investigations. Disputed to the extent that "in conjunction with the Regional Water Board's permit compliance staff" suggests that Regional Board staff concurred with the conclusions of the report. Regional Board staff specifically disagreed with the findings of the SHN Report. Maharg Decl., Ex. 22 at MCSP31320-25. |
| 42. From 2018 to 2022, an independent consultant conducted an investigation of the stormwater and wastewater collection systems in close consultation with the Water Board specifically to determine if wastewater commingled with stormwater at the Facility. | 2020 Collection System Investigation Report, Lungren Decl., Ex. B. | 42. Undisputed. |
| 43. Phase I of the investigation included: (1) the collection and laboratory sampling of soil and water samples from both systems; (2) visual | 2020 Collection System Investigation Report, Lungren Decl., Ex. B, at p. ii. | 43. Undisputed. |

| | | |
|---|---|---|
| manhole and closed-circuit television (CCTV) inspections of both systems; (3) dye and smoke testing of the sewer system that could detect leaks, track any migration of material, and assess "connectivity of pipe systems" (Section 2.4.1); (4) daily sampling of stormwater within the collection system; (5) baseline soil and water sampling; and (6) identifying the source of fecal coliform results using deoxyribonucleic (DNA) microbial source tracking. | | |
| 44. During the investigation, CDCR worked closely with the Water Board—which collected its own "split" samples to confirm CDCR's results—and obtained the Water Board's approval of the sampling plans. Upon completion, Phase I of the report was provided to the Water Board for its review and approval. | 2020 Collection System Investigation Report, Lungren Decl., Ex. B, at p. 1. | 44. Undisputed. |
| 45. The results of the investigation are documented in a report entitled Revised Storm Water Collection System | 2020 Collection System Investigation Report, Lungren Decl., Ex. B, section 4.3.2., at p. 89. | 45. Disputed.<br><br>Defendants' investigation of the stormwater collection system and sanitary sewer |

| | | |
|---|---|---|
| Investigation Findings Report, originally completed in 2018 and last updated on June 19, 2020 (the "2020 Collection System Investigation Report"). The 2020 Collection System Investigation Report concluded that: (1) there was no tracer dye observed in the stormwater system (Section 3.4.2.1); (2) there are no cross-connections between the stormwater and sewer systems (Section 5.0); (3) there was no evidence that the stormwater system was impacted by sewage, wastewater, or grey water; and, (4) there was no sewage discharging into Mule Creek. | | systems found "hundreds" of defects in both systems. Maharg Decl., Ex. 22 at MCSP31308. Defendants' investigation also determined that sections of the sanitary sewer lines were located above stormwater sewer lines. Id. at MCSP 31306-07<br><br>While Defendants' report concludes that no *direct* cross connections exist, the finding does not extend to *indirect* cross connections via exfiltration and infiltration. Maharg Decl., Ex. 22 at MCSP31320-21 (Regional Board noting that Defendants' conclusion is not supported by evidence); Maharg Decl., Ex. 4 at MCSP32976 (EPA finding same); Maharg Decl., Ex. 33 (Larabee Tr.) at 117:22-118:19. |
| 46. The Water Board and CDCR also worked closely with an independent public research and development agency, known as the Southern California Coastal Water Research Project ("SCCWRP") to further investigate the sources and scope of fecal matter in Mule Creek. | 2021 Sources Fecal Pollution Report, Lungren Decl., Ex. A; Simpson Decl., at ¶¶ 20-21. | 46. Undisputed. |

| | | |
|---|---|---|
| | | |
| 47. SCCWRP conducted an extensive investigation consisting of twenty-two (22) days of sampling, fourteen (14) of which were during or promptly after rain events, and collected numerous samples from Mule Creek both upstream and downstream of the Facility. | 2021 Sources Fecal Pollution Report, Lungren Decl., Ex. A, at pp. ii. | 47. Undisputed. |
| 48. SCCRWP's January 2021 report entitled, "Quantification of Sources of Fecal Pollution at Mule Creek," (the "2021 Sources of Fecal Pollution Report") demonstrates that fecal bacteria detected in stormwater at MCSP is almost entirely from animal sources (bird and deer) and not from any appreciable human sources. | 2021 Sources Fecal Pollution Report, Lungren Decl., Ex. A, at pp. ii. | 48. Disputed.<br><br>Pharmaceuticals and personal care products were found in samples taken from the MS4. Maharg Decl., Ex. 29 (Emerick Expert Report), at p. 17. CSPA's Expert, Dr. Robert Emerick, concluded that the "most likely source of these bacterial indicators "is from the sanitary sewer system." *Id.* at p. 18-19. |
| 49. It further concluded that fecal bacteria levels in | 2021 Sources Fecal Pollution Report, | 49. Undisputed that the report draws this conclusion. Disputed |

