1  Christopher M. Pisano, Bar No. 192831
   christopher.pisano@bbklaw.com
2  SHAWN D. HAGERTY, Bar No. 182435
   shawn.hagerty@bbklaw.com
3  REBECCA ANDREWS, Bar No. 272967
   rebecca.andrews@bbklaw.com
4  BEST BEST & KRIEGER LLP
   2001 N. Main Street
5  Suite 390
   Walnut Creek, California  94596
6  Telephone:(925) 977-3300
   Facsimile:(925) 977-1870
7
   Attorneys for Plaintiff
8  COUNTY OF AMADOR

9              UNITED STATES DISTRICT COURT
10            EASTERN DISTRICT OF CALIFORNIA
11         ROBERT T. MATSUI FEDERAL COURTHOUSE

12 | CALIFORNIA SPORTFISHING | Case No. 2:20-cv-02482-WBS-AC
   | PROTECTION ALLIANCE,    | [Consolidated with 2:21-cv-00038-WBS-AC]

13              Plaintiff,

   **COUNTY OF AMADOR'S MEMORANDUM
14      v.                     OF POINTS AND AUTHORITIES IN
                               OPPOSITION TO DEFENDANTS'
15 KATHLEEN ALLISON, in her    KATHLEEN ALLISON AND PATRICK
   official capacity as Secretary  COVELLO'S MOTION FOR SUMMARY
   of the California Department of  JUDGMENT**
16 Corrections and Rehabilitation,

17              Defendants.    Date:     January 9, 2022
                               Time:     1:30 p.m.
18                             Dept:     5
   COUNTY OF AMADOR, a public  Judge: William B. Shubb
19 agency of the State of       Trial Date: April 18, 2023
   California,                  Action Filed: January 7, 2021

20              Plaintiff,

21      v.

22 KATHLEEN ALLISON in her
   official capacity as Secretary
23 of the California Department of
   Corrections and Rehabilitation;
24 PATRICK COVELLO in his official
   capacity of Warden of
25 California Department of
   Corrections and Rehabilitation
26 Mule Creek State Prison; and
   CALIFORNIA DEPARTMENT OF
27 CORRECTIONS AND REHABILITATION,

28              Defendants.

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

1

# TABLE OF CONTENTS

2
**Page**

3    I.    INTRODUCTION ............................................... 6

4    II.   DISPUTED MATERIAL FACTS .................................... 9

     A.    Water Quality Standards ............................... 9

5
     B.    Defendants Intentionally Stopped Sampling at MCSP2
6          and MCSP3 After Receiving the 60-Day Notice of
           Intent to Sue and Resumed Sampling at MCSP2 and
7          MCSP3 After Discovery Closed .......................... 9

8    C.    Pre-Complaint, Defendants' Own Sampling Data Shows
           Facility Discharges to Mule Creek Exceeded E. coli
9          and Metals Water Quality Standards ................... 12

     D.    Post-Complaint, Defendants' Own Sampling Data
10         Shows Flows Through MCSP5 and MCSP6 Actually
           Discharged to Mule Creek and Exceeded E. coli and
11         Metals Water Quality Standards ...................... 12

12         1.    Post-Complaint Flows Sampled At MCSP5 and
                 MCSP6 Actually Discharged to Mule Creek ........ 12

13         2.    Post-Complaint Facility Discharges and Mule
                 Creek Exceeded E. coli and Metals Water
14               Quality Standards ............................. 14

15   E.    Defendants Failed to Engage in the Iterative
           Process ............................................. 15

16   III.  LEGAL BACKGROUND .......................................... 16

17   A.    A History of Past Violations Makes It Reasonable
           Violations Are Likely to Recur ...................... 16

18   B.    Defendants Cannot Impeach Their Own Sampling
           Results ............................................. 17

19   C.    Engagement In the Iterative Process Is a Required
           Response to Violations. It Does Not Excuse
20         Violations .......................................... 17

21   IV.   SUMMARY JUDGMENT STANDARD ................................. 18

     V.    OPPOSITION ................................................ 19

22
     A.    Genuine Disputes of Material Facts Preclude
23         Summary Judgment on the Second Cause of Action In
           Its Entirety ........................................ 19

24         1.    Pre-Complaint Data and Pre-Complaint
                 Violations Are Relevant ....................... 19

25
           2.    Post-Complaint Data Shows Genuine Disputes of
26               Material Fact ................................. 20

     B.    There are Genuine Disputes of Material Fact
27         Regarding The Past and Reasonable Likelihood of
           Recurring Violations of MS4 Permit Provisions B.1,
28         B.2, D, and C ....................................... 22

1

**TABLE OF CONTENTS**
(continued)

2                                                                                  **Page**

3      1.   Material Factual Disputes Preclude Summary
            Judgment as to Provision B.1 ................... 23
4
            a.   Defendants Violated Provision B.1 Sixty-
5                Six (66) Times Between February 4, 2019
                 and January 6, 2021 ...................... 25
6
            b.   Defendants Continue or Are Reasonably
7                Likely To Continue Violating Provision
                 B.1 As Shown By 87 Ongoing Violations of
                 Provision B.1 Between January 7, 2021
8                and April 30, 2022 ...................... 25
9      2.   Material Factual Disputes Preclude Summary
            Judgment as to Provision B.2 ................... 26
10     3.   Material Factual Disputes Preclude Summary
            Judgment as to Provision D ..................... 28
11
12     4.   Material Factual Disputes Preclude Summary
            Judgment as to Provision C ..................... 32
13  VI.  CONCLUSION ............................................. 34

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

1

2

3

4

5

6

7

8

9

10

11

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TABLE OF AUTHORITIES

**Federal Cases**

*California Sportfishing Prot. All. v. River City Waste Recyclers, LLC*
  205 F. Supp. 3d 1128 (E.D. Cal. 2016).................................................................. 28, 29

*Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*
  305 F.3d 943 (9th Cir. 2002)................................................................................. 17, 20

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*
  484 U.S. 49 (1987) ........................................................................ 16, 19, 20, 22

*Inland Empire Waterkeeper v. Corona Clay Co.*
  17 F.4th 825 (9th Cir. 2021)................................................................................. 17, 20

*Natural Resources Defense Council, Inc. v. County of Los Angeles*
  725 F.3d 1194 (9th Cir. 2013)................................................................................. *passim*

*Natural Resources Defense Council v. County of Los Angeles*
  840 F.3d 1098 (9th Cir. 2016)................................................................................. 22, 23

*San Francisco Baykeeper v. West Bay Sanitary Dist.*
  791 F.Supp.2d 719 (N.D. Cal. 2011) .................................................................. 17

*Save Our Bays & Beaches v. City & Cnty. of Honolulu*
  904 F.Supp. 1098 .................................................................................................... 17

*Sierra Club v. Union Oil Co.*
  813 F.2d 1480 (9th Cir.1987)................................................................................. 17

*Sierra Club v. Union Oil Co.*
  853 F.2d 667 (9th Cir.1988)................................................................................. *passim*

**State Cases**

*San Diego Gas & Elec. Co. v. San Diego Reg'l Water Quality Control Bd.*
  36 Cal.App.5th 427 (2019)................................................................................. 26

**Federal Statutes**

33 U.S.C. § 1311(a) ....................................................................................................... 8

33 U.S.C. § 1313(d) ..................................................................................................... 27

33 U.S.C. § 1342(p) ..................................................................................................... 8

33 U.S.C. § 1365(a)(1) ............................................................................................... 16

**State Statutes**

Cal. Code Regs., tit. 22 § 64449 ...................................................................................... 9

Cal. Water Code § 13050(l) ............................................................................................ 26

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

2:20-CV-02482-WBS-AC
MEMORANDUM IN OPPOSITION TO MSJ

MEMORANDUM IN OPPOSITION

Plaintiff County of Amador ("County") submits this memorandum in opposition to Defendants motion for summary judgment. ECF 95.

