1 | Christopher M. Pisano, Bar No. 192831
christopher.pisano@bbklaw.com
2 | SHAWN D. HAGERTY, Bar No. 182435
shawn.hagerty@bbklaw.com
3 | REBECCA ANDREWS, Bar No. 272967
rebecca.andrews@bbklaw.com
4 | BEST BEST & KRIEGER LLP
2001 N. Main Street
5 | Suite 390
Walnut Creek, California  94596
6 | Telephone:     (925) 977-3300
Facsimile:     (925) 977-1870
7 |
8 | Attorneys for Plaintiff
COUNTY OF AMADOR

9 |                    UNITED STATES DISTRICT COURT
10 |                    EASTERN DISTRICT OF CALIFORNIA
11 |                ROBERT T. MATSUI FEDERAL COURTHOUSE

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA, 94596

CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE,

                Plaintiff,

        v.

KATHLEEN ALLISON, in her
official capacity as Secretary
of the California Department of
Corrections and Rehabilitation,

                Defendants.

COUNTY OF AMADOR, a public
agency of the State of
California,

                Plaintiff,

        v.

KATHLEEN ALLISON in her
official capacity as Secretary
of the California Department of
Corrections and Rehabilitation;
PATRICK COVELLO in his official
capacity of Warden of
California Department of
Corrections and Rehabilitation
Mule Creek State Prison; and
CALIFORNIA DEPARTMENT OF
CORRECTIONS AND REHABILITATION,

                Defendants.

Case No. 2:20-cv-02482-WBS-AC
 [Consolidated with 2:21-cv-
 00038-WBS-AC]

**COUNTY OF AMADOR'S RESPONSE
TO DEFENDANTS' SEPARATE
STATEMENT OF UNDISPUTED FACTS
AND SEPARATE STATEMENT OF
DISPUTED FACTS IN SUPPORT OF
OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Date:       January 9, 2022
Time:       1:30 p.m.
Dept:       5
Judge: William B. Shubb
Trial Date: April 18, 2023
Action Filed: January 7, 2021

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 1. | Mule Creek State Prison ("MCSP") covers approximately 866 acres. The Facility houses approximately 3,800 inmates, employs approximately 1,400 staff, and provides job training and work opportunities for prison inmates.<br><br>Evid: Declaration of Anthony Orta filed concurrently ("Orta Decl."), at ¶ 3. | 1. Not disputed. |
| 2. | Industrial activities that take place at the Facility include sewing/textile manufacturing, coffee roasting, and meat packing.<br><br>Evid: Orta Decl., at ¶ 15. | 2. Not disputed. |
| 3. | The surrounding areas of the Facility, including areas near the stormwater conveyance system and Mule Creek, are frequented by wildlife, including birds and deer. There are also cattle ranches located near Mule Creek upstream of the Facility.<br><br>Evid: Orta Decl., at ¶ 3. | 3. Not Disputed. |
| 4. | The Facility is permitted via the following three permits: (1) the State Water Resource Control Board's Permit for Waste Discharge Requirements for Storm Water Discharges from Small Municipal Separate Storm Sewer Systems ("MS4"), Order 2013-0001-DWQ (the "Small MS4 Permit"); (2) the State Board's General Permit for Storm Water Discharges | 4. Not disputed. |

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|-----|------------------------------------------------------------------|---------------------------------------------------|
| | Associated with Industrial Activities, Order 2014-0057-DWQ, as amended (the "Industrial General Permit"); and (3) the Central Valley Water Board's Waste Discharge Requirements Order R5-2015-0129 for MCSP's Wastewater Treatment Plant ("WWTP Permit") that authorizes CDCR to operate the LAA. | |
| | Evid: Declaration of Timothy Simpson filed concurrently ("Simpson Decl."), at ¶¶ 11, 16; | |
| | State Water Resource Control Board's Permit for Waste Discharge Requirements for Storm Water Discharges from Small Municipal Separate Storm Sewer Systems ("MS4"), Order 2013-0001-DWQ (the "Small MS4 Permit"), Defendants' Request for Judicial Notice ("RJN"), Ex. A; | |
| | Orta Decl., at ¶¶ 2, 6; | |
| | Central Valley Regional Water Quality Control Board Inspection Report ("Inspection Report"), dated February 11, 2021, RJN, Ex. F, at p. 1; Waste Discharge Requirements for California Department of Corrections and Rehabilitation Mule Creek State Prison Wastewater Treatment Plant ("WWTP Permit"), RJN, Ex. E. | |

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 5. | CDCR was designated a Small MS4 permittee under the Small MS4 Permit in 2019.<br><br>Evid: Designation of Mule Creek State Prison as Small MS4 Permittee under the Small MS4 General Permit, State Water Resources Control Board Order WQ 2019-0009-EXEC Amending Water Quality Order 2013-0001-DWQ, NPDES No. CAS00004, dated April 24, 2019, ("Small MS4 Designation"), RJN Ex. I, at p. 2;<br><br>Simpson Decl., at ¶ 11. | 5.  No dispute. |
| 6. | A MS4 is a conveyance or system of conveyances used to manage stormwater that is owned and operated by a public entity.<br><br>Evid: Small MS4 Permit, RJN, Ex. A, at ¶ 14. | 6.  Disputed.<br><br>The language of the Small MS4 Permit states the following:<br><br>"A MS4 is a conveyance or system of conveyances that is: 1) owned by a state, city, town, village, or other public entity that discharges to waters of the United States; 2) designed or used to collect or convey storm water (including storm drains, pipes, ditches, etc.); 3) not a combined sewer; and 4) not part of a Publicly Owned Treatment Works or sewage treatment plant"<br><br>Evid: Small MS4 Permit, ECF 95-7 at 9. |
| 7. | The Small MS4 Permit states: Consistent with the Clean Water Act section 402(p)(3)(B)(iii), this Order requires controls to reduce pollutants from the MS4 to | 7.  No Dispute. |

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | the maximum extent practicable (MEP). The MEP standard requires Permittees to apply Best Management Practices (BMPs) that are effective in reducing or eliminating the discharge of pollutants to the waters of the U.S. MEP emphasizes pollutant reduction and source control BMPs to prevent pollutants from entering storm water runoff. MEP may require treatment of the storm water runoff if it contains pollutants. The MEP standard is an ever-evolving, flexible, and advancing concept, which considers technical and economic feasibility. BMP development is a dynamic process and may require changes over time as the Permittees gain experience and/or the state of the science and art progresses. To do this, the Permittees must conduct and document evaluation and assessment of each relevant element of its program, and their program as a whole, and revise activities, control measures/BMPs, and measurable goals, as necessary to meet MEP. MEP is the cumulative result of implementing, evaluating, and creating corresponding changes to a variety of technically appropriate and economically feasible BMPs, ensuring that the most appropriate BMPs are implemented in the most effective manner. | |

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Evid: Small MS4 Permit, RJN, Ex. A, at ¶ 36. | |
| 8. | CDCR submitted a No Exposure Certification ("NEC") with the Water Board in 2018.<br><br>Evid: No Exposure Certification ("NEC") to enroll the Facility under the NPDES General Permit Storm Water Discharges Associated with Industrial Activities, WQ Order No. 2014-9957-DWQ, certified May 8, 2018, RJN, Ex. H. | 8.  Objection. Relevancy. Fed. R. of Evid. 401, 402. The County will no longer pursue the third cause of action for discharges in violation of the Industrial General Permit and Clean Water Act 33 U.S.C. §§ 1311(a), 1342(p). Thus, this fact is no longer relevant. |
| 9. | An NEC acts as an exemption to the Industrial General Permit requirements, such that compliance with the NEC is deemed compliance with the Industrial General Permit.<br><br>Evid: Inspection Report, RJN, Ex. F, at p. 1. | 9.  Objection. Relevancy. Fed. R. of Evid. 401, 402. The County will no longer pursue the third cause of action for discharges in violation of the Industrial General Permit and Clean Water Act 33 U.S.C. §§ 1311(a), 1342(p). Thus, this fact is no longer relevant. |
| 10. | The Regional Board inspected the Facility on January 27, 2021, and found no violations, concluding that the NEC-covered areas complied with applicable requirements. The Regional Board also noted that "the interior rooms were clean and orderly, and no potential sources of stormwater pollution were observed at the loading docks, or around storm drains; waste bins were covered and in good condition."<br><br>Evid: Inspection Report, RJN, Ex. F, at p. 4. | 10. Objection. Relevancy. Fed. R. of Evid. 401, 402. The County will no longer pursue the third cause of action for discharges in violation of the Industrial General Permit and Clean Water Act 33 U.S.C. §§ 1311(a), 1342(p). Thus, this fact is no longer relevant. |

