Christopher M. Pisano, Bar No. 192831
christopher.pisano@bbklaw.com
SHAWN D. HAGERTY, Bar No. 182435
shawn.hagerty@bbklaw.com
REBECCA ANDREWS, Bar No. 272967
rebecca.andrews@bbklaw.com
BEST BEST & KRIEGER LLP
2001 N. Main Street
Suite 390
Walnut Creek, California  94596
Telephone:(925) 977-3300
Facsimile:(9245) 977-1870

Attorneys for Plaintiff
COUNTY OF AMADOR

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ROBERT T. MATSUI FEDERAL COURTHOUSE

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>KATHLEEN ALLISON, in her official capacity as Secretary of the California Department of Corrections and Rehabilitation,<br><br>Defendants. | Case No. 2:20-cv-02482-WBS-AC [Consolidated with 2:21-cv-00038-WBS-AC]<br><br>**SEPARATE STATEMENT OF DISPUTED FACTS IN SUPPORT OF COUNTY OF AMADOR'S OPPOSITION TO DEFENDANTS KATHLEEN ALLISON AND PATRICK COVELLO'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:       January 9, 2022<br>Time:       1:30 p.m.<br>Dept:       5<br>Judge: William B. Shubb<br>Trial Date: April 18, 2023<br>Action Filed: January 7, 2021 |
| COUNTY OF AMADOR, a public agency of the State of California,<br><br>Plaintiff,<br><br>v.<br><br>KATHLEEN ALLISON in her official capacity as Secretary of the California Department of Corrections and Rehabilitation; PATRICK COVELLO in his official capacity of Warden of California Department of Corrections and Rehabilitation Mule Creek State Prison; and CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,<br><br>Defendants. | |

| No. | DISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|---|
| 1. | The water quality standard for *E. Coli* in Mule Creek is 320 colony forming units (cfu) under a statistical threshold value (STV), where no more than 10% of the samples may exceed this limit in a calendar month. | Declaration of Rebecca Andrews ("Andrews Dec.") at Exhibit ("Ex") 1 [Expert Disclosures] at ¶ 8; ECF 95-8 [Bacteria Provisions] at 4; ECF 95-7 [Basin Plan] at 585-585. |
| 2. | The water quality standards for aluminum, iron, and manganese in Mule Creek under Title 22 of California Code of Regulations are the following:<br><br>Aluminum: 200 µg/L<br>Iron: 300 µg/L<br>Manganese: 50 µg/L<br><br>The water quality standards for copper, lead, and zinc in Mule Creek under the California Toxics Rule are:<br><br>Copper: 9 µg/L dissolved (Chronic)<br>Lead: 2.5 µg/L dissolved (Chronic)l 3.2 µg/L total (Chronic)<br>Zinc: 117 µg/L dissolved (Acute); 120 µg/L total (Acute). | Andrews Decl., Ex. 1 [Expert Disclosures] at ¶ 12; ECF 95-8 [Bacteria Provisions] at 4; ECF 95-7 [Basin Plan] at 584-585, 613 |
| 3. | Between February 2018 and December 2020, Defendants were required to sample discharges from the Facility's storm drain system ("MS4") discharge locations MCSP2 and MCSP3 "when discharging storm water to Mule Creek," to collect samples from Mule Creek at MCSP4 "concurrently with MS4 outfall sampling[,]" and that the samples collected from MCSP5 and MCSP6 be "representative of the volume | Andrews Decl., Ex. 3 [August 2020 13383 Order] at 4-5; Andrews Decl., Ex. 4 [Defs' May 29, 2020 Weekly Monitoring Report] at 1 and attach. 1; County RJN, Ex. 1 [Expert Disclosures] at 6-7; |

