1  JENNIFER HARTMAN KING (SBN 211313)
   ALANNA LUNGREN (SBN 269668)
2  WILLIAM MARSH (SBN 200082)
   J. R. PARKER (SBN 320526)
3  ANDREYA WOO NAZAL (SBN 327651)
   HARTMAN KING PC
4  520 Capitol Mall, Suite 750
   Sacramento, CA  95814
5  Telephone:  (916) 379-7530
   Facsimile:  (916) 379-7535
6  JHartmanKing@HartmanKingLaw.com
   ALungren@HartmanKingLaw.com
7  WMarsh@HartmanKingLaw.com
   JRParker@HartmanKingLaw.com
8  AWooNazal@HartmanKingLaw.com

9  Attorneys for Defendants JEFFREY MACOMBER,
   in his official capacity as Secretary of the California Department
10 of Corrections and Rehabilitation; and PATRICK COVELLO,
   in his official capacity as Warden of California Department of
11 Corrections and Rehabilitation Mule Creek State Prison

Exempt From Filing Fees Pursuant
To Government Code Section 6103

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>JEFFREY MACOMBER, in his official capacity as Secretary of the California Department of Corrections and Rehabilitation,<br><br>Defendant. | Case No. 2:20-CV-02482-WBS-AC<br>[consolidated with 2:21-CV-00038-WBS-AC]<br><br>**DEFENDANTS' PRETRIAL STATEMENT**<br><br>Judge: Hon. William B. Shubb<br>Ctrm. 5<br><br>(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 to 1387)<br><br>Final Pretrial Conf.: February 13, 2023<br>Trial Setting Conf.: April 18, 2023 |
| COUNTY OF AMADOR, *a public agency of the State of California,*<br><br>Plaintiff,<br><br>v.<br><br>JEFFREY MACOMBER, in his official capacity as Secretary of the California Department of Corrections and Rehabilitation; and PATRICK COVELLO, in his official capacity as Warden of California Department of Corrections and Rehabilitation Mule Creek State Prison,<br><br>Defendants. | |

00058558.1

**DEFENDANTS' PRETRIAL STATEMENT**

Defendants Jeffrey Macomber[1], in his official capacity as Secretary of the California Department of Corrections and Rehabilitation, and Patrick Covello, in his official capacity as Warden of California Department of Corrections and Rehabilitation, Mule Creek State Prison (collectively, "CDCR" or "Defendants") hereby submit this Pretrial Statement pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P."), Rule 16, Local Rule ("L.R.") 281 of the United States District Court for the Eastern District of California, and the Court's Status (Pretrial Scheduling) Order (ECF 11).

This action is a "citizen's suit" commenced by plaintiffs California Sportfishing Protection Alliance ("CSPA") and the County of Amador (the "County") pursuant to the Federal Water Pollution Control Act ("Clean Water Act"). Plaintiffs seek declaratory and injunctive relief regarding alleged violations of the State Water Resource Control Board's Permit for Waste Discharge Requirements for Storm Water Discharges from Small Municipal Separate Storm Sewer Systems, Order 2013-0001-DWQ (the "Small MS4 Permit") that allows Defendants to discharge stormwater from the Mule Creek State Prison facility ("Facility") into nearby Mule Creek. The California Regional Water Board, Central Valley Region ("Regional Water Board") provides regulatory oversight over the Facility, including with regard to the Small MS4 Permit.

### 1.   Jurisdiction – Venue

Jurisdiction is predicated upon federal question, 28 U.S.C. section 1331, in that Plaintiffs' claims arise under the laws of the United States, section 505(a)(1)(A) of the Clean Water Act, 33 U.S.C. section 1365(a)(1)(A). Defendants will establish at trial that CSPA lacks organizational standing under Article III based upon facts obtained through discovery. Defendants contend that the County lacks statutory standing and reserves this issue for determination on appeal if needed. Defendants do not contest venue.

