**EXHIBIT B – AMADOR Notice Letter**

**AMADOR COUNTY COUNSEL**
County Administration Center
810 Court Street, Jackson, CA 95642
Telephone (209) 223-6366 ◆FAX (209) 223-4286



**Via Certified Mail—Return Receipt Requested**

Gregory Gillott, County Counsel
Lesley Gomes, Deputy
Glenn Spitzer, Deputy
Angela Creach, Paralegal

May 15, 2020

Patrick Covello, Warden
California Department of Corrections
Mule Creek State Prison
P.O. Box 409099
Ione, CA 95640

Ralph Diaz, Secretary
California Department of Corrections and Rehabilitation
1515 South Street, #101n
Sacramento, CA 95811

> **RE:** **Notice of Violations and Intent to Sue Under the Federal Water Pollution Control Act (Clean Water Act)**

Dear Warden Covello and Secretary Diaz:

This Notice of Violations and Intent to Sue ("Notice") is provided on behalf of the County of Amador ("County") with regard to violations of the Federal Water Pollution Control Act, commonly known as the Clean Water Act ("CWA" or "Act"); 33 U.S.C. § 1251 *et seq.*). The County alleges that the California Department of Corrections and Rehabilitation ("CDCR") is engaging in ongoing violations of the CWA by discharging pollutants from Mule Creek State Prison ("Prison") to Mule Creek, a water of the United States, without a permit as required by the CWA or, in the alternative, in violation of any applicable permit(s) related to such discharges. The County hereby gives CDCR notice of its intent to sue CDCR for these ongoing violations of the CWA starting sixty (60) days after this Notice, unless CDCR enters into a binding agreement with the County to cease all illegal discharges and to fully and promptly remediate the impacts of all past, current and imminent violations.

## I.
## Factual Background

Mule Creek State Prison opened in June of 1987, and is owned and operated by CDCR. Originally, the Prison accommodated approximately 2,800 inmates in three facilities and their accompanying yards (the "Old Prison"). In 2016, CDCR expanded the Old Prison by constructing the 1,584 inmate Mule Creek Infill Complex ("MCIC"). The construction of MCIC

Patrick Covello, Warden<br>
California Department of Corrections<br>
Ralph Diaz, Secretary<br>
California Department of Corrections and Rehabilitation<br>
May 15, 2020<br>
Page 2

reduced land available for the spraying of treated effluent from the wastewater treatment facility on the site.

The Old Prison was constructed in part in accordance with a 1985 agreement among CDCR, the County, the City of Ione and the Amador County Unified School District. This agreement permitted CDCR to construct a facility that was larger than the one it had studied in the environmental document it had prepared under the California Environmental Quality Act ("CEQA"). As part of this agreement, CDCR agreed to operate the facility in a manner consistent with specific hydrology and wastewater treatment mitigation measures, as well as laws and regulations governing wastewater and the disposal of treated effluent. As documented in this Notice, CDCR is not operating the facility as required by these measures or in accordance with the laws and regulations governing wastewater and treated effluent, and is thus in violation of the 1985 agreement.

During the last five (5) years, and on an ongoing basis, there have been numerous documented discharges of pollutants from the Prison to Mule Creek. For example, on December 28, 2017, discharges of water described to be at times jet black, sometimes containing solids, and sometimes steaming hot, were discharged to Mule Creek from a pipeline that originated at the Prison. This discharge originated from a storm water collection and conveyance system that surrounds the Old Prison. Samples of the water from this system revealed that the discharge contained wastewater comingled with contaminated storm water and grey water. The discharge contained very high levels of Total Coliform, E. Coli and Fecal Coliform.

Similarly, on multiple occasions in 2018, CDCR intentionally discharged millions of gallons of comingled storm water and wastewater to Mule Creek from the Prison. These discharges contained bacteria and industrial pollutants that are illegal to discharge to Mule Creek without a permit or in violation of the requirements of any applicable permit.

