1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**EXHIBIT C – AMADOR Supplemental Notice Letter**

26
27
28

# AMADOR COUNTY COUNSEL

County Administration Center
810 Court Street, Jackson, CA 95642
Telephone (209) 223-6366 ♦ FAX (209) 223-4286



**Via Certified Mail—Return Receipt Requested**

Gregory Gillott, County Counsel
Lesley Gomes, Deputy
Glenn Spitzer, Deputy
Angela Creach, Paralegal

October 2, 2020

Patrick Covello, Warden
California Department of Corrections
Mule Creek State Prison
P.O. Box 409099
Ione, CA 95640

Ralph Diaz, Secretary
California Department of Corrections and Rehabilitation
1515 S Street, #101n
Sacramento, CA 95811

RE:   _Amended_ **Notice of Violations and Intent to Sue Under the Federal Water Pollution Control Act (Clean Water Act)**

Dear Warden Covello and Secretary Diaz:

This Amended Notice of Violations and Intent to Sue ("Notice") is provided on behalf of the County of Amador ("County") with regard to violations of the Federal Water Pollution Control Act, commonly known as the Clean Water Act ("CWA" or "Act"; 33 U.S.C. § 1251 *et seq.*).[1]  The County alleges that the California Department of Corrections and Rehabilitation ("CDCR") is engaging in ongoing violations of the CWA by discharging pollutants from Mule Creek State Prison ("Prison") to Mule Creek, a water of the United States, without a permit as required by the CWA or in violation of any applicable permit(s) related to such discharges.  The County hereby gives CDCR notice of its intent to sue CDCR for these ongoing violations of the CWA starting sixty (60) days after this Notice, unless CDCR enters into a binding agreement with the County to cease all illegal discharges and to fully and promptly remediate all past, current and imminent violations.

## I.
## Factual Background

Mule Creek State Prison opened in June of 1987, and is owned and operated by CDCR.  Originally, the Prison accommodated approximately 2,800 inmates in three facilities and

---

[1] The County sent the original notice on May 15, 2020 and has been engaged in discussions with CDCR counsel about the issues in the original notice.  This Amended Notice is based on new information obtained by the County, additional violations, and the Regional Board's proposed Administrative Civil Liability Order for the Prison.

Patrick Covello, Warden
California Department of Corrections
October 2, 2020
Page 2

their accompanying yards (the "Old Prison").  In 2016, CDCR expanded the Old Prison by constructing the 1,584 inmate Mule Creek Infill Complex ("MCIC").  The construction of MCIC reduced land available for the spraying of treated effluent from the wastewater treatment facility on the site.

The Old Prison was constructed in part in accordance with a 1985 agreement among CDCR, the County, the City of Ione and the Amador County Unified School District.  This agreement permitted CDCR to construct a facility that was larger than the one it had studied in the environmental document it had prepared under the California Environmental Quality Act ("CEQA").  As part of this agreement, CDC agreed to operate the facility in a manner consistent with specific hydrology and wastewater treatment mitigation measures, as well as laws and regulations governing wastewater and the disposal of treated effluent.  As documented in this Notice, CDCR is not operating the facility as required by these measures or in accordance with the laws and regulations governing wastewater and treated effluent, and is thus in violation of the 1985 agreement.

During the last five (5) years, and on an ongoing basis, there have been numerous documented discharges of pollutants from the Prison to Mule Creek. These violations included documented exceedances based on CDCR's own monitoring and violations documented by the Regional Board or local residents. For example, on December 28, 2017, discharges of water described to be at times jet black, sometimes containing solids, and sometimes steaming hot, were discharged to Mule Creek from a pipeline that originated at the Prison.  This discharge originated from a storm water collection and conveyance system that surrounds the Old Prison. Samples of the water from this system revealed that the discharge contained wastewater comingled with contaminated storm water and grey water.  The discharge contained very high levels of Total Coliform, E. Coli and Fecal Coliform.

Similarly, on multiple occasions in 2018 through 2020, CDCR intentionally discharged millions of gallons of comingled storm water and wastewater to Mule Creek from the Prison. These discharges contained bacteria and industrial pollutants that are illegal to discharge to Mule Creek without a permit. A summary of exceedances of water quality objectives based on analytical laboratory data collected over approximately two years is contained in Exhibit "A" and demonstrates there have been at least 3,104 measured exceedances of water quality objectives within receiving waters adjacent to the Prison, at the Prison's storm drain system outfalls to Mule Creek, and within the storm drain system.

In addition to such ongoing discharges from the various pipes and collection systems at the Prison, there have been documented spills of wastewater to Mule Creek.  For example, in July of 2019, a documented spill of wastewater to Mule Creek occurred.  Similarly, in April of 2018, thirty-three thousand (33,000) gallons of raw sewage was discharged to Mule Creek. Spills have occurred even after the County's original notice.  For example, on May 17, 2020, a spill of 1.25 million gallons of contaminated storm water occurred when the Prison intentionally, and contrary to the Regional Board's direction, opened gates that prevented such discharges.

Patrick Covello, Warden
California Department of Corrections
October 2, 2020
Page 3

Discharges from the Prison to Mule Creek also occur when pollutants from the wastewater system at the Prison are discharged to spray fields that load directly to Mule Creek. For example, on July 25, 2019, Mule Creek downstream of the Prison was full of stagnant water, even though there had been several months of hot, dry weather and even though Mule Creek was dry upstream of the Prison. This condition was a direct result of heavy hydraulic loading from oversaturated wastewater spraying fields, which resulted in either a direct discharge of pollutants to Mule Creek or the effective equivalent of a direct discharge.