| | | |
|---|---|---|
| Mule Creek were often higher upstream of MCSP and that human fecal matter in stormwater was at negligible levels. | Lungren Decl., Ex. A, at pp. ii, 3, 14, 23. | that these are the only findings of this report. The sampling conducted for the report also showed that in one-third of the samples, "the concentration increase moving past the prison property was sufficient to cause a downstream water quality standard exceedance where the upstream sample was in compliance. For the remaining third, there was an increase moving downstream, but no difference in water quality compliance status between the upstream and downstream site." ECF No. 95-3 at 8. |
| 50. The 2021 Sources of Fecal Pollution Report demonstrated that the overall water quality conditions of Mule Creek were heavily impacted by cows (i.e.. cattle ranches) upstream of MCSP and background sources (birds and deer), rather than human fecal contributions. | 2021 Sources Fecal Pollution Report, Lungren Decl., Ex. A, at pp. 1, 20, 22, 23. | 50. Disputed.<br><br>The fact that cows or other sources contribute E. coli upstream to Mule Creek upstream of the Facility is immaterial. Further, the 2021 Sources of Fecal Pollution Report concluded that in one-third of the samples, "the concentration increase moving past the prison property was sufficient to cause a downstream water quality standard exceedance where the upstream sample was in compliance. For the remaining third, there was an increase moving |

| | | |
|---|---|---|
| | | downstream, but no difference in water quality compliance status between the upstream and downstream site." ECF No. 95-3 at 8.<br><br>Pharmaceuticals and personal care products were found in samples taken from the MS4. Maharg Decl., Ex. 29 (Emerick Expert Report), at p. 17. CSPA's Expert, Dr. Robert Emerick, concluded that the "most likely source of these bacterial indicators "is from the sanitary sewer system." *Id.* at p. 18-19. EPA and the Regional Board have both concluded that wastewater is commingling with stormwater at the Facility. Maharg Decl., Ex. 4 at MCSPMCSP32976; Ex. 22 at MCSP31320-21. |

| | | |
|---|---|---|
| 51. Under the Clean Water Act section 303(d), states are required to identify waterbodies that do not meet, or are not expected to meet, water quality standards (known as "impaired waterbodies"). Waterbodies in California that exceed protective WQS are placed on the state's section 303(d) List. | Simpson Decl., at ¶ 29. | 51. Disputed.<br><br>The requirements of section 303(d) 33 U.S.C. § 1313(d) are questions of law, not facts.<br><br>Disputed to the extent the fact asserts that all water bodies that do not meet WQS are placed on 303(d) list. The Small MS4 Permit acknowledges that a water body may be impaired and not listed on the 303(d) list. ECF No. 95-7 at 12 (Small MS4 Permit at 10, n.4). |
| 52. Based on California's Listing Policy in developing the 303(d) list, the Water Board evaluates water quality-related data and information. | Simpson Decl., at ¶¶ 29, 30. | 52. Undisputed. |
| 53. There is no assessment data for Mule Creek on the Water Board's 303(d) List for 2020-2022, the current watershed impairment list for the area, but there is assessment data for Dry Creek, which is the next waterbody receiving flows from Mule Creek. | Simpson Decl., at ¶ 29. | 53. Undisputed but immaterial.<br><br>There is extensive data of sampling in Mule Creek downstream of the Facility showing that Mule Creek exceeds WQS for *E. coli* and metals. Maharg Decl., Ex. 1 at tbls. 4, 6, 9, 11; ECF No. 95-3 at 5-40 (2021 Sources of Fecal Pollution Report). |

| | | |
|---|---|---|
| 54. The Water Board did not designate Dry Creek as impaired. | Simpson Decl., at ¶ 29. | 54. Undisputed but immaterial. |
| 55. To support their claims regarding violations of the Small MS4 Permit, Plaintiffs relied on two categories of stormwater sampling data that correspond to before and after the filing of the first complaint on December 15, 2020: (1) purported "past" violations from samples collected between May 16 , 2019 and December 17, 2020 (the "Alleged Past Discharge Data Set"); and (2) purported "ongoing" violations from samples collected between January 27, 2021, to March 28, 2022 (the "Alleged Ongoing Discharge Data Set"). | Plaintiffs' MSA (ECF 45), at 28:18-26, 19:4-13; Declaration of Karen Ashby In Support Of Plaintiffs' Motion for Summary Adjudication (ECF 45-4, "Ashby Decl.")), at ¶¶ 10, 11, tbls. 2, 3, ¶ 17, tbl. 8, ¶ 14, tbl. 5, ¶ 20, tbl. 10. | 55. Disputed.<br><br>The "Alleged Past Discharge Data Set" is not only data that is before the filing of the CSPA Complaint on December 15, 2020. ECF No. 1. The Alleged Past Discharge Data Set also included a sampling date after CSPA's Complaint was filed. Maharg Decl., Ex. 1 (Ashby Decl.) at 36-37, tbls. 5-6. |
| 56. The stormwater sampling data from the Alleged Ongoing Discharge Data Set is comprised exclusively of samples collected at MCSP4, MCSP5, and MCSP6. None of the samples in this data set were collected from the two outfalls (MCSP2 and MCSP3) that are located near Mule Creek. | Ashby Decl. (ECF 45-4), at ¶¶ 17, 19-21, tbls. 8, 9, 10, 11. | 56. Disputed.<br><br>Two samples, dated December 17, 2020, were taken after CSPA filed its Complaint, and were collected at MCSP2 and MCSP3. Maharg Decl., Ex. 1 (Ashby Decl.) at 36-37, tbls. 5-6. |