**I.    INTRODUCTION**

This Clean Water Act citizen suit raises three causes of action. The second cause of action is based largely on the results of samples Defendants took from Mule Creek and from four locations in Mule Creek State Prison's ("Facility") storm drain system (called an "MS4"). The sample results show that during the 2 years before the County filed its complaint, the Facility's discharges violated the Clean Water Act permit governing those discharges, the "Small MS4 Permit," **99 times**. Specifically, the Facility violated the "Discharge Prohibitions" of Small MS4 Permit Provisions B.1 and B.2 **66 times** (41 times for *E. coli* and 25 times for metals) and the "Receiving Water Limitations" of Provision D **33 times** (19 times for *E. coli* and 14 times for metals).

Defendants' sample results also show that during the almost 2 years since this action was initiated, the Facility's discharges violated the Small MS4 Permit **122 times.** Specifically, the Facility violated Provisions B.1 and B.2 Discharge Prohibitions **87 times** (10 for *E. coli* and 77 for metals) and Provision D Receiving Water Limitations **35 times** (6 for *E. coli* and 29 for metals). This long history of repeated violations also shows that Defendants are failing to implement controls to reduce the discharge of pollutants from the Facility's MS4 to Mule Creek in violation of the "Effluent Limitations" of Small MS4 Permit

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

Provision C.

Defendants arguments against the 99 pre-complaint violations are purely legal, not factual, and are contrary to well-established case law. As a result, summary judgment is precluded as to the pre-complaint violations.

Under well-established U.S. Supreme Court and Ninth Circuit precedent, summary judgment is precluded as to the 122 post-complaint violations because there are genuine disputes of material facts:

1. there is a threshold factual dispute over whether the undisputed past violations are likely to recur, which is an inherently factual question. Further, Defendants' own sampling data shows a long history of such violations showing recurrence is likely;

2. there is a threshold factual dispute over whether post-complaint stormwater flows passing through MS4 location MCSP5 and MCSP6 actually discharge to Mule Creek;

3. Defendants own evidence admits that the Facility's MS4 discharges contain prohibited "wastes" in violation of Small MS4 Permit Provision B.1;

4. Defendants own sampling data show the Facility's MS4 discharges contain pollutants (*E. coli* and metals) at levels that exceed the limits established to protect beneficial uses of Mule Creek (human health and drinking water, respectively) in violation of Small MS4 Permit Provision B.2;

5. Defendants own evidence shows the Facility routinely discharges *E. coli* and metals to Mule Creek on days when Mule

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

2:20-CV-02482-WBS-AC
MEMORANDUM IN OPPOSITION TO MSJ

1   Creek exceeds water quality standards ("WQS") for *E. coli* and

2   metals, in violation of Small MS4 Permit Provision D. Further,

3   Defendants' own evidence shows Defendants have failed to engage

4   in the "iterative process," which is required anytime Provision D

5   is violated.

6       6.   This long history of repeated violations shows that

7   Defendants continue to fail to implement controls to reduce the

8   discharge of pollutants from the Facility's MS4 to Mule Creek in

9   violation of Small MS4 Permit Provision C.

10      Defendants seek summary judgment on the first cause of

11  action as it relates to the Facility's land application areas

12  ("LAAs"). Defendants do not seek summary judgment on the first

13  cause of action for unpermitted discharges from other portions of

14  the Facility. To focus the legal and factual issues in this case,

15  the County will withdraw the portion of the first cause of action

16  for unpermitted discharges from the Mule Creek State Prison's

17  ("Facility") land application area in violation of Section 301(a)

18  of the Clean Water Act. ECF 35 at ¶¶ 71, 72, 81. The County will

19  no longer pursue this theory of the claim and will not include it

20  in the pretrial statement, in accordance with the requirements of

21  Local Rule 281.

22      Defendants also seek summary judgment on the third cause of

23  action for violations of the Clean Water Act permit authorizing

24  stormwater discharges from the Facility's industrial areas (the

25  "Industrial General Permit"). To focus the legal and factual

26  issues in this case, the County will withdraw the third cause of

27  action for discharges in violation of the Industrial General

28  Permit and Clean Water Act 33 U.S.C. §§ 1311(a), 1342(p). ECF 35

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

2:20-CV-02482-WBS-AC
MEMORANDUM IN OPPOSITION TO MSJ

at ¶¶ 113-122. The County will no longer pursue this claim and will not include it in the pretrial statement, in accordance with the requirements of Local Rule 281.

## II.   DISPUTED MATERIAL FACTS

### A.   Water Quality Standards

Relevant to this action, the following water quality standards apply to Mule Creek:

*E. coli*: 320 colony forming units (cfu) under a statistical threshold value (STV), where no more than 10% of samples may exceed this limit in a calendar month. County Separate Statement of Disputed Facts ("County SS") at ¶ 1.

Aluminum, iron, and manganese under Title 22 of the California Code of Regulations:

| Constituent | MCLs / Units |
|---|---|
| Aluminum | 200 µg/L |
| Iron | 300 µg/L |
| Manganese | 50 µg/L |

Copper, lead, and zinc under the California Toxics Rule:

| Constituent | CTR Criteria / Units |
|---|---|
| Copper | 9 µg/L dissolved (Chronic) |
| Lead | 2.5 µg/L dissolved (Chronic)<br>3.2 µg/L total (Chronic) |
| Zinc | 117 ug/L dissolved (Acute)<br>120 µg/L total (Acute) |

County SS at ¶ 2.

### B.   Defendants Intentionally Stopped Sampling at MCSP2 and MCSP3 After Receiving the 60-Day Notice of Intent to Sue and Resumed Sampling at MCSP2 and MCSP3 After Discovery Closed

Between February 2018 and December 2020, Defendants were required to sample discharges from the Facility's storm drain

BEST BEST & KRIEGER LLP<br>ATTORNEYS AT LAW<br>2001 N. MAIN STREET, SUITE 390<br>WALNUT CREEK, CALIFORNIA 94596

2:20-CV-02482-WBS-AC<br>MEMORANDUM IN OPPOSITION TO MSJ

system ("MS4") discharge locations MCSP2 and MCSP3 "when discharging storm water to Mule Creek." County SS at ¶ 3. The results of samples taken from MCSP2 and MCSP3 while discharging to Mule Creek showed the Facility's discharges consistently contained pathogens (indicated by *E. coli*) and metals at levels that exceeded water quality standards for those levels. County SS at ¶ 4; see also Section II.C, below.

In May 2020, the County of Amador submitted a letter notifying Defendants of the exceedances indicated in Defendants' monitoring results, informing Defendants that the exceedances constituted violations of the Small MS4 Permit, and indicating an intent to sue. ECF 35 at 27-55. In August 2020, the Regional Board ordered Defendants:

1. to continue collecting samples from the Facility outfalls at MCSP2 and MCSP3 "when discharging through the MS4 to Mule Creek,"
2. to collect samples from Mule Creek at MCSP4 "concurrently with MS4 outfall sampling[,]" and
3. that the samples collected from MCSP2 and MCSP3 be "representative of the volume and nature of the monitored discharge."