BEST BEST & KRIEGER LLP<br>ATTORNEYS AT LAW<br>2001 N. MAIN STREET, SUITE 390<br>WALNUT CREEK, CALIFORNIA 94596

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 11. | The Regional Water Board permitted CDCR's use of LAAs for the discharge of treated wastewater from the WWTP under Waste Discharge Requirements Order R5-2015-0129 ("WWTP Permit"), adopted on December 11, 2015.<br><br>Evid: WWTP Permit, RJN, Ex. E, at ¶ 62. | 11. Objection. Relevancy. Fed. R. of Evid. 401, 402. The County will no longer pursue the portion of the first cause of action for unpermitted discharges from the Mule Creek State Prison's ("Facility") land application area in violation of Section 301(a) of the Clean Water Act. Thus, this fact is no longer relevant. |
| 12. | At MCSP, prior to spray application, wastewater is treated in an oxidation ditch and clarifiers, then disinfected in the chlorine contact pipe. The secondary disinfected effluent is then discharged to LAAs via spray irrigation where it is applied to the land surface.<br><br>Evid: WWTP Permit, RJN, Ex. E, at p. 44;<br><br>Simpson Decl., at ¶ 16;<br><br>Orta Decl., at ¶ 10. | 12. Objection. Relevancy. Fed. R. of Evid. 401, 402. The County will no longer pursue the portion of the first cause of action for unpermitted discharges from the Mule Creek State Prison's ("Facility") land application area in violation of Section 301(a) of the Clean Water Act. Thus, this fact is no longer relevant. |
| 13. | The Facility operates a stormwater collection system that employs best management practices ("BMPs"), as approved by the Central Valley Regional Water Quality Control Board.<br><br>Evid: Orta Decl., at ¶¶ 4-13;<br><br>Simpson Decl., at ¶ 15. | 13. Disputed.<br><br>The Regional Board has determined that Defendant has failed to identify BMPs that address exceedances above water quality standards in various metals such as aluminum, iron, manganese, and zinc. Furthermore, there is no evidence that the Regional Water Board "approved" the management practices that were implemented by the Defendants.<br><br>Evid: Jan. 24, Feb. 11, Nov. 3, Nov. 30, 2022 |

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA, 94596

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Letters from Regional Board, County's RJN, Exs. 4-7. |
| 14. | The stormwater system consists of a network of conveyances, culverts, outfalls, and "bioswales" that allow for settling out and filter contaminants from stormwater before it reaches nearby Mule Creek.<br><br>Evid: Orta Decl., at ¶¶ 4, 7, 8, 19, 20;<br><br>Simpson Decl., at ¶¶ 25, 26. | 14. Disputed. There is no evidence that the "bioswales" at the Facility filter contaminants from stormwater.<br><br>Furthermore, the fact that there were exceedances detected at multiple monitoring points at the Facility demonstrates that the stormwater system does not "settl[e] out and filter contaminants from stormwater before it reaches nearby Mule Creek.<br><br>Defendants have failed to present any evidence to show that the stormwater system "allow[s] for settling out" bacteria or pharmaceuticals from the stormwater discharges to Mule Creek.<br><br>Defendants have presented no evidence to show that the stormwater system "filter[s] bacterial or pharmaceuticals from the stormwater discharges to Mule Creek.<br><br>Evid: Andrews Decl., Ex. 1 [Expert Disclosures] at ¶ 16, tbl. 5, 6, 7, 8,  9, 10, 11. |
| 15. | In implementing the BMPs, CDCR has worked closely with the Water Board's permitting staff and is engaged in an iterative process to further improve the quality of the Facility's stormwater discharges. | 15. Disputed.<br><br>Defendants have not improved the quality of the Facility's stormwater discharges. The Regional Board has continued to find exceedances in the water quality standards in the Facility's MS4 as recent as |

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA, 94596

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Evid: Orta Decl., at ¶¶ 5-13; Simpson Decl., at ¶ 15. | 2022. Objection. Defendants' assertion is not a fact, but a legal interpretation of the Small MS4 Permit. Evid: Jan. 24, Feb. 11, Nov. 3, Nov. 30, 2022 Letters from Regional Board, County's RJN, Exs. 4-7. |
| 16. | Stormwater runoff at the Facility collects in a conveyance ditch paralleling a lethal electrified fence surrounding the Facility, with the ditch leading to two culverts located at sampling locations designated as "MCSP5" and "MCSP6." Evid: Orta Decl., at ¶ 4; Excerpt from Revised Stormwater Collection System Investigation Report of Findings, revised June 2020, prepared by SHN Engineers & Geologists for California Department of Corrections and Rehabilitation, ("2020 Collection System Investigation Report"), ("Lungren Decl."), Ex. B, at p. 7. | 16. No dispute. |
| 17. | Stormwater passes through the culverts at MSCP5 and MCSP6 where it is periodically sampled. Evid: Orta Decl., at ¶ 4. | 17. No dispute. |
| 18. | During most of the year (i.e., during dry weather and light rain), culvert "slide gates" block the flow and | 18. Disputed. The slide gates do not block the flow of both stormwater and non-stormwater because it still allows water to pass |

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | both stormwater and non-stormwater are directed to the Facility's permitted WWTP where the water is treated with secondary level treatment.<br><br>Evid: Orta Decl., at ¶ 4;<br><br>2020 Collection System Investigation Report, Lungren Decl., Ex. B, at p. 8. | through.<br><br>Evid: Defendants' Separate Statement of Undisputed Facts ("Defendant's SSUP") ¶ 20, ECF 95-2, at 6. |
| 19. | The secondary treatment at the WWTP consists of two bar screenings, an oxidation ditch, two parallel clarifiers, a chlorine contact pipe, a sludge belt press, sludge drying beds, and effluent storage reservoir, and spraying of the treated material on LAA.<br><br>Evid: WWTP Permit, RJN, Ex. E, at ¶ 11;<br><br>County of Amador's First Amended Complaint for Declaratory and Injunctive Relief (ECF 35, "County's FAC"), ¶¶ 59-60;<br><br>Orta Decl., at ¶ 4. | 19. Objection. Relevancy. Fed. R. of Evid. 401, 402. The County will no longer pursue the portion of the first cause of action for unpermitted discharges from the Mule Creek State Prison's ("Facility") land application area in violation of Section 301(a) of the Clean Water Act. Thus, this fact is no longer relevant. |
| 20. | During periods of heavy rain, deemed "Significant Rain Events," the slide gates are opened to allow stormwater to pass through MCSP5 and MCSP6 due to capacity limits at the WWTP.<br><br>Evid: Orta Decl., at ¶ 4; | 20. No dispute. |

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | 2020 Collection System Investigation Report, Lungren Decl., Ex. B, at p. 8-9. | |
| 21. | When stormwater passes through the culverts at MCSP5 and MCSP6, it flows into the vegetated bioswale channels before reaching the two outfalls at monitoring locations MCSP2 and MCSP3.<br><br>Evid: 2020 Collection System Investigation Report, Lungren Decl., Ex. B, at p. 14;<br><br>Orta Decl., at ¶ 4. | 21. No dispute. |
| 22. | From monitoring location MCSP6, the bioswale channel extends approximately 1,500 feet to the outfall at MCSP3.<br><br>Evid: Orta Decl., at ¶¶ 4, 20;<br><br>2020 Collection System Investigation Report, Lungren Decl., Ex. B, at p. 14. | 22. No dispute. |
| 23. | From monitoring location MCSP5, the bioswale channel extends approximately 630 feet to the outfall at MCSP2.<br><br>Evid: Orta Decl., at ¶¶ 4, 19;<br><br>2020 Collection System Investigation Report, Lungren Decl., Ex. B, at p. 14. | 23. No dispute. |
| 24. | If there is sufficient flow, stormwater is then discharged from the outfalls at MCSP2 and MCSP3 into Mule Creek.<br><br>Evid: Orta Decl., at ¶ 4. | 24. No dispute. |