| No. | DISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | and nature off the monitored discharge; | |
| 4. | The results of samples taken from MCSP2 and MCSP3 while discharging to Mule Creek showed the Facility's discharges consistently contained pathogens (indicated by *E. coli*) and metals at levels that exceeded water quality standards for those levels. | Andrews Decl., Ex. 1 [Expert Disclosures] at ¶¶ 9-11, 16.A, B, 17.A, tbls. 2, 3, 5, 8, 10; Ex. 4 [Defs' May 29, 2020 Weekly Monitoring Repo9rt] at 1 and attach. 1. |
| 5. | After receiving the County's notice of intent to sue, Defendants notified the Regional Board that Defendants would no longer conduct monitoring at MCSP2 and MCSP3 and would instead rely solely on monitoring conducted at locations MCSP5 and MCSP6. | Andrews Decl., Ex. 5 [Regional Board June 29, 2021 Letter] at 2 |
| 6. | In response to being notified that Defendants would stop monitoring MCSP2 and MCSP3, and would only rely solely on monitoring conducted at MCSP5 and MCSP6, the Regional Board required Defendants: (1) to collect samples from the Facility's "outfalls" at MCSP5 and MCSP6 "when discharging through the MS4 to Mule Creek," (2) to collect samples from Mule Creek at MCSP4 "concurrently with MS4 outfall sampling[,] (3) that the samples collected from MCSP5 and MCSP6 be "representative of the volume and nature off the monitored discharge; and (4) to submit a plan with a timeline to install permanent monitoring locations at MCSP2 and MCSP3 no later than July 30, 2021. | Andrews Decl., Ex. 19 [December 2020 13383 Order] at 5-7; Ex. 5 [Regional Board June 29, 2021 Letter] at 3. |

| No. | DISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|---|
| 7. | Defendants failed to provide a plan to install permanent monitoring locations at MCSP2 and MCSP3 by July 30, 2021. | Andrews Decl., Ex. 6 [August 10, 2021 Regional Board email]. |
| 8. | Defendants stated, "the installation of the permanent monitoring structures at MCSP2 and MCSP3 is underway. Design was completed in June, 2021. Installation is estimated to be completed in November 2021." | Andrews Decl., Ex. 7 [September 1, 2021 Regional Board Letter] at 2 |
| 9. | Defendants did not install the permanent monitoring until just before this motion was filed on November 28, 2022. | ECF 95-4 [Orta Declaration] at ¶9 ("recently completed … permanent monitoring station at MCSP2 and MCSP3"). |
| 10. | Defendants sampled and analyzed these Facility discharges at outfalls MCSP2 and MCSP3, and within Mule Creek at MCSP4 between April 19, 2019 and January 6, 2021. | Andrews Decl., Ex. 1 [Expert Disclosures] at ¶¶ 6.G-I, 12-14; Ex.9 [Defs' December 2020 Weekly Monitoring Report] at 1 and attach. 1; Ex. 11 [2021 Quarter 1 Monitoring Report] at 6-8 and appx. 1-2; Ex. 10 [2020 Quarter 4 Monitoring Report] at 6 and appxs. 1-2 |
| 11. | The results of Defendants' samples of the Facility's discharges to Mule Creek between February 4, 2019 and January 6, 2021, through MS4 outfalls MCSP2 and MCSP3 to Mule Creek showed forty-one (41) times discharges contained levels of *E. coli* in excess applicable *E. coli* WQS. | Andrews Decl., Ex. 1 [Expert Disclosures] at ¶¶ 9-10, 14-15, tbls. 2, 3; |
| 12. | The results of Defendants' samples of the Facility's discharges to Mule Creek between February 4, 2019 and January 6, 2021, through MS4 outfalls MCSP2 and MCSP3 to Mule Creek showed nineteen (19) days discharges contributed *E. coli* to Mule | Andrews Decl., Ex. 1 [Expert Disclosures] at ¶ 11, tbl. 4; |

| No. | DISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | Creek when Mule Creek also exceeded *E. coli* WQS. | |
| 13. | The results of Defendants' samples of the Facility's discharges to Mule Creek between February 4, 2019 and January 6, 2021, through MS4 outfalls MCSP2 and MCSP3 to Mule Creek showed the following twenty-Five (25) times discharges contained levels of aluminum, iron, lead, or zinc in excess of WQS for those metals. | Andrews Decl., Ex. 1 [Expert Disclosures] at ¶ 13, tbl. 5; |
| 14. | The results of Defendants' samples of the Facility's discharges to Mule Creek between February 4, 2019 and January 6, 2021, through MS4 outfalls MCSP2 and MCSP3 to Mule Creek showed fourteen (14) days discharges contributed aluminum, iron, lead, or zinc to Mule Creek when Mule Creek also exceeded WQS for those metals. | Andrews Decl., Ex. 1 at ¶ 14, tbl. 6. |
| 15. | Defendants admitted to the California Office of Emergency Services and the Regional Board that the Facility discharged to Mule Creek through MCSP5 and MCSP6 during 13 storm events between January 4, 2021 and April 30, 2022. | Andrews Decl. Ex. 1 [Expert Disclosures] at tbl. 7; Ex. 11 [2021 Quarter 1 Monitoring Report] at 6-8 and appxs. 1-2; County RJN Ex. 2 [2022 Quarter 1 Monitoring Report] at 7-8, appxs. 1-2. |