### 2.   Jury – Non-Jury

The Court ordered in the Pretrial Scheduling Order that the matter would proceed as a bench trial. (ECF 11.)

---

[1] Jeffrey Macomber has succeeded Kathleen Allison as Secretary of the California Department of Corrections and Rehabilitation effective immediately.

00058558.1                                    1

**DEFENDANTS' PRETRIAL STATEMENT**

**3.     Undisputed Facts**

  **3.1     Adjudicated Issues/Facts**

  a.     Provision B.1 of the Small MS4 Permit is a "Discharge Prohibition" that does not incorporate the Basin Plan's water quality standards. (ECF 103, 7:17-9:7.)

  b.     The Basin Plan's water quality standards apply to receiving waters, and they do not apply to discharges. (ECF 103, 8:6-7.)

  c.     The Court granted Defendants partial summary judgment as to Plaintiffs' claims regarding alleged violations of Provision B.1 of the Small MS4 Permit. (ECF 103, 9:23-26.)

  d.     To establish a violation of Provision B.2 of the Small MS4 Permit, Plaintiffs must prove that Defendants' discharges from the Facility caused or threatened to cause a condition of pollution or nuisance which unreasonably affects the beneficial uses of Mule Creek (as opposed to merely proving the discharges caused or threatened to cause a condition of pollution or nuisance). (ECF 103, 10:4-26.)

  e.     Defendants assert that background contributions must be considered in determining whether a violation has occurred. The Court has agreed that background data may be relevant to determining whether Defendants' discharges from the Facility caused or contributed to an exceedance of Provision D of the Small MS4 Permit. (ECF 103, 22:13-16.)

  f.     The Court granted Defendants partial summary judgment as to the County's third claim for relief regarding alleged violations of CDCR's Industrial General Permit. (ECF 103, 26:26-28.)

  g.     The Regional Water Board's section 13383 Orders providing that stormwater samples collected at CDCR shall be "representative" does not mean that samples collected from MCSP5 and MCSP6 are *per se* representative of concentrations of contaminants that actually reached Mule Creek. (ECF 60, 17:18-20:10.)

  h.     Each amended version of the Regional Water Board's section 13383 Order provides that Mule Creek has been designated for the following beneficial uses: AGR, REC-1, REC-2, WARM, COLD, MIGR, SPWN, and WILD.

### 3.2 The Facility and Permits at Issue.

CDCR is the state agency that operates the Facility. The Facility is located in a remote, rural setting, covering approximately 866 acres. The surrounding areas of the Facility, including areas near the MS4 stormwater conveyance system ("MS4") and Mule Creek, are frequented by wildlife, including birds and deer. There are cattle ranches located near Mule Creek, upstream of the Facility.

The Facility is permitted via two permits relevant to the action: (1) the aforementioned Small MS4 Permit that authorizes CDCR to discharge stormwater to Mule Creek; and (2) the Central Valley Water Board's Waste Discharge Requirements Order R5-2015-0129 for MCSP's Wastewater Treatment Plant (the "WWTP Permit") that authorizes CDCR to operate what are known as the land application areas ("LAA").

The Small MS4 Permit includes three sections relevant to the action: (1) "Discharge Prohibitions" in Provision B, (2) "Effluent Limitations" in Provision C, and (3) "Receiving Water Limitations" in Provision D. The MS4 stormwater collection system includes a network of conveyances, outfalls, and "bioswales" that allow the settling out and filtering of contaminants. This occurs before the stormwater reaches nearby Mule Creek, which it only does when/if there is sufficient flow for it to travel that far.