In addition to such ongoing discharges from the various pipes and collection systems at the Prison, there have been documented spills of wastewater to Mule Creek. For example, in July of 2019, a documented spill of wastewater to Mule Creek occurred. Similarly, in April of 2018, thirty-three thousand (33,000) gallons of raw sewage was discharged to Mule Creek.

Discharges from the Prison to Mule Creek also occur when pollutants from the wastewater system at the Prison are discharged to spray fields that load directly to Mule Creek. For example, on July 25, 2019, Mule Creek downstream of the Prison was full of stagnant water, even though there had been several months of hot, dry weather and even though Mule Creek was dry upstream of the Prison. This condition was a direct result of heavy hydraulic loading from oversaturated wastewater spraying fields, which resulted in either a direct discharge of pollutants to Mule Creek or the effective equivalent of a direct discharge.

80237.00844\32940778.4

Patrick Covello, Warden  
California Department of Corrections  
Ralph Diaz, Secretary  
California Department of Corrections and Rehabilitation  
May 15, 2020  
Page 3

Despite causing these direct discharges of pollutants to Mule Creek, or the effective equivalent of such direct discharges, CDCR does not have a National Pollutant Discharge Elimination System ("NPDES") permit that authorizes such discharges or their effective equivalent. The CDCR operates the wastewater system at the Prison under Waste Discharge Requirements ("WDR") Order R5-2015-0129, issued by the Central Valley Regional Water Quality Control Board ("Regional Board"). However, the WDR is a permit issued under California law, and does not cover discharges of pollutants to Mule Creek. In addition, the Regional Board has determined that the WDR does not authorize the discharges described in this Notice. Therefore, the discharges of pollutants to Mule Creek from the Prison are illegal discharges made in violation of the Act.

In addition, CDCR has not timely sought to obtain coverage under general NPDES permits[1] that are required for some of the discharges and activities alleged in this Notice, or has not complied with the requirements of these general NPDES permits for any of the limited periods of time during which it has enrolled under them. Each of the general NPDES permits contains discharge prohibitions, effluent limitations and receiving water limitations that prohibit discharges of pollutants that exceed water quality standards, create conditions of nuisance or cause a condition of pollution, among other requirements. None of these permits allow CDCR to discharge raw waste, comingled wastewater and storm water, industrial pollutants, including, but not limited to designated wastes such as volatile organic chemicals ("VOCs") and semi-volatile compounds ("SVOCs). Any discharges that occurred during any period when CDCR had coverage under any of the three general NPDES permits were made in violation of the discharge prohibitions, effluent limitations and the receiving water limitations of those permits, and were thus illegal discharges. Therefore, CDCR does not maintain NPDES permits that would permit

---

[1] Coverage under at least three general NPDES permits issued by the State Water Resources Control Board is required for at least some of the activities at the Prison. First, the industrial activities at the Prison require coverage under the General Permit for Storm Water Discharges Associated with Industrial Activities, Order 2014-0057-DWQ, as amended ("Industrial Permit"). CDCR either did not have coverage under the Industrial Permit for the discharges alleged in this Notice or did not comply with the conditions of the Industrial Permit related to the discharges. Second, the construction activities at the Prison require coverage under the General Permit for Storm Water Discharges Associated with Construction and Land Disturbance Activities, Order 2009-0009-DWQ, as amended ("Construction Permit"). CDCR either did not have coverage under the Construction Permit for the discharges alleged in this Notice or did not comply with the conditions of the Construction Permit related to the discharges. Third, operations of the storm water conveyance system at the Prison may in part require coverage under the National Pollutant Discharge Elimination System Permit for Waste Discharge Requirements for Storm Water Discharges from Small Municipal Separate Storm Sewer Systems, Order 2013-0001-DWQ ("Small MS4 Permit"). In or about February of 2019, after most of the discharges alleged in this Notice occurred, the Regional Board required CDCR to obtain coverage under the Small MS4 Permit, and CDCR may have subsequently obtained such coverage in or about April of 2019. CDCR did not have coverage under the Small MS4 Permit for most of the discharges alleged in this Notice, and the discharges that have occurred after it sought coverage are not permitted by the Small MS4 Permit.