Despite causing these direct discharges of pollutants to Mule Creek, or the effective equivalent of such direct discharges, CDCR does not have a National Pollutant Discharge Elimination System ("NPDES") permit that authorizes such discharges or their effective equivalent or is acting in violation of any permit that it does maintain. The CDCR operates the wastewater system at the Prison under Waste Discharge Requirements ("WDR") Order R5-2015-0129, issued by the Central Valley Regional Water Quality Control Board ("Regional Board"). However, the WDR is a permit issued under California law, and does not cover discharges of pollutants to Mule Creek. In addition, the Regional Board has determined that the WDR does not authorize the discharges described in this Notice. Therefore, the discharges of pollutants to Mule Creek from the Prison are illegal discharges made in violation of the Act.

In addition, CDCR did not timely obtain coverage under general NPDES permits that are required for some of the discharges and activities alleged in this Notice, and has not complied with the requirements of general NPDES permits for the limited periods of time during which it has been enrolled under them. Industrial activities at the Prison are now regulated under the *General Permit for Storm Water Discharges Associated with Industrial Activities*, Order 2014-0057-DWQ, as amended ("Industrial Permit"). CDCR did not have coverage under the Industrial Permit for the discharges alleged in this Notice between May 15, 2015 and May 22, 2018, and discharges occurred during that period were illegal discharges without a permit. Subsequently, and over the apparent objection of the Regional Board, the State Board, based on a document dated May 22, 2020, appears to have granted CDCR a "No Exposure Certification" ("NEC") under the Industrial Permit. CDCR is not entitled to such coverage and its actions between May 22, 2018 and the date of this letter are in violation of the Industrial Permit.

Discharges from the storm water conveyance system at the Prison are now regulated under the *National Pollutant Discharge Elimination System Permit for Waste Discharge Requirements for Storm Water Discharges from Small Municipal Separate Storm Sewer Systems*, Order 2013-0001-DWQ ("Small MS4 Permit"). CDCR did not have coverage under the Small MS4 Permit for the discharges from the storm water collection system alleged in this Notice which occurred between May 15, 2015 and April 10, 2019. Discharges during this period were therefore illegal discharges without a permit. The Prison obtained coverage under the Small MS4 Permit on April 10, 2019. Between April 10, 2019 and the date of this letter, CDCR has discharged from the Prison in violation of the Small MS4 Permit.

Patrick Covello, Warden
California Department of Corrections
October 2, 2020
Page 4

Each of the general NPDES permits contains discharge prohibitions, effluent limitations and receiving water limitations that prohibit discharges of pollutants that exceed water quality standards, prohibit the creation of a nuisance or the causing of a condition of pollution, among other requirements. None of these permits allow CDCR to discharge raw waste, comingled wastewater and storm water, industrial pollutants, including, but not limited to designated wastes such as volatile organic chemicals ("VOCs") and semi-volatile compounds ("SVOCs"). Any discharges that occurred during any period when CDCR had coverage under any of the two general NPDES permits were made in violation of the discharge prohibitions, effluent limitations and the receiving water limitations of those permits, and were thus illegal discharges without a permit. Therefore, CDCR does not maintain NPDES permits that would permit these discharges to Mule Creek, and CDCR is, has been, and will remain in violation of the CWA.

On July 20, 2020, the Regional Board released a draft *Settlement Agreement and Stipulation for Entry of Administrative Civil Liability Order*, Order No R5-2020-XXX ("Draft Order") for public comment. The Draft Order alleges illegal dry weather discharges from the Prison's storm drain system on 79 days between January 23, 2018 and April 5, 2019. The Draft Order does not address the multiple violations after April 2019 alleged in this Notice nor does it address the violations of the NPDES Permits alleged in this Notice.

If adopted, the Draft Order will impose a monetary penalty of $2.5 million. Half of the penalty amount will be permanently suspended on the condition that CDCR spends $1,250,000 to complete an irrigation replacement project and funds a study by the Southern California Coastal Water Research Project ("SCCWRP"). The Draft Order expressly admits that it does "not address liability for the commingled discharges of storm water and non-stormwater[,]" such as those alleged in this Notice. The Draft Order also recognizes that the discharges, such as those alleged in this Notice, are not the result of the irrigation system. (Draft Order ¶ 17 ("Water Board staff does not believe that the identified non-stormwater sources of irrigation and groundwater are likely sources of waste constituents.") As a result, the irrigation system replacement project will not prevent wastewater discharges to Mule Creek or other problems associated with the wastewater and stormwater system described in this Notice. In addition, the SCCWRP study will not identify or require any corrective measures necessary to prevent illegal discharges described in this Notice from entering Mule Creek.

The County has repeatedly attempted to work with CDCR to eliminate these discharges to Mule Creek. Similarly, the County has encouraged the Regional Board to diligently prosecute CDCR for these multiple violations of the CWA as alleged in this Notice. As of today, CDCR has not eliminated these discharges to Mule Creek and the Regional Board has not commenced nor diligently prosecuted CDCR for the repeated and ongoing violations of the CWA. Therefore, the County has no choice but to provide this Notice, and, unless CDCR enters into a binding agreement to cease and desist the discharges, and remediate the pollution they have created, the County will have no choice but to sue CDCR over these ongoing violations.

Patrick Covello, Warden
California Department of Corrections
October 2, 2020
Page 5

## II.
## Clean Water Act Requirements

The CWA prohibits the "discharge of any pollutant by a person" without a permit issued under the Act.  (33 U.S.C. § 1311(a).)  The CWA defines a "discharge of a pollutant" as the addition of any pollutant to navigable waters from a point source.  (33 U.S.C. § 1362(12).)  The Act further defines a point source as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container . . . ."  (33 U.S.C. § 1362(14).)  The United States Supreme Court has recently clarified that a "discharge of a pollutant" occurs under the Act when there is either a discharge from a point source directly into navigable waters or when there is the functional equivalent of a direct discharge.  (*County of Maui, Hawaii v. Hawaii Wildlife Fund* 590 U.S. ___ (2020).