| | | |
|---|---|---|
| 57. During discovery, Plaintiffs and their experts conducted two "dry-weather" inspections of the Facility on March 9 and May 24, 2022, during which they collected samples from ponded water. | Lungren Decl., at ¶ 2; Declaration of Robert Emerick in Support of Plaintiffs' Motion for Summary Adjudication (ECF 45-2, "Emerick Decl."), at ¶ 17; Figure 6. | 57. Disputed. CSPA disputes the characterization of where the samples were taken. Maharg Decl., Ex. 29, Figure 8 (monitoring locations). They were taken within the Facility's MS4. Maharg Decl., Ex. 1 at ¶ 24; Ex. 29 at 15. Otherwise, undisputed. |
| 58. Plaintiffs did not conduct sampling near the LAA or from sample points MCSP2 and MCSP3. | Lungren Decl., at ¶ 3; Emerick Decl. (ECF 45-2), at ¶ 17; Figure 6. | 58. Undisputed. |
| 59. Pursuant to the Court's Scheduling Order, discovery closed on October 3, 2022. | Pretrial Scheduling Order (ECF 11), at 2:20-3:11. | 59. Undisputed. |
| 60. Disinfected effluent from the WWTP that is discharged to the LAAs via spray irrigation would be further treated as the effluent infiltrates through soil, where it receives additional physical, chemical, and biological treatment. The physical treatment is similar to water passing through a screen or sieve, where particulates are removed as the treated effluent | Simpson Decl., at ¶ 16. | 60. Immaterial to CSPA's claims. |

| | | |
|---|---|---|
| moves downward and laterally through the soil column. The chemical treatment is the result of cation exchange processes where contaminants are adsorbed onto soil particles and finally, the biological treatment is the result of microorganisms with the ability to degrade or transform both organic and inorganic substances in the infiltrating treated effluent. If the water comes into contact with groundwater, it would be diluted before it would reach Mule Creek. | | |
| 61. Plaintiffs did not perform sampling of the LAA during their two inspections of the Facility. | Lungren Decl., at ¶ 3;<br>Emerick Decl. (ECF 45-2), at ¶ 17;<br>Figure 6. | 61. Undisputed. |
| 62. In their complaints, Plaintiffs rely on both the Alleged Ongoing Discharge Data Set and the Alleged Past Discharge Data Set that was collected before the filing of the first complaint. | California Sportfishing Protection Alliance Complaint for Declaratory and Injunctive Relief (ECF 1, "CSPA's Complaint"), at ¶¶ 82, 97, 100, 101, 107, 111;<br>County's FAC (ECF 35), at ¶¶ 82, 108-109, 116-119. | 62. Disputed.<br><br>CSPA relied only on samples that had been already been taken "in their complaint[]," since post-Complaint samples had not occurred. Yet both pre-Complaint and post-Complaint samples show that Defendants have violated the Small MS4 Permit, as alleged in CSPA's complaint. Maharg Decl., Ex. 1 at tbls. 2-6, 8-11. |