County SS ¶ 3.

After receiving the County's notice of intent to sue, however, Defendants unilaterally notified the Regional Board that Defendants would no longer conduct monitoring at MCSP2 and MCSP3 and would instead rely solely on monitoring conducted at locations MCSP5 and MCSP6. County SS at ¶ 5 (Defendants

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

2:20-CV-02482-WBS-AC
MEMORANDUM IN OPPOSITION TO MSJ

"identified MCSP5 and MCSP6 as the outfalls for purposes of the 13383 Order and Small MS4 General Permit due to the absence of monitoring infrastructure at the true outfall locations.") In response, the Regional Board required Defendants:

1. To collect samples from the Facility's "outfalls" at MCSP5 and MCSP6 "when discharging through the MS4 to Mule Creek,"

2. to collect samples from Mule Creek at MCSP4 "concurrently with MS4 outfall sampling[,]"

3. that the samples collected from MCSP5 and MCSP6 be "representative of the volume and nature of the monitored discharge; and

4. to submit a plan with a timeline to install permanent monitoring locations at MCSP2 and MCSP3 **no later than July 30, 2021.**

County SS ¶ 6.

Defendants failed to provide a plan to install permanent monitoring locations at MCSP2 and MCSP3 by July 30, 2021. County SS ¶ 7. In a late-submitted plan, Defendants stated, "the installation of the permanent monitoring structures at MCSP2 and MCSP3 is underway. Design was completed in June, 2021. Installation is estimated to be completed in **November 2021**." County SS ¶ 8, emphasis added.

Defendants failed to meet the November 2021 date to install the monitoring infrastructure at MCSP2 and MCSP3. County SS ¶ 9. Defendants did not install the permanent monitoring until just before this motion was filed on **November 28, 2022**. ECF 95-2 at

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA, 94596

¶ 39; ECF 95-4 at ¶9 ("recently completed … permanent monitoring station at MCSP2 and MCSP3"). Discovery in this matter, however, closed on **October 3, 2022**. ECF 95-2 at ¶ 59.

**C.    Pre-Complaint, Defendants' Own Sampling Data Shows Facility Discharges to Mule Creek Exceeded E. coli and Metals Water Quality Standards**

Defendants admit the Facility's stormwater discharges from outfalls at MCSP2 and MCSP3 reach Mule Creek. ECF 95-2 at ¶¶ 24, 56. Defendants sampled and analyzed these Facility discharges at outfalls MCSP2 and MCSP3, and within Mule Creek at MCSP4 between April 19, 2019 and January 6, 2021. County SS at ¶ 10.

The results of Defendants' samples of the Facility's discharges to Mule Creek between February 4, 2019 and January 6, 2021, through MS4 outfalls MCSP2 and MCSP3 to Mule Creek showed the following:

1.    Forty-one (41) times discharges contained levels of *E. coli* in excess applicable *E. coli* WQS. County SS ¶ 11.

2.    Nineteen (19) days discharges contributed *E. coli* to Mule Creek when Mule Creek also exceeded *E. coli* WQS. County SS ¶ 12.

3.    Twenty-Five (25) times discharges contained levels of aluminum, iron, lead, or zinc in excess of WQS for those metals. County SS ¶ 13.

4.    Fourteen (14) days discharges contributed aluminum, iron, lead, or zinc to Mule Creek when Mule Creek also exceeded WQS for those metals. County SS ¶ 14.

**D.    Post-Complaint, Defendants' Own Sampling Data Shows Flows Through MCSP5 and MCSP6 Actually Discharged to Mule Creek and Exceeded E. coli and Metals Water Quality Standards**

**1.    Post-Complaint Flows Sampled At MCSP5 and MCSP6 Actually Discharged to Mule Creek**

Defendants admitted to the California Office of Emergency

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

Services and the Regional Board that the Facility discharged to Mule Creek through MCSP5 and MCSP6 during 13 storm events between January 4, 2021 and April 30, 2022:

| Event No. | Date(s) of discharge to Mule Creek | Volume of Discharge (gallons) |
|---|---|---|
| 1. | January 4 – 5, 2021 | 238,488 |
| 2. | January 22 – February 3, 2021 | 11,126,134 |
| 3. | February 11 – 16, 2021 | 1,305,260 |
| 4. | March 5 – 6, 2021 | 43,887 |
| 5. | March 9 – 11, 2021 | 282,342 |
| 6. | March 14 – 16, 2021 | 393,840 |
| 7. | March 18 – 19, 2021 | 1,227,103 |
| 8. | October 20- 27, 2021 | 8,003,962 |
| 9. | November 8 - 10, 2021 | 209,712 |
| 10. | December 9 - 31, 2021 | 7,321,854 |
| 11. | March 15 - 21, 2022 | 148,334 |
| 12. | March 27 - 29, 2022 | 168,699 |
| 13. | April 11, 2022 | 3,501,100 |

County SS at ¶ 15.

To the Office of Emergency Services, Defendants admitted flows through MCSP5 and MCSP6 discharged to Mule Creek, as follows:

- "We have discharged and sampled taken [*sic*] from MCSP4, MCSP5 and MCSP6 locations on January 27, 2021." County SS ¶ 16.

- "As per the 13383 order Mule Creek State Prison is to make notification of discharging of Stormwater into Mule Creek to the Central Valley Water Board [¶] Flow was present at MCSP1, MCSP4, MCSP5 and MCSP6 locations during March 14th through 16th storm event. Samples have been taken." County SS ¶ 17.

- "As per the 13383 order Mule Creek State Prison is to make notification of discharging of Stormwater into Mule Creek to the Central Valley Water Board [¶] Flow was present at MCSP1, MCSP4, MCSP5 and MCSP6 locations

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

2:20-CV-02482-WBS-AC
MEMORANDUM IN OPPOSITION TO MSJ

during March 18^th^ through 19^th^ storm event. Samples have been taken." County SS ¶ 18.

- "As per the December 22, 2020 13383 order Mule Creek State Prison is to make notification of discharging of Stormwater into Mule Creek to the Central Valley Water Board [¶] We have discharged and samples taken [*sic*] from MCSP4, MCSP5 and MCSP6 locations on October 22, 2021." County SS ¶ 19.

- "As per the December 22, 2020 13383 order Mule Creek State Prison is to make notification of discharging of Stormwater into Mule Creek to the Central Valley Water Board [¶] We have discharged and samples taken [*sic*] from MCSP4, MCSP5 and MCSP6 locations on November 9, 2021." County SS ¶ 20.

To the Regional Board, Defendants submitted quarterly monitoring reports admitting to taking samples from MCSP4, MCSP5, and MCSP6 in "accordance with the December 22, 2020 [Regional] Board 13383 Order." County SS at ¶ 21. The 13383 Order required samples from MCSP5 and MCSP6 to be taken "when discharging through the MS4 to Mule Creek," that the samples collected within Mule Creek at MCSP4 be collected "concurrently with MS4 outfall sampling[,]" and that the samples be "representative of the volume and nature of the monitored discharge." County SS at ¶ 6.

### 2.   Post-Complaint Facility Discharges and Mule Creek Exceeded E. coli and Metals Water Quality Standards

Defendants sampled and analyzed Facility discharges to Mule Creek through MCSP5 and MCSP6 and within Mule Creek at MCSP4 between January 7, 2021 and April 30, 2022. County SS at ¶ 23. Defendants' admitted the sample results from MCSP5, MCSP6, and MCSP4 were in accordance with the 13383 Order, which required the samples to be representative of Facility discharges to Mule Creek. County SS at ¶¶ 6, 21.