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

2:20-CV-02482-WBS-AC
COUNTY RESPONSE TO PLAINTIFFS' SEPARATE
STATEMENT OF UNDISPUTED FACTS

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 25. | The Small MS4 Permit does not require sampling and monitoring of CDCR's stormwater discharges.<br><br>Evid: Small MS4 Permit, RJN, Ex. A, passim;<br><br>Simpson Decl., at ¶ 12. | 25. Disputed.<br><br>The 13383 Order requires Defendant to sample and monitor the Facility's stormwater discharges.<br><br>Evid: Andrews Decl., Ex. 24 [Excerpts of Lee deposition transcript] at 210:10-211:2 |
| 26. | The Regional Water Board issued a section 13383 Order requiring CDCR to submit periodic monitoring reports to the Board.<br><br>Evid: Water Code section 13383 Order to Monitor Discharges to Surface Water dated November 29, 2021 ("13383 Order 2021"), Simpson Decl., Ex. A. | 26. No dispute. |
| 27. | The location denoted as "MCSP4" is collected directly from Mule Creek.<br><br>Evid: Orta Decl., at ¶ 4. | 27. No dispute. |
| 28. | As a permittee under the Small MS4 Permit since 2019, CDCR has been engaged in an iterative process with the Water Board to monitor and improve its Small MS4 Permit program to comply with the Permit.<br><br>Evid: Simpson Decl., at ¶ 11;<br><br>Orta Decl., at ¶¶ 5-13. | 28. Disputed. The Regional Water Board has stated that the BMPs implemented by the Facility fail to adequately address receiving water exceedances and noted that Defendants failed to investigate the sources of the exceedances or implement BMPs to address the exceedances.<br><br>Objection. Defendants' assertion is not a fact, but a legal interpretation of the Small MS4 Permit.<br><br>Evid: Jan. 24, Feb. 11, Nov. 3, Nov. 30, 2022 Letters from Regional Board, County's RJN, Exs. 4-7. |

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 29. | One way in which this dynamic process of BMP development occurs is through the Small MS4 Permit's Annual Reporting that documents and assesses the Small MS4 Permit program elements.<br><br>Evid: Small MS4 Permit, RJN, Ex. A, section E.16;<br><br>Simpson Decl., at ¶ 15. | 29. Objection. Improper opinion testimony. Fed. R. of Evid. 701, 702, 703, and 704. Legal conclusion. Defendants' assertion is not a fact, but a legal interpretation of the Small MS4 Permit. |
| 30. | The Small MS4 Permit requires that CDCR:<br><br>"identify and make modifications to BMPs, including new BMPs or modification to existing BMPs, to improve effectiveness in each priority area. The Permittee shall consult with the applicable Regional Water Board in setting expectations for the scope, timing, and frequency of BMP modifications."<br><br>Evid: Small MS4 Permit, RJN, Ex. A, Provision E.14.b., at p. 76;<br><br>Simpson Decl., at ¶¶ 13, 14. | 30. Objection. Relevancy. Fed. R. of Evid. 401, 402.<br><br>Disputed. Provision E.14.b of the Small MS4 Permit applies to traditional small MS4s, not to non-traditional small MS4s. The Facility is a non-traditional MS4.<br><br>Furthermore, the requirement of the implementation of BMPs applicable to Provision D of the Small MS4 Permit is a separate requirement from the iterative process.<br><br>Evid: Small MS4 Permit, ECF 95-7 at 22; County RJN, Ex. 8 [State Water Board Order WQ2015-0075] at 11-13, Exs. 9-11 |
| 31. | The Water Board reviews CDCR's submittals regarding its program effectiveness and provides feedback, which includes discussion on what BMPs and controls CDCR has implemented or is in the process of implementing to comply with the Small MS4 Permit.<br><br>Evid: Orta Decl., at ¶ 6; | 31. No dispute. |

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Simpson Decl., at ¶ 15. | |
| 32. | Through the iterative process for compliance with the Permit, MCSP has developed and implemented various BMP measures at the Facility.<br><br>Evid: Orta Decl., at ¶¶ 4, 6-13;<br><br>Simpson Decl., at ¶ 15. | 32. Disputed. The BMPs implemented by the Facility fail to adequately address the exceedances in the receiving water limitations.<br><br>A number of the BMPs identified by Defendants were not in place before this action and Defendants have failed to identified any implemented BMPs that reduce or eliminate the bacteria and metal exceedances.<br><br>Evid: Jan. 24, Feb. 11, Nov. 3, Nov. 30, 2022 Letters from Regional Board, County's RJN, Exs. 4-7; Andrews Decl., Ex. 1 [Expert Disclosures] at ¶ 16, tbl. 7, 8, 9, 10, 11. |
| 33. | The BMPs include informational memoranda from the Warden to the MCSP staff regarding the stormwater prevention program, including such topics as the handling of trash to prevent it from entering the stormwater collection system, administrative controls, landscape training and rescheduling for irrigation runoff reduction, and physical control measures at designated areas of the stormwater collection system.<br><br>Evid: Orta Decl., at ¶ 8. | 33. Disputed.<br><br>The informational memoranda predate the violations alleged in this action and were not implemented as part of an iterative process to address the violations at issue in this action.<br><br>Evid: 2018 Storm Water Master Plan and Memoranda from Facility Warden; Andrews Decl., Exs. 21-23. |
| 34. | BMPs implemented at storm drains around the Facility include fabric, wattles, | 34. Disputed.<br><br>These BMPs predate the |

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | designed v-ditches to catch sediment from runoff, and paved aprons to filter or reduce contaminants in discharges. In addition, wash water at work areas or for washing vehicles is drained to the sanitary sewer rather than the stormwater collection system or it is conducted on unpaved areas where water percolates or evaporates before it reaches the storm drains.<br><br>Evid: Orta Decl., at ¶ 8. | violations alleged in this action and were not implemented as part of an iterative process to address the violations at issue in this action.<br><br>Evid: 2018 Storm Water Master Plan, Andrews Decl., Ex. 21 at 18, 20, 24-26; 2020 Stormwater Investigation Report, ECF 95-3 at 70. |
| 35. | Other BMPs implemented include the installation of curbs that redirect non-stormwater flows to float-controlled pumps that pump non-stormwater flows to the WWTP where it receives secondary treatment.<br><br>Evid: Orta Decl., at ¶ 10;<br><br>Mule Creek State Prison's Revised Non-Storm Water Discharge Elimination Plan, dated May 13, 2022, ("Revised Non-Storm Water Discharge Elimination Plan"), Orta Decl., Ex. B, sections (a)(1), (b), (c). | 35. Disputed.<br><br>These BMPs predate the violations alleged in this action and were not implemented as part of an iterative process to address the violations at issue in this action.<br><br>During Significant Rain Events, non-stormwater is not redirected to the WWTP, but instead non-stormwater flows are co-mingled with stormwater flows, which discharge to Mule Creek when the gates are opened.<br><br>Evid: 2020 Stormwater Investigation Report, ECF 95-3 at 68; Defendant's SSUP ¶ 20, ECF 95-2, at 6. |
| 36. | The Facility also curtails the irrigation schedule for all areas at the facility to minimize the potential for potable landscape irrigation runoff, and applies soil stabilization measurements when identified, along with sediment controls. | 36. Disputed.<br>These BMPs predate the violations alleged in this action and were not implemented as part of an iterative process to address the violations at issue in this action.<br><br>Evid: Regional Board Order |