| Date(s) of discharge | Volume of discharge (gallons) |
|---|---|
| January 4 – 5, 2021 | 238,488 |
| January 22 – February 3, 2021 | 11,126,134 |
| February 11 – 16, 2021 | 1,305,260 |

| No. | DISPUTED MATERIAL FACT | | SUPPORTING EVIDENCE |
|---|---|---|---|
| | March 5 – 6, 2021 | 43,887 | |
| | March 9 – 11, 2021 | 282,342 | |
| | March 14 – 16, 2021 | 393,840 | |
| | March 18 – 19, 2021 | 1,227,103 | |
| | October 20- 27, 2021 | 8,003,962 | |
| | November 8 - 10, 2021 | 209,712 | |
| | December 9 - 31, 2021 | 7,321,854 | |
| | March 15 - 21, 2022 | 148,334 | |
| | March 27 - 29, 2022 | 168,699 | |
| | April 11, 2022 | 3,501,100 | |
| 16. | To the Office of Emergency Services, Defendants admitted flows through MCSP5 and MCSP6 discharged to Mule Creek, as follows:<br>• "We have discharged and sampled taken [*sic*] from MCSP4, MCSP5 and MCSP6 locations on January 27, 2021." | | Andrews Decl. Ex. 14 [Defs' Jan. 27, 2021 discharge notice]. |
| 17. | To the Office of Emergency Services, Defendants admitted flows through MCSP5 and MCSP6 discharged to Mule Creek, as follows:<br>• "As per the 13383 order Mule Creek State Prison is to make notification of discharging of Stormwater into Mule Creek to the Central Valley Water Board [¶] Flow was present at MCSP1, MCSP4, MCSP5 and MCSP6 locations during March 14th through 16th | | Andrews Decl. Ex. 15 [Defs' March 16, 2021 discharge notice]. |

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

| No. | DISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|-----|------------------------|---------------------|
|     | storm event. Samples have been taken." | |
| 18. | To the Office of Emergency Services, Defendants admitted flows through MCSP5 and MCSP6 discharged to Mule Creek, as follows:<br><br>• "As per the 13383 order Mule Creek State Prison is to make notification of discharging of Stormwater into Mule Creek to the Central Valley Water Board [¶] Flow was present at MCSP1, MCSP4, MCSP5 and MCSP6 locations during March 18th through 19th storm event. Samples have been taken." | Andrews Decl. Ex. 16 [Defs' March 19, 2021 discharge notice]. |
| 19. | To the Office of Emergency Services, Defendants admitted flows through MCSP5 and MCSP6 discharged to Mule Creek, as follows:<br>• "As per the December 22, 2020 13383 order Mule Creek State Prison is to make notification of discharging of Stormwater into Mule Creek to the Central Valley Water Board [¶] We have discharged and samples taken [*sic*] from MCSP4, MCSP5 and MCSP6 locations on October 22, 2021." | Andrews Decl. Ex. 17 [Defs' Oct. 25, 2021 discharge notice]. |
| 20. | To the Office of Emergency Services, Defendants admitted flows through MCSP5 and MCSP6 discharged to Mule Creek, as follows: | Andrews Decl. Ex. 18 [Defs' Nov. 9, 2021 discharge notice]. |