As depicted in the below figure, stormwater runoff at the Facility collects in a conveyance ditch paralleling a lethal electrified fence surrounding the Facility, with the ditch leading to two culverts located at sampling points designated as "MCSP5" and "MCSP6." Stormwater passes through the culverts at MCSP5 and MCSP6 where it is monitored and periodically sampled. During most of the year (i.e., during dry weather and light rain), culvert "slide gates" block the flow and redirect it to the Facility's permitted WWTP where the water is treated with secondary level treatment before disposal pursuant to the WWTP Permit. Secondary treatment at the WWTP consists of two bar screenings, an oxidation ditch, two parallel clarifiers, a disinfecting chlorine contact pipe, a sludge belt press, and sludge drying beds. The treated/disinfected water is then stored in an effluent storage reservoir, and thereafter discharged to the LAAs as authorized by the WWTP Permit issued by the Regional Water Board or sent to

the City of Ione for further treatment and use. As further described in Section 9, below, the Plaintiffs have abandoned all claims pertaining to the LAAs.

[Figure: Aerial map showing monitoring locations including MCSP1/UPSTREAM, MIDSTREAM/LOC-1, EFFLUENT A/B, SECONDARY EFFLUENT, GT-5, GT-4, GT-9, GT-2, GT-3, MCSP5, MCSP6, MCSP3, MCSP2, MCSP4/DOWNSTREAM, and Mule Creek.]

During periods of heavy rain, deemed "Significant Rain Events," the slide gates are opened to allow stormwater to pass through MCSP5 and MCSP6 due to capacity limits within the MS4 and at the WWTP. When stormwater passes through the culverts at MCSP5 and MCSP6, it flows into the vegetated bioswale channels before reaching the monitoring locations MCSP2 and MCSP3. From the monitoring location MCSP6, the bioswale channel extends approximately 1,500 feet to the outfall at MCSP3. From the monitoring location MCSP5, the bioswale channel extends approximately 630 feet to the outfall at MCSP2. If there is sufficient flow, stormwater is then discharged from the outfalls at MCSP2 and MCSP3 into Mule Creek pursuant to the MS4 Permit. The sampling locations denoted as "MCSP1" and "MCSP4" in the figure above are collected from within Mule Creek. CDCR periodically samples the stormwater

within the MS4 and surface water in Mule Creek pursuant to an order issued by the Regional Water Board and submits reports of the sampling results to the Board.

Under the Clean Water Act section 303(d), states are required to identify waterbodies that do not meet, or are not expected to meet, water quality standards (known as "impaired waterbodies") for their beneficial uses. Based on California's Listing Policy in developing the 303(d) list, the State Water Board evaluates water quality-related data and the designated beneficial uses of various waterbodies. There is no assessment data for Mule Creek on the Water Board's 303(d) List for 2020-2022, the current watershed impairment list for the area, but there is assessment data for Dry Creek, which is the next waterbody receiving flows from Mule Creek. The State Water Board did not designate Dry Creek, nor the relevant downstream waterbodies as impaired.

**4.      Disputed Factual Issues**

a.      CDCR conducted two investigations of its stormwater and wastewater systems in conjunction with the Regional Water Board's permit compliance staff that resulted in the submittal of two reports, the revised June 2020 Revised Stormwater Collection System Investigation Report of Findings ("2020 Investigation Report") prepared by SHN Engineers and the January 2021 Quantification of Sources of Fecal Pollution at Mule Creek prepared by the Southern California Coastal Water Research Project ("2021 Sources Fecal Pollution Report"). The parties dispute the interpretation of the results in these two reports.

b.      Plaintiffs' consultants collected samples during dry weather from within the Facility's MS4 on March 9 and May 24, 2022. The parties dispute the interpretation of these two dry weather sampling events.

c.      The parties dispute whether the constituents detected in samples Plaintiffs collected from MCSP5 and MCSP6 on the above-listed dates actually reached Mule Creek. The parties also dispute whether any constituents detected in samples collected by Defendants from MCSP5 and MCSP6 necessarily reached Mule Creek.

        d.      The parties dispute whether samples collected from sampling locations MCSP5 and MCSP6 are "representative" of the Facility's stormwater discharges to Mule Creek. (*See*, ECF 60, 17:18-20:10.)