80237.00844\32940778.4

Patrick Covello, Warden  
California Department of Corrections  
Ralph Diaz, Secretary  
California Department of Corrections and Rehabilitation  
May 15, 2020  
Page 4

these discharges to Mule Creek, and CDCR is, has been, and will remain in violation of the CWA.

The County has repeatedly attempted to work with CDCR to eliminate these discharges to Mule Creek. Similarly, the County has encouraged the Regional Board to diligently prosecute CDCR for these multiple violations of the CWA as alleged in this Notice. As of today, CDCR has not eliminated these discharges to Mule Creek and the Regional Board has not commenced nor diligently prosecuted CDCR for the repeated and ongoing violations of the CWA. Therefore, the County has no choice but to provide this Notice, and, unless CDCR enters into a binding agreement to cease and desist the discharges, and remediate the pollution they have created, the County will have no choice but to sue CDCR over these ongoing violations.

## II.
## Clean Water Act Requirements

The CWA prohibits the "discharge of any pollutant by a person" without a permit issued under the Act. (33 U.S.C. § 1311(a).) The CWA defines a "discharge of a pollutant" as the addition of any pollutant to navigable waters from a point source. (33 U.S.C. § 1362(12).) The Act further defines a point source as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container . . . ." (33 U.S.C. § 1362(14).) The United States Supreme Court has recently clarified that a "discharge of a pollutant" occurs under the Act when there is either a discharge from a point source directly into navigable waters or when there is the functional equivalent of a direct discharge. (*County of Maui, Hawaii v. Hawaii Wildlife Fund* 590 U.S. ___ (2020).

All direct discharges of pollutants from a point source or the functional equivalent of such direct discharges are illegal unless done in accordance with a permit issued under the Act. As relevant here, the CWA establishes the NPDES program to permit certain discharges of pollutants to navigable waters. (33 U.S.C § 1342.) In California, the State Water Resources Control Board ("State Board") and the nine Regional Water Quality Control Boards, including the Regional Board, have been authorized by the Environmental Protection Agency ("EPA") to issue permits under the NPDES program. Discharges of pollutants to Mule Creek therefore require an NPDES permit issued by the State Board or the Regional Board. Discharges of pollutants to Mule Creek that occur without an NPDES permit, or in violation of an NPDES permit, are violations of the Act. (33 U.S.C. § 1311 (a).)

The CWA provides that enforcement of the Act may be commenced by persons acting under the citizen suit provisions of the statute. (33 U.S.C § 1365.) The County is exercising its rights under these provisions of the Act to enforce compliance by CDCR with the CWA, and to stop these ongoing illegal discharges to Mule Creek.

Patrick Covello, Warden
California Department of Corrections
Ralph Diaz, Secretary
California Department of Corrections and Rehabilitation
May 15, 2020
Page 5

### III.
### Notice Requirements

The Act and its implementing regulations (see 40 CFR 135.2 and 135.3) provide that a 60-day notice should include sufficient information to permit the recipient to identify the standard, limitation or order alleged to be violated, the activity alleged to constitute the violation, the person or persons responsibility for the alleged violation, the location of the alleged violation, the date or dates of the alleged violation and the identity of the person giving notice. That information is set forth below.

**A.      The Specified Standard, Limitation, or Order Alleged to Have Been Violated**

The County has identified numerous discharges of pollutants from the Prison to Mule Creek without an NPDES permit in violation of the CWA. (33 U.S.C § 1311(a).) These discharges without a permit violate the CWA, which provides that: "Except as in compliance with this section and sections 302, 306, 307, 318, 402, 404 of this Act, the discharge of any pollutant by any person shall be unlawful." The discharges of pollutants from the Prison to Mule Creek are unlawful under 33 U.S.C. section 1311(a) because CDCR does not have an NPDES or other federal permit that allows those discharges to occur.