All direct discharges of pollutants from a point source or the functional equivalent of such direct discharges are illegal unless done in accordance with a permit issued under the Act.  As relevant here, the CWA establishes the NPDES program to permit certain discharges of pollutants to navigable waters.  (33 U.S.C § 1342.)  In California, the State Water Resources Control Board ("State Board") and the nine Regional Water Quality Control Boards, including the Regional Board, have been authorized by the Environmental Protection Agency ("EPA") to issue permits under the NPDES program.  Discharges of pollutants to Mule Creek therefore require an NPDES permit issued by the State Board or the Regional Board.  Discharges of pollutants to Mule Creek that occur without an NPDES permit, or in violation of an NPDES permit, are violations of the Act.  (33 U.S.C. § 1311 (a).)

The CWA provides that enforcement of the Act may be commenced by persons acting under the citizen suit provisions of the statute.  (33 U.S.C § 1365.)  The County is exercising its rights under these provisions of the Act to enforce compliance by CDCR with the CWA, and to stop these ongoing illegal discharges to Mule Creek.

The Draft Order does not address the illegal discharges covered in this Notice nor does it address the specific violations of the NPDES Permits asserted in this Notice.  Therefore, the Draft Order does not bar the County from proceeding with litigation based on this Notice because a citizen suit may only be precluded where the State has commenced and is diligently prosecuting a civil or criminal action under the Clean Water Act in a court of the United States or if the State has imposed an administrative penalty action comparable to one under the Clean Water Act. (33 U.S.C. §§ 1319, subd. (g), 1365, subd. (b); see also *California Sportfishing Protection Alliance v. Chico Scrap Metal, Inc.* (9th Cir. 2013) 728 F.3d 868.)  A State-initiated administrative or court action will not bar a citizen suit that alleges different violations of the Clean Water Act or seeks to enforce different standards and limitations of permit. (See *Cal. Sportfishing*, 728 F.3d at 874-75.)

Patrick Covello, Warden
California Department of Corrections
October 2, 2020
Page 6

### III.
### Notice Requirements

The Act and its implementing regulations provide that a 60-day notice should include sufficient information to permit the recipient to identify the standard, limitation or order alleged to be violated, the activity alleged to constitute the violation, the person or persons responsibility for the alleged violation, the location of the alleged violation, the date or dates of the alleged violation and the identity of the person giving notice.  That information is set forth below.

**A.      The Specified Standard, Limitation, or Order Alleged to Have Been Violated**

The discharges alleged in this Notice are unlawful under 33 U.S.C. sections 1311(a) and 1342(p) of the Act because the discharges were made without a permit or in a manner that violates the NEC coverage under the Industrial Permit or the Small MS4 Permit applicable to the Prison.[2] CDCR appears to have obtained NEC coverage under the Industrial Permit on May 22, 2018, and coverage under the Small MS4 Permit for stormwater discharges from the Prison's storm water conveyance system on April 10, 2019.

Discharges from the Prison occurring after May 22, 2018 and containing pollutants associated with industrial materials or activities, such as metals, are set forth in Exhibit A to this Notice and violate the Industrial Permit's prohibition against "discharges of liquids or materials other than storm water, either directly or indirectly to waters of the United States," discharges that occur without implementation of best management practices, discharges that "cause or contribute to an exceedance of any applicable water quality standards in any affected receiving water[,]" and discharges that occur after exposure to industrial materials or activities under an NEC authorization. (Industrial Permit, Sections III (Discharge Prohibitions), V (Effluent Limitations), VI (Receiving Water Limitations), and XVII (Condition Exclusion – No Exposure Certification.)[3] As is shown in Exhibit A, the presence of these metals and other pollutants within the Prison's storm water conveyance system – before discharging and at the discharge points – suggests that exposure to industrial activities and materials has occurred in violation of the Industrial Permit's no exposure requirement and in violation of the discharge prohibitions,

---

[2] The County's original notice identified numerous discharges of pollutants from the Prison to Mule Creek *without* an NPDES permit in violation of the CWA.  (33 U.S.C § 1311(a).)  These discharges without a permit violated the CWA, which provides that: "Except as in compliance with this section and sections 302, 306, 307, 318, 402, 404 of this Act, the discharge of any pollutant by any person shall be unlawful."  The discharges of pollutants from the Prison to Mule Creek were unlawful under 33 U.S.C. section 1311(a) because CDCR did not have an NPDES or other federal permit that allowed those discharges to occur.

[3] The Industrial Permit conditionally excludes industrial facilities that "have no exposure of industrial activities and materials to storm water discharges" from certain obligations of the Industrial Permit. (Industrial Permit, Finding 70 and Provision II.B.2.) Facilities with NEC coverage are not granted a conditional exclusion from the discharge prohibitions, effluent limitations or receiving water limitations of the Industrial Permit. "No Exposure" under the Industrial Permit means "all Industrial Materials and Activities are protected by a Storm-Resistant Shelter to prevent all exposure to rain, snow, snowmelt, and/or runoff." (Industrial Permit, Provision XVII.B.1.)

Patrick Covello, Warden
California Department of Corrections
October 2, 2020
Page 7

effluent limitations, and receiving water limitations. (See Industrial Permit, Sections III, V, VI, and XVII.)

Discharges from the Prison's storm water conveyance system after April 10, 2019 set forth in Exhibit A to this Notice violate the Small MS4 Permit's prohibitions against the discharge of non-storm water (including wastewater), discharges that cause or threaten conditions of pollution or nuisance, discharges that violate effluent limitations such as hazardous substances, and discharges that "cause or contribute to an exceedance of water quality standards . . . ." (See Small MS4 Permit, Sections B (Discharge Prohibitions), C (Effluent Limitations) and D (Receiving Water Limitations).)  As is shown in Exhibit A, the presence of E. Coli within the Prison's storm water conveyance system – before discharging and at the discharge points – demonstrates that there is pollutants associated with sewage and wastewater collection are entering the storm drain system from inside the Prison.