| | | |
|---|---|---|
| 63. A fundamental principle in evaluating stormwater sampling data is accounting for "background" and non-human sources in the levels detected. | Simpson Decl., at ¶ 17; Deposition Transcript of Elizabeth Lee, dated September 22, 2022 ("Lee Deposition"), Lungren Decl., Ex. C, at 200:19-201:9, 201:11-13; | 63. Disputed. Evaluating stormwater sampling data is context-dependent. Here, in evaluating stormwater sampling data to determine whether Defendants' discharges from their MS4 to Mule Creek exceed WQS, the source of the pollutants are irrelevant to determining whether Defendants have complied with the Small MS4 Permit. Small MS4 Permit Provisions B.1, B.2, B.3, C, and, D (no requirements to account for background or non-human sources of pollutants). |
| 64. The Bacteria Provisions, Section 2.b Natural Sources of Bacteria states that: "a natural source exclusion approach may be utilized after all anthropogenic sources of bacteria are identified, quantified, and controlled." | Part 3 of the Water Quality Control Plan for Inland Surface Waters, Enclosed Bays, and Estuaries of California, Bacteria Provisions and a Water Quality Standards Variance Policy ("Bacteria Provisions"), RJN, Ex. D, Section 2.b, at p. 5. | 64. Undisputed but immaterial. |
| 65. Per EPA guidance, a violation of bacteria standards during dry weather flow does not always mean that an illicit discharge or sewage overflow is present. While raw sewage has bacteria | October 2004 EPA Guidance Manual: Illicit Discharge Detection and Elimination ("EPA Guidance Manual"), RJN, Ex. G, at p. 142. | 65. Undisputed but immaterial. |

| | | |
|---|---|---|
| concentrations that greatly exceed bacteria standards (approximately 12,000 MPN/100 mL) other bacteria sources, such as urban wildlife, can also cause a stream to violate standards | | |
| 66. During discovery, the head of the Regional Water Board's MS4 permit compliance unit, Elizabeth Lee, was deposed by Plaintiffs. In speaking about the importance of background, Ms. Lee testified that:<br><br>Q: So evaluating MCSP 4 would not be enough, you would also want to take into account what's happening upstream of the facility.· Is that fair to say?<br>A.· · That's correct.<br>Q.· And why is that?<br>A.· · Well, again like I said, you don't know if – if you only have that one downstream data point, if the discharges from MCSP had, in fact, contributed to that or caused it without knowing what the condition and the receiving water | Lee Deposition, Lungren Decl., Ex. C, at 138:12-19; 200:19-201:9; 201:11-13. | 66. Undisputed but immaterial.<br><br>The interpretation of an NPDES permit is a question of law. *NRDC v. Cnty of Los Angeles*, 725 F.3d 1194, 1204 (9th Cir. 2013). |

| | | |
|---|---|---|
| upstream of MCSP was to begin with.<br>Q.· · Right.·Is that typically referred to as what the background is?<br>A.· · Yeah, I guess that's what you would call it.<br>Q: And is that true for metals as well as E. coli?<br>A.· · Correct. | | |
| 67. The 2020 Collection System Investigation Report concluded that detections in stormwater of aluminum, iron, and magnesium are likely naturally occurring from the area's lithology and that detections of magnesium are attributable to sources upstream of the Facility. | 2020 Collection System Investigation Report, Lungren Decl., Ex. B, at 4.3.1.6. | 67. Undisputed as to the reports' conclusions.<br><br>Disputed to the extent the fact asserts that natural-occurring metals are the sole source of metals exceedances found in the Facility's stormwater discharges. Defendants have identified several "hot spots" at the Facility that contribute metals to stormwater discharges, including the firing range, the metal fabrication area, parking lots and outdoor storage areas associated with vehicle maintenance, the recycling yard, and the vocational welding area. Maharg Decl., Ex. 28 (MCSP Storm Water Master Plan) at MCSP2069-2081. The Regional Board has also identified the |

| | | |
|---|---|---|
| | | Facility as the source of metals in stormwater discharges. Maharg Decl., Ex. 22 at MCSP31321. |
| 68. The 2020 Collection System Investigation Report concluded that zinc detections are likely attributed to galvanized metal at the Facility, such as fencing. | 2020 Collection System Investigation Report, Lungren Decl., Ex. B, at 4.3.1.6. | 68. Undisputed. |
| 69. The Small MS4 Permit's Discharge Prohibitions, Provision B.1, prohibits the "[d]ischarges of "waste" from the MS4 that are prohibited by Statewide Water Quality Control Plans or appliable Regional Water Quality Control Plans (Basin Plans)." | Small MS4 Permit, RJN, Ex. A, Provision B.1, at p. 18. | 69. Undisputed.<br><br>The interpretation of an NPDES permit is a question of law. *NRDC v. Cnty of Los Angeles*, 725 F.3d 1194, 1204 (9th Cir. 2013). |
| 70. The Water Quality Control Plan for the California Regional Water Quality Control Board, Central Valley Region (February 2019) (the "Basin Plan") prohibits the discharge of several forms of waste in specified waterbodies. | California Regional Water Quality Control Board, Central Valley Region Water Quality Control Plan (Fifth Edition) for the Sacramento River and San Joaquin River Basins ("Basin Plan"), RJN, Ex. C. | 70. Undisputed.<br><br>Disputed to the extent that the fact asserts that the Basin Plan only prohibits discharges of waste into specified waterbodies. The Basin Plan in its entirety establishes the standards that govern water quality of receiving waters and discharges thereto. *See* ECF No. 95-7 at 560. Unless |