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

2:20-CV-02482-WBS-AC
MEMORANDUM IN OPPOSITION TO MSJ

The results of Defendants' samples of the Facility's discharges to Mule Creek through MS4 outfalls MCSP5 and MCSP6 between January 7, 2021 and April 30, 2022 showed the following:

1.   Ten (10) times, discharges contained levels of *E. coli* that exceeded the permissible STV WQS for *E. coli*. County SS ¶ 24.

2.   Six (6) times discharges contributed *E. coli* to Mule Creek when Mule Creek also exceeded *E. coli* STV WQS. County SS ¶ 25.

3.   Seventy-seven (77) times, discharges contained levels of aluminum, iron, manganese, copper, lead, or zinc exceeded the permissible WQS for those metals. County SS ¶ 26.

4.   Twenty-Nine (29) times discharges contributed aluminum, iron, manganese, copper, lead, or zinc to Mule Creek when Mule Creek also exceeded WQS for those metals. County SS ¶ 27.

**E.   Defendants Failed to Engage in the Iterative Process**

On January 24, 2022, the Regional Board notified Defendants that the Facility violated Small MS4 Permit Provision D repeatedly and required a plan for best management practices ("BMPs") "addressing the exceedances must be identified and updated." County SS at ¶ 28. The Regional Board again notified Defendants of the violations of Provision D on February 11, 2022. County SS at ¶ 29.

Despite receiving these two notices from the Regional Board, Defendants failed to submit a BMP plan to address the bacteria and metals pollutants in the Facility's stormwater discharges. County SS at ¶ 30 ("The NSWD Elimination Plan does not satisfy Item #4 in the Letter."). In November 2022, the Regional Board twice confirmed that Defendants violated Provision D and have still failed to submit any BMP plan to address either the dry

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

1  weather or stormwater discharges that contribute to water quality

2  exceedances in Mule Creek. *Id*.

3      All of the activities and structures Defendants cite as

4  evidence of their engagement in the "iterative" process were

5  developed or implemented before this action began (and,

6  therefore, before the post-complaint violations noted by Ms.

7  Ashby and the Regional Board) or were in response to an order by

8  the Regional Board that pre-dated this action. County Response to

9  Defendants' Separate Statement ("Resp. to Defs' SS"), ¶¶ 13-15,

10  28-41.

**III. LEGAL BACKGROUND**

   **A.  A History of Past Violations Makes It Reasonable**
       **Violations Are Likely to Recur**

14      Clean Water Act section 505 authorizes a citizen suit

15  against any person "alleged to be in violation" of the conditions

16  of a Clean Water Act permit. 33 U.S.C. § 1365(a)(1); see also

17  *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*

18  484 U.S. 49 (1987). A citizen plaintiff may prove a person is "in

19  violation" of a permit condition two different ways: "(1) by

20  proving violations that continue on or after the date the

21  complaint is filed or (2) by adducing evidence from which a

22  reasonable trier of fact could find a continuing likelihood of a

23  recurrence in intermittent or sporadic violations." *Sierra Club*

24  *v. Union Oil Co.*, 853 F.2d 667, 671 (9th Cir.1988) (internal

25  quotations omitted) (noting that *Gwaltney* merely conditions a

26  defendant's "liability for … past violations … on [a plaintiff's]

27  ability to prove ongoing violations" or a reasonable likelihood

28  violations will recur).

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

1    The Ninth Circuit has confirmed that past "[i]ntermittent or

2    sporadic violations do not cease to be ongoing until the date

3    when there is no real likelihood of repetition." *Sierra Club,* 853

4    F.2d at 671. (internal quotations omitted). As a result, a

5    history of repeated, pre-complaint violations of the Clean Water

6    Act can create a reasonable likelihood the violations will recur.

7    *See Cmty. Ass'n for Restoration of the Env't v. Henry Bosma*

8    *Dairy,* 305 F.3d 943, 954 (9th Cir. 2002). Further, when proving a

9    reasonable likelihood of a recurring violation, the past and

10   recurring violations do not need to be of the same type. *Inland*

11   *Empire Waterkeeper v. Corona Clay Co.,* 17 F.4th 825, 829 (9th

12   Cir. 2021), cert. denied (2022).

13       **B.   Defendants Cannot Impeach Their Own Sampling Results**

14       A self-monitoring report that shows a water sample with

15   pollutants in excess of permit limits is conclusive evidence of a

16   violation. *Sierra Club v. Union Oil Co.,* 813 F.2d 1480, 1491 (9th

17   Cir.1987), vacated on other grounds, 485 U.S. 931 (1988),

18   reinstated with minor amendment, 853 F.2d 667 (9th Cir. 1988). A

19   defendant may not impeach its own publicly filed monitoring

20   reports. *See San Francisco Baykeeper v. West Bay Sanitary Dist.*

21   791 F.Supp.2d 719, 756 (N.D. Cal. 2011); see also *Save Our Bays &*

22   *Beaches v. City & Cnty. of Honolulu*, 904 F.Supp. 1098, 1138

23   (D.Haw.1994).

24       **C.   Engagement In the Iterative Process Is a Required**
         **Response to Violations. It Does Not Excuse Violations**
25

26       The iterative process is a required response to violations

27   of the Small MS4 Permit Provision D; it does not "negate" such

28   violations. Compare ECF 45-1 at 36 with County SS ¶¶ 31-32. In

multiple precedential orders, the State Board considered and

rejected this argument, stating:

> We … disagree with Permittee Petitioners that
> implementation of the iterative process does
> or should constitute compliance with receiving
> water limitations. … We have directed, in
> precedential orders, that MS4 permits require
> discharges to be controlled so as not to cause
> or contribute to exceedances of water quality
> standards in receiving waters, but have
> prescribed an iterative process whereby an
> exceedance of a water quality standard
> triggers a process of BMP improvements. …
>
> "… the iterative process, as established in
> our precedential orders and as generally
> written into MS4 permits adopted by the water
> boards, **does not provide a "safe harbor" to
> MS4 dischargers. When a discharger is shown to
> be causing or contributing to an exceedance of
> water quality standards, that discharger is in
> violation of the permit's receiving water
> limitations and potentially subject to
> enforcement by the water boards or through a
> citizen suit, regardless of whether or not the
> discharger is actively engaged in the
> iterative process.**

County SS at ¶ 32.

Consistent with its four prior, precedential orders, the

State Board incorporated these same findings into the Small MS4

Permit, explaining that "when a discharger is shown to be causing

or contributing to an exceedance of water quality standards, that

discharger is in violation of the relevant discharge prohibitions

. . ., even if the discharger is actively engaged in the

iterative process." County SS at ¶ 32.

**IV.   SUMMARY JUDGMENT STANDARD**

Summary judgment is precluded where "the defendant fails to

convince the court that there are no genuine issues of fact after

the plaintiff offers evidence to support the allegations of

ongoing noncompliance[.]" *Sierra Club*, 853 F.2d at 669. In such

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

1  circumstances, "the cause goes to trial on the merits." *Id.*,

2  citing *Gwaltney*, 484 U.S. at 66.

3  **V.    OPPOSITION**

4      Genuine disputes of material fact preclude summary judgment

5  on the County's second cause of action. First, a threshold

6  factual dispute regarding whether stormwater flows passing

7  through location MCSP5 and MCSP6 actually discharge to Mule Creek

8  precludes summary judgment on the County's second cause of action

9  in its entirety.