BEST BEST & KRIEGER LLP<br>ATTORNEYS AT LAW<br>2001 N. MAIN STREET, SUITE 390<br>WALNUT CREEK, CALIFORNIA 94596

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Evid: Orta Decl., at ¶ 10; <br><br> Revised Non-Storm Water Discharge Elimination Plan, Orta Decl., Ex. B, sections (a)(1), (b), (c). | R5-2021-0001, Andrews Decl., Ex. 24 at 9. |
| 37. | MCSP staff are trained on and implement numerous BMPs such as street sweeping, material handling and storage, waste management, stockpile management, management of washout areas, vehicle and equipment cleaning, fueling, and maintenance, and spill prevention and control. <br><br> Evid: Orta Decl., at ¶ 11. | 37. Disputed. <br><br> These BMPs predate the violations alleged in this action and were not implemented as part of an iterative process to address the violations at issue in this action. <br><br> Evid: 2018 Stormwater Master Plan, Andrews Decl., Ex. 21 at 30, 35. |
| 38. | Weekly inspections and clean-ups are also carried out throughout the Facility, and preventative maintenance work orders are issued quarterly for storm water and sanitary sewer inspections and cleaning. <br><br> Evid: Orta Decl., at ¶ 12. | 38. No dispute. |
| 39. | CDCR recently completed a BMP project that consists of a permanent monitoring station at MCSP2 and MCSP3. <br><br> Evid: Orta Decl., at ¶ 9. | 39. Disputed. The permanent monitoring station does not reduce or eliminate bacteria or metal exceedances at issue. <br><br> Evid: Jan. 24, Feb. 11, Nov. 3, Nov. 30, 2022 Letters from Regional Board, County's RJN, Exs. 4-7. |
| 40. | MCSP is also implementing the Regional Board-approved Enhanced Compliance Action involving replacement of the entire landscape irrigation system at the Facility. | 40. Disputed. The Enhanced Compliance Action involving replacement of the entire landscape irrigation system is a response to an enforcement action by the Regional Board initiated |

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Evid: Orta Decl., at ¶ 13. | prior to this action.<br><br>Evid: Regional Board Order R5-2021-0001, Andrews Decl., Ex. 24 at 9 |
| 41. | CDCR conducted two major investigations of its stormwater and wastewater systems in conjunction with the Regional Water Board's permit compliance staff.<br><br>Evid: Simpson Decl., at ¶¶ 20 – 22;<br><br>2020 Collection System Investigation Report, Lungren Decl., Ex. B;<br><br>Excerpts from Quantification of Sources of Fecal Pollution at Mule Creek, dated January 2021, prepared by Southern California Coastal Water Research Project for Central Valley Regional Water Quality Control Board and the California Department of Correction and Rehabilitation ("2021 Sources Fecal Pollution Report"), Lungren Decl., Ex. A. | 41. Disputed. The investigations were conducted with permit compliance staff from the Regional Board and were in response to the Regional Board's enforcement action.<br><br>Evid: Regional Board Order R5-2021-0001, Andrews Decl., Ex. 24 at att. C |
| 42. | From 2018 to 2022, an independent consultant conducted an investigation of the stormwater and wastewater collection systems in close consultation with the Water Board specifically to determine if wastewater commingled with stormwater at the Facility. | 42. Disputed.<br><br>The 2020 Collection System Investigation Report did not continue until 2022. The date of the report is June 19, 2020. In addition, the 2020 Collection System Report was in response to an order to investigate unpermitted discharges of wastewater through the Facility's MS4. |

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA, 94596

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Evid: 2020 Collection System Investigation Report, Lungren Decl., Ex. B. | Evid: ECF 95-3 at 46 ("This revised report was developed … and directed by the Central Valley Regional Water Quality Control Board … in Water Code Section 13267 Order, dated February 14, 2018. The Order alleged that 'the water being discharged from the Old Prison Facility to the perimeter stormwater collection, and then into Mule Creek, is, at least partially, wastewater comingled with contaminated storm water and/or gray water."). |
| 43. | Phase I of the investigation included: (1) the collection and laboratory sampling of soil and water samples from both systems; (2) visual manhole and closed-circuit television (CCTV) inspections of both systems; (3) dye and smoke testing of the sewer system that could detect leaks, track any migration of material, and assess "connectivity of pipe systems" (Section 2.4.1); (4) daily sampling of stormwater within the collection system; (5) baseline soil and water sampling; and (6) identifying the source of fecal coliform results using deoxyribonucleic (DNA) microbial source tracking.<br><br>Evid: 2020 Collection System Investigation Report, Lungren Decl., Ex. B, at p. ii. | 43. Objection. Relevancy. Not relevant. The County is not pursuing a claim that Defendant violated Provision B.3 of the Small MS4 Permit. |
| 44. | During the investigation, CDCR worked closely with the Water Board—which collected its own "split" samples to | 44. Objection. Relevancy. Not relevant. The County is not pursuing a claim that Defendant violated |

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | confirm CDCR's results—and obtained the Water Board's approval of the sampling plans.  Upon completion, Phase I of the report was provided to the Water Board for its review and approval.<br><br>Evid: 2020 Collection System Investigation Report, Lungren Decl., Ex. B, at p. 1. | Provision B.3 of the Small MS4 Permit. |
| 45. | The results of the investigation are documented in a report entitled Revised Storm Water Collection System Investigation Findings Report, originally completed in 2018 and last updated on June 19, 2020 (the "2020 Collection System Investigation Report"). The 2020 Collection System Investigation Report concluded that: (1) there was no tracer dye observed in the stormwater system (Section 3.4.2.1); (2) there are no cross-connections between the stormwater and sewer systems (Section 5.0); (3) there was no evidence that the stormwater system was impacted by sewage, wastewater, or grey water; and, (4) there was no sewage discharging into Mule Creek.<br><br>Evid: 2020 Collection System Investigation Report, Lungren Decl., Ex. B, section 4.3.2., at p. 89. | 45. Disputed.<br><br>The 2020 Collection System Investigation Report, which was conducted on behalf of Defendants', found hundreds of defects in both the Facility's stormwater system and sanitary sewer system.<br><br>The Regional Board reviewed the conclusions of the 2020 Collection System Investigation Report and disagreed with the conclusions, and instead found the following:<br>(1) Despite that the dye test revealed no evidence of direct cross connections, in direct cross connections would be difficult to detect using dye.<br>(2) While there was no evidence of a direct cross-connection between the stormwater and sewer system, there was evidence of indirect cross-connections. The CCTV investigation revealed major defects in both system, which could have allowed infiltration and exfiltration.<br>(3) There was strong evidence that the |

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | stormwater system was impacted by sewage as evident by roughly 600 samples that showed waste constituents, and evidence of indirect cross-connections. (4) There was evidence of wastewater entering the stormwater system, which impacted, and threaten to continue to impact, the discharges from the stormwater system in to Mule Creek. Evid: Small MS4 Permit, ECF 95-7, at 22; Small MS4 Fact Sheet, ECF 95-7 at 421–422; ECF 95-3, at 100-103, 139-142; Review of Revised Storm Water System Investigation Findings Report, California Department of Corrections and Rehabilitations, Mule creek State Prison, Amador County, dated December 7, 2020 ("Review of Revised Storm Water Investigation Findings Report"), Andrews Decl., Ex. 20, at pp.6, 16-20. |
| 46. | The Water Board and CDCR also worked closely with an independent public research and development agency, known as the Southern California Coastal Water Research Project ("SCCWRP") to further investigate the sources and scope of fecal matter in Mule Creek. Evid: 2021 Sources Fecal Pollution Report, Lungren Decl., Ex. A; Simpson Decl., at ¶¶ 20-21. | 46. No dispute. |

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 47. | SCCWRP conducted an extensive investigation consisting of twenty-two (22) days of sampling, fourteen (14) of which were during or promptly after rain events, and collected numerous samples from Mule Creek both upstream and downstream of the Facility.

Evid: 2021 Sources Fecal Pollution Report, Lungren Decl., Ex. A, at pp. ii. | 47. No dispute. |
| 48. | SCCRWP's January 2021 report entitled, "Quantification of Sources of Fecal Pollution at Mule Creek," (the "2021 Sources of Fecal Pollution Report") demonstrates that fecal bacteria detected in stormwater at MCSP is almost entirely from animal sources (bird and deer) and not from any appreciable human sources.

Evid: 2021 Sources Fecal Pollution Report, Lungren Decl., Ex. A, at pp. ii. | 48. Disputed.