| No. | DISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|---|
|  | • "As per the December 22, 2020 13383 order Mule Creek State Prison is to make notification of discharging of Stormwater into Mule Creek to the Central Valley Water Board [¶] We have discharged and samples taken [sic] from MCSP4, MCSP5 and MCSP6 locations on November 9, 2021." |  |
| 21. | To the Regional Board, Defendants submitted quarterly monitoring reports admitting to taking samples from MCSP4, MCSP5, and MCSP6 in "accordance with the December 22, 2020 [Regional] Board 13383 Order." | Andrews Decl. Exs. 10-13 [2020 Quarter 4 Monitoring Report; 2021 Quarter 1 Monitoring Report; 2021 Quarter 2 Monitoring Reports; 2021 Quarter 3 Monitoring Report, respectively]; County RJN Ex. 2 at 7-8, appxs. 1-2 [Quarter 4 2021 Monitoring Report]; Ex. 3 [Quarter 1, 2022 Monitoring Report] |
| 22. | Ms. Lee, testified concurrent sampling of discharges and receiving water "capture[s] the impact of the discharges onto the receiving water[.]" | Andrews Decl., E. 24 [Excerpts of Lee deposition transcript]. |
| 23. | Defendants sampled and analyzed Facility discharges to Mule Creek through MCSP5, and MCSP6 and within Mule Creek at MCSP4 between January 7, 2021 and April 30, 2022. | Andrews Decl., Ex. 1 [Expert Disclosures] at ¶¶ 6.G-I ; Ex 2 [Suppl. Expert Disclosures] at 4-6; Ex. 10-13 [2020 Quarter 4 Monitoring Report; 2021 Quarter 1 Monitoring Report; 2021 Quarter 2 Monitoring Reports; 2021 Quarter 3 Monitoring Report, respectively]; County RJN at Ex. 3 [Quarter 1, 2022 Monitoring Report] at 8-10, appxs. 3-4; Ex. 2 Quarter 4 2021 Monitoring Report]; at 7- |

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CALIFORNIA 94596

83653.00001\40899404.2   - 8 -   2:20-CV-02482-WBS-AC
OPP. TO MSJ SEPARATE STATEMENT OF DISPUTED FACTS

| No. | DISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|-----|------------------------|---------------------|
|     |                        | 8, appxs. 1-2.      |
| 24. | The results of Defendants' samples of the Facility's discharges to Mule Creek through MS4 outfalls MCSP5 and MCSP6 between January 7, 2021 and April 30, 2022 showed ten (10) times, discharges contained levels of *E. coli* that exceeded the permissible STV WQS for *E. coli*. | Andrews Decl., Ex. 1 [Expert Disclosures] at ¶ 16.A, B, tbl. 8. |
| 25. | The results of Defendants' samples of the Facility's discharges to Mule Creek through MS4 outfalls MCSP5 and MCSP6 between January 7, 2021 and April 30, 2022 showed six (6) times discharges contributed *E. coli* to Mule Creek when Mule Creek also exceeded *E. coli* STV WQS. | Andrews Decl., Ex. 1 at ¶ 16.C, tbl. 9, Ex. 2 at 4-6. |
| 26. | The results of Defendants' samples of the Facility's discharges to Mule Creek through MS4 outfalls MCSP5 and MCSP6 between January 7, 2021 and April 30, 2022 showed seventy-seven (77) times, discharges contained levels of aluminum, iron, manganese, copper, lead, or zinc exceeded the permissible WQS for those metals. | Andrews Decl., Ex. 1 [Expert Disclosures] at ¶ 17.A, tbl. 10, Ex. 2 [Suppl. Expert Disclosures] at 4-6. |
| 27. | The results of Defendants' samples of the Facility's discharges to Mule Creek through MS4 outfalls MCSP5 and MCSP6 between January 7, 2021 and April 30, 2022 showed twenty-nine (29) times discharges contributed aluminum, iron, manganese, copper, lead, or zinc to Mule | Andrews Decl., Ex. 1 [Expert Disclosures] at ¶ 17.B, tbl. 11; Ex. 2 [Suppl. Expert Disclosures] at 4-6. |