        e.      The parties dispute whether water observed within the MS4 constitutes "non-stormwater" and, if so, whether it is "not prohibited" (i.e., exempt) pursuant to the terms of Provision B.3 of the Small MS4 Permit.

        f.      Defendants dispute that the Regional Water Board's section 13383 Orders, which provide that stormwater samples collected at MCSP shall be "representative," mean that samples collected from MCSP5 and MCSP6 are *per se* representative of concentrations of contaminants that actually reached Mule Creek.

        g.      Defendants dispute that Plaintiffs have established the salinity of Mule Creek for purposes of determining the proper sampling methodology for bacteria.

        h.      The parties dispute whether samples must be collected concurrently to establish a violation of the Small MS4 Permit.

        i.      The parties dispute whether Mule Creek's beneficial uses include municipal and domestic water supply.

        j.      The parties dispute whether the alleged violations are attributable to background contributions of contaminants that did not originate from the Facility.

**5.**      **Disputed Evidentiary Issues**

Defendants intend to file pretrial motions *in limine* to preclude Plaintiffs' use of certain sampling data as unreliable or otherwise inconsistent with the Court's August 28, 2022 Order Re: Motion for Partial Summary Judgment (ECF 60) and January 11, 2023 Order Re: Defendants' Motion for Summary Judgment (ECF 103) in that:

        a.      The table in Plaintiffs' Pretrial Statement at 4.4(g) improperly includes samples that were not collected concurrently; and,

        b.      The table in Plaintiffs' Pretrial Statement at 4.4(h) improperly includes samples that were not collected concurrently as well as samples that are not representative.

///

**6.     Special Factual Information in Certain Actions**

Not applicable.

**7.     Relief Sought**

Defendants seek a ruling from the Court that CSPA lacks organizational standing based upon new evidence obtained during discovery. Defendants also seek judgment in their favor as to any remaining claims and an appropriate award of costs and attorney's fees pursuant to 33 United States Code section 1365(d).

**8.     Points of Law**

    **8.1     Scope of Court's Jurisdiction**

The Clean Water Act does not confer federal jurisdiction over citizen suits "for wholly past violations"—thus, Plaintiffs must each prove there have been permit violations since the filing of their respective complaints. *Gwaltney of Smithfield v. Chesapeake Bay Foundation*, 484 U.S. 49, 64, 67 (1987). Defendants will demonstrate at trial that Plaintiffs cannot carry their burden of proof that there have been any ongoing violations of the Clean Water Act subsequent to the filing of their respective complaints, and therefore, the Plaintiffs are not entitled to any relief in this action.

Defendants submit that any injunctive relief sought by Plaintiffs would entail assessment of complex technical issues that the Court should defer to the Regional Water Board's technical expertise under the primary jurisdiction doctrine. *See Montgomery Enviro. Coalition Citizen Coordinating Comm. v. Friendship Heights*, 607 F. 2d 378, 380-382 (D.C. Cir. 1979) (United States Court of Appeals for the District of Columbia dismisses action brought by a citizens group seeking injunctive relief over a NPDES permit and sewage allotments on the primary jurisdiction grounds).

    **8.2     CSPA's Organizational Standing**

To satisfy the standing requirements in a Clean Water Act citizen enforcement action, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the

injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-181 (2000); *Jackson v. Cal. Dep't of Mental Health,* 399 F.3d 1069, 1071 (9th Cir. 2005).

The deposition testimony from CSPA's "standing deponent," Mr. Edmund Taylor, indicates CSPA cannot establish that Defendants' activities are "fairly traceable" to CSPA's alleged injuries. *See, Cal. Cmtys Against Toxics v. Trojan Battery Co.*, 2018 U.S. Dist. LEXIS 226453 (C.D. Cal. Dec. 28, 2018) at *12-13.