In the alternative, the discharges alleged in this Notice are unlawful under 33 U.S.C. section 1311(a) because the discharges are not in compliance with the requirements of any applicable NPDES permit CDCR does maintain. CDCR has not timely obtained coverage under the Small MS4 Permit, the Industrial Permit or the Construction Permit related to the activities resulting in these discharges. To the extent CDCR has belatedly obtained, or sought to obtain, such coverage, these discharges violate the discharge prohibitions, effluent limitations and receiving water limitations contained in these NPDES permits. For example, the Small MS4 Permit prohibits the discharge of non-storm water (including wastewater), prohibits discharges that cause or threaten conditions of pollution or nuisance, requires compliance with effluent limitations that among other things prohibits discharges of hazardous substances and prohibits discharges that "cause or contribute to an exceedance of water quality standards . . . ." (See Small MS4 Permit, Sections B (Discharge Prohibitions), C (Effluent Limitations) and D (Receiving Water Limitations).) The Industrial Permit and the Construction Permit contain similar discharge prohibitions, effluent limitations and receiving water limitations. (See Industrial Permit, Sections III (Discharge Prohibitions), V (Effluent Limitations) and VI (Receiving Water Limitations); *Baykeeper v. Kramer Metals, Inc.* (C.D. Cal. 2009) 619 F.Supp.2d 914, 926); Construction Permit, Sections III (Discharge Prohibitions), V (Effluent Limitations) and VI (Receiving Water Limitations).) Because the discharges alleged in this Notice violate the discharge prohibitions, effluent limitations and receiving water limitations of these permits, they are illegal discharges under the Act.

80237.00844\32940778.4

Patrick Covello, Warden
California Department of Corrections
Ralph Diaz, Secretary
California Department of Corrections and Rehabilitation
May 15, 2020
Page 6

**B.     The Activity Alleged to Constitute a Violation**

The County contends that from May 15, 2015 to May 15, 2020, CDCR has violated the Act as described in this Notice. The County contends these violations are continuing or have the likelihood of occurring in the future.

1.      <u>Direct Discharges to Mule Creek.</u> The County has documented multiple and ongoing direct discharges of pollutants to Mule Creek. In some cases, the discharges involve millions of gallons of polluted water. Representative examples of CDCR activities alleged to violate 33 U.S.C section 1311(a) include:

a.      <u>December 28, 2017.</u> On December 28, 2017, CDCR illegally discharged pollutants from a newly constructed storm water pipeline directly to Mule Creek. This discharge contained high levels of bacteria and other pollutants that violate water quality standards. This discharge was just one of a regular daily discharge observed between August 2017 and January 2018. These discharges included water that was described as at times being jet black, sometimes containing solids, and sometimes steaming hot.

b.      <u>March 22 and 23, 2018.</u> On March 22, 2018, CDCR intentionally discharged 1,250,000 gallons of comingled storm water and wastewater to Mule Creek. The details of this discharge are set forth in OES Report 18-1892. On March 23, 2018, CDCR updated OES Report 18-1892 to report a total discharge of 1,600,000 gallons to Mule Creek. This discharge included pathogens, VOCs and SVOCs, among other pollutants that violate water quality standards.

c.      <u>April 6, 2018.</u> On April 6, 2018, CDCR discharged 33,000 gallons of raw sewage to Mule Creek. The details of this discharge of raw sewage are set forth in OES Report 18-2255. This discharge included pathogens that violate water quality standards.

d.      <u>April 6-7, 2018.</u> On April 6 and 7, 2018, CDCR discharged 1,600,000 gallons of comingled storm water and wastewater to Mule Creek. The details of this discharge are set forth in OES Report 18-2307. This discharge included pathogens, VOCs and SVOCs, among other pollutants that violate water quality standards.

e.      <u>May 25, 2018.</u> On May 25, 2018, CDCR discharged 200,000 to 350,000 gallons of commingled storm water and wastewater to Mule Creek. The details of this discharge are set forth in OES Report 18-3383. This discharge included pathogens, VOCs and SVOCs, among other pollutants that violate water quality standards.

f.      <u>August 17, 2018.</u> On August 17, 2018, in a letter and report to the Regional Board, CDCR self-reported that it regularly conducts wash down activities over its

80237.00844\32940778.4

Patrick Covello, Warden
California Department of Corrections
Ralph Diaz, Secretary
California Department of Corrections and Rehabilitation
May 15, 2020
Page 7

storm drain facilities. These activities resulted in illegal discharges of industrial and other pollutants from the storm drains to Mule Creek.

        g.    July 13, 2019. On July 13, 2019, CDCR spilled 5,000 gallons of effluent directly to Mule Creek. This discharge included pathogens in excess of water quality standards.