Because the discharges alleged in this Notice violate the discharge prohibitions, effluent limitations, receiving water limitations, and no exposure limitations of these permits, they are illegal discharges under the Act.

**B.**     **The Activity Alleged to Constitute a Violation**

The County contends that from May 15, 2015 to October 2, 2020, CDCR has violated the Act as described in this Notice.  The County contends these violations are continuing or have the likelihood of occurring in the future. As is shown in Exhibit A to this Notice analytical laboratory data collected over more than two years demonstrates there have been at least 3,104 measured exceedances of water quality objectives within receiving waters adjacent to the Prison, at the Prison's storm drain system outfalls to Mule Creek, and within the storm drain system.

1.     <u>Direct Discharges to Mule Creek</u>.  The County has documented multiple and ongoing direct discharges of pollutants to Mule Creek.  In some cases, the discharges involve millions of gallons of polluted water.  Representative examples of CDCR activities alleged to violate 33 U.S.C sections 1311(a) and 1342(p) include:

a.     <u>December 28, 2017</u>.  On December 28, 2017, CDCR illegally discharge pollutants from a newly constructed storm water pipeline directly to Mule Creek.  This discharge contained high levels of bacteria and other pollutants.  This discharge was just one of a regular daily discharge observed between August 2017 and January 2018.  These discharges included water that was described as at times being jet black, sometimes containing solids, and sometimes steaming hot.

b.     <u>March 22 and 23, 2018</u>.   On March 22, 2018, CDCR intentionally discharged 1,250,000 gallons of comingled storm water and wastewater to Mule Creek.  The details of this discharge are set forth in OES Report 18-1892.  On March 23, 2018, CDCR

Patrick Covello, Warden
California Department of Corrections
October 2, 2020
Page 8

updated OES Report 18-1892 to report a total discharge of 1,600,000 gallons to Mule Creek. This discharge included pathogens, VOCs and SVOCs, among other pollutants.

       c.     <u>April 6, 2018</u>.  On April 6, 2018, CDCR discharged 33,000 gallons of raw sewage to Mule Creek.  The details of this discharge of raw sewage are set forth in OES Report 18-2255.  This discharge included bacteria.

       d.     <u>April 6-7, 2018</u>.  On April 6 and 7, 2018, CDCR discharged 1,600,000 gallons of comingled storm water and wastewater to Mule Creek.  The details of this discharge are set forth in OES Report 18-2307.  This discharge included pathogens, VOCs and SVOCs, among other pollutants.

       e.     <u>May 25, 2018</u>.  On May 25, 2018, CDCR discharged 200,000 to 350,000 gallons of commingled storm water and wastewater to Mule Creek.  The details of this discharge are set forth in OES Report 18-3383.  This discharge included pathogens, VOCs and SVOCs, among other pollutants.

       f.     <u>August 17, 2018</u>.  On August 17, 2018, in a letter and report to the Regional Board, CDCR self-reported that it regularly conducted wash down activities over its storm drain facilities.  These activities resulted in illegal discharges of industrial and other pollutants from the storm drains to Mule Creek.

       g.     <u>July 13, 2019</u>.  On July 13, 2019, CDCR spilled 5,000 gallons of effluent directly to Mule Creek.  This discharge included pathogens in excess of water quality standards.

       h.     <u>May 17, 2020</u>. On May 17, 2020, CDCR spilled 1.25 million gallons of commingled storm water and wastewater to Mule Creek.  The details of this discharge are set forth in OES Report 20-2694. This discharge also demonstrates that the violations alleged in this Notice are ongoing and are likely to continue.

       2.     <u>Functional Equivalent of Direct Discharges to Mule Creek</u>.  In addition to these numerous and ongoing direct discharges, CDCR is also performing activities that have resulted in the functional equivalent of direct discharges to Mule Creek.  When CDCR constructed the MCIC, it reduced the land available for the spraying of effluent from the wastewater treatment facility at the Prison.  This reduction in land has resulted in the over spraying of the remaining land available.  This over spraying has resulted in oversaturation of the remaining spray fields. This has caused seepage from the spray fields into Mule Creek. As is demonstrated in Exhibit A, exceedances of bacterial indicators in Mule Creek adjacent to the land application areas indicate significant discharges from the Prison's effluent disposal activities.

       This seepage is the functional equivalent of direct discharges to Mule Creek, and is prohibited without an NPDES permit.  None of the three general NPDES permits would permit this discharge of wastewater effluent to Mule Creek, and any state permit issued by the Regional

Patrick Covello, Warden
California Department of Corrections
October 2, 2020
Page 9

Board under state law would not be sufficient to permit these discharges under the Act . Despite not having a permit for these discharges, CDCR continues to engage in this functional equivalent to a direct discharge.  These activities are well documented.  For example, on July 25, 2019, Regional Board staff documented stagnant water in Mule Creek downstream of the spray fields, even though the Creek was dry upstream and even though then had been several months of hot, dry weather.  These ongoing discharges result in the regular discharge of pathogens, VOCs and SVOCs, among other pollutants, to Mule Creek in violation of the Act.

The claims in this Notice are different from the allegations in the Draft Order. First, this Notice covers a broader time period than is alleged in the Draft Order. The violations subject to the Draft Order begin in January 2018 and end in April 2019. This Notice alleges violations beginning in May 15, 2015 and extending beyond April 2019. This Notice also alleges the violations will continue despite implementation of the irrigation replacement project and SCCWRP study. Second, the Draft Order does not allege violations of any NPDES permit provisions or any violations resulting from the sprayfields. This Notice alleges violations of the Small MS4 Permit and the Industrial Permit. It also alleges unpermitted discharges in violation of the Clean Water Act occurring from the sprayfields. As a result, the Clean Water Act violations alleged in this Notice are not addressed by or barred by the potential adoption of the Draft Order.