| | | |
|---|---|---|
| | | otherwise permitted, discharges that exceed water quality standards established by the Basin Plan are prohibited by the Basin Plan. *See* ECF No. 95-7 at 545-1006. |
| 71. The Basin Plan includes thirteen (13) amendments that were added to prohibit waste discharges as follows: (1) amendments 2-12 to prohibit waste discharge from "leaching and percolation systems" within certain areas (pp. 110-112); and (2) amendments 24 and 28 to prohibit waste discharge "from Individual Disposal Systems" in certain areas (p. 114). | Basin Plan, RJN, Ex. C, at pp. 110-112, 114. | 71. Undisputed.<br><br>Disputed to the extent that the fact asserts that the Basin Plan only prohibits discharges of waste through these 13 amendments. The Basin Plan in its entirety establishes the standards that govern water quality of receiving waters and discharges thereto. *See* ECF No. 95-7 at 560. Unless otherwise permitted, discharges that exceed water quality standards established by the Basin Plan are prohibited by the Basin Plan. *See* ECF No. 95-7 at 545-1006. |
| 72. The Small MS4 Permit's Discharge Prohibitions, Provision B.2, provides that "[d]ischarges of storm water from the MS4 to waters of the U.S. in a manner causing or threatening to cause a condition of pollution or nuisance as defined in Water | Small MS4 Permit, RJN, Ex. A, Provision B.2, at p. 19. | 72. Undisputed.<br><br>The interpretation of an NPDES permit is a question of law. *NRDC v. Cnty of Los Angeles*, 725 F.3d 1194, 1204 (9th Cir. 2013). |

| | | |
|---|---|---|
| Code § 13050 are prohibited.” | | |
| 73. Mule Creek has not been listed as an impaired waterbody in the Section 303(d) listing process. | Simpson Decl., at ¶ 29. | 73. Undisputed but immaterial. |
| 74. That listing process is specifically based on whether the waterbody's beneficial uses have been impaired. | Simpson Decl., at ¶ 29. | 74. Undisputed.<br><br>Disputed to the extent the fact asserts that all water bodies that do not meet WQS are placed on 303(d) list. The Small MS4 Permit acknowledges that a water body may be impaired and not listed on the 303(d) list. ECF No. 95-7 at 12 (Small MS4 Permit at 10, n.4). |
| 75. Plaintiffs did not establish that the stormwater discharges at issue actually reached Mule Creek such that it caused a “condition of pollution or nuisance” or that the stormwater that was sampled from locations MCSP5 and MCSP6 reached Mule Creek. | Order on Plaintiffs' Motion for Summary Adjudication (ECF 60), at 21:5-12 (denying the MSA on this ground). | 75. Disputed.<br><br>The asserted fact mischaracterizes the Court's Order on Plaintiffs' Motion for Partial Summary Judgment. The Court found:<br><br>“Therefore, because there appears to be a dispute of material fact as to whether the discharges upon which plaintiffs rely reached Mule Creek, the court cannot at this time conclude that defendants' discharges entered “waters of the U.S.” or “caus[ed] or |

| | | |
|---|---|---|
| | | threaten[ed] to cause a condition of pollution or nuisance" therein. (See Small MS4 Permit § B.2.) Accordingly, summary judgment on the issue of whether defendants violated provision B.2 of the Small MS4 Permit will be denied." ECF No. 60 at 21:5-12. |
| 76. The Small MS4 Permit's Discharge Prohibitions, Provision B.3 ("MS4 Provision B.3"), provides in pertinent part that discharges of material "other than storm water to waters of the U.S. shall be effectively prohibited, except as allowed under this Provision." | Small MS4 Permit, RJN, Ex. A, Provision B.3, at p. 19. | 76. Undisputed.<br><br>The interpretation of an NPDES permit is a question of law. *NRDC v. Cnty of Los Angeles*, 725 F.3d 1194, 1204 (9th Cir. 2013). |
| 77. Plaintiffs' experts collected stormwater samples from ponded water sampled it for the presence of pharmaceuticals and caffeine. | Emerick Decl. (ECF 45-2), at ¶ 17; Figure 6. | 77. Undisputed.<br><br>CSPA disputes the characterization of where the samples were taken. *See* Maharg Decl., Ex. 29, Figure 8 (monitoring locations). They were taken within the Facility's MS4. Maharg Decl., Ex. 1 at ¶ 24; Ex. 29 at 15.<br><br>Otherwise, undisputed. |
| 78. The sampling, however, was conducted during dry weather and not | Lungren Decl., at ¶ 2; | 78. Undisputed. |