10      Second, genuine disputes of material facts regarding past

11  violations of the Clean Water Act and the likelihood of recurring

12  violations preclude summary judgment on the County's claims that

13  Defendants violated each of Provisions B.1, B.2, D, and C of the

14  Small MS4 Permit.

15      **A.    Genuine Disputes of Material Facts Preclude Summary**
       **Judgment on the Second Cause of Action In Its Entirety**
16

17          **1.    Pre-Complaint Data and Pre-Complaint Violations**
            **Are Relevant**

18      Defendants' sampling data from MCSP2 and MCSP3 are central

19  to this action for two reasons. First, the pre-complaint data

20  show discharges from MCSP2 and MCSP3 exceeded water quality

21  standards for aluminum, iron, lead, and zinc on December 17,

22  2020, *after* the first complaint in this action was filed. County

23  SS at ¶ 33. Evidence of an *actual* violation after the complaint

24  was filed is sufficient to prove an "ongoing violation" and

25  impose liability for all pre-complaint violations. *See Sierra*

26  *Club,* 853 F.2d at 671.

27      Second, the pre-complaint data shows a years'-long history

28  of polluted stormwater discharges from the Facility to Mule Creek

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

1  in violation of the Clean Water Act, which, combined with post-
2  complaint data, is evidence the violations are likely to recur.
3  Compare ECF 95-1 at 23 with *Gwaltney,* 484 U.S. 49; *Sierra Club,*
4  853 F.2d at 671; Henry Bosma Dairy, 305 F.3d at 953; *Corona Clay*
5  *Co*. 17 F.4th at 829. Defendants admit MCSP2 and MCSP3 are
6  "outfalls" to Mule Creek. ECF 95-1 at 23. Defendants' motion does
7  not challenge the pre-complaint sample results from MCSP2, MCSP3,
8  and MCSP4, which show the Facility's discharges exceeded the STV
9  WQS for *E. coli* **41 times** and that **19 of those times**, Mule Creek
10 also exceeded the same standard. See Section II.C, above. These
11 results also show the Facility's discharges exceeded the WQS for
12 aluminum, iron, lead, or zinc **25 times,** and **that 14 of those**
13 **times**, Mule Creek also exceeded the same standards. See Section
14 II.C, above.

15      Defendants' pre-complaint sampling data shows discharges and
16 Mule Creek actually exceeded water quality standards on December
17 17, 2020, after the first complaint in this action was filed. It
18 also shows a long history of actual violations, which creates a
19 genuine dispute of material fact regarding the likelihood that
20 the violations are likely to recur and precludes summary judgment
21 on the County's second cause of action in its entirety.

22          **2.    Post-Complaint Data Shows Genuine Disputes of**
                    **Material Fact**
23

24      The evidence of an actual post-complaint violation measured
25 at the Facility's outfall to Mule Creek satisfies *Gwaltney's*
26 ongoing violation requirement. Nothing more is required to
27 preclude summary judgment. Nevertheless, Defendants' post-
28 complaint sampling data from MCSP5 and MCSP6 also show that these

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

2:20-CV-02482-WBS-AC
MEMORANDUM IN OPPOSITION TO MSJ

1   same violations actually recurred or are reasonably likely to

2   recur. Compare ECF 95-1 at 22-23 with Section II.D.2, above.

3       Defendants admit that the Facility actually discharged

4   through locations MCSP5 and MCSP6 on 13 different occasions after

5   this complaint was filed. See Section II.D.1, above. Defendants

6   stated that they sampled these discharges and Mule Creek

7   concurrently. See Section II.D.1, above. These sample results

8   showed the Facility's discharges exceeded the STV WQS for *E. coli*

9   **10 times** and that **6 of those times**, Mule Creek also exceeded the

10  same standard. See Section II.D.2, above. These results also show

11  the Facility's discharges exceeded the WQS for aluminum, iron,

12  lead, or zinc **77 times,** and that **29 of those times**, Mule Creek

13  also exceeded the same standards. See Section II.D.2, above.

14  Further, relocating the sampling point is the *only* system-wide

15  modification Defendants identify after receiving notice of these

16  violations; but changing the monitoring location for the duration

17  of discovery in this action does not reduce or eliminate the

18  pollutants in the Facility's stormwater or rebut the results of

19  the sampling data. See Section II.E, above.

20      Defendants' post-complaint sampling data thus creates a

21  genuine dispute of material fact that the violations actually

22  recurred or are reasonably likely to recur, which precludes

23  summary judgment on the County's second cause of action in its

24

25

26

27

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

2:20-CV-02482-WBS-AC
MEMORANDUM IN OPPOSITION TO MSJ

1  entirety.[1],[2]

2      **B.   There are Genuine Disputes of Material Fact Regarding**
       **The Past and Reasonable Likelihood of Recurring**
3      **Violations of MS4 Permit Provisions B.1, B.2, D, and C**

4          Summary judgment is also precluded as to each of the

5  County's four theories of liability under the second cause of

6  action: that is, for violations of Small MS4 Permit Provisions

7  B.1, B.2, D, and C. Under *Gwaltney*, to prove there is no

8  reasonable likelihood of a recurring violation, Defendants must

9  present evidence "that it is 'absolutely clear that the allegedly

10 wrongful behavior could not reasonably be expected to recur,' not

11 just 'more likely than not.' In other words, they must actually

12 establish, not merely suggest, that they will be in compliance

13 into the future. Defendants' heavy burden "protects plaintiffs

14 from defendants who seek to evade sanction by predictable

15 protestations of repentance and reform." *Natural Resources*

16 *Defense Council v. County of Los Angeles*, 840 F.3d 1098, 1104

17 (9th Cir. 2016), internal citations omitted.

18         Summary judgment is precluded here because there are

19 material facts showing a reasonable likelihood that Defendants

20

21 [1] Defendants also misrepresent this court's decision on
   Plaintiffs' motion for summary judgment. Compare ECF 95-1 at 6.,
22 citing ECF 60 at 17:18 – 18:1. This court determined "because
   there appears to be a dispute of material fact as to whether the
23 discharges upon which plaintiffs rely reached Mule Creek, the
   court cannot at this time conclude that defendants' discharges
24 entered "waters of the U.S." or "caus[ed] or threaten[ed] to
   cause a condition of pollution or nuisance" therein." ECF 60 at
25 21:5-10. This same dispute of material fact precludes summary
   judgment here.
26 [2] Defendants' threshold arguments regarding background sources of
   pollutants and "cause or contribute" are relevant only to
27 Provision D. Compare ECF 95-1 at 24-27. Defendants admit bacteria
   and metals are present "in [the Facility's] stormwater" and "at
28 the Facility itself" and are addressed under Section V.B.3,
   below. ECF 95-1 at 25-26.

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

1 violated and that violations have actually or will likely recur.

2 Defendants have not and cannot show it is "absolutely clear"

3 there is no reasonable likelihood of such recurrence. *Sierra*

4 *Club*, 853 F.2d at 669; *Nat. Res. Def. Council*, 840 F.3d at 1104.

### 1.   Material Factual Disputes Preclude Summary Judgment as to Provision B.1

7 Provision B.1 of the Small MS4 Permit provides, in relevant

8 part, "Discharges of waste from the MS4 that are prohibited by

9 Statewide Water Quality Control Plans or applicable Regional

10 Water Quality Control Plans (Basin Plans) are prohibited." ECF

11 95-2 at ¶ 68. "Waste" includes, in part, any substance

12 "associated with human habitation or of human or animal origin,

13 or from any producing, manufacturing, or processing operation."