The Regional Board found that molecular source tracking, which is the methodology used in the 2021 Sources of Fecal Pollution Report, "were not applicable in determining compliance with the Basin Plan Objectives[.]" This is due to the fact it "was not EPA certified, as required by the California Water Code § 13176."

Furthermore, Dr. Robert Emerick concluded that the "most likely source of these bacterial indicators" is from the Facility's sanitary sewer system.

Evid: Review of Revised Storm Water Investigation Findings Report, dated December 7, 2020, Andrews Decl., Ex. 20 at p.16; 2021 Sources Fecal Pollution Report, Lungren Decl., Ex. A, at pp. 18-19, 23; Maharg Decl., Ex. 29 (Emerick Expert Rpt.), at p. 18. |
| 49. | It further concluded that fecal bacteria levels in Mule | 49. Disputed.
The 2021 Sources Fecal |

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

2:20-CV-02482-WBS-AC
COUNTY RESPONSE TO PLAINTIFFS' SEPARATE
STATEMENT OF UNDISPUTED FACTS

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Creek were often higher upstream of MCSP and that human fecal matter in stormwater was at negligible levels.<br><br>Evid: 2021 Sources Fecal Pollution Report, Lungren Decl., Ex. A, at pp. ii, 3, 14, 23. | Pollution Report found that "[i]n 68% of samples, E. coli concentrations were higher downstream versus upstream of the prison facilities." The study did not conclude human fecal matter was at negligible.<br><br>Evid: 2021 Sources Fecal Pollution Report, ECF 95-3 at 32. |
| 50. | The 2021 Sources of Fecal Pollution Report demonstrated that the overall water quality conditions of Mule Creek were heavily impacted by cows (i.e.. cattle ranches) upstream of MCSP and background sources (birds and deer), rather than human fecal contributions.<br><br>Evid: 2021 Sources Fecal Pollution Report, Lungren Decl., Ex. A, at pp. 1, 20, 22, 23. | 50. Disputed.<br>The study concluded "Water quality in Mule Creek was affected by prison runoff[.]" Further, the most direct way to determine whether the discharge from the Facility's stormwater system contained a wastewater component is to monitor the stormwater for chemicals that can only pass through humans, such as pharmaceuticals and personal care products. Samples from the Facility's stormwater system were taken on March 9, 2022 and May 24, 2022. Both MS4 outfalls MCSP2 and MCSP3 contained trace amounts of pharmaceuticals. The only source of the measured observations of pharmaceuticals is from human excrement.<br><br>Furthermore, Dr. Robert Emerick concluded that the "most likely source of these bacterial indicators" is from the Facility's sanitary sewer system.<br><br>Evid: Declaration of Robert Emerick in Support of Plaintiffs' Motion for |

BEST BEST & KRIEGER LLP<br>ATTORNEYS AT LAW<br>2001 N. MAIN STREET, SUITE 390<br>WALNUT CREEK, CALIFORNIA 94596

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Summary Adjudication (ECF 45-2, "Emerick Decl."), at ¶¶ 11, 13, 15, 19, 21; Andrews Decl., Maharg Decl., Ex. 29 (Emerick Expert Rpt.) at 8. |
| 51. | Under the Clean Water Act section 303(d), states are required to identify waterbodies that do not meet, or are not expected to meet, water quality standards (known as "impaired waterbodies"). Waterbodies in California that exceed protective WQS are placed on the state's section 303(d) List.<br><br>Evid: Simpson Decl., at ¶ 29. | 51. Objection. Relevancy. Fed. R. of Evid. 401, 402. This fact is not relevant to any of the County's claims. |
| 52. | Based on California's Listing Policy in developing the 303(d) list, the Water Board evaluates water quality-related data and information.<br><br>Evid: Simpson Decl., at ¶¶ 29, 30. | 52. No dispute. |
| 53. | There is no assessment data for Mule Creek on the Water Board's 303(d) List for 2020-2022, the current watershed impairment list for the area, but there is assessment data for Dry Creek, which is the next waterbody receiving flows from Mule Creek.<br><br>Evid: Simpson Decl., at ¶ 29. | 53. No dispute. |
| 54. | The Water Board did not designate Dry Creek as impaired.<br><br>Evid: Simpson Decl., at ¶ 29. | 54. No dispute. |
| 55. | To support their claims regarding violations of the | 55. Disputed. |

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Small MS4 Permit, Plaintiffs relied on two categories of stormwater sampling data that correspond to before and after the filing of the first complaint on December 15, 2020: (1) purported "past" violations from samples collected between May 16 , 2019 and December 17, 2020 (the "Alleged Past Discharge Data Set"); and (2) purported "ongoing" violations from samples collected between January 27, 2021, to March 28, 2022 (the "Alleged Ongoing Discharge Data Set"). <br><br> Evid: Plaintiffs' MSA (ECF 45), at 28:18-26, 19:4-13; <br><br> Declaration of Karen Ashby In Support Of Plaintiffs' Motion for Summary Adjudication (ECF 45-4, "Ashby Decl.")), at ¶¶ 10, 11, tbls. 2, 3, ¶ 17, tbl. 8, ¶ 14, tbl. 5, ¶ 20, tbl. 10. | Exceedances in aluminum, iron, lead, and zinc in samples discharged to Mule Creek through MCSP2 and MCSP3 on December 17, 2020 after the first complaint was filed. <br><br> Evid: Andrews Decl., Ex. 1 [Expert Disclosures], at 67, 68. |
| 56. | The stormwater sampling data from the Alleged Ongoing Discharge Data Set is comprised exclusively of samples collected at MCSP4, MCSP5, and MCSP6. None of the samples in this data set were collected from the two outfalls (MCSP2 and MCSP3) that are located near Mule Creek. <br><br> Evid: Ashby Decl. (ECF 45-4), at ¶¶ 17, 19-21, tbls. 8, 9, 10, 11. | 56. Disputed. <br><br> The two samples dated December 17, 2020, were included in the Alleged Ongoing Discharge Data Set and were collected at MCSP2 and MCSP3. <br><br> Evid: Andrews Decl., Ex. 1 [Expert Disclosures] at ¶ 16, tbl. 7, 8, 9, 10, 11. |
| 57. | During discovery, Plaintiffs and their experts conducted | 57. No dispute. |

BEST BEST & KRIEGER LLP<br>ATTORNEYS AT LAW<br>2001 N. MAIN STREET, SUITE 390<br>WALNUT CREEK, CALIFORNIA 94596

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | two "dry-weather" inspections of the Facility on March 9 and May 24, 2022, during which they collected samples from ponded water.<br><br>Evid: Lungren Decl., at ¶ 2;<br><br>Declaration of Robert Emerick in Support of Plaintiffs' Motion for Summary Adjudication (ECF 45-2, "Emerick Decl."), at ¶ 17; Figure 6. | |
| 58. | Plaintiffs did not conduct sampling near the LAA or from sample points MCSP2 and MCSP3.<br><br>Evid: Lungren Decl., at ¶ 3;<br><br>Emerick Decl. (ECF 45-2), at ¶ 17; Figure 6. | 58. No dispute. |
| 59. | Pursuant to the Court's Scheduling Order, discovery closed on October 3, 2022.<br><br>Evid: Pretrial Scheduling Order (ECF 11), at 2:20-3:11. | 59. No dispute. |
| 60. | Disinfected effluent from the WWTP that is discharged to the LAAs via spray irrigation would be further treated as the effluent infiltrates through soil, where it receives additional physical, chemical, and biological treatment. The physical treatment is similar to water passing through a screen or sieve, where particulates are removed as the treated effluent moves downward and laterally through the soil column. The chemical | 60. Objection. Relevancy. The County will no longer pursue the portion of the first cause of action for unpermitted discharges from the Mule Creek State Prison's ("Facility") land application area in violation of Section 301(a) of the Clean Water Act. Thus, this fact is no longer relevant. |

BEST BEST & KRIEGER LLP<br>ATTORNEYS AT LAW<br>2001 N. MAIN STREET, SUITE 390<br>WALNUT CREEK, CALIFORNIA 94596

2:20-CV-02482-WBS-AC
COUNTY RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF UNDISPUTED FACTS