| No. | DISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|---|
|  | Creek when Mule Creek also exceeded WQS for those metals. |  |
| 28. | On January 24, 2022, Regional Board staff provided a compliance review of Defendants' Quarters 1-3 Monitoring Reports, notified Defendants that the Facility violated Small MS4 Permit Provision D repeatedly and required "BMPs addressing the exceedances must be identified and updated." | County RJN, Ex. 4 [Regional Board January 24, 2022 letter] at 11. |
| 29. | On February 11, 2022, the Regional Board provided comments on Defendants' Annual Report and 13383 Order Quarterly Monitoring Reports again notifying Defendants of the violations of Provision D. | County RJN, Ex. 5 [Regional Board Feb. 11, 2022 letter] at 2. |
| 30. | After receiving notices from the Regional Board on January 24 and February, 11, 2022 Defendants failed to submit a BMP plan to address the bacteria and metals pollutants in the Facility's stormwater discharges. | County RJN, Ex. 6 at 1-3; Ex. 7 at 2. |
| 31. | The iterative process is a required response to violations of the Small MS4 Permit Provision D. | County RJN, Ex. 8 [State Water Board Order WQ2015-0075] at 11, Exs. 9-11. |
| 32. | The State Board provided: "We … disagree with Permittee Petitioners that implementation of the iterative process does or should constitute compliance with receiving water limitations. … We have directed, in precedential orders, that MS4 permits require discharges to be controlled so as not to cause or contribute to exceedances of water quality standards in | County RJN, Ex. 8 [State Water Board Order WQ2015-0075] at 11-13. |

| No. | DISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|---|
|  | receiving waters, but have prescribed an iterative process whereby an exceedance of a water quality standard triggers a process of BMP improvements." "… the iterative process, as established in our precedential orders and as generally written into MS4 permits adopted by the water boards, does not provide a 'safe harbor' to MS4 dischargers. When a discharger is shown to be causing or contributing to an exceedance of water quality standards, that discharger is in violation of the permit's receiving water limitations and potentially subject to enforcement by the water boards or through a citizen suit, regardless of whether or not the discharger is actively engaged in the iterative process. |  |
| 33. | Defendants' pre-complaint sampling data show discharges from MCSP2 and MCSP3 exceeded water quality standards for aluminum, iron, lead, and zinc on December 17, 2020, *after* the first complaint in this action was filed. | Andrews Decl., Ex. 1 [Expert Disclosures] at ¶¶13-14, tbls. 5 and 6. |
| 34. | "Waste" includes, in part, any substance "associated with human habitation or of human or animal origin, or from any producing, manufacturing, or processing operation." | ECF 95-7 at 397 [Small MS4 Permit, attach. I]. |
| 35. | The Quantification of Sources of Fecal Pollution at Mule Creek, dated January 2021, prepared by Southern California Coastal Water Research Project for Central | ECF 95-3 [2021 Fecal Sources Study] at pp. 8; 28, 32. |

| No. | DISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|---|
|  | Valley Regional Water Quality Control Board and the California Department of Correction and Rehabilitation ("2021 Sources Fecal Pollution Report") reports that human genetic markers were detected in stormwater discharging from the Facility; that "[t]here are no known human sources upstream of MCSP1[;]" and that "increases in *E. coli*, from upstream to downstream of the prison, were observed … 64% of the time[.]" |  |
| 36. | The 2020 Collection System Investigation Report concluded that zinc in the Facility's runoff "is not likely due to a natural source but could possibly be attributed to galvanized metal such as fencing." | ECF 95-3 [2020 Collection System Investigation Report] at 149. |
| 37. | The Regional Board reviewed this 2020 report and concluded "[t]he majority of metals detected were either typical industrial stormwater constituents or were infrequently detected over the applicable water quality objective. Aluminum, iron, and magnesium are common at industrial sites and naturally occurring in soils underlying the site. The relatively common exceedances of water quality objectives for arsenic, copper and manganese were not explained." | Andrews Decl. Ex. 20 [December 7, 2020 Regional Board letter] at 9. |
| 38. | Regional Board staff consider these bacteria and metals to be "waste constituents." | Andrews Decl., Ex. 20 [December 7, 2020 Regional Board letter] at 1, 2, 5, 7, 20-21. |
| 39. | The Small MS4 Permit includes requirements related to | ECF 95-7 at 108-111 [Small MS4 Permit, Provision |