### 8.3     Clean Water Act

To prevail against the Defendants under the Clean Water Act for unpermitted discharges into Mule Creek, Plaintiffs must prove that Defendants' discharges resulted in: (1) the addition of a pollutant, (2) from a "point source," (3) into "navigable waters," (4) without the appropriate permit. Federal Water Pollution Control Act, §§301(a), 502(12)(A), as amended by the Federal Water Pollution Control Act Amendments of 1972 (Clean Water Act) §2, 86 Stat. 844, 886, 33 U. S. C. §§1311(a), 1362(12)(A); *Food & Water Watch v. United States EPA* (9th Cir. 2021) 20 F.4th 506, 508.

Pursuant to the Clean Water Act's "Stormwater Amendments" in section 402(p)(3)(B)(iii), municipal permits require controls to reduce the discharge of pollutants to the maximum extent practicable. 33 U.S.C. § 1342(p)(3)(B)(iii).

Defendants will demonstrate at trial that Plaintiffs cannot carry their burden of proof concerning the alleged Clean Water Act violations concerning unpermitted discharges.

### 8.4     Alleged Violations of the Small MS4 Permit

**8.4.1.** Provision B.2 of the Small MS4 Permit provides: "Discharges of stormwater from the MS4 to waters of the U.S. in a manner causing or threatening to cause a condition of pollution or nuisance as defined in Water Code § 13050 are prohibited." (Small MS4 Permit § B.2). The California Water Code defines pollution as "an alteration of the quality of the waters of the state by waste to a degree which unreasonably affects either of the following: (A) The waters for beneficial uses. (B) Facilities which serve these beneficial uses." Cal. Water Code § 13050(l)(1). Thus, to prevail at trial Plaintiffs must prove that Defendants have (1)

caused a discharge; (2) that causes or threatens to cause a condition of pollution or nuisance; (3) that alters Mule Creek to a degree that unreasonably affects its beneficial uses. Defendants will demonstrate at trial that Plaintiffs cannot carry their burden of proof concerning the alleged violation of Provision B.2 of the MS4 Permit.

**8.4.2.** CSPA alleges a violation of Provision B.3, which provides in relevant part: "Discharges through the MS4 of material other than stormwater to waters of the U.S. shall be effectively prohibited, except as allowed under this Provision or as otherwise authorized by a separate NPDES permit." (Small MS4 Permit § B.3.) Provision B.3 further provides that the following "non-storm water discharges are not prohibited" (i.e., exempt), in pertinent part:

    d. rising ground waters;

    e. uncontaminated ground water infiltration (as defined at 40 C.F.R. §35.2005(20) to separate storm sewers;

    f. uncontaminated pumped ground water;

    g. discharges from potable water sources;

    . . .

    i. air conditioning condensation; and,

    . . .

    o. incidental runoff from landscaped areas (as defined and in accordance with Section B.4 of this Order).

Defendants will demonstrate at trial that CSPA cannot carry its burden of proof concerning the alleged violation of Provision B.3 of the MS4 Permit.

**8.4.3.** The County alleges a violation of Provision C.1, which provides, "Permittees shall implement controls as required by this Order to reduce the discharge of pollutants from their MS4s to waters of the U.S. to the MEP [maximum extent practicable]." (Small MS4 Permit § C.1.) The MEP standard requires Permittees to apply Best Management Practices (BMPs) that are effective in reducing or eliminating the discharge of pollutants to the waters of the U.S. (Small MS4 Permit ¶ 36.) Defendants will demonstrate at trial that the County cannot carry its burden of proof concerning the alleged violation of Provision C.1 of the MS4

00058558.1                                    9

**DEFENDANTS' PRETRIAL STATEMENT**

Permit.

**8.4.4.** Provision D, Receiving Water Limitations, provides in pertinent part: "Discharges shall not cause or contribute to an exceedance of water quality standards contained in a Statewide Water Quality Control Plan, the California Toxics Rule (CTR), or in the applicable Regional Water Board Basin Plan." (Small MS4 Permit § D.)