    2.    Functional Equivalent of Direct Discharges to Mule Creek. In addition to these numerous and ongoing direct discharges, CDCR is also performing activities that have resulted in the functional equivalent of direct discharges to Mule Creek. When the CDCR constructed the MCIC, it reduced the land available for the spraying of effluent from the wastewater treatment facility at the Prison. This reduction in land has resulted in the over spraying of the remaining land available. This over spraying has resulted in over saturation of the remaining spray fields. This has caused seepage from the spray fields into Mule Creek.

    This seepage is the functional equivalent of ongoing direct discharges to Mule Creek, and is prohibited without an NPDES permit. None of the three general NPDES permits would permit this discharge of wastewater effluent to Mule Creek, and any state permit issued by the Regional Board under state law would not be sufficient to permit these discharges under the Act . Despite not having a permit for these discharges, CDCR continues to engage in this functional equivalent to a direct discharge. These activities are well documented. For example, on July 25, 2019, Regional Board staff documented stagnant water in Mule Creek downstream of the spray fields, even though the Creek was dry upstream and even though then had been several months of hot, dry weather. These ongoing discharges result in the regular discharge of pathogens, VOCs and SVOCs, among other pollutants, to Mule Creek in violation of the Act.

**C.    The Person or Persons Responsible for the Alleged Violation**

    The entity responsible for the alleged violation identified in this Notice is the CDCR and those of its employees or agents responsible for compliance with the CWA and with any applicable state and federal regulations and permits. CDCR owns and operates the Prison, its wastewater facility, its conveyance systems and other infrastructure that results in the discharges alleged in this Notice. The treatment system at the facility also treats wastewater generated from the Preston Youth Correctional Facility and the California Department of Forestry Fire Training Academy, in addition to the Prison's wastewater, but the violations alleged in this Notice are the sole result of the activities, inactions and facilities of CDCR.

**D.    The Location of the Alleged Violation**

    The location of the alleged violations is the portion of Mule Creek adjacent to the Prison that has received the pollutants from the direct and indirect discharges referred to in this Notice.

80237.00844\32940778.4

Patrick Covello, Warden
California Department of Corrections
Ralph Diaz, Secretary
California Department of Corrections and Rehabilitation
May 15, 2020
Page 8

The specific location for each alleged discharge is set forth in the reports referred to in this Notice, in records created and/or maintained by CDCR, as well as in reports and records created and/or maintained by the Regional Board. The Prison is located at 4001 on Highway 104 in the City of Ione in Amador County, and the discharges alleged in this Notice all originated at the Prison and were conveyed to the adjacent Mule Creek.

**E.     The Date or Dates of Violations or a Reasonable Range of Dates During Which the Alleged Activity Occurred**

The range of dates covered by this Notice is May 15, 2015 to May 15, 2020. The County may from time to time update this Notice to include additional violations of the CWA by the CDCR which occur during or after the range of dates currently covered. Some violations are continuous, and therefore each day constitutes a violation. As described in this Notice, and by way of illustration only, specific violations highlighted in this Notice occurred on December 28, 2017, March 22, 2018, March 23, 2018, April 7, 2018, May 25, 2018, August 17, 2018, July 13, 2019 and July 25, 2019.

**F.     The Full Name, Address and Telephone Number of the Person Giving Notice**

The entity giving this Notice is the County of Amador, a municipal corporation. The County's mailing address is 810 Court Street, Jackson, California, 95642, and its telephone number is (209) 223-6470. This Notice is being provided by the County Counsel for the County of Amador at the direction of the Board of Supervisors of the County. Please direct all correspondence regarding this Notice to Gregory Gillott, Amador County Counsel, 810 Court Street, Jackson, CA, 95642, (209) 223-6366, ggillot@amadorgov.org.