## C.      The Person or Persons Responsible for the Alleged Violation

The entity responsible for the alleged violation identified in this Notice is the CDCR and those of its employees or agents responsible for compliance with the CWA and with any applicable state and federal regulations and permits.  CDCR owns and operates the Prison, its wastewater facility, its conveyance systems and other infrastructure that results in the discharges alleged in this Notice.  The treatment system at the facility does also treat wastewater generated from the Preston Youth Correctional Facility and the California Department of Forestry Fire Training Academy, in addition to the Prison's wastewater, but the violations alleged in this Notice are the sole result of the activities, inactions and facilities of CDCR.

## D.      The Location of the Alleged Violation

The location of the alleged violations is the portion of Mule Creek adjacent to the Prison that has received the pollutants from the direct and indirect discharges referred to in this Notice, including but not limited to the storm sewer collection system outfall(s) to Mule Creek.  The specific location for each alleged discharge is set forth in the reports referred to in this Notice, in records created and/or maintained by CDCR, as well as in reports and records created and/or maintained by the Regional Board.  The Prison is located at 4001 on Highway 104 in the City of Ione in Amador County, and the discharges alleged in this Notice all originated at the Prison and were conveyed to the adjacent Mule Creek.

Patrick Covello, Warden
California Department of Corrections
October 2, 2020
Page 10

**E.      The Date or Dates of Violations or a Reasonable Range of Dates During Which the Alleged Activity Occurred**

The range of dates covered by this Notice is May 15, 2015 to October 2, 2020 and ongoing.  The County may from time to time update this Notice to include additional violations of the CWA by the CDCR which occur during or after the range of dates currently covered.  Some violations are continuous, and therefore each day constitutes a violation. (See Exhibit A to this Notice for a list of currently known known violations.)  As described in this Notice, and by way of illustration only, specific violations highlighted in this Notice occurred on December 28, 2017, March 22, 2018, March 23, 2018, April 7, 2018, May 25, 2018, August 17, 2018, July 13, 2019, July 25, 2019, May 17, 2020.

**F.      The Full Name, Address and Telephone Number of the Person Giving Notice**

The entity giving this Notice is the County of Amador, a municipal corporation.  The County's mailing address is 810 Court Street, Jackson, California, 95642.   This Notice is being provided by the County Counsel for the County of Amador at the direction of the Board of Supervisors of the County.  Please direct all correspondence regarding this Notice to Gregory Gillott, Amador County Counsel, 810 Court Street, Jackson, CA, 95642, (209) 223-6213, ggillot@amadorgov.org.

The County and the residents of the County have sustained, and continue to sustain, direct injuries due to CDCR's violations of the CWA that are subject to redress through litigation under the Act.  The discharges alleged in this Notice have caused the County to incur substantial costs associated with the pollutants discharged to Mule Creek and the pollution of the groundwater basin.  The pollution has also deteriorated the quality of the Mule Creek area, resulting in lost recreational and other opportunities that in turn have resulted in a fiscal impact to the County through lost sales and other taxes.  Similarly, the pollution has also impacted the residents of the County, including by depriving them of recreational opportunities and also resulting in pollution of private and public wells and land in the area.  The County provides this Notice and will pursue litigation if necessary to redress these direct injuries that are caused by CDCR's violations of the CWA.

**IV.**
**Cease and Desist Demand and Remedial Measures**

During the 60-day notice period, the County stands ready to meet with CDCR to discuss a possible resolution of the issues presented in this Notice.  If a reasonable written settlement can be reached during the 60-day notice period, the County would be willing to consider foregoing this litigation.  However, a reasonable settlement would need to include:

- An immediate commitment to cease and desist all unpermitted discharges;

Patrick Covello, Warden
California Department of Corrections
October 2, 2020
Page 11

- An agreement to comply with all discharge prohibitions, effluent limitations and receiving water limitations of the Small MS4 Permit and the Industrial Permit, as applicable, to the extent CDCR has obtained coverage under any of these permits.

- An agreement to timely obtain all additional NPDES permits required, in addition to the renewal or expansion of state permits related to the wastewater system to include provisions sufficient to treat the industrial pollutants from the facility and to end the indirect discharges from the spray fields to Mule Creek;

- An agreement to remediate the pollution to Mule Creek and to the associated groundwater basin, including impacts to public and private land and wells;

- Reasonable compensation for the County's costs and fees.

**V.**
**Conclusion**

Please contact County Counsel Gregory Gillott if you are willing to engage in reasonable settlement discussions during the 60-day notice period.  In the absence of productive discussions to resolve this dispute, the County will have cause to file a citizen's suit under the CWA when the 60-day notice period ends.  As part of that action, the County will pursue injunctive relief to stop all discharges in violation of the Act, will seek penalties for these discharges and will seek reasonable attorney's fees and costs.  In addition to such a citizen suit, the County reserves all rights to assert all other available claims against CDCR related to these discharges, including, but not limited to, breach of the 1985 Agreement.  It is the County's hope that CDCR will work with the County to voluntarily resolve these issues, but the County stands ready to pursue its legal options if necessary.