| | | |
|---|---|---|
| during a Significant Rain Event. | Emerick Decl. (ECF 45-2), at ¶ 17; Figure 6. | |
| 79. Ms. Lee further testified that the term "effectively" as used in Provision B.3 is not an absolute discharge prohibition and, instead, it means that the permittee must use best efforts to prevent non-stormwater from discharging through the MS4 and engage with the Board in the iterative process to implement BMPs. | Lee Deposition, Lungren Decl., Ex. C, at 184:20-185:2. | 79. Disputed.<br><br>Defendants' characterization of Ms. Lee's testimony is not accurate. She states: "Sure, based on my opinion, effectively prohibited would be if you knew that something other than non-storm water was making its way into your system, that you would try to prohibit it or implement BMPs to prohibit it. Whether it be through public education or something more structural, in effect, to stop it from entering your system." Lee Deposition at 184:20-185:2. Neither Ms. Lee nor Provision B.3 mention the iterative process.<br><br>The interpretation of an NPDES permit is a question of law. *NRDC v. Cnty of Los Angeles*, 725 F.3d 1194, 1204 (9th Cir. 2013). |
| 80. CSPA's expert, Dr. Robert Emerick, admitted at his deposition that he did not know and that he could not determine how much sewage was present in | Emerick Deposition, Lungren Decl., Ex. D, at 56:24-57:1, 92:11-12. | 80. Undisputed. |

| | | |
|---|---|---|
| the stormwater at the Facility. | | |
| 81. High levels of ammonia would be detected in the stormwater samples if sewage was present, but the levels of ammonia detected in the Alleged Ongoing Discharge Data Set are very low. | Simpson Decl., at ¶ 32; Lee Deposition, Lungren Decl., Ex. C, at 136:3-13, 136:14-25, 137:18-138:2, 138:3-11; Emerick Deposition, Lungren Decl., Ex. D, at 55:21-24, 57:7-8. | 81. Disputed.<br><br>Dr. Emerick testified that while ammonia can be a good indicator of the presence of sewage, it is not a perfect indicator. Maharg Decl., Ex. 30 (Emerick Tr.), at pp. 55-63.<br><br>The first problem Dr. Emerick identifies with using ammonia to detect the presence of sewage in storm water is the detection limit. Dr. Emerick testified that adding sewage to storm water dilutes the amount of ammonia in the sewage to a point where it might be below the detection limit. Maharg Decl., Ex. 30 (Emerick Tr.), at pp. 55-63.<br><br>The second issue that Dr. Emerick identifies is that ammonia may be converted to nitrate in transit from the source and where the sample is collected, and therefore is not a reliable indicator in some cases (e.g., where the sewage component goes |

| | | |
|---|---|---|
| | | through a low-oxygen environment such as groundwater or soil). Maharg Decl., Ex. 30 (Emerick Tr.), at pp. 55-63. |
| 82. Plaintiffs' expert, Dr. Emerick, admitted at his deposition that he reviewed the ammonia levels in the sampling data and found them to be below levels expected if they contained sewage. He further testified that that he observed potential sources of background contributions to the E. Coli detections. | Emerick Deposition, Lungren Decl., Ex. D, at 43:22-44:3, 44:22-45:6, 56:24-57:1, 92:11-12; 71:5-7. | 82. Disputed.<br><br>Dr. Emerick actually testified that ammonia was an unreliable indicator for cases such as this, where the sewage component would be diluted by the volume of storm water with which it was mixed. Maharg Decl., Ex. 30 (Emerick Tr.), at pp. 55-63.<br><br>Dr. Emerick further testified that it was possible to find very low levels of ammonia, or none at all if the ammonia had been diluted below the detection limit, in contexts such as this where storm water had sufficiently diluted the sewage component. Maharg Decl., Ex. 30 (Emerick Tr.), at pp. 55-63. |
| 83. Ms. Lee testified that, based upon her extensive experience and training at the Regional Water Board, she would expect ammonia levels in stormwater samples to be "in the hundreds" if there was sewage present. | Lee Deposition, Lungren Decl., Ex. C, at 138:3-11. | 83. Disputed.<br><br>Ms. Lee actually testified that she would expect ammonia to be much higher if she were "looking at a wastewater type overflow or discharge *into* the storm water system" (emphasis added), not, as Defendants |