14 County SS ¶ 34.

15 Material facts show the Facility discharged and continues to

16 discharge bacteria- and metal-"wastes" from the MS4 that are

17 prohibited by the statewide Bacteria Provisions and the Basin

18 Plan in violation of Provision B.1 of the Small MS4 Permit.

19 First, Defendants admit the Facility's discharges from outfalls

20 at MCSP2 and MCSP3 reach Mule Creek. ECF 95-2 at ¶ 21-24, 56.

21 Second, Defendants admit the Facility's stormwater

22 discharges contain bacteria of animal origin. See ECF 95-2, ¶ 48,

23 citing ECF 95-3, Ex. A, "2021 Sources Fecal Pollution Report."

24 This same 2021 study also reports that human genetic markers were

25 detected in stormwater discharging from the Facility; that

26 "[t]here are no known human sources upstream of MCSP1[;]" and

27 that "increases in *E. coli*, from upstream to downstream of the

28 prison, were observed … 64% of the time[.]" County SS at ¶ 35.

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

1   "Substances" such as bacteria of "human or animal origin" are

2   considered "waste" under the MS4 Permit. County SS at ¶ 34.

3   Defendants' own evidence, therefore, admits that the bacteria

4   present in stormwater discharging from the Facility is "waste" as

5   defined by the MS4 Permit.

6       Third, Defendants' "2020 Collection System Investigation

7   Report" admits the Facility's stormwater discharges contain

8   metals of human origin. ECF 95-2, ¶ 68, citing ECF 95-3, Ex. B

9   "2020 Collection System Investigation Report." This 2020 report

10  concluded that zinc in the Facility's runoff "is not likely due

11  to a natural source but could possibly be attributed to

12  galvanized metal such as fencing." County SS at ¶ 36. The

13  Regional Board reviewed this 2020 report and concluded "[t]he

14  majority of metals detected were either typical industrial

15  stormwater constituents or were infrequently detected over the

16  applicable water quality objective. Aluminum, iron, and magnesium

17  are common at industrial sites and naturally occurring in soils

18  underlying the site. The relatively common exceedances of water

19  quality objectives for arsenic, copper and manganese were not

20  explained." County SS at ¶ 37. Fencing and industrial activities

21  are associated with human habitation. There is, therefore,

22  material evidence that the metals in the Facility's stormwater

23  discharges are "waste" as defined under the Small MS4 Permit.

24      Fourth, Regional Board staff consider these bacteria and

25  metals to be "waste constituents." County SS at ¶ 28.

26      Defendants' legal argument that the Basin Plan does not

27  prohibit the discharge of waste to Mule Creek is a gross

28  misreading of the Basin Plan and does not resolve the factual

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

2:20-CV-02482-WBS-AC
MEMORANDUM IN OPPOSITION TO MSJ

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

disputes. See ECF 95-1 at 28. Under Defendants' reading of the Small MS4 Permit, Defendants could allow inmates to defecate directly in the MS4 and allow stormwater to carry it to Mule Creek without any prohibition preventing this "waste." The term "waste" however, cannot be rendered meaningless by such a reading. *Natural Resources Defense Council, Inc. v. County of Los Angeles*, 725 F.3d 1194, 1206 (9th Cir. 2013) ("A court must give effect to every word or term in an NPDES permit and reject none as meaningless or surplusage") (internal citations omitted). As set forth in Section II.A, above, the Bacteria Provisions and Basin Plan prohibit bacteria and metals, respectively, from being present in excess of water quality standards for those constituents.

> **a.    Defendants Violated Provision B.1 Sixty-Six (66) Times Between February 4, 2019 and January 6, 2021**

As set forth in Sections II.C and V.A.1, Defendants own pre-complaint sampling evidence shows the Facility's discharges exceeded the STV WQS for *E. coli* **41 times** and exceeded the WQS for aluminum, iron, lead, or zinc **25 times** before the County's complaint was filed.

> **b.    Defendants Continue or Are Reasonably Likely To Continue Violating Provision B.1 As Shown By 87 Ongoing Violations of Provision B.1 Between January 7, 2021 and April 30, 2022**

As set forth in Sections II.D and V.A.2 above, Defendants' own sampling shows that after the County's complaint was filed, discharges from the Facility contained levels of *E. coli* that exceeded the permissible STV WQS **10 times** and contained levels of aluminum, iron, manganese, copper, lead, or zinc exceeded the

permissible WQS for those metals **77 times.**

These genuine factual disputes are material to the County's second cause of action and preclude summary judgment for violations of Small MS4 Permit Provision B.1.

### 2. Material Factual Disputes Preclude Summary Judgment as to Provision B.2

Provision B.2 of the Small MS4 Permit provides, in relevant part, "Discharges of storm water from the MS4 to waters of the U.S. in a manner causing or threatening to cause a condition of pollution or nuisance as defined in Water Code § 13050 are prohibited." ECF 95-2 at ¶ 71. Pollution is defined as "an alteration of the quality of the waters of the state by waste to a degree which unreasonably affects . . . The waters for beneficial uses." Cal. Water Code § 13050(l). Discharges do not need to actually cause a condition of pollution to violate Provision B.2; it is enough that a discharge "threatens to cause" a condition of pollution or nuisance. *San Diego Gas & Elec. Co. v. San Diego Reg'l Water Quality Control Bd.*, 36 Cal.App.5th 427, 432-435 (2019).

The State and Regional Boards established reasonable limits for pollutants in surface waters, including Mule Creek. See Section II.A above. The Boards specifically found that the water quality standards were established at levels that protect the beneficial uses of surface water bodies, including the recreating public (bacteria) and water supply (metals). *Id.*

Material facts show the Facility's MS4 discharged and continues to discharge stormwater to Mule Creek in a manner that threatens to unreasonably affect the beneficial uses of Mule

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

1  Creek. First, Defendants admit that stormwater flows through
2  MCSP2 and 3, as well as stormwater flows through MCSP5 and MCSP6
3  discharge to Mule Creek. See Sections II.C, II.D.1 above.

4  Second, as set forth in Section II.C above, Defendants' own
5  evidence shows that, *prior* to this action, the Facility
6  discharged stormwater through MCSP2 and MCSP3 to Mule Creek in
7  excess of the water quality standards for *E. coli* that protect
8  the human health beneficial use on **41 days** and in excess of the
9  water quality standards for aluminum, iron, lead, or zinc that
10 protect drinking water beneficial use **25 times**.

11 Third, as set forth in Section  II.D.2 above, Defendants'
12 own evidence shows that, *after* the complaint was filed in this
13 action, the Facility discharged stormwater through MCSP5 and
14 MCSP6 to Mule Creek in excess of the water quality standards for
15 *E. coli* on **10 days** in excess of the water quality standards for
16 aluminum, iron, lead, and zinc **77 times**.

17 Finally, contrary to Defendants' legal arguments, Provision
18 B.2 does not require Mule Creek to be listed as "impaired" under
19 Section 303(d) of the Clean Water Act in order for a beneficial
20 use to be "unreasonable affected." Compare ECF 95-1 at 29.
21 Section 303(d) addresses the process for developing a total
22 maximum daily load ("TMDL") for impaired water bodies. 33 U.S.C.
23 § 1313(d). The Small MS4 Permit includes requirements related to
24 "impaired" water bodies with TMDLs in Provision F.5.i. County SS
25 ¶ 39. Provision F.5.i, however, is not at issue in this case.
26 Defendants urge this court to render the meaning of "pollution"
27 and its "unreasonably affect" standard meaningless by reading the
28 standard for impairment into Provision B.2. *County of Los*

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

*Angeles,* 725 F.3d at 1206.