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | treatment is the result of cation exchange processes where contaminants are adsorbed onto soil particles and finally, the biological treatment is the result of microorganisms with the ability to degrade or transform both organic and inorganic substances in the infiltrating treated effluent. If the water comes into contact with groundwater, it would be diluted before it would reach Mule Creek.<br><br>Evid: Simpson Decl., at ¶ 16. | |
| 61. | Plaintiffs did not perform sampling of the LAA during their two inspections of the Facility.<br><br>Evid: Lungren Decl., at ¶ 3;<br><br>Emerick Decl. (ECF 45-2), at ¶ 17; Figure 6. | 61. No dispute. |
| 62. | In their complaints, Plaintiffs rely on both the Alleged Ongoing Discharge Data Set and the Alleged Past Discharge Data Set that was collected before the filing of the first complaint.<br><br>Evid: California Sportfishing Protection Alliance Complaint for Declaratory and Injunctive Relief (ECF 1, "CSPA's Complaint"), at ¶¶ 82, 97, 100, 101, 107, 111;<br><br>County's FAC (ECF 35), at ¶¶ 82, 108-109, 116-119. | 62. Disputed. There are exceedances of aluminum, iron, lead, and zinc in samples discharged to Mule Creek through MCSP2 and MCSP3 on December 17, 2020, after the first complaint was filed.<br><br>Evid: Andrews Decl., Ex. 1 [Expert Disclosures], at 67, 68. |

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 63. | A fundamental principle in evaluating stormwater sampling data is accounting for "background" and non-human sources in the levels detected.<br><br>Evid: Simpson Decl., at ¶ 17;<br><br>Deposition Transcript of Elizabeth Lee, dated September 22, 2022 ("Lee Deposition"), Lungren Decl., Ex. C, at 200:19-201:9, 201:11-13; Deposition Transcript of Dr. Robert Emerick, dated September 30, 2022 ("Emerick Deposition"), Lungren Decl., Ex. D, at 71:13-14, 137:11-18, 137:22-138:3. | 63. Disputed. Evaluating stormwater sampling data is context dependent. In this context, the requirements of Provision D of the Small MS4 Permit do not require proof of a human source or that they originated at the Facility. A discharge still violates provision D of the Small MS4 Permit if it contributes a pollutant to a water body exceeding water quality standards, regardless of the source.<br><br>Evid: ECF 45-11, at p.213; Review of Revised Storm Water Investigation Findings Report, December 7, 2020, Andrews Decl., Ex. 20, at p.8. |
| 64. | The Bacteria Provisions, Section 2.b Natural Sources of Bacteria states that: "a natural source exclusion approach may be utilized after all anthropogenic sources of bacteria are identified, quantified, and controlled."<br><br>Evid: Part 3 of the Water Quality Control Plan for Inland Surface Waters, Enclosed Bays, and Estuaries of California, Bacteria Provisions and a Water Quality Standards Variance Policy ("Bacteria Provisions"), RJN, Ex. D, Section 2.b, at p. 5. | 64. Disputed. In the context of the Total Maximum Daily Load (TMDL) or Basin Plan amendment, a "natural exclusion approach" may allow "a certain frequency of exceedance of the applicable bacteria water quality objectives[.]" SS Respo. ¶ _. No TMDL or Basin Plan amendment applicable to Mule Creek has authorized exceedances of the applicable water quality standards for *E. coli*.<br><br>Evid: ECF 95-8 [Bacteria Provisions] at 6; ECF 95-2, ¶¶ 53, 71, 73. |
| 65. | Per EPA guidance, a violation of bacteria standards during dry weather flow does not always mean that an illicit | 65. Disputed. The EPA Guidance Manual is not endorsed by the EPA. ECF 95-8 at 76 ("[this document] does not |

BEST BEST & KRIEGER LLP<br>ATTORNEYS AT LAW<br>2001 N. MAIN STREET, SUITE 390<br>WALNUT CREEK, CALIFORNIA 94596

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | discharge or sewage overflow is present. While raw sewage has bacteria concentrations that greatly exceed bacteria standards (approximately 12,000 MPN/100 mL) other bacteria sources, such as urban wildlife, can also cause a stream to violate standards.<br><br>Evid: October 2004 EPA Guidance Manual: Illicit Discharge Detection and Elimination ("EPA Guidance Manual"), RJN, Ex. G, at p. 142 | necessarily reflect the views of the [Environmental Protection] Agency, and no official endorsement should be inferred."), Further, this document is wholly is irrelevant to determining whether a receiving water exceeds water quality standards and whether wet weather discharges *from* the MS4 contribute to those exceedances of WQS under Provision D. ECF 95-8 at 89. It is related to detecting dry weather discharges *into* the MS4 system under the Illicit Discharge Detection and Elimination program requirements, which fall under Provision F.5.d of the Small MS4 Permit. ECF 95-7 at 88-93.<br><br>Evid: ECF 95-8 [EPA Guidance Manual] at 76, 89. |
| 66. | During discovery, the head of the Regional Water Board's MS4 permit compliance unit, Elizabeth Lee, was deposed by Plaintiffs. In speaking about the importance of background, Ms. Lee testified that:<br><br>Q:   So evaluating MCSP 4 would not be enough, you would also want to take into account what's happening upstream of the facility.· Is that fair to say?<br>A.· ·    That's correct.<br><br>Q.· And why is that?<br>A.· ·    Well, again like I said, you don't know if – if you only have that one downstream data point, if the discharges from MCSP had, in fact, contributed to that or | 66. No dispute. |

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

2:20-CV-02482-WBS-AC
COUNTY RESPONSE TO PLAINTIFFS' SEPARATE
STATEMENT OF UNDISPUTED FACTS

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | caused it without knowing what the condition and the receiving water upstream of MCSP was to begin with.<br><br>Q.·· Right. Is that typically referred to as what the background is?<br>A.·· Yeah, I guess that's what you would call it.<br><br>Q: And is that true for metals as well as E. coli?<br>A.·· Correct.<br><br>Evid: Lee Deposition, Lungren Decl., Ex. C, at 138:12-19; 200:19-201:9; 201:11-13. | |
| 67. | The 2020 Collection System Investigation Report concluded that detections in stormwater of aluminum, iron, and magnesium are likely naturally occurring from the area's lithology and that detections of magnesium are attributable to sources upstream of the Facility.<br><br>Evid: 2020 Collection System Investigation Report, Lungren Decl., Ex. B, at 4.3.1.6. | 67. No dispute |
| 68. | The 2020 Collection System Investigation Report concluded that zinc detections are likely attributed to galvanized metal at the Facility, such as fencing.<br><br>Evid: 2020 Collection System Investigation Report, Lungren Decl., Ex. B, at 4.3.1.6. | 68. No dispute. |
| 69. | The Small MS4 Permit's Discharge Prohibitions, Provision B.1, prohibits the | 69. No dispute. |

BEST BEST & KRIEGER LLP<br>ATTORNEYS AT LAW<br>2001 N. MAIN STREET, SUITE 390<br>WALNUT CREEK, CALIFORNIA 94596

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | "[d]ischarges of "waste" from the MS4 that are prohibited by Statewide Water Quality Control Plans or applicable Regional Water Quality Control Plans (Basin Plans)." Evid: Small MS4 Permit, RJN, Ex. A, Provision B.1, at p. 18. | |
| 70. | The Water Quality Control Plan for the California Regional Water Quality Control Board, Central Valley Region (February 2019) (the "Basin Plan") prohibits the discharge of several forms of waste in specified waterbodies. Evid: California Regional Water Quality Control Board, Central Valley Region Water Quality Control Plan (Fifth Edition) for the Sacramento River and San Joaquin River Basins ("Basin Plan"), RJN, Ex. C. | 70. Disputed. The Basin Plan also prohibits bacteria and metals from being present in excess of water quality standards for those constituents. Evid: ECF 95-8 [Bacteria Provisions] at 4; ECF 95-7 [Basin Plan] at 584-585. |
| 71. | The Basin Plan includes thirteen (13) amendments that were added to prohibit waste discharges as follows: (1) amendments 2-12 to prohibit waste discharge from "leaching and percolation systems" within certain areas (pp. 110-112); and (2) amendments 24 and 28 to prohibit waste discharge "from Individual Disposal Systems" in certain areas (p. 114). Evid: Basin Plan, RJN, Ex. C, at pp. 110-112, 114. | 71. No dispute. |