| No. | DISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|---|
|  | "impaired" water bodies with TMDLs in Provision F.5.i. | F.5.i]. |
| 40. | When MS4 discharges cause or contribute to an exceedance of an applicable WQS, Provision D further requires a permittee to promptly notify and submit a report to the Regional Board that describes the additional Best Management Practices ("BMPs") the permittee will implement to prevent or reduce pollutants that are causing or contributing to the exceedance. | ECF 95-7 at 22-23 [Small MS4 Permit prov. D]. |
| 41. | The process of informing the Regional Board of a discharger's contributions to exceedances of receiving water limitations and developing BMPs to reduce or eliminate the exceedances is known as an "iterative process." | ECF 95-7 at 421-422 [MS4 Permit fact sheet § XI]. |
| 42. | The 303(d) listing process is not intended to assess violations of Provision D. | Andrews Decl., Ex. 2 [Suppl Expert Disclosures] at 12. |
| 43. | Ms. Ashby compared the data reported for *E. coli* and metals from MCSP5 and MCSP6 with the data reported for these same constituents in Mule Creek (MCSP4); where both exceeded water quality standards, she identified a violation of Provision D. When questioned on the appropriateness of this approach, Regional Board staff, Ms. Lee agreed this was appropriate, with the caveat that metals need to account for hardness, which Ms. Ashby did. | ECF 95-3 at 178 [Lee deposition transcript excerpt]; Andrews Decl., Ex. 1 [Expert Disclosures] at ¶¶ 11, 14, 16.C, 17,B; tbls. 4, 6, 9, 11; Ex. 2 [Suppl. Expert Disclosures] at 1-2, 7-8. |
| 44. | The "EPA Guidance Manual" is not endorsed by the EPA. | ECF 95-8 [EPA Guidance Manual] at 76 (("[this document] does not |

| No. | DISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|---|
|  | necessarily reflect the views of the [Environmental Protection] Agency, and no official endorsement should be inferred.") | |
| 45. | The "EPA Guidance Manual" is wholly is irrelevant to determining whether a receiving water exceeds water quality standards and whether wet weather discharges *from* the MS4 contribute to those exceedances of WQS under Provision D. | ECF 95-8 [EPA Guidance Manual] at 89. |
| 46. | The "EPA Guidance Manual" is related to detecting dry weather discharges *into* the MS4 system under the Illicit Discharge Detection and Elimination program requirements, which fall under Provision F.5.d of the Small MS4 Permit. | ECF 95-8 [EPA Guidance Manual] at 88-93. |
| 47. | The maximum extent practicable [MEP] standard "requires Permittees to apply Best Management Practices (BMPs) that are effective in reducing or eliminating the discharge of pollutants to the waters of the U.S. … MEP is the cumulative result of implementing, evaluating, and creating corresponding changes to a variety of technically appropriate and economically feasible BMPs, ensuring that the most appropriate BMPs are implemented in the most effective manner." | ECF 95-2 at ¶ 7; ECF 95-7 at 13 [Small MS4 Permit, Finding 36]. |
| 48. | The Small MS4 Permit fact sheet states that to attain the MEP standard, a permittee must undertake "a serious attempt to comply, and practical solutions may not be lightly rejected. If, from | ECF 95-7 at 408 [Small MS4 Permit, Fact Sheet, § III]. |

| No. | DISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|---|
|  | the list of BMPs, a permittee chooses only a few of the least expensive methods, it is likely that MEP has not been met." |  |
| 49. | Defendants have not provided a BMP plan to the Regional Board to address the ongoing discharges despite four notices in 2022 alone. | County RJN, Exs. 4-7 [Letters from Regional Board dated January 24, 2022, Feb. 11, 2022, Nov. 3, 2022, and Nov. 30, 2022, respectively]. |
| 50. | The MEP standard is inherently a factual determination that is concerned with whether the iterative BMP process is "effective in reducing or eliminating the discharge of pollutants to the waters of the U.S." . | ECF 95-7 at 13; County RJN, Ex. 8 [State Water Board Order WQ2015-0075] at 12-13 |

Dated: December 12, 2022         BEST BEST & KRIEGER LLP


                                 By: /s/ Rebecca Andrews
                                     CHRISTOPHER M. PISANO
                                     SHAWN D. HAGERTY
                                     REBECCA ANDREWS
                                     Attorneys for Plaintiff
                                     COUNTY OF AMADOR