Any limitations outlined in the referenced Basin Plan necessarily apply to the receiving water's limitations, not to CDCR's discharges because there is a distinction between effluent limitations and receiving water limitations. *See*, 33 U.S.C. § 1313©(2)(A) ("water quality standards shall consist of the designated uses of the navigable waters involved and the water quality criteria for such waters . . ."; 40 C.F.R. § 131.3 ("Water quality standards are provisions of State or Federal law which consist of a designated use or uses for the waters of the United States and water quality criteria for such waters based upon such uses."); *Nat. Res. Def. Council, Inc. v. County of Los Angeles*, 673 F.3d 880, 885, 887 (9th Cir. 2011), rev'd on other grounds, *Los Angeles Cnty. Flood Control Dist. v. Nat. Res. Def. Council, Inc*., 568 U.S. 78 (2013) (distinguishing between "effluent limitations" and "water quality standards" and explaining that "the regional boards' water quality plans, called 'basin plans,' must address the beneficial uses to be protected as well as water quality objectives"). Defendants will demonstrate at trial that Plaintiffs cannot carry their burden of proof concerning the alleged violation of Provision D of the MS4 Permit.

**9.     Abandoned Issues**

After the filing of Defendants' Motion for Summary Judgment: (a) the County abandoned the portion of its first claim for relief related to CDCR's operations of the LAAs; (b) the County abandoned its third claim for relief regarding alleged violations of the Industrial General Permit and Clean Water Act 33 U.S.C. §§ 1311(a), 1342(p); and (c) CSPA abandoned its first claim for relief as it relates to discharges from the LAAs.

Defendants abandon their affirmative defenses, with the exception of their second and third affirmative defenses, which they continue to maintain.

//

**10. Witnesses**

Defendants anticipate calling the following witnesses to provide trial testimony:

- Timothy Simpson, designated expert
- Elizabeth Lee, Regional Water Board
- Kari Holmes, Regional Water Board
- Gregor Larabee, CDCR
- Anthony Orta, CDCR
- Edmund Taylor, member of CSPA
- Robert Hess, SHN
- Steve Weisberg, SCCWRP

**11. Exhibits – Schedules and Summaries**

Defendants intend to summarize certain stormwater data, including background contributions, for the Court's assistance at trial. A list of Defendants' trial exhibits is included in Appendix 1.

**12. Discovery Documents**

Defendants may offer portions of the following deposition transcripts for the purposes of impeachment, rehabilitation, or similar purposes or if a witness is unavailable:

a. Deposition transcripts and exhibits of witnesses from the Regional Water Board, Kenneth William Croyle, Elizabeth Lee, Brett Stevens, Howard Hold, Kari Holmes.

b. Deposition transcripts and exhibits of Plaintiffs' experts, Karen Ashby and Dr. Robert Emerick.

c. Deposition transcript and exhibits of Defendants' expert, Timothy Simpson.

d. Deposition transcripts and exhibits of Defendants' persons most knowledgeable, Anthony Paul Orta and Gregor Larabee.

e. Deposition transcript and exhibits of Edmund Taylor.

**13. Further Discovery & Pretrial Motions**

No further discovery is warranted in this matter. Defendants intend to file pretrial

motions *in limine* to preclude Plaintiffs' use of certain sampling data as unreliable or otherwise inconsistent with the Court's August 28, 2022 Order Re: Motion for Partial Summary Judgment (ECF 60) and January 11, 2023 Order Re: Defendants' Motion for Summary Judgment (ECF 103). Defendants also intend to file *Daubert* challenges to CSPA's expert, Dr. Robert Emerick, on the ground that his expert opinion is unreliable, and to portions of the expert opinion of the County's expert, Karen Ashby, to the extent such portions are unreliable and/or inconsistent with the Court's January 11, 2023 Order Re: Defendants' Motion for Summary Judgment. Defendants reserve the right to file any necessary pretrial motion *in limine* to exclude expert witnesses or prejudicial evidence, should the need become apparent during the parties' trial preparation.