The County and the residents of the County have sustained, and continue to sustain, direct injuries due to CDCR's violations of the CWA that are subject to redress through litigation under the Act. The discharges alleged in this Notice have caused the County to incur substantial costs associated with the pollutants discharged to Mule Creek and the pollution of the groundwater basin. The pollution has also deteriorated the quality of the Mule Creek area, resulting in lost recreational and other opportunities that in turn have resulted in a fiscal impacts to the County through lost sales and other taxes. Similarly, the pollution has also impacted the residents of the County, including by depriving them of recreational opportunities and also resulting in pollution of private and public wells and land in the area. The County provides this Notice and will pursue litigation if necessary to redress these direct injuries that are caused by CDCR's violations of the CWA.

Patrick Covello, Warden
California Department of Corrections
Ralph Diaz, Secretary
California Department of Corrections and Rehabilitation
May 15, 2020
Page 9

## IV.
## Cease and Desist Demand and Remedial Measures

During the 60-day notice period, the County stands ready to meet with CDCR to discuss a possible resolution of the issues presented in this Notice. If a reasonable written settlement can be reached during the 60-day notice period, the County would be willing to consider foregoing this litigation. However, a reasonable settlement would need to include:

- An immediate commitment to cease and desist all unpermitted discharges;

- An agreement to comply with all discharge prohibitions, effluent limitations and receiving water limitations of the Small MS4 Permit, the Industrial Permit and the Construction Permit, as applicable, to the extent CDCR has obtained coverage under any of these permits.

- An agreement to timely obtain all additional NPDES permits required, in addition to the renewal or expansion of state permits related to the wastewater system to include provisions sufficient to treat the industrial pollutants from the facility and to end the indirect discharges from the spray fields to Mule Creek;

- An agreement to remediate the pollution to Mule Creek and to the associated groundwater basin, including impacts to public and private lands and wells;

- Reasonable compensation for the County's costs and fees.

Patrick Covello, Warden  
California Department of Corrections  
Ralph Diaz, Secretary  
California Department of Corrections and Rehabilitation  
May 15, 2020  
Page 10

## V.
## Conclusion

Please contact County Counsel Gregory Gillott if you are willing to engage in reasonable settlement discussions during the 60-day notice period. In the absence of productive discussions to resolve this dispute, the County will have cause to file a citizen's suit under the CWA when the 60-day notice period ends. As part of that action, the County will pursue injunctive relief to stop all discharges in violation of the Act, will seek penalties for these discharges and will seek reasonable attorney's fees and costs. In addition to such a citizen suit, the County reserves all rights to assert all other available claims against CDCR related to these discharges, including, but not limited to, breach of the 1985 Agreement. It is the County's hope that CDCR will work with the County to voluntarily resolve these issues, but the County stands ready to pursue its legal options if necessary.

Sincerely,

Greg Gillott  
County Counsel

cc:    Andrew Wheeler, Administrator  
U.S. Environmental Protection Agency  
1200 Pennsylvania Avenue, NW  
Washington, D.C. 20460

John W. Busterud, Regional Administrator  
U.S. Environmental Protection Agency  
Pacific Southwest, Region 9  
75 Hawthorne Street  
San Francisco, CA 94105

U.S. Attorney General  
U.S. Dept. of Justice  
950 Pennsylvania Ave, NW  
Washington, DC 20530-0001

Eileen Sobeck, Executive Director  
State Water Resources Control Board  
P.O. Box 100  
Sacramento, CA 95812-0100

80237.00844\32940778.4

Patrick Covello, Warden<br>
California Department of Corrections<br>
Ralph Diaz, Secretary<br>
California Department of Corrections and Rehabilitation<br>
May 15, 2020<br>
Page 11

Patrick Pulupa
Executive Officer
California Regional Water Quality Control Board
Central Valley Region
11020 Sun Center Drive #200
Rancho Cordova, CA 95670