Sincerely,

Greg Gillott
County Counsel

cc:    Andrew Wheeler, Administrator
       U.S. Environmental Protection Agency
       1200 Pennsylvania Avenue, NW
       Washington, D.C. 20460

       Mike Stoker, Regional Administrator
       U.S. Environmental Protection Agency

Patrick Covello, Warden
California Department of Corrections
October 2, 2020
Page 12

Pacific Southwest, Region 9
75 Hawthorne Street
San Francisco, CA 94105

U.S. Attorney General
U.S. Dept. of Justice
950 Pennsylvania Ave, NW
Washington, DC 20530-0001

Eileen Sobeck, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, CA 95812-0100

Patrick Pulupa
Executive Officer
California Regional Water Quality Control Board
Central Valley Region
11020 Sun Center Drive #200
Rancho Cordova, CA 95670

# EXHIBIT A

# SUMMARY OF EXCEEDANCES

| Constituent | Units | WQO | Tower #2 # Samples | Tower #2 # Exceedances | Tower #3 # Samples | Tower #3 # Exceedances | MCSP6 # Samples | MCSP6 # Exceedances | MCSP3 # Samples | MCSP3 # Exceedances | Tower #4 # Samples | Tower #4 # Exceedances | Tower #9 # Samples | Tower #9 # Exceedances | MCSP5 # Samples | MCSP5 # Exceedances | MCSP2 # Samples | MCSP2 # Exceedances | Discharge Exceedances | MCSP1 # Samples | MCSP1 # Exceedances | Location #1 # Samples | Location #1 # Exceedances | Location #3 # Samples | Location #3 # Exceedances | Receiving Water Exceedances | Total Exceedances |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Organics** | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Benzene | µg/L | 1 | 11 | 0 | 277 | 0 | 9 | 0 | 5 | 0 | 230 | 0 | 29 | 0 | 16 | 0 | 2 | 0 | 0 | 35 | 0 | 7 | 0 | 41 | 0 | 0 | 0 |
| Bromodichloromethane | µg/L | 0.56 | | | 1 | 1 | | | | | | | | | | | | | 1 | | | | | | | 0 | 1 |
| Bromoform | µg/L | 4.3 | | | 2 | 0 | | | | | | | | | | | | | 0 | | | | | | | 0 | 0 |
| Butyl benzyl phthalate | µg/L | 3000 | | | 1 | 0 | | | | | 1 | 0 | | | | | | | 0 | | | | | | | 0 | 0 |
| Chloroform | µg/L | 80 | 1 | 0 | 12 | 0 | 1 | 0 | | | 10 | 0 | | | 3 | 0 | | | 0 | | | | | 1 | 0 | 0 | 0 |
| Dibromochloromethane | µg/L | 0.41 | | | 1 | 1 | | | | | | | | | | | | | 1 | | | | | | | 0 | 1 |
| Diethyl phthalate | µg/L | 23000 | 1 | 0 | 7 | 0 | 5 | 0 | 2 | 0 | 5 | 0 | 5 | 0 | 7 | 0 | 1 | 0 | 0 | | | | | 8 | 0 | 0 | 0 |
| Ethylbenzene | µg/L | 300 | 11 | 0 | 277 | 0 | 9 | 0 | 5 | 0 | 230 | 0 | 29 | 0 | 16 | 0 | 2 | 0 | 0 | 35 | 0 | 7 | 0 | 41 | 0 | 0 | 0 |
| Pentachlorophenol | µg/L | 0.28 | | | 2 | 2 | | | | | | | 1 | 1 | | | | | 3 | | | | | | | 0 | 3 |
| Phenol | µg/L | 21000 | | | | | | | | | | | 1 | 0 | | | | | 0 | | | | | | | 0 | 0 |
| Toluene | µg/L | 150 | 11 | 0 | 277 | 0 | 9 | 0 | 5 | 0 | 230 | 0 | 29 | 0 | | | 2 | 0 | 0 | 35 | 0 | 7 | 0 | 41 | 0 | 0 | 0 |
| Xylenes (total) | µg/L | 1750 | 11 | 0 | 277 | 0 | 9 | 0 | 5 | 0 | 230 | 0 | 29 | 0 | 16 | 0 | 2 | 0 | 0 | 35 | 0 | 7 | 0 | 41 | 0 | 0 | 0 |
| **Microbial** | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| E. Coli | MPN/100mL | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Complete dataset | | | 10 | | 292 | | 36 | | 25 | | 229 | | 29 | | 48 | | 18 | | | 76 | | 7 | | 82 | | | |
| Geomean (from Feb 4, 2019) | | 100 | 0 | | 38 | 16 | 36 | 16 | 25 | 8 | 1 | 0 | 8 | 1 | 48 | 13 | 18 | 3 | 57 | 69 | 23 | 0 | | 67 | 54 | 77 | 134 |
| STV (from Feb 4, 2019) | | 320 | 0 | | 38 | 11 | 36 | 6 | 25 | 7 | 1 | 0 | 8 | 1 | 48 | 8 | 18 | 7 | 40 | 69 | 7 | 0 | | 67 | 11 | 18 | 58 |
| Fecal Coliforms | MPN/100mL | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Complete dataset | | | 10 | | 283 | | 15 | | 11 | | 229 | | 29 | | 22 | | 4 | | | 45 | | 7 | | 51 | | | |
| Geomean (prior to Feb 4, 2019) | | 200 | 10 | 3 | 254 | 185 | 0 | | 0 | | 228 | 154 | 21 | 7 | 0 | | 0 | | 349 | 7 | 0 | 7 | 0 | 15 | 0 | 0 | 349 |
| STV (prior to Feb 4, 2019) | | 400 | 10 | 1 | 254 | 0 | 0 | | 0 | | 228 | 0 | 21 | 1 | 0 | | 0 | | 2 | 7 | 0 | 7 | 0 | 15 | 0 | 0 | 2 |
| **GenChem** | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Chloride | mg/L | 250 | 11 | 0 | 277 | 0 | 9 | 0 | 5 | 0 | 230 | 0 | 29 | 0 | 16 | 0 | 2 | 0 | 0 | 35 | 0 | 7 | 0 | 41 | 0 | 0 | 0 |
| MBAS | mg/L | 0.5 | 11 | 0 | 234 | 6 | | | | | 229 | 6 | 11 | 0 | | | | | 12 | 1 | 0 | 7 | 0 | 8 | 0 | 0 | 12 |
| Nitrate + Nitrite as N | mg/L | 10 | 10 | 0 | 252 | 0 | 9 | 0 | 5 | 0 | 223 | 0 | 29 | 1 | 16 | 0 | 2 | 0 | 1 | 35 | 0 | 7 | 0 | 40 | 0 | 0 | 1 |
| Nitrate as N | mg/L | 10 | 11 | 0 | 253 | 0 | 9 | 0 | 5 | 0 | 220 | 0 | 29 | 1 | 15 | 0 | 2 | 0 | 1 | 33 | 0 | 7 | 0 | 39 | 0 | 0 | 1 |
| Nitrite as N | mg/L | 1 | 10 | 0 | 247 | 1 | 9 | 0 | 5 | 0 | 216 | 1 | 28 | 0 | 16 | 0 | 2 | 0 | 2 | 35 | 0 | 7 | 0 | 41 | 0 | 0 | 2 |
| pH (units) | SU | >6.5 | 11 | 0 | 235 | 13 | | | | | 228 | 15 | 12 | 0 | | | | | 28 | 1 | 0 | 7 | 0 | 9 | 1 | 1 | 29 |
| pH (units) | SU | <8.5 | 11 | 0 | 235 | 9 | | | | | 228 | 8 | 12 | 0 | | | | | 17 | 1 | 0 | 7 | 0 | 8 | 0 | 0 | 17 |
| Specific Conductance (EC) | uS/cm | 900 | 11 | 0 | 234 | 1 | | | | | 229 | 0 | 11 | 0 | | | | | 1 | 1 | 0 | 7 | 0 | 8 | 0 | 0 | 1 |
| Sulfate as SO4 | mg/L | 250 | 11 | 0 | 277 | 0 | 9 | 0 | 5 | 0 | 230 | 0 | 29 | 0 | 16 | 0 | 2 | 0 | 0 | 35 | 0 | 7 | 0 | 41 | 0 | 0 | 0 |
| Total Dissolved Solids | mg/L | 500 | 11 | 0 | 277 | 2 | 9 | 0 | 5 | 0 | 230 | 0 | 29 | 0 | 16 | 0 | 2 | 0 | 2 | 35 | 1 | 7 | 0 | 41 | 0 | 1 | 3 |
| Turbidity (NTU) | NTU | 1 | 11 | 11 | 234 | 230 | | | | | 229 | 219 | 11 | 11 | | | | | 471 | 1 | 0 | 7 | 5 | 8 | 8 | 13 | 484 |