| | | |
|---|---|---|
| | | state, "in storm water samples." Lee Deposition at 138:3-11. This is consistent with Dr. Emerick's testimony that raw sewage would be expected to have high levels of ammonia, but diluted sewage would have lower levels of ammonia. Maharg Decl., Ex. 30 (Emerick Tr.), at pp. 55-63. |
| 84. The Small MS4 Permit's "Effluent Limitations" Provision C ("MS4 Provision C"), provides in pertinent part that: (1) permittees shall implement controls to reduce pollutants from their MS4s to WOTUS to the MEP standard; and (2) stormwater discharges shall not contain hazardous substances above "reportable quantities." | Small MS4 Permit, RJN, Ex. A, Provision C, at p. 20. | 84. Undisputed but immaterial to CSPA's claims. |
| 85. CDCR is actively engaged in the iterative BMP process with the Regional Water Board and the head of the Board's MS4 permit compliance program is satisfied with CDCR's progress. | Lee Deposition, Lungren Decl., Ex. C, at 97:25-98:4, 99:22-101:10, 165:23-166:4, 198:15-199:9. | 85. Disputed and immaterial.<br><br>Ms. Lee testified only to her partial satisfaction with regard to a specific set of BMPs, and further testified that, though she could not recall which ones specifically, that there were BMPs that had not been implemented to her satisfaction in the past. |

| | | |
|---|---|---|
| | | Lee Deposition at 198:15-199:1.<br><br>On November 3, 2022, the Regional Board, through a letter signed by Ms. Lee, notified Defendants that they had not implemented BMPs sufficient to address metals that are causing or contributing to WQS exceedances in Mule Creek. Maharg Decl., Ex. 21. |
| 86. The Small MS4 Permit's Receiving Water Limitations, Provision D, provides: "Discharges shall not cause or contribute to an exceedance of water quality standards contained in a Statewide Water Quality Control Plan, the California Toxics Rule (CTR), or in the applicable Regional Water Board Basin Plan." | Small MS4 Permit, RJN, Ex. A, Provision D, at p. 20. | 86. Undisputed.<br><br>The interpretation of an NPDES permit is a question of law. *NRDC v. Cnty of Los Angeles*, 725 F.3d 1194, 1204 (9th Cir. 2013). |

| | | |
|---|---|---|
| 87. Provision D provides, in relevant part: Upon a determination by either the Permittee or the Regional Water Board that MS4 discharges are causing or contributing to an exceedance of an applicable water quality standard, the Permittee shall promptly notify and thereafter submit a report to the Regional Water Board that describes BMPs that are currently being implemented and additional BMPs that will be implemented to prevent or reduce any pollutants that are causing or contributing to the exceedance of water quality standards. | Small MS4 Permit, RJN, Ex. A, Provision D.1, at p. 20. | 87. Undisputed.<br><br>The interpretation of an NPDES permit is a question of law. *NRDC v. Cnty of Los Angeles*, 725 F.3d 1194, 1204 (9th Cir. 2013). |
| 88. Plaintiffs do not have sufficient data from the Alleged Ongoing Discharge Data Set to prove that Mule Creek's water quality standards were exceeded after the filing of the first complaint. | Simpson Decl., at ¶¶ 30-31. | 88. Disputed.<br><br>Object to the extent this asserted fact is a conclusion of law regarding Defendants' compliance with the Small MS4 Permit.<br><br>Sampling data from December 17, 2020, collected two days after CSPA filed its complaint, at MCSP2 and MCSP3 – which are undisputed points of discharge into Mule Creek – indicated exceedances of |

| | | |
|---|---|---|
| | | aluminum, iron, lead, and zinc, Maharg Decl., Ex 1 (Ashby Decl.) at 36-37 (tbls. 5-6), which violate the Discharge Prohibitions and the Receiving Water Limitations.<br><br>Plaintiffs have also provided evidence of past discharges from MCSP2 and MCSP3, which Defendants concede discharge to Mule Creek, that demonstrate numerous past violations of the Small MS4 Permit. Maharg Decl., Ex 1 (Ashby Decl., ¶¶ 17-21, tbls. 7-11.<br><br>Defendants moved their sampling locations upstream to MCSP5 and MCSP6, but made no improvements to the conveyances between MCSP5 and MCSP2 or between MCSP6 and MCSP3.<br><br>Defendants have reported discharges to Mule Creek, as recently as November 2, 2022. Maharg Decl., Ex. 20; see also Exs. 8-19 (Discharge Notifications). Sampling from these events shwos that Defendants' MS4 discharges exceeded *E. coli* and metals WQS. Maharg Decl., Ex. 1 at tbls. 8-11. |
| 89. Determining whether a given | Simpson Decl., at ¶¶ 17, 30-31; | 89. Disputed. |