These genuine factual disputes are material to the County's second cause of action and preclude summary judgment for violations of Small MS4 Permit Provision B.2.

### 3. Material Factual Disputes Preclude Summary Judgment as to Provision D

Provision D of the Small MS4 Permit provides, in relevant part, that "Discharges shall not cause or contribute to an exceedance of water quality standards contained in a Statewide Water Quality Control Plan, the California Toxics Rule (CTR), or in the applicable Regional Water Board Basin Plan." ECF 95-2 at ¶ 86. A permittees' discharges violate Provision D, when sampling demonstrates a receiving water exceeds WQS for any pollutant and the facility discharges the same pollutant to that receiving water above WQS. *See County of Los Angeles,* 725 F.3d at 1207; *see also California Sportfishing Prot. All. v. River City Waste Recyclers, LLC*, 205 F. Supp. 3d 1128, 1150-51 (E.D. Cal. 2016)

When MS4 discharges cause or contribute to an exceedance of an applicable WQS, Provision D further requires a permittee to promptly notify and submit a report to the Regional Board that describes the additional BMPs the permittee will implement to prevent or reduce pollutants that are causing or contributing to the exceedance, a process called an "iterative process". County SS ¶ 40.

Material facts show that *before* this lawsuit, Defendants violated Provision D at least **23 times**. As set forth in Section II.C above, Defendants' own pre-complaint sampling shows that **19 out of 41 times** when the Facility's discharges exceeded the STV

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

WQS for *E. coli*, Mule Creek also exceeded the same standard. These results also show **14 out of 25 times when** the Facility's discharges exceeded the WQS for aluminum, iron, lead, or zinc, Mule creek also exceeded these same standards.

Material facts show that *after* this lawsuit, Defendants violated Provision D at least **35** times. As set forth in Section II.D.2 above, Defendants' own post-complaint sampling shows that **6 out of 10 times** when the Facility's discharges exceeded the STV WQS for *E. coli*, Mule Creek also exceeded the same standard. These results also show **29 out of 77 times when** the Facility's discharges exceeded the WQS for aluminum, iron, lead, or zinc, Mule creek also exceeded these same standards.

Indeed, Defendants' sampling data shows that discharges through MCSP2 and MCSP3 exceeded water quality standards for aluminum, iron, lead, and zinc on December 17, 2020, *after* the first complaint in this action was filed, and that Mule Creek also exceeded water quality standards for those same metals. County SS at ¶33.

Material facts show Defendants failed to engage in the iterative process to eliminate or reduce bacteria and metals in stormwater. First, on January 24, 2022, Regional Board staff provided a compliance review of Defendants' monitoring reports for quarters 1-3 of 2021 and confirmed the Facility violated Provision D repeatedly. County SS at ¶ 28. The Regional Board also notified Defendants of these violations, and required "BMPs addressing the exceedances must be identified and updated." *Id.* On February 11, 2022, the Regional Board provided comments on Defendants' Annual Report and 13383 Order Quarterly Monitoring

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

2:20-CV-02482-WBS-AC
MEMORANDUM IN OPPOSITION TO MSJ

1  Reports, again notifying Defendants of the violations of

2  Provision D. County SS at ¶ 29.

3      Despite receiving these two notices from the Regional Board,

4  Defendants failed to submit a BMP plan to address the bacteria

5  and metals pollutants in the Facility's stormwater discharges.

6  County SS at ¶ 30. In November 2022, the Regional Board twice

7  confirmed that Defendants violated Provision D and have still

8  failed to submit any BMP plan to address either the dry weather

9  or stormwater discharges that contribute to water quality

10 exceedances in Mule Creek. *Id.*

11     None of the BMPs Defendants reference were developed or

12 implemented to address the bacterial and metals exceedances at

13 issue in this action or in response to the Regional Board's two

14 notices. With the exception of the "permanent monitoring station

15 at MCSP2 and MCSP3[,]" which does nothing to prevent or treat

16 pollutants, all of the BMPs Defendants reference existed or were

17 required at the Facility before this action was filed. Resp. to

18 Defs' SS, ¶¶ 13-15, 28-41; see also Section II.E, above. The

19 iterative process however, requires Defendants to continue to

20 improve or increase the Facility's BMPs in response to these

21 exceedances. County SS at ¶¶ 31, 40. By relying on the very same

22 BMPs that failed to prevent the bacteria and metals discharges at

23 issue here, Defendants fail to present any evidence of their

24 engagement in the iterative process.

25         Defendants' legal arguments do not resolve these

26 material factual disputes. Compare ECF 95-1 at 34-36. First, the

27 State Board has rejected Defendants' argument (and courts have

28 upheld the rejection) that the iterative process creates a safe

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

2:20-CV-02482-WBS-AC
MEMORANDUM IN OPPOSITION TO MSJ

1    harbor or excuses permit violations. See Section III.C, above.

2    Thus, even if Defendants produce some evidence of engaging in the

3    iterative process, those efforts are actually evidence of the

4    Facility's violations of Provision D. County SS ¶¶ 31-32.

5        Second, Defendants misstate the standard applicable

6    receiving waters. See ECF 95-1 at 35. Defendants claim there can

7    be no violation of Provision D because Mule Creek has not been

8    listed as "impaired" under Clean Water Act section 303(d). ECF

9    95-1 at 35. As set forth above, this argument renders the TMDL

10   requirements in Provision F.5.i meaningless and is legally

11   erroneous. See *County of Los Angeles,* 725 F.3d at 1206. It is

12   inappropriate to use the 303(d) listing process to assess

13   violations of Provision D. County SS at ¶ 42.

14       Third, the County's evaluation of post-complaint sampling

15   data properly accounts for background sources of pollutants.

16   County SS at ¶ 43. Ms. Ashby compared the data reported for *E.*

17   *coli* and metals from MCSP5 and MCSP6 with the data reported for

18   these same constituents in Mule Creek (MCSP4); only where both

19   exceeded water quality standards, she identified a violation of

20   Provision D. *Ibid.* When questioned on the appropriateness of this

21   approach, Regional Board staff, Ms. Lee agreed this was

22   appropriate, with the caveat that metals need to account for

23   hardness, which Ms. Ashby did. *Id.*

24       Fourth, Defendants' reliance on the "EPA Guidance Manual" is

25   inappropriate. The EPA Guidance Manual is not endorsed by the

26   EPA. County SS at ¶ 44. It is wholly is irrelevant to determining

27   whether a receiving water exceeds water quality standards and

28   whether wet weather discharges *from* the MS4 contribute to those

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

83653.00001\40897513.4

2:20-CV-02482-WBS-AC
MEMORANDUM IN OPPOSITION TO MSJ

1  exceedances of WQS under Provision D. County SS at ¶ 45. Instead,

2  it is related to detecting dry weather discharges *into* the MS4

3  system under the Illicit Discharge Detection and Elimination

4  program requirements, which fall under Provision F.5.d of the

5  Small MS4 Permit. County SS at ¶ 46.

6      Fifth, Defendants entirely ignore the term "contribute" in

7  Provision D and rely solely on a "cause" approach to liability

8  under Provision D. See ECF 95-1 ("Plaintiffs cannot demonstrate

9  that the concentrations detected at sampling location 'MCSP4' …

10  are *solely* attributable to the Facility.") The County, however,

11  does not rely on a "sole" causation approach to proving Provision

12  D. Instead, the evidence presented shows that the Facility's

13  discharges "contribute" to an exceedance of water quality

14  standards in Mule Creek. County SS at ¶¶ 12, 14, 25, 27.