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

2:20-CV-02482-WBS-AC
COUNTY RESPONSE TO PLAINTIFFS' SEPARATE
STATEMENT OF UNDISPUTED FACTS

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 72. | The Small MS4 Permit's Discharge Prohibitions, Provision B.2, provides that "[d]ischarges of storm water from the MS4 to waters of the U.S. in a manner causing or threatening to cause a condition of pollution or nuisance as defined in Water Code § 13050 are prohibited." <br><br> Evid: Small MS4 Permit, RJN, Ex. A, Provision B.2, at p. 19. | 72. No dispute. |
| 73. | Mule Creek has not been listed as an impaired waterbody in the Section 303(d) listing process. <br><br> Evid: Simpson Decl., at ¶ 29. | 73. No dispute. |
| 74. | That listing process is specifically based on whether the waterbody's beneficial uses have been impaired. <br><br> Evid: Simpson Decl., at ¶ 29. | 74. No Dispute. |
| 75. | Plaintiffs did not establish that the stormwater discharges at issue actually reached Mule Creek such that it caused a "condition of pollution or nuisance" or that the stormwater that was sampled from locations MCSP5 and MCSP6 reached Mule Creek. <br><br> Evid: Order on Plaintiffs' Motion for Summary Adjudication (ECF 60), at 21:5-12 (denying the MSA on this ground). | 75. No Dispute. |
| 76. | The Small MS4 Permit's Discharge Prohibitions, Provision B.3 ("MS4 Provision B.3"), provides in pertinent | 76. Objection. Relevancy. Fed. R. of Evid. 401, 402. Not relevant. The County is not pursuing a claim that |

BEST BEST & KRIEGER LLP<br>ATTORNEYS AT LAW<br>2001 N. MAIN STREET, SUITE 390<br>WALNUT CREEK, CALIFORNIA 94596

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | part that discharges of material "other than storm water to waters of the U.S. shall be effectively prohibited, except as allowed under this Provision." Evid: Small MS4 Permit, RJN, Ex. A, Provision B.3, at p. 19. | Defendant violated Provision B.3 of the Small MS4 Permit. |
| 77. | Plaintiffs' experts collected stormwater samples from ponded water sampled it for the presence of pharmaceuticals and caffeine. Evid: Emerick Decl. (ECF 45-2), at ¶ 17; Figure 6. | 77. Objection. Relevancy. Fed. R. of Evid. 401, 402. Not relevant. The County is not pursuing a claim that Defendant violated Provision B.3 of the Small MS4 Permit. |
| 78. | The sampling, however, was conducted during dry weather and not during a Significant Rain Event. Evid: Lungren Decl., at ¶ 2; Emerick Decl. (ECF 45-2), at ¶ 17; Figure 6. | 78. Objection. Relevancy. Fed. R. of Evid. 401, 402. The County is not pursuing a claim that Defendant violated Provision B.3 of the Small MS4 Permit. |
| 79. | Ms. Lee further testified that the term "effectively" as used in Provision B.3 is not an absolute discharge prohibition and, instead, it means that the permittee must use best efforts to prevent non-stormwater from discharging through the MS4 and engage with the Board in the iterative process to implement BMPs. Evid: Lee Deposition, Lungren Decl., Ex. C, at 184:20-185:2. | 79. Disputed. Defendants' characterization of Ms. Lee's testimony is not accurate, she states: "Sure, based on my opinion, effectively prohibited would be if you knew that something other than non-storm water was making its way into your system, that you would try to prohibit it or implement BMPs to prohibit it. Whether it be through public education or something more structural, in effect, to stop it from entering your system." Neither Ms. Lee nor |

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA, 94596

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Provision B.3 mention the iterative process Provision B.3 of the Small MS4 Permit does not contain any language that could be construed as limiting the prohibition of non-storm water discharges to the waters of the U.S. when the permittee is using best efforts to prevent non-stormwater from being discharged and when engaging with the Board in the iterative process to implement BMPs.  Evid: Lee Deposition, ECF 95-3, at 184-185. |
| 80. | CSPA's expert, Dr. Robert Emerick, admitted at his deposition that he did not know and that he could not determine how much sewage was present in the stormwater at the Facility.  Evid: Emerick Deposition, Lungren Decl., Ex. D, at 56:24-57:1, 92:11-12. | 80. Disputed.  Dr. Emerick testified that while the amount of sewage in the Facility's stormwater has not been fully quantified, there is sewage flowing through the Facility's stormwater system.  Evid: Emerick Deposition, ECF 95-3 at 194-195. |
| 81. | High levels of ammonia would be detected in the stormwater samples if sewage was present, but the levels of ammonia detected in the Alleged Ongoing Discharge Data Set are very low.  Evid: Simpson Decl., at ¶ 32;  Lee Deposition, Lungren Decl., Ex. C, at 136:3-13, 136:14-25, 137:18-138:2, 138:3-11; | 81. Disputed.  Dr. Emerick testified that in detecting the presence of sewage in stormwater, looking at levels of ammonia may be problematic. The first problem Dr. Emerick identifies with using ammonia to detect the presence of sewage in storm water is the detection limit.  Adding sewage to storm water dilutes the amount of ammonia in the sewage to a point where it might be below the detection limit. |

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

83653.00001\40897975.5

2:20-CV-02482-WBS-AC
COUNTY RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF UNDISPUTED FACTS

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Emerick Deposition, Lungren Decl., Ex. D, at 55:21-24, 57:7-8. | The second issue that Dr. Emerick identifies is that ammonia may be converted in transit from between the source and where the sample is collected, and therefore is not a reliable indicator in some cases (e.g., where the sewage component goes through a low-oxygen environment such as groundwater or soil). While the presence of ammonia may confirm the presence of sewage, the absence of detectable ammonia does not indicate the absence of sewage.<br><br>Evid: Emerick Deposition, ECF 95-3 at 197-199. |
| 82. | Plaintiffs' expert, Dr. Emerick, admitted at his deposition that he reviewed the ammonia levels in the sampling data and found them to be below levels expected if they contained sewage. He further testified that that he observed potential sources of background contributions to the E. Coli detections.<br><br>Evid: Emerick Deposition, Lungren Decl., Ex. D, at 43:22-44:3, 44:22-45:6, 56:24-57:1, 92:11-12; 71:5-7. | 82. Disputed.<br><br>Dr. Emerick did not admit that he found the ammonia levels in the sampling data below levels he expected if it contained sewage. Dr. Emerick testified that it was possible to find very low levels of ammonia, or none at all if the ammonia had been diluted below the detection limit, in contexts such as this where storm water had sufficiently diluted the sewage component.<br>the sampling data.<br><br>Evid: Emerick Deposition, ECF 95-3 at 197-199. |
| 83. | Ms. Lee testified that, based upon her extensive experience and training at the Regional Water Board, she would expect ammonia levels in stormwater | 83. Disputed.<br><br>Ms. Lee actually testified that she would expect ammonia to be much higher if she were "looking at a |

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | samples to be "in the hundreds" if there was sewage present.<br><br>Evid: Lee Deposition, Lungren Decl., Ex. C, at 138:3-11. | wastewater type overflow or discharge into the storm water system" (emphasis added), not, as Defendants state, "in storm water samples." This is consistent with Dr. Emerick's testimony that raw sewage would be expected to have high levels of ammonia, but diluted sewage would have lower levels of ammonia.<br><br>Evid: Lee Deposition, ECF 95-3 at 180. |
| 84. | The Small MS4 Permit's "Effluent Limitations" Provision C ("MS4 Provision C"), provides in pertinent part that: (1) permittees shall implement controls to reduce pollutants from their MS4s to WOTUS to the MEP standard; and (2) stormwater discharges shall not contain hazardous substances above "reportable quantities."<br><br>Evid: Small MS4 Permit, RJN, Ex. A, Provision C, at p. 20. | 84. Not disputed. |
| 85. | CDCR is actively engaged in the iterative BMP process with the Regional Water Board and the head of the Board's MS4 permit compliance program is satisfied with CDCR's progress.<br><br>Evid: Lee Deposition, Lungren Decl., Ex. C, at 97:25-98:4, 99:22- 101:10, 165:23-166:4, 198:15-199:9. | 85. Disputed.<br><br>Ms. Lee testified only to her partial satisfaction with regard to a specific set of BMPs, and further testified that, though she could not recall which ones specifically, that there were BMPs that had not been implemented to her satisfaction in the past.<br><br>In fact, on February 11, 2022, the Regional Board notified Defendants of the failures to notify or describe additional BMPs |