**14.    Stipulations**

There are currently no stipulations between parties at this time. Defendants anticipate that the parties will enter discussions regarding potential stipulations for certain facts and joint trial exhibits. Defendants intend to meet and confer with Plaintiffs to coordinate further.

**15.    Amendments — Dismissals**

Defendants reserve the right to make appropriate motions to conform the pleadings to the trial evidence in the future if necessary. *See* Fed. R. Civ. P. 15(b)–(d).

**16.    Settlement Negotiations**

Plaintiffs have mischaracterized the settlement negotiations between the parties in their Pretrial Statement. Defendants welcome further settlement discussions with Plaintiffs.

**17.    Agreed Statements**

Defendants do not believe it is feasible to present any part of the action upon an Agreed Statement of Facts.

**18.    Separate Trial of Issues**

Defendants request the trial to be bifurcated between liability and costs/attorney's fees phases.

**19.    Impartial Experts — Limitation of Experts**

The Court need not appoint impartial experts. Expert testimony should be limited to expert witnesses previously identified by the parties to this action.

### 20. Attorneys' Fees

Defendants will move for costs and attorney's fees following trial.

### 21. Trial Exhibits

Defendants do not request any special handling of trial exhibits.

### 22. Trial Protective Order

Defendants do not seek a trial protective order.

### 23. Miscellaneous

#### 23.1 Non-Discovery Motions & Resolution

Defendants were involved in the following non-discovery motions, in reverse chronological order:

| Motion | Description & Docket Location | Resolution |
| --- | --- | --- |
| Defendants' Motion for Summary Judgment. (ECF 95.) | Defendants moved for summary judgment on the following grounds: i) Plaintiffs cannot prove that Defendants' Land Application Area operations are the "functional equivalent" of a direct discharge to Mule Creek; ii) Plaintiffs cannot prove that Defendants violated the Small MS4 Permit; and iii) the County cannot establish that Defendants violated the Industrial General Permit. (ECF 95.)<br><br>Defendants' Motion (ECF 95); CSPA's Opposition (ECF 96); County's Opposition (ECF 97); Defendants' Reply (ECF 100). | Motion granted with respect to i) the County's first claim, to the extent it alleges violations resulting from operation of the land application areas, ii) CSPA and Amador's second claims, to the extent they allege violations of Provision B.1 of the Small MS4 Permit, and iii) the County's third claim regarding alleged violations of the Industrial General Permit; Motion denied in all other respects. (ECF 103.) |
| Plaintiff CSPA's Motion to Reconsider Order Re: Motion for Partial Summary Judgment. (ECF 67.) | Plaintiff CSPA moved under F.R.C.P. 54(b) and L.R. 230(j) for reconsideration of the Court's Order on Motion for Partial Summary Judgment (ECF 60). (ECF 67.)<br><br>CSPA's Motion (ECF 67); Defendants' Opposition (ECF 83). | Motion denied. (ECF 88.) |

| Motion | Description & Docket Location | Resolution |
|---|---|---|
| Defendants' Motion for Summary Judgment. (ECF 59.) | Defendants moved for summary judgment against the County for lack of "statutory" standing under the citizen suit provisions of the Clean Water Act. (ECF 59.)<br><br>Defendants' Motion (ECF 59); County's Opposition (ECF 66); Defendants' Reply (ECF 73). | Motion denied. (ECF 92.) |
| Plaintiffs' Motion for Summary Adjudication. (ECF 45.) | Plaintiffs moved for summary adjudication on the following grounds: i) jointly that each Plaintiff has standing; ii) jointly that Mule Creek is a water of the United States; iii) jointly that Defendants' discharges violated the Small MS4 Permit Provisions B.1, B.2, and D; iv) CSPA on its separate claim that Defendants violated Small MS4 Permit Provision B.3; v) the County on its separate claim that Defendants violated the Industrial General Permit. (ECF 45.)<br><br>Plaintiffs' Motion (ECF 45); Defendants' Opposition (ECF 48); Plaintiffs' Reply (ECF 55). | Motion granted with respect to Plaintiffs' standing and that Mule Creek is a water of the United States; Motion denied in all other respects. (ECF 60.) |
| The County's motion for Leave to File First Amended Complaint. (ECF 24.) | The County moved for leave to file its First Amended Complaint under F.R.C.P. 15(a). County sought to dismiss California Department of Corrections and Rehabilitation ("CDCR") as a party to the action, and County's Fourth Cause of Action for breach of contract against all Defendants. (ECF 24.)<br><br>County's Motion (ECF 24); Defendants' Opposition (ECF 30); County's Reply (ECF 31). | Motion granted. (ECF 34.) |