Case 1:20-cv-02492-WBS-AC   Document 132-4   Filed 07/07/25   Page 16 of 16

| Constituent | Units | WQO | Tower #2 # Samples | Tower #2 # Exceedances | Tower #3 # Samples | Tower #3 # Exceedances | MCSP6 # Samples | MCSP6 # Exceedances | MCSP3 # Samples | MCSP3 # Exceedances | Tower#4 # Samples | Tower#4 # Exceedances | Tower#9 # Samples | Tower#9 # Exceedances | MCSP5 # Samples | MCSP5 # Exceedances | MCSP2 # Samples | MCSP2 # Exceedances | Discharge Exceedances | MCSP1 # Samples | MCSP1 # Exceedances | Location #1 # Samples | Location #1 # Exceedances | Location #3 # Samples | Location #3 # Exceedances | Receiving Water Exceedances | Total Exceedances |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Metals** | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Aluminum | µg/L | 200 | 10 | 10 | 278 | 146 | 9 | 4 | 5 | 5 | 230 | 123 | 30 | 22 | 16 | 11 | 2 | 2 | 323 | 35 | 11 | 7 | 2 | 41 | 27 | 40 | 363 |
| Antimony | µg/L | 6 | 10 | 0 | 235 | 0 | | | 1 | 0 | 229 | 1 | 12 | 0 | | | | | 1 | | | 7 | 0 | 7 | 0 | 0 | 1 |
| Arsenic | µg/L | 10 | 10 | 0 | 278 | 19 | 9 | 2 | 5 | 0 | 229 | 65 | 30 | 0 | 16 | 1 | 2 | 0 | 87 | 35 | 0 | 7 | 0 | 41 | 0 | 0 | 87 |
| Barium | µg/L | 1000 | 5 | 0 | 215 | 0 | 9 | 0 | 4 | 0 | 184 | 0 | 23 | 0 | 16 | 0 | 2 | 0 | 0 | 35 | 0 | 7 | 0 | 41 | 0 | 0 | 0 |
| Beryllium | µg/L | 4 | 5 | 0 | 172 | 0 | | | | | 184 | 0 | 5 | 0 | | | | | 0 | | | 7 | 0 | 7 | 0 | 0 | 0 |
| Cadmium | µg/L | 2.5 | 10 | 0 | 278 | 1 | 9 | 0 | 5 | 0 | 229 | 0 | 30 | 0 | 16 | 0 | 2 | 0 | 1 | 35 | 0 | 7 | 0 | 41 | 0 | 0 | 1 |
| Chromium | µg/L | 50 | 10 | 0 | 278 | 2 | 9 | 0 | 5 | 0 | 229 | 1 | 30 | 2 | 16 | 1 | 2 | 0 | 6 | 35 | 0 | 7 | 0 | 41 | 0 | 0 | 6 |
| Copper | µg/L | 9.3 | 5 | 5 | 173 | 107 | | | | | 185 | 118 | 5 | 4 | | | | | 234 | | | 7 | 0 | 6 | 3 | 3 | 237 |
| Hexavalent Chromium | µg/L | 10 | | | 1 | 0 | | | | | 1 | 0 | | | | | | | 0 | | | | | | | 0 | 0 |
| Iron | µg/L | 300 | 10 | 10 | 278 | 173 | 9 | 8 | 5 | 5 | 229 | 177 | 30 | 26 | 16 | 15 | 2 | 2 | 416 | 35 | 17 | 7 | 2 | 41 | 34 | 53 | 469 |
| Lead | µg/L | 3.2 | 10 | 2 | 278 | 11 | 9 | 1 | 5 | 0 | 229 | 7 | 30 | 4 | 16 | 2 | 2 | 0 | 27 | 35 | 0 | 7 | 0 | 41 | 7 | 7 | 34 |
| Manganese | µg/L | 50 | 10 | 5 | 235 | 40 | | | 1 | 0 | 229 | 31 | 12 | 5 | | | | | 81 | | | 7 | 1 | 7 | 3 | 4 | 85 |
| Mercury | µg/L | 0.05 | 3 | 0 | 195 | 2 | 9 | 0 | 4 | 1 | 164 | 2 | 21 | 0 | 16 | 1 | | | 6 | 35 | 0 | 4 | 0 | 38 | 1 | 1 | 7 |
| Nickel | µg/L | 52 | | | 234 | 3 | | | 1 | 0 | 229 | 2 | 12 | 0 | | | | | 5 | | | 7 | 0 | 7 | 0 | 0 | 5 |