| | | |
|---|---|---|
| waterbody's Receiving Water Limitations have been exceeded depends on assessing a robust data set from the waterbody itself, not on whether a handful of samples are above criteria from a single sampling point (i.e., from MCSP4) after taking into consideration of background sources. | Lee Deposition, Lungren Decl., Ex. C, at 120:9-121:10, 169:20-170:4, 170:6-22, 199:22-200:18. | Defendants' assertion is not a fact, but a legal argument.<br><br>The evidence establishes that Mule Creek was exceeding E. coli and WQS on days where Defendants discharged stormwater above those same standards. Maharg Decl., Ex 1 at tbls. 4, 6, 9, 11. |
| 90. Provision D provides that: (1) the Permittee complies with the Receiving Water Limitations "through timely implementation of control measures/BMPs and other actions to reduce pollutants" and that the Permittee complies with the Receiving Water Limitations by complying with certain specific procedures. | Small MS4 Permit, RJN, Ex. A, Provision D, at p. 20. | 90. Disputed.<br><br>The interpretation of an NPDES permit is a question of law. *NRDC v. Cnty of Los Angeles*, 725 F.3d 1194, 1204 (9th Cir. 2013).<br><br>Through paraphrasing and selective quotations, Defendants have mischaracterized Provision D of the Small MS4 Permit. Provision D does not include a "safe harbor" from enforcement. *See* ECF No. 95-7 at 22, 422 |
| 91. CDCR has implemented extensive BMPs and is engaged in the BMP iterative process with the Regional Water Board. | Orta Decl., at ¶¶ 4-13;<br>Simpson Decl., at ¶ 15. | 91. Disputed and immaterial.<br><br>Defendants' assertion is not a fact, but a legal interpretation of the Small MS4 Permit. The interpretation of an NPDES permit is a |

| | | |
|---|---|---|
| | | question of law. *NRDC v. Cnty of Los Angeles*, 725 F.3d 1194, 1204 (9th Cir. 2013).<br><br>Disputed that CDCR has improved the quality of the Facility's stormwater discharges. Maharg Decl., Ex. 1 at Tbls. 2-6, 8-1.<br><br>The majority of the BMPs in place at the Facility were in place for years. Maharg Decl., Ex. 2 (Orta Tr.) at 97:19-24, 112:17-24, 107:18-24, 107:25-108:9, 110:6-16; ECF No. 95-4 at 19.<br><br>Defendants have not fixed defects in their sanitary sewer system and MS4 that were identified in 2019. Maharg Decl., Ex. 2 (Orta Tr.) at 114:6-13; Maharg Decl., Ex. 20 at MCSP31322; Ex. 26.<br><br>Defendants have admitted to continuing unlawful discharges of irrigation waters and conceded that the Facility would not come into compliance with Provision B.3 with regard to their irrigation discharges, until February 2025. ECF No. 95-4 (Orta Decl.) at 19; Maharg Decl., Ex. 23 at MCSP33473; Maharg Decl., Ex. 7 at MCSP32215-16. |

| | | |
|---|---|---|
| | | On November 3, 2022, the Regional Board notified Defendants they have not complied with orders to address discharges that cause or contribute to exceedances of metals in Mule Creek. Maharg Decl., Ex. 21. |
| 92. In its MSA, the County relied on photographs from its inspection of the Facility and ensuing declaration from its expert, Karen Ashby, asserting that certain industrial materials were uncovered and exposed to potential precipitation. | Plaintiffs' MSA (ECF 45), at 37:5-14, 23-26; Ashby Decl. (ECF 45-4), at ¶¶ 22, 26-27; IMG-2885; IMG-2884; IMG-2876- IMG-2877. | 92. Undisputed. Immaterial to CSPA's claims. |
| 93. CDCR has continuously held a valid NEC, certifying that its industrial activities and materials are not exposed to precipitation. | State Water Resources Control Board Receipts of No Exposure Certification (NEC) Under the Industrial General Permit, first processed May 22, 2018 (Receipt of NEC Under the Industrial General Permit, dated July 27, 2018; Receipt of NEC Under the Industrial General Permit, dated July 5, 2019; Receipt of NEC Under the Industrial General Permit, dated July 3, 2020; Receipt of NEC Under the Industrial General Permit, dated September 23, 2021; Receipt of NEC Under | 93. Undisputed. Immaterial to CSPA's claims. |

| | | |
|---|---|---|
| | the Industrial General Permit, dated September 27, 2022) ("NEC Certification Receipts"), RJN, Ex. J. | |

Dated: December 12, 2022

LAW OFFICES OF ANDREW L. PACKARD

ANDREW L. PACKARD
WILLIAM N. CARLON
Attorneys for Plaintiff
CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

Dated: December 12, 2022

AQUA TERRA AERIS LAW GROUP

/s Erica A. Maharg
JASON R. FLANDERS
ERICA A. MAHARG
Attorneys for Plaintiff
CALIFORNIA SPORTFISHING PROTECTION ALLIANCE