15      These genuine factual disputes are material to the County's

16  second cause of action and preclude summary judgment for

17  violations of Small MS4 Permit Provision D.

18          **4.   Material Factual Disputes Preclude Summary**
              **Judgment as to Provision C**

19

20      Provision C.1 of the Small MS4 Permit provides, in relevant

21  part, "Permittees shall implement controls as required by this

22  Order to reduce the discharge of pollutants from their MS4s to

23  waters of the U. S. to the [maximum extent practicable] MEP." ECF

24  95-2 at ¶ 84; ECF 95-7 at 22. The MEP standard "requires

25  Permittees to apply Best Management Practices (BMPs) that are

26  effective in reducing or eliminating the discharge of pollutants

27  to the waters of the U.S. … MEP is the cumulative result of

28  implementing, evaluating, and creating corresponding changes to a

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

2:20-CV-02482-WBS-AC
MEMORANDUM IN OPPOSITION TO MSJ

variety of technically appropriate and economically feasible BMPs, ensuring that the most appropriate BMPs are implemented in the most effective manner." County SS at ¶ 47. Thus, the MEP standard requires Defendants to engage in the iterative process.

To attain the MEP standard, a permittee must undertake "a serious attempt to comply, and practical solutions may not be lightly rejected. If, from the list of BMPs, a permittee chooses only a few of the least expensive methods, it is likely that MEP has not been met." County SS at ¶ 48.

Material facts show Defendants have not engaged in the iterative process, as shown in Section V.B.3, above. Further, Defendants' own evidence shows that Defendants have not applied BMPs that are effective in reducing or eliminating discharges of bacteria and metals to Mule Creek. As set forth in Sections II.C and II.D.2 above, Defendants own sample results routinely show the Facility's MS4 discharges contain bacteria, aluminum, iron, lead, and zinc in excess of water quality standards for those pollutants.

Material facts also show Defendants have failed to undertake any serious attempt to reduce or eliminate bacteria and metals in stormwater. As set forth in Section III.E above, Defendants have relied on only a few of the least expensive BMPs, such as an informational memorandum, undefined "administrative controls," fabric wattles or BMPs that predate the violations at issue in this action. Resp. to Defs' SS, ¶¶ 13-15, 28-41. Despite repeated discharges of bacteria and metals in excess of WQS, Defendants cite only to the same ineffective BMPs that have been in place since this lawsuit started and have not provided a BMP plan to

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

2:20-CV-02482-WBS-AC
MEMORANDUM IN OPPOSITION TO MSJ

1    the Regional Board to address the ongoing discharges despite four

2    notices to do so in 2022 alone. *Id.;* see also County SS at ¶ 49.

3        Finally, the MEP standard is inherently a factual

4    determination that is concerned with whether the iterative BMP

5    process is "effective in reducing or eliminating the discharge of

6    pollutants to the waters of the U.S." See County SS at ¶ 50. This

7    type of factual inquiry, combined with the significant material

8    facts showing the Facility's BMPs have not been effective and

9    have not been improved preclude summary judgment.

10   **VI.    CONCLUSION**

11       For the reasons set forth above, genuine disputes of

12   material fact preclude summary judgment. Defendants' motion for

13   summary judgment should be DENIED.

14

15

16   Dated: December 12, 2022            BEST BEST & KRIEGER LLP

17

18                                       By: /s/ Rebecca Andrews
                                             CHRISTOPHER M. PISANO
19                                           SHAWN D. HAGERTY
                                             REBECCA ANDREWS
20                                           Attorneys for Plaintiff
                                             COUNTY OF AMADOR

21

22

23

24

25

26

27

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

California Sportfishing Protection Alliance v. Allison, et al.;
Amador v. Allison, et al.
United States District Court, Eastern District of California,
Case No. 20-cv-02482 WBS AC

## PROOF OF SERVICE

I, Lisa Atwood, declare:

I am a citizen of the United States and employed in San Diego County, California. I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 655 West Broadway, 15th Floor, San Diego, California  92101.  On December 12, 2022, I served a copy of the within document(s):

> COUNTY OF AMADOR'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' KATHLEEN ALLISON AND PATRICK COVELLO'S MOTION FOR SUMMARY JUDGMENT;

> COUNTY OF AMADOR'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS AND SEPARATE STATEMENT OF DISPUTED FACTS IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT;

> SEPARATE STATEMENT OF DISPUTED FACTS IN SUPPORT OF COUNTY OF AMADOR'S OPPOSITION TO DEFENDANTS' KATHLEEN ALLISON AND PATRICK COVELLO'S MOTION FOR SUMMARY JUDGMENT;

> DECLARATION OF REBECCA ANDREWS IN SUPPORT OF COUNTY OF AMADOR'S OPPOSITION TO DEFENDANTS' KATHLEEN ALLISON AND PATRICK COVELLO'S MOTION FOR SUMMARY JUDGMENT;

> REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF COUNTY OF AMADOR'S OPPOSITION TO DEFENDANTS' KATHLEEN ALLISON AND PATRICK COVELLO'S MOTION FOR SUMMARY JUDGMENT;

☒     **By Electronic Service**.  Pursuant to CM/ECF System, registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities.  The Court's CM/ECF system sends an e-mail notification of the filing to the parties and counsel of record who are registered with the Court's EC/ECF system.

- 1 -

Best Best & Krieger LLP
ATTORNEYS AT LAW
655 WEST BROADWAY, 15TH FLOOR
SAN DIEGO, CALIFORNIA 92101

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| Jennifer Hartman King, Esq.<br>Alanna Lungren, Esq.<br>J.R. Parker, Esq.<br>Andreya Woo Nazal, Esq.<br>HARTMAN KING PC<br>520 Capital Mall, Suite 750<br>Sacramento, CA 95814 | ATTORNEYS FOR KATHLEEN ALLISON in her official capacity as Secretary OF THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION<br><br>Tel: (916) 379-7530<br>Email:<br>JHartmanKing@HartmanKingLaw.com<br>ALungren@HartmanKingLaw.com<br>KShipp@HartmanKingLaw.com<br>JRParker@HartmanKingLaw.com<br>AWooNazal@HartmanKingLaw.com |
| Andrew L. Packard, Esq.<br>William L. Carlon, Esq.<br>Law Offices of Andrew L. Packard<br>245 Kentucky Street, Suite B3<br>Petaluma, CA 94952 | ATTORNEYS FOR CALIFORNIA SPORTFISHING PROTECTION ALLIANCE<br><br>Tel: (707) 782-4060<br>Email:<br>andrew@packardlawoffices.com<br>wncarlon@packardlawoffices.com<br>wncarlon@packardlawoffices.com |
| Jason Flanders, Esq.<br>Erica A. Maharg, Esq.<br>Aqua Terra Aeris Law Group<br>4030 Martin Luther King Jr. Way<br>Oakland, CA 94609 | ATTORNEYS FOR CALIFORNIA SPORTFISHING PROTECTION ALLIANCE<br><br>Tel: (916) 202-3018<br>Email:<br>eam@atalawgroup.com<br>jrf@atalawgroup.com |

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on December 12, 2022, at San Diego, California.

_____
Lisa Atwood