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | that they would implement to prevent or reduce any pollutants.<br><br>In addition, the Regional Water Board has stated that the BMPs implemented by the Facility fails to adequately address receiving water exceedances and investigate the sources of the exceedances.<br><br>Evid: Lee Deposition, ECF 95-3, at 187-188; Jan. 24, Feb. 11, Nov. 3, Nov. 30, 2022 Letters from Regional Board, County's RJN, Exs. 4-7. |
| 86. | The Small MS4 Permit's Receiving Water Limitations, Provision D, provides: "Discharges shall not cause or contribute to an exceedance of water quality standards contained in a Statewide Water Quality Control Plan, the California Toxics Rule (CTR), or in the applicable Regional Water Board Basin Plan."<br><br>Evid: Small MS4 Permit, RJN, Ex. A, Provision D, at p. 20. | 86. No dispute. |
| 87. | Provision D provides, in relevant part: Upon a determination by either the Permittee or the Regional Water Board that MS4 discharges are causing or contributing to an exceedance of an applicable water quality standard, the Permittee shall promptly notify and thereafter submit a report to the Regional Water Board that describes | 87. No dispute. |

BEST BEST & KRIEGER LLP<br>ATTORNEYS AT LAW<br>2001 N. MAIN STREET, SUITE 390<br>WALNUT CREEK, CALIFORNIA 94596

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | BMPs that are currently being implemented and additional BMPs that will be implemented to prevent or reduce any pollutants that are causing or contributing to the exceedance of water quality standards.<br><br>Evid: Small MS4 Permit, RJN, Ex. A, Provision D.1, at p. 20. | |
| 88. | Plaintiffs do not have sufficient data from the Alleged Ongoing Discharge Data Set to prove that Mule Creek's water quality standards were exceeded after the filing of the first complaint.<br><br>Evid: Simpson Decl., at ¶¶ 30-31. | 88. Disputed.<br><br>Plaintiffs have presented sufficient data taken after the filing of the first complaint that showed ongoing discharges exceeded the WQS. Specifically, Plaintiffs presented a number of data after January 6, 2021 showing discharges from MCSP5 and MCSP6 contained levels of *E. coli* above the applicable *E. coli* WQS. Furthermore, Plaintiffs provided data after January 6, 2021 showing discharges from MCSP5 and MCSP6 contributed *E. coli* to Mule Creek above the WQS when Mule Creek at MCSP4 also exceeded the WQS for *E. coli*. Sampling data after January 6, 2021 also showed that a large number of discharges from MCSP5 and MCSP6 contained levels of aluminum, iron, and manganese in excess of the WQS. Plaintiffs also presented data that discharges at MCSP5 and MCSP6 contributed aluminum, iron, or manganese to Mule Creek above WQS when Mule Creek also exceeded WQS for |

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | those metals.<br><br>Evid: Andrews Decl., Ex. 1 [Expert Disclosures] at ¶ 16, tbl. 5, 6, 7, 8, 9, 10, 11. |
| 89. | Determining whether a given waterbody's Receiving Water Limitations have been exceeded depends on assessing a robust data set from the waterbody itself, not on whether a handful of samples are above criteria from a single sampling point (i.e., from MCSP4) after taking into consideration of background sources.<br><br>Evid: Simpson Decl., at ¶¶ 17, 30-31;<br><br>Lee Deposition, Lungren Decl., Ex. C, at 120:9-121:10, 169:20-170:4, 170:6-22, 199:22-200:18. | 89. Objection. Improper opinion testimony. Fed. R. of Evid. 701, 702, 703, and 704. Defendants' assertion is not a fact, but a legal argument. Defendants have presented no evidence that Mule Creek was not exceeding WQS on the days in question. |
| 90. | Provision D provides that: (1) the Permittee complies with the Receiving Water Limitations "through timely implementation of control measures/BMPs and other actions to reduce pollutants" and that the Permittee complies with the Receiving Water Limitations by complying with certain specific procedures.<br><br>Evid: Small MS4 Permit, RJN, Ex. A, Provision D, at p. 20. | 90. Disputed.<br><br>The "timely implementation of control measures/BMPs and other actions to reduce pollutants" provides a process for correcting violations of Provision D. However, it does not excuse a permittee from causing or contributing "to an exceedance of water quality standards[.]" The Small MS4 Permit's Fact Sheet states that "the iterative process does not provide a 'safe harbor' to MS4 permittees: that is, when a discharge is shown to be causing or contributing to an exceedance of water quality standards, that discharge |

2:20-CV-02482-WBS-AC
COUNTY RESPONSE TO PLAINTIFFS' SEPARATE
STATEMENT OF UNDISPUTED FACTS

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | is in violation of . . . receiving water limitations of the permit and potentially subject to enforcement[.]" Evid: Small MS4 Permit, ECF 95-7, at 22; Small MS4 Fact Sheet, ECF 95-7 at 421-422. |
| 91. | CDCR has implemented extensive BMPs and is engaged in the BMP iterative process with the Regional Water Board. Evid: Orta Decl., at ¶¶ 4-13; Simpson Decl., at ¶ 15. | 91. Disputed. The Regional Board has determined that Defendant has not identified or address BMPs to address exceedances in aluminum and zinc. Furthermore, the Regional Board stated the Defendant has failed to investigate and mitigate exceedances in the receiving water limitations regarding various metals above water quality standards. Defendant has not identified the "source(s) of aluminum, iron, manganese, and zinc" and has not described the "BMPs that are being implemented to eliminate the exceedances from those sources[,]" or "describe what additional BMPs will be implemented." Objection: Defendants' assertion is not a fact, but a legal interpretation of the Small MS4 Permit. Evid: Jan. 24, Feb. 11, Nov. 3, Nov. 30, 2022 Letters from Regional Board, County's RJN, Exs. 4-7. |

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 92. | In its MSA, the County relied on photographs from its inspection of the Facility and ensuing declaration from its expert, Karen Ashby, asserting that certain industrial materials were uncovered and exposed to potential precipitation.<br><br>Evid: Plaintiffs' MSA (ECF 45), at 37:5-14, 23-26;<br><br>Ashby Decl. (ECF 45-4), at ¶¶ 22, 26-27; IMG-2885; IMG-2884; IMG-2876- IMG-2877. | 92. No dispute. |
| 93. | CDCR has continuously held a valid NEC, certifying that its industrial activities and materials are not exposed to precipitation.<br><br>Evid: State Water Resources Control Board Receipts of No Exposure Certification (NEC) Under the Industrial General Permit, first processed May 22, 2018 (Receipt of NEC Under the Industrial General Permit, dated July 27, 2018; Receipt of NEC Under the Industrial General Permit, dated July 5, 2019; Receipt of NEC Under the Industrial General Permit, dated July 3, 2020; Receipt of NEC Under the Industrial General Permit, dated September 23, 2021; Receipt of NEC Under the Industrial General Permit, dated September 27, | 93. No dispute. |

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

2:20-CV-02482-WBS-AC
COUNTY RESPONSE TO PLAINTIFFS' SEPARATE
STATEMENT OF UNDISPUTED FACTS

| No. | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | 2022) ("NEC Certification Receipts"), RJN, Ex. J. | |

Dated: December 12, 2022          BEST BEST & KRIEGER LLP


By: /s/ Rebecca Andrews
    CHRISTOPHER M. PISANO
    SHAWN D. HAGERTY
    REBECCA ANDREWS
    Attorneys for Plaintiff
    COUNTY OF AMADOR