### 23.2    Remaining Claims against Defendants

The remaining claims against Defendants are alleged violations of Provisions B.2, B.3, C, and D of the Small MS4 Permit.

### 23.3    Estimated Number of Trial Days

Defendants estimate that trial will require 10 court days.

///

Dated: February 6, 2023

Respectfully submitted,

HARTMAN KING PC

By: _____
JENNIFER HARTMAN KING
ALANNA LUNGREN
WILLIAM MARSH
J.R. PARKER
ANDREYA WOO NAZAL
Attorneys for Defendants
JEFFREY MACOMBER in his capacity as Secretary of THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION; and PATRICK COVELLO, in his official capacity as Warden of California Department of Corrections and Rehabilitation Mule Creek State Prison

# APPENDIX 1

Appendix 1
to Defendants' Pretrial Statement

| Date | Document | Bates Reference |
|---|---|---|
| 2013-02-04 | National Pollutant Discharge Elimination System ("NPDES") General Permit for Waste Discharge Requirements for Storm Water Discharges from Small Separate Storm Sewer System ("MS4s"), State Board Order 2013-0001-DWQ, NPDES No. CAS00004 ("Small MS4 Permit"). | MCSP0000001 - MCSP0000289 |
| 2019-02 | California Regional Water Quality Control Board, Central Valley Region Water Quality Control Plan (Fifth Edition) for the Sacramento River and San Joaquin River Basins ("Basin Plan"). | Available at: https://www.waterboards.ca.gov/centralvalley/water_issues/basin_plans/sacsjr_201902.pdf |
| 2022-01-19 | 2020-2022 California Integrated Report (Clean Water Act Section 303(d) List and 305(b) Report), Appendix A, approved May 11, 2022 by EPA. | Available at: https://www.waterboards.ca.gov/water_issues/programs/tmdl/2020_2022state_ir_reports_revised_final/apx-a-303d-list.xlsx |
| 2021-01 | Quantification of Sources of Fecal Pollution at Mule Creek, prepared by Southern California Coastal Water Research Project for Central Valley Regional Water Quality Control Board and the California Department of Correction and Rehabilitation, ("2021 Sources Fecal Pollution Report"). | MCSP0033700 - MCSP0033735 |
| 2020-06-19 | Revised Stormwater Collection System Investigation Report of Findings, prepared by SHN Engineers & Geologists for California Department of Corrections and Rehabilitation, ("2020 Collection System Investigation Report"). | MCSP0004084- MCSP0020806 |
| 2020-08-06 | Regional Board Water Code 13383 Order to Monitor Discharges to Surface Water. | MCSP0000646 – MCSP0000655 |
| 2020-12-22 | Regional Board Water Code 13383 Order to Monitor Discharges to Surface Water. | MCSP0001157 - MCSP0001168 |
| 2021-11-29 | Regional Board Water Code 13383 Order to Monitor Discharges to Surface Water. | CALSPORT0045481 - CALSPORT0045494 |
| 2022-08-01 | Expert Report and Exhibits of Timothy Simpson. | n/a |
| 2022-09-06 | Expert Rebuttal Report and Exhibits of Timothy Simpson. | n/a |
| n/a | Defendants' Summary of Stormwater Data, including background contributions thereof. | n/a |

1