| Selenium | µg/L | 5 | 10 | 0 | 278 | 0 | 9 | 0 | 5 | 0 | 229 | 0 | 30 | 0 | 16 | 0 | 2 | 0 | 0 | 35 | 0 | 7 | 0 | 41 | 1 | 1 | 1 |
| Silver | µg/L | 4.1 | 5 | 0 | 215 | 0 | 9 | 0 | 4 | 0 | 184 | 0 | 23 | 0 | 16 | 0 | 2 | 0 | 0 | 35 | 0 | 7 | 0 | 41 | 0 | 0 | 0 |
| Thallium | µg/L | 1.7 | 5 | 0 | 172 | 0 | | | | | 184 | 0 | 5 | 0 | | | | | 0 | | | 7 | 0 | 7 | 0 | 0 | 0 |
| Zinc | µg/L | 120 | 10 | 1 | 278 | 272 | 9 | 8 | 5 | 3 | 229 | 36 | 30 | 7 | 16 | 4 | 2 | 1 | 332 | 35 | 0 | 7 | 0 | 41 | 7 | 7 | 339 |
| **Dissolved Metals** | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Aluminum | µg/L | 200 | 11 | 0 | 234 | 5 | | | | | 229 | 4 | 11 | 1 | | | | | 10 | 1 | 0 | 7 | 0 | 8 | 0 | 0 | 10 |
| Antimony | µg/L | 6 | 11 | 0 | 234 | 0 | | | | | 229 | 1 | 11 | 0 | | | | | 1 | 1 | 0 | 7 | 0 | 8 | 0 | 0 | 1 |
| Arsenic | µg/L | 10 | 11 | 0 | 234 | 15 | | | | | 229 | 63 | 11 | 0 | | | | | 78 | 1 | 0 | 7 | 0 | 8 | 0 | 0 | 78 |
| Barium | µg/L | 1000 | | | | | | | | | | | | | | | | | 0 | | | | | | | 0 | 0 |
| Beryllium | µg/L | 4 | | | | | | | | | | | | | | | | | 0 | | | | | | | 0 | 0 |
| Cadmium | µg/L | 2.2 | 11 | 0 | 234 | 0 | | | | | 229 | 0 | 11 | 0 | | | | | 0 | 1 | 0 | 7 | 0 | 8 | 0 | 0 | 0 |
| Chromium | µg/L | 50 | 11 | 0 | 234 | 0 | | | | | 229 | 0 | 11 | 0 | | | | | 0 | 1 | 0 | 7 | 0 | 8 | 0 | 0 | 0 |
| Copper | µg/L | 9 | | | 1 | 0 | | | | | 1 | 1 | | | | | | | 1 | | | | | | | 0 | 1 |
| Hexavalent Chromium | µg/L | 10 | | | 1 | 0 | | | | | 1 | 0 | | | | | | | 0 | | | | | | | 0 | 0 |
| Iron | µg/L | 300 | 11 | 0 | 234 | 5 | | | | | 229 | 9 | 11 | 2 | | | | | 16 | 1 | 0 | 7 | 0 | 8 | 0 | 0 | 16 |
| Lead | µg/L | 2.5 | 11 | 1 | 234 | 1 | | | | | 229 | 0 | 11 | 0 | | | | | 2 | 1 | 0 | 7 | 0 | 8 | 0 | 0 | 2 |
| Manganese | µg/L | 50 | 11 | 3 | 234 | 9 | | | | | 229 | 9 | 11 | 0 | | | | | 21 | 1 | 0 | 7 | 0 | 8 | 1 | 1 | 22 |
| Mercury | µg/L | 0.05 | | | | | | | | | | | | | | | | | 0 | | | | | | | 0 | 0 |
| Nickel | µg/L | 52 | 11 | 0 | 234 | 1 | | | | | 229 | 1 | 11 | 0 | | | | | 2 | 1 | 0 | 7 | 0 | 8 | 0 | 0 | 2 |
| Selenium | µg/L | 5 | 11 | 0 | 234 | 1 | | | | | 229 | 0 | 11 | 0 | | | | | 1 | 1 | 0 | 7 | 0 | 8 | 0 | 0 | 1 |
| Silver | µg/L | 3.4 | | | | | | | | | | | | | | | | | 0 | | | | | | | 0 | 0 |
| Thallium | µg/L | 1.7 | | | | | | | | | | | | | | | | | 0 | | | | | | | 0 | 0 |
| Zinc | µg/L | 117 | 11 | 0 | 234 | 221 | | | | | 229 | 14 | 11 | 1 | | | | | 236 | 1 | 0 | 7 | 0 | 8 | 2 | 2 | 238 |
| **Total Exceedances** | | | | 52 | | 1512 | | 45 | | 29 | | 1068 | | 98 | | 56 | | 15 | 2875 | | 59 | | 10 | | 160 | 229 